# EXHIBIT 1

EXHIBIT 1



## HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL
### INVESTMENT BANKERS

February 14, 2001

Mr. Douglas P. Buth
President
Paperweight Development Corp.
c/o Appleton Papers Inc.
825 E. Wisconsin Avenue
P.O. Box 359
Appleton, WI 54912-0359

| | |
|---|---|
| Client No.: | 15896 |
| Case No.: | 8901 |
| Staff: | — |
| Signator: | LAP |
| W.P. Copy: | File Center |

Dear Doug,

      This letter confirms that Paperweight Development Corp. ("PDC") has engaged Houlihan Lokey Howard & Zukin Capital ("Houlihan Lokey") to act as its exclusive financial advisor with respect to the possible acquisition, in one or a series of transactions, by a to-be-formed Employee Stock Ownership Plan ("ESOP") and the management of Appleton Papers Inc. ("Management") and any entities Management may form or invest in (hereinafter collectively referred to as the "Company") of securities representing more than 50% of the total voting power of, or all or substantially all of the assets of, Appleton Papers Inc. ("API") by way of merger, consolidation, acquisition of assets or otherwise (an "ESOP Acquisition" or "Transaction"), pursuant to the following terms and conditions:

      1.    Houlihan Lokey will provide services as enumerated in Addendum A and, in general, will review the financial condition and future prospects of the Company and API and any other matters which you and we deem relevant to assist and advise the Company in its analysis of any ESOP Acquisition and will assist you in the negotiation and structuring of the financial aspects of the proposed ESOP Acquisition. Houlihan Lokey will also render such other financial advisory services as may from time to time be agreed upon by Houlihan Lokey and the Company. Upon Houlihan Lokey's request, you will furnish us with such material regarding the business and financial condition of the Company and API as we request, all of which will be, to your best knowledge, accurate and complete in all material respects at the time furnished. Houlihan Lokey may rely, without independent verification, on the accuracy and completeness of all information furnished by the Company or any other potential party to any ESOP Acquisition. Except as may be required by law or court process, all non-public information provided by API Management or the Company will be treated as confidential and will not, without the prior consent of the Company, be disclosed to any third parties in the absence of appropriate assurances of confidentiality, and Houlihan Lokey agrees it will not make any use thereof except in connection with our services hereunder for the Company.

      2.    In consideration of the foregoing financial advisory services, the Company agrees to pay Houlihan Lokey a non-refundable retainer fee of $100,000 upon the execution of this letter agreement. The Company also agrees to pay Houlihan Lokey a transaction fee at a Transaction closing equal to 1.0% of the "Aggregate Consideration" paid for the stock of the Company with respect to an ESOP

Washington, D.C.
1750 Tysons Boulevard, Suite 650
McLean, Virginia 22102-4226
Tel 703.847.5225  Fax 703.848.9667

Broker/dealer services through
Houlihan Lokey Howard & Zukin Capital

Los Angeles    New York    Chicago    San Francisco    Minneapolis    Dallas    Atlanta    Toronto    Seoul

Mr. Douglas P. Buth
Paperweight Development Corp.
February 14, 2001

- 2 -

Acquisition. Aggregate Consideration shall mean the sum of the fair market values of any consideration paid (including consideration paid in cash, stock, debt, or assets, but not including any assets sold, transferred or otherwise distributed to Arjo Wiggins Appleton plc or its affiliates (collectively, "AWA") prior to the sale as assets not involved in the API business) to the seller or sellers in an ESOP Acquisition. Aggregate Consideration will not include any contingent payments to AWA.

At the time of a Transaction closing, the retainer fee will be fully credited toward the payment of a transaction fee.

3.  The term of this letter agreement shall, except as otherwise provided herein, run for a period of twelve months from the date hereof, and such period shall be automatically extended on a month-to-month basis unless either Houlihan Lokey or the Company provides 30 days prior written notice to the other party. Houlihan Lokey's services hereunder may be terminated by the Company or by Houlihan Lokey at any time and without liability or continuing obligation to the Company or to Houlihan Lokey, except as set forth in paragraph 8 hereof.

4.  The Company will reimburse Houlihan Lokey, upon its request, for all reasonable out-of-pocket expenses to include, but not be limited to travel, lodging, meals, information services, courier, overnight mail, telephone, facsimile and other related engagement charges. Houlihan Lokey will solicit and obtain PDC's prior approval, which shall not unreasonably be withheld, before incurring any engagement related expenses for legal counsel.

5.  Except as may be required by law, any opinion or advice (written or oral) rendered by Houlihan Lokey pursuant to this letter agreement is intended solely for the benefit and use of the Company, will be treated by the parties hereto as confidential, and may not be disclosed publicly in any manner without prior approval of Houlihan Lokey, which approval shall not be unreasonably withheld.

6.  The Company and Appleton Papers Inc. agree to indemnify and to contribute to Houlihan Lokey on a joint and several basis in accordance with the terms of Schedule A hereto, which Schedule is incorporated herein by reference.

7.  This letter agreement incorporates the entire understanding of the parties and supersedes all previous agreements should they exist and shall be governed by and construed in accordance with the laws of the state of New York without regard to principles of conflicts of law.

8.  The Company's obligations for any compensation to be paid to Houlihan Lokey pursuant to this letter agreement (including pursuant to this paragraph 8), for expenses incurred by Houlihan Lokey to the date of termination and with respect to the indemnification, contribution and expense reimbursement provisions contained in Schedule A hereto, shall continue and remain in full force and effect regardless of the expiration of the term, or any termination, of this letter agreement. In addition, if this letter agreement has expired or is terminated by the Company for any reason (other than for cause) and the Company consummates or enters into a binding agreement with respect to an ESOP Acquisition within twelve months from the date of this letter agreement, Houlihan Lokey shall be entitled to receive the compensation provided for in paragraph two upon the consummation of such an ESOP Acquisition as if no such expiration or termination had occurred, regardless of whether the Company re-engages Houlihan Lokey. For purposes of this Agreement, the Company shall be deemed to have "cause" to terminate Houlihan Lokey's services if Houlihan Lokey acts in a manner that results in an intentional and material breach or grossly negligent breach by Houlihan Lokey of its material obligations hereunder.

Mr. Douglas P. Buth
Paperweight Development Corp.
February 14, 2001

- 3 -

9. Houlihan Lokey will also become entitled to compensation pursuant to section 8(d) (i) of the Letter of Intent, dated February 12, 2001, by and between Arjo Wiggins Appleton plc and PDC.

10. This agreement shall be binding upon and inure to the benefit of the Company, Houlihan Lokey, the other Indemnified Parties referred to in Schedule A hereto and their respective successors and assigns.

If the foregoing correctly sets forth our understanding, please indicate by signing below and returning an executed copy to us.

Very truly yours,

HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL

By: _____
Louis A. Paone
Managing Director


Accepted and agreed:

PAPERWEIGHT DEVELOPMENT CORP.

By: _____
Douglas P. Buth
President


Accepted and agreed:

APPLETON PAPERS INC.

By: _____
Paul J. Karch
Secretary

## SCHEDULE A

This Schedule A is pursuant to the letter dated February 14, 2001 and addressed to Paperweight Development Corp. by Houlihan Lokey (the "Letter"). Unless otherwise noted, all capitalized terms used herein shall have the meanings set forth in the Letter.

Since Houlihan Lokey will be acting on behalf of the Company in providing financial advisory services pursuant to the Letter, and as part of the consideration for the agreement of Houlihan Lokey to furnish its services under the letter, the Company agrees to indemnify and hold harmless Houlihan Lokey and its affiliates, and the respective directors, officers, shareholders, employees, agents and controlling persons of Houlihan Lokey and its affiliates within the meaning of either Section 15 of the Securities Act of 1933, as amended, or Section 20 of the Securities Exchange Act of 1934, as amended (collectively, the "Indemnified Parties"), to the fullest extent lawful, against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, to which the Indemnified Parties may become subject arising out of or related to actions taken or omitted to be taken by an Indemnified Party (including acts or omissions constituting ordinary negligence) pursuant to the terms of, or in connection with services rendered pursuant to, the Letter or any Transaction or proposed Transaction contemplated thereby or any Indemnified Party's role in connection therewith and to reimburse the Indemnified Parties for any legal or other expenses reasonably incurred by them in respect thereof at the time such expenses are incurred; provided, however, the Company shall not be liable under the foregoing indemnity agreement in respect of any loss, claim, damage or liability if any such loss, claim, damage or liability resulted primarily from the willful misconduct or gross negligence of the Indemnified Parties. In addition, the Company shall not effect any settlement or release from liability in connection with any matter for which an Indemnified Party would have a right to indemnification from the Company, unless such settlement or release contains a release of the Indemnified Parties reasonably satisfactory in form and substance to them.

If for any reason the foregoing indemnification is unavailable to any Indemnified Party or insufficient to hold it harmless, the Company shall contribute to the amount paid or payable by the Indemnified Party as a result of such loss, claim, expense, damage, settlement or liability for which such indemnification is held unavailable or is insufficient in such proportion as is appropriate to reflect the relative benefits received or to be received by the Company on the one hand and the Indemnified Party on the other hand in connection with the services rendered by Houlihan Lokey under the Letter. If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law or otherwise, then the Company shall contribute to such amount paid or payable by any Indemnified Party in such proportion as is appropriate to reflect not only such relative benefits but also the relative fault of the Company on the one hand and the Indemnified Parties on the other hand in connection with any actions or omissions or any other matters which result in any such loss, claim, expense, damage, settlement or liability as well as any other relevant equitable considerations. Notwithstanding the foregoing, the aggregate contribution of all Indemnified Parties to all losses, claims, damages, liabilities and expenses shall not exceed the amount of fees actually received by Houlihan Lokey pursuant to the Letter. The Company agrees that it would not be just and equitable if contribution were determined by pro rata allocation or by any other method of allocation which does not take account of the equitable considerations referred to in this paragraph.

The reimbursement, indemnity and contribution obligations of the Company set forth herein shall be in addition to any liability which the Company may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company, and any such person. No Indemnified Party shall have any liability to the Company or any other person in connection with the services rendered pursuant to the Letter except for any liability for losses, claims, damages or liabilities resulting primarily from actions taken or omitted to be taken by such Indemnified Party's willful misconduct or gross negligence. The foregoing provisions shall survive any termination of the relationship established by the Letter.

# ADDENDUM A

## Phase I

### Transaction Structuring

- Corporate Due Diligence
- Transaction Value Parameters
- ESOP Transaction Model Construction
- Financing Assessment and Capital Tranche Sources and Terms
- Strategic Use of Employee Participation
  - Management Deferred Compensation and Option/Stock Rollovers
  - Investment of Existing Benefit Plan Assets (401K and Pension Plans)
  - "S Corp" ESOP Application Consideration
  - Unionized Employee Participation
  - Use of Pension Plans over-funded balances
- Management Bonus Participation as ongoing investment tool
- Strategic use of Existing Benefit Plan Contributions
- Investor Exit Strategy Recapitalization Alternatives in Future Years

Presentation (s) as required to reach a consensus on the form and structure of a proposed Transaction

## Phase II

### ESOP Change of Control Transaction Execution

Upon acceptance of the Transaction and the execution of a Letter of Intent ("LOI") by AWA and the Appleton Papers Inc. Executive Management Team, Houlihan Lokey will assist Management in negotiations regarding a purchase of the Company. Upon reaching LOI transaction terms, we will advise management and coordinate activities in the following areas:

- Negotiate the price and terms regarding the purchase of Appleton Papers Inc. from its corporate parent AWA
- Assist in selection of the "ESOP Team" including Independent Trustee, ESOP Counsel, ESOP Financial Advisor and Communications Specialist, and negotiate engagement terms.
- Prepare materials to be presented to employees and make presentations to the employee base regarding their participation, investment solicitation, potential wage or benefit restructuring programs and overall transaction parameters.
- Make presentations to Union Representatives (if appropriate) regarding their potential participation and negotiation of such terms.
- Finalize financial forecast models for management and related parties to the transaction.
- Structure Management performance warrants as part of bonus/incentive plan.
- Assist in the documentation of transaction terms.

- Quarterback process flow and coordination of ESOP related activities.

Financing Assistance

- Assist in the renegotiations and restructuring of existing interest bearing debt and/or capital lease obligations (if appropriate).
- Develop information packages and management presentations for prospective capital sources of acquisition financing.
- Source and negotiate the terms of new senior credit or bank related financing for transaction and working capital purposes.
- Source and negotiate the terms of mezzanine capital for transaction purposes.
- Source and negotiate the terms of junior subordinated capital and/or equity capital for transaction purposes.
- Assist in solicitation and structure of employee based equity capital investment for transaction purposes.