# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

APPVION, INC. RETIREMENT SAVINGS )
AND EMPLOYEE STOCK OWNERSHIP )
PLAN, BY AND THROUGH GRANT LYON )
IN HIS CAPACITY AS THE ESOP )
ADMINISTRATIVE COMMITTEE OF )
APPVION, INC., )
                                      )    Case No.: 1:18-cv-01861-WCG
               Plaintiff, )
        v. )
                                        )
DOUGLAS P. BUTH, *et al.,* )
                                        )
             Defendants. )

## REPLY MEMORANDUM IN SUPPORT OF
## <u>ARGENT TRUST COMPANY'S MOTION TO DISMISS</u>

# **Table of Contents**

I.      Introduction ........................................................................................................... 1

II.     Argument .............................................................................................................. 1

        A.      Plaintiff Fails to State a Claim against Argent in Count I for Breach of
                Fiduciary Duties Under ERISA Section 404 ........................................... 1

                1.      The Duty of Loyalty Claim in Count I Fails ................................. 1

                2.      The Failure to Follow Plan Documents Claim in Count I Fails ................. 4

                3.      The Duty to Monitor Claim in Count I Fails ................................ 5

                4.      The Duty of Prudence Claim in Count I Fails .......................... 7

                5.      To the Extent Count I of the FAC also Asserts a Claim Against
                        Argent for Breach of a "Duty of Disclosure," it Fails ............... 9

        B.      Count IV Fails to State a Prohibited Transaction Claim Against Argent ........... 10

                1.      The FAC Fails to Allege that the Type of Transaction Prohibited
                        By ERISA Section 406(a)(1)(D) Even Occurred ..................... 10

                2.      The FAC Does Not Allege that Argent Caused the Plan to Engage
                        in a Prohibited Transaction ..................................................... 13

        C.      The Declaratory Judgment Claim in Count VI Should be Dismissed ............... 15

        D.      Count VII Fails to State a Claim for Co-Fiduciary Liability Against
                Argent Under ERISA § 405 .................................................................. 16

        E.      Count XIV Fails to State a Federal Securities Claim Against Argent ............... 16

        F.      Count XIII Fails to State a Wisconsin Securities Claim Against Argent ............ 19

        G.      Any Claims Against Argent That Survive Dismissal Can Only be
                Premised on Alleged Wrongdoing That Occurred, at the Earliest, After
                Argent Became Trustee ......................................................................... 20

III.    Conclusion ........................................................................................................... 20

i

**Table of Authorities**

**CASES**

*Allen v. GreatBanc Tr. Co.*,
  835 F.3d 670 (7th Cir. 2016) ...................................................................... 6, 13, 14

*Armstrong v. Amsted Indus.*,
  No. 01-cv-2963, MDL 1417, 2004 U.S. Dist. LEXIS 14776 (N.D. Ill. July 30, 2004) ..... 3, 13

*Bacon v. Stiefel*,
  677 F.Supp.2d 1331 ...................................................................................... 20

*Bank of Am., N.A. v. Knight*,
  725 F.3d 815 (7th Cir. 2013) ............................................................................ 2, 11

*Bonte v. U.S. Bank, N.A.*,
  624 F.3d 461 (7th Cir. 2010) ...................................................................... 7-8, 11, 20

*Cornielsen v. Infinium Capital Mgmt., LLC*,
  916 F.3d 589 (7th Cir. 2019) ............................................................................ 16

*DiLeo v. Ernst & Young*,
  901 F.2d 624 (7th Cir. 1990) ............................................................................ 3

*Gray v. Briggs*,
  45 F. Supp. 2d 316 (S.D.N.Y. 1999) .................................................................... 4

*Herrington v. Household Int'l, Inc.*,
  No. 02-cv-8257, 2004 U.S. Dist. LEXIS 5461 (N.D. Ill. Mar. 30, 2004) ................................ 9

*Hill v. Tribune Co.*,
  Nos. 05-cv2602, 05-cv2927V, 06-cv0741, 2006 U.S. Dist. LEXIS 71244 (N.D. Ill. Sep. 29, 2006) ................................................................................................................ 9

*Howell v. Motorola, Inc.*,
  633 F.3d 552 (7th Cir. 2011) ............................................................................ 10

*Hurtado v. Rainbow Disposal Co.*,
  No. 17-cv-01605, 2018 U.S. Dist. LEXIS 118128 (C.D. Cal. July 9, 2018) ......................... 15

*In re Polaroid ERISA Litigation*,
  362 F. Supp. 2d 461 (S.D.N.Y. 2005) .................................................................... 16

*In re RCN Litig.*,
  No. 04-cv-5068, 2006 U.S. Dist. LEXIS 12929 (D.N.J. Mar. 21, 2006) ................................ 3

*Iron Workers Local No. 25 Pension Fund v. Oshkosh Corp.*,
  No. 08-cv-797, 2010 U.S. Dist. LEXIS 30693 (E.D. Wis. Mar. 30, 2010) ............... 17, 18, 19

Case 1:18-cv-01861-WCG   Filed 06/20/19   Page 3 of 25   Document 139

*Keach v. U.S. Tr. Co.*,
    419 F.3d 626 (7th Cir. 2005) ................................................. 8, 13, 14

*Kenseth v. Dean Health Plan, Inc.*,
    610 F.3d 452 (7th Cir. 2010) ..................................................... 10

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996) ........................................................ 12, 13, 14

*McGath v. Auto-Body N. Shore*,
    7 F.3d 665 (7th Cir. 1993) .......................................................... 14

*Neil v. Zell*,
    No. 08-cv-6833, 2009 U.S. Dist. LEXIS 117735 (N.D. Ill. Dec. 17, 2009) ........................... 7

*Perez v. First Bankers Tr. Servs.*,
    210 F. Supp. 3d 518 (S.D.N.Y. 2016) ..................................................... 2

*Perez v. First Bankers Tr. Servs.*,
    No. 12-cv-4450, 2017 U.S. Dist. LEXIS 52117 (D.N.J. Mar. 31, 2017) ................................ 2

*Pfeifer v. Wawa, Inc.*,
    214 F. Supp. 3d 366 (E.D. Pa. 2016) .................................................... 15

*Stanard v. Nygren*,
    658 F.3d 792 (7th Cir. 2011) ....................................................... 11

*Van Den Heuvel v. AI Credit Corp.*,
    No. 12-cv-0327, 2014 U.S. Dist. LEXIS 199881 (E.D. Wis. Apr. 11, 2014) ............. 8, 11, 20

*White v. Chevron Corp.*,
    No. 16-cv-0793, 2016 U.S. Dist. LEXIS 115875 (N.D. Cal. Aug. 29, 2016) ........................ 7

## STATUTES

29 U.S.C. § 1104 .............................................................................................. 4

29 U.S.C. § 1106 ................................................................................. 10, 11, 12

29 U.S.C. § 1107 ....................................................................................... 11,12

Wis. Stat. § 551.102 ................................................................................ 19, 20

# I.    Introduction

A central theme of Argent's Motion to Dismiss ("Motion") was the implausibility of Plaintiff's allegations against Argent. To credit the allegations, the Court would have to accept that Argent was the third-in-a-line of ESOP trustees that, with nothing to gain and everything to lose, decided to engage in a scheme to aid corporate directors in their looting of an employee-owned company. Plaintiff never attempts to deal with just how implausible this notion is and for good reason—Plaintiff's allegations lack even the scent of plausibility.

Of course, Argent did not limit its Motion to general implausibility. Argent also advanced specific legal grounds for dismissal. Plaintiff makes mostly passing, limited attempts at addressing Argent's arguments in its Opposition Brief ("Opposition"), instead focusing on matters occurring a decade before Argent's appointment as ESOP Trustee. Plaintiff's limited arguments against dismissal of Argent fail. The Court should dismiss Argent from this litigation.

# II.    Argument

## A.    Plaintiff Fails to State a Claim against Argent in Count I for Breach of Fiduciary Duties Under ERISA Section 404

### 1.    The Duty of Loyalty Claim in Count I Fails

Argent explained in its Motion how Plaintiff failed to allege any facts from which the Court could plausibly infer that Argent was conflicted or put its own interests ahead of the Appvion ESOP and its Employee Participants, as required to state a claim for breach of the duty of loyalty under ERISA § 404(a)(1)(A). (*See* Argent Br., Doc. 102 at 4-6.) Plaintiff makes two unpersuasive arguments in response. We address each in turn.

*First*, Plaintiff asserts that the Trustee Defendants collectively "put[] their own interest in becoming and remaining trustee (and receiving fees) and fostering their relationship with management ahead of the Employee Participants." (Pl. Opp., Doc. 130 at 41.) Plaintiff cites

1

paragraph 536 and 539 of the FAC in support, but those paragraphs say nothing of the sort. Paragraphs 536 and 539 contain only boilerplate and repetitive conclusory allegations that the Trustee Defendants "breached their fiduciary duties"—they contain no factual allegations about self-interested or conflicted conduct by *Argent* (or any other Trustee) to continue "receiving fees" or "fostering [a] relationship with management" at the expense of the Appvion ESOP and its participants. (FAC at ¶¶ 536, 539; Pl. Opp., Doc. 130 at 41.) *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (complaint alleging collective wrongdoing "without any details about who did what" is deficient).

Plaintiff also cites two U.S. Department of Labor ("DOL") cases to support his argument that "the Trustee Defendants breached the duty of loyalty when they put their own interests in receiving fees as the trustee ahead of Employee Participants." (Pl. Opp., Doc. 130 at 41 *citing Perez v. First Bankers Tr. Servs.*, 210 F. Supp. 3d 518 (S.D.N.Y. 2016) ("*Perez I*") *and Perez v. First Bankers Tr. Servs.*, No. 12-cv-4450, 2017 U.S. Dist. LEXIS 52117 (D.N.J. Mar. 31, 2017) ("*Perez II*").) But the *Perez* cases could not be more different than the allegations against Argent.

In each case, the defendant trustee was hired to evaluate the fairness of a proposed transaction from the ESOP's perspective, and if the transaction closed (i.e., if the trustee approved it as fair), the trustee was promised future work and fees based on a percentage of the company's share value, with a guaranteed minimum floor. *See Perez I*, 210 F. Supp. 3d at 524, 527; *Perez II*, 2017 U.S. Dist. LEXIS 52117 at *11, *21-22. The DOL alleged the same defendant trustee rubber-stamped two imprudent transactions so it could be installed as ongoing trustee and earn future fees tied to the company's stock value (which the trustee would determine). *See Perez I*, 210 F. Supp. 3d at 534; *Perez II*, 2017 U.S. Dist. LEXIS 52117 at *205-206. These allegations might have described a conflicted trustee motivated to act for itself rather than exclusively for the ESOP.

2

Plaintiff does not and cannot make any such allegations about Argent. The FAC does not allege that Argent took any self-interested action in exchange for a promise of future business or fees. And unlike the two DOL cases Plaintiff cites, Argent was paid a small fixed fee that was not tied to the value of PDC's stock (which might create a potential conflict of interest when making valuation determinations). (Argent Br., Doc. 102 at 5-6, n.3.)[1] Contrary to what Plaintiff argues, the only inference this Court can draw from the FAC allegations is that Argent would *not* compromise its "greatest asset [of] reputation and honesty, followed closely by its reputation for careful work" in exchange for fees that "could not approach the losses [Argent] would suffer from a perception that it would muffle [or participate in] a client's fraud." *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990).

*Second*, Plaintiff argues that the Trustee Defendants collectively "put[] the interests of Appvion management in receiving bonuses and incentives ahead of the Employee Participants." (Plaintiff's Opp., Doc. 130 at 41.) Again, Plaintiff offers no rationale as to why Argent had an interest in aiding the financial gain of someone else. Plaintiff again cites to Paragraphs 536 and 539 of the FAC, which again contain no such allegations about Argent. (FAC at ¶¶ 536, 539.) The FAC does not assert anywhere that management compensation is part of the 404(a)(1)(A) loyalty claim against Argent. But even if it did, Argent was legally obligated to prepare valuations of PDC stock by its Trustee Agreement, the Appvion ESOP, ERISA, and the Internal Revenue Code, and

---

[1]     This fixed fee arrangement does not constitute a conflict. ERISA § 408(b) "explicitly allows professional trustees, like [Argent] to receive reasonable compensation for their services in administering an ESOP plan," and the Court "cannot find that [Argent], or any similarly situated professional trustee, operates under an actionable *per se* conflict of interest simply by acting as a compensated trustee for the company's ESOP Plan." *In re RCN Litig.*, No. 04-cv-5068, 2006 U.S. Dist. LEXIS 12929, at *29 (D.N.J. Mar. 21, 2006). *See also Armstrong v. Amsted Indus.*, No. 01-cv-2963, MDL 1417, 2004 U.S. Dist. LEXIS 14776, at *12 n.1 (N.D. Ill. July 30, 2004) (receipt of fees by trustee alone "cannot provide a basis for challenge – otherwise every trustee and expert has a conflict"), *rev'd sub nom. on other grounds*, *Armstrong v. LaSalle Bank Nat'l Assn.*, 446 F.3d 728 (7th Cir. 2006).

3

had zero control over how Appvion executives otherwise (mis)used the valuations. The FAC does not allege otherwise.

### 2.    The Failure to Follow Plan Documents Claim in Count I Fails

Argent moved to dismiss the portion of Count I alleging a failure to act "in accordance with the documents and instruments governing the plan" under ERISA § 404(a)(1)(D) on the ground that the FAC does not identify any provision of the Appvion ESOP documents Argent allegedly did not follow. (Argent Br., Doc. 102 at 6-7.) Plaintiff responds in a footnote, claiming the allegations of failure to act in accordance with the plan documents "overlap with the duty of prudence [and so] they are not addressed separately in this brief." (Pl. Opp., Doc. 130 at 40, n.8.)

Plaintiff is wrong. The duty to act "with the care, skill, prudence, and diligence under the circumstances then prevailing" and the duty to act "in accordance with the documents and instruments governing the plan" are two distinct requirements under ERISA § 404—the former arises under § 404(a)(1)(B) and is measured against "a prudent man acting in a like capacity and familiar with such matters [] in the conduct of an enterprise of a like character and with like aims," and the latter arises under § 404(a)(1)(D) and is measured against the provisions of the ESOP documents. Indeed, Plaintiff plead them as two separate wrongs in the FAC. (*See* FAC at pgs. 134, 138, ¶ 537.) Plaintiff does not identify how Argent allegedly failed to follow any specific provision of the Appvion ESOP documents and the Court should therefore dismiss the § 404(a)(1)(D) claim. *See Gray v. Briggs*, 45 F. Supp. 2d 316, 327 (S.D.N.Y. 1999) (declining to dismiss prudence claim under § 404(a)(1)(B) but dismissing claim under § 404(a)(1)(D) because plaintiffs failed to identify "the manner in which the defendants have breached" any provisions of the plan documents).[2]

---

[2]    If anything, the FAC establishes that Argent fully **complied** with the ESOP documents by, among other things: (1) hiring an independent appraiser to value PDC stock; (2) reviewing those valuation reports from the independent appraiser and making semi-annual valuation determinations; and (3) reporting those valuation determinations to Appvion. (*See* FAC ¶¶ 238-40, 319-20, 655; 2013 Eng. Ltr., Doc. 102-1 at ¶ 3; 2015 Eng. Ltr.,

4

### 3.    The Duty to Monitor Claim in Count I Fails

Argent moved to dismiss the portion of Count I that alleges a breach of the duty to monitor for three alternative reasons—(1) because Argent had no power to remove or appoint ERISA fiduciaries (and therefore no duty to monitor as a matter of law); (2) because the duty to monitor is derivative and the FAC allegations fail to state an underlying breach of ERISA fiduciary duty against the Appvion Board; and (3) because the FAC allegations against Argent fail the pleading standards set forth in *Twombly* and *Iqbal*. (Argent Br., Doc. 102 at 7-10.)

On the first argument, Plaintiff agrees that ERISA's duty to monitor applies only to a person or entity that has the power to appoint and remove an ERISA fiduciary. (*Id.* at 7-8; Pl. Opp., Doc. 130 at 42.) Plaintiff also does not dispute that Argent had no power to appoint or remove the only other ERISA fiduciaries there were—the ESOP Committee members. (Argent Br., Doc. 102 at 8-9.) This should be the end of the inquiry. But Plaintiff contends Argent still had a duty to monitor because the Trustee Defendants "were jointly responsible for appointing the members of Appvion's Board of Directors (other than the CEO himself)." (Pl. Opp., Doc. 102 at 42). This argument does not apply to Argent. Argent did not become Trustee until 2014 and the FAC acknowledges that "after January 1, 2005, no director could be elected without CEO approval and no director could be removed without CEO approval," which is consistent with section 1.2 of the Security Holder's Agreement. (FAC ¶ 212; Doc. 98-3, Security Holders Agreement, at §§ 1.2(a)(iv), 1.2(b), 1.2(c)).

As to Argent's second argument for dismissal (duty to monitor is derivative and depends on an underlying breach of fiduciary duty by another appointed fiduciary), Plaintiff concedes the FAC fails to allege any underlying ERISA breach of fiduciary duty by the Appvion Board. Plaintiff

---

Doc. 102-2 at pg. 2-3; 2013 Trust Ag., Doc. 102-4 at §3.4(i),(j),(l); 2015 Trust Ag., Doc. 102-5 at §§ 2.3, 2.6(h),(j),(k)).

explains the purported wrongdoing by the Appvion Board is only a *derivative* failure "to monitor the ESOP Committee." (Pl. Opp., Doc. 130 at 43.) In other words, Plaintiff alleges Argent breached a duty to monitor the Appvion Board solely because the Board allegedly breached its own duty to monitor the ERISA fiduciaries whom it appointed to the ESOP Committee. Plaintiff provides no legal authority that supports some kind of duty-to-monitor-the-monitor. The law instead imposes a duty to monitor only on those with appointment and removal power of ERISA fiduciaries, and liability arises only if the appointed ERISA fiduciary has committed an underlying breach of fiduciary duty. (*See* Argent Br., Doc. 102 at 9). By Plaintiff's own admission, the FAC does not allege any such underlying breach of fiduciary duty by the Appvion Board. This requires dismissal of the duty to monitor claim against Argent in Count I.[3]

Finally, Plaintiff responds to Argent's third argument (failure to meet required pleading standards) by claiming that because the alleged breach of the duty to monitor "is based on a *failure* to do something," the law does not require pleading "the negative with some specificity." (Pl. Opp., Doc. 130 at 42) (emphasis in original.) Plaintiff cites *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670 (7th Cir. 2016) for this proposition, but that case does not lighten the pleading requirements of *Twombly* and *Iqbal*. In *Allen*, the Seventh Circuit principally held that plaintiffs bringing ERISA § 406 prohibited transaction claims have no duty in the complaint to plead around the ERISA § 408 exemptions from § 406 violations. *Id.* at 676. The Seventh Circuit in *Allen* addressed technical prohibited transaction issues, but did not address duty to monitor or the requisite pleading standards for bringing a duty to monitor claim.

Courts readily dismiss duty to monitor claims that fail to allege *how* a defendant breached

---

[3]     Furthermore, the derivative claim against the Appvion Board fails to state a claim for relief and should be dismissed for all the reasons stated in the Former Director & Officers' Motion to Dismiss and Reply Brief, which Argent incorporates by reference.

the duty to monitor. *See, e.g.*, *Neil v. Zell*, No. 08-cv-6833, 2009 U.S. Dist. LEXIS 117735, at *30-32 (N.D. Ill. Dec. 17, 2009) (dismissing failure to monitor claim under *Twombly* based on allegations in "general terms" that defendants breached their duty to monitor, and distinguishing a different case where the complaint instead properly "contained factual allegations about *how* the defendants breached that duty") (emphasis in original); *White v. Chevron Corp.*, No. 16-cv-0793, 2016 U.S. Dist. LEXIS 115875, at *59-60 (N.D. Cal. Aug. 29, 2016) (dismissing claim where "plaintiffs allege no facts showing how the monitoring process was deficient"). Following the lead of these other courts, the Court should dismiss the duty to monitor claim against Argent.

### 4. The Duty of Prudence Claim in Count I Fails

Argent moved to dismiss the portion of Count I alleging it breached the duty of prudence in ERISA § 404(a)(1)(B). (Argent Br., Doc. 102 at 10-11.) Argent argued the two types of allegations about its conduct in the FAC both failed to state a claim for relief—(1) the allegations about Argent's review of a corporate transaction in August 2015 whereby Appvion sold a business division known as Encapsys, and (2) the allegations about the bi-annual valuations of PDC stock that Argent made during its few years as Trustee. (*Id.*)

As to the August 2015 Encapsys sale, Argent explained that the FAC contained no contemporaneous facts from which the Court could infer a breach of Appvion's duty of prudence—only admissions that Argent reviewed the transaction in detail, received a fairness opinion from an independent financial advisor, and received advice from independent legal counsel. (*Id.*; FAC ¶¶ 396-397.) Plaintiff does not respond to this argument for dismissal. (*See* Pl. Opp., Doc. 130 at 39-40) (addressing only the prudence claim related to bi-annual valuations of PDC stock)). Plaintiff has therefore waived any opposition to it. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010); *Van Den Heuvel v. AI Credit Corp.*, No. 12-cv-0327, 2014 U.S.

Dist. LEXIS 199881, at *21 (E.D. Wis. Apr. 11, 2014) (Griesbach, C.J.). Accordingly, any prudence claim based on the 2015 sale of Encapsys must be dismissed.

Plaintiff's prudence claim based on the bi-annual valuations of PDC stock should also be dismissed. Plaintiff's briefing tactic is to paraphrase several conclusory allegations from the FAC into bullet points without discussing how they make the case for or even infer an imprudent process. Peppering the Opposition with rephrased FAC allegations insufficient to state a claim does not add the factual substance necessary to save Plaintiff's prudence claim.

A few examples prove the point. Plaintiff alleges in Paragraph 499 that Argent "questioned SRR's low (5%) discount for lack of marketability, but SRR had not changed the discount percentage". This allegation proves the opposite of what Plaintiff would want—it shows Argent engaging in a process to question and test the conclusions of the financial advisor it had retained to prepare a valuation report. Nothing here contains even a hint of imprudence. The same can be said of Argent's choice of SRR. (FAC ¶ 497.) Plaintiff states that Argent did not run a review process in selecting SRR but then further alleges Argent "had used SRR in other engagements." The only reasonable inference to draw from Paragraph 497 is that Argent used actual, firsthand experience based on work with SRR in other engagements. *Id.* Far from a lazy, whimsical, or imprudent process, Plaintiff acknowledges that Argent had an experiential basis to continue employing SRR after taking over as ESOP trustee. *Keach v. U.S. Tr. Co.*, 419 F.3d 626, 637 (7th Cir. 2005) ("A fiduciary must investigate the expert's qualifications . . . ."). Indeed nowhere does Plaintiff sufficiently allege, as is his burden, actual imprudence by Argent. The Court should therefore dismiss Plaintiff's prudence claim.[4]

---

[4]    In general, the portion of the Opposition addressing Argent's motion to dismiss the prudence claim substitutes argument with bullet points of paraphrased FAC allegations. The other paragraphs Plaintiff cites, also as if they stand on their own without any argument as to how they allege an imprudent process by Argent, fail for the same reasons discussed above in regard to FAC paragraphs 499 and 497.

### 5. To the Extent Count I of the FAC also Asserts a Claim Against Argent for Breach of a "Duty of Disclosure," it Fails

Argent addressed the foregoing four components of Count I in its Motion because those were the four alleged violations in the FAC. (*See* FAC at pg. 134, COUNT I heading; FAC at pg. 136, sub-heading, ¶ 537.) In his Opposition (but not in the FAC), Plaintiff claims Argent additionally "breached the duty of disclosure" because it "failed to inform Employee Participants" about details of Appvion's financial condition and the bi-annual stock valuations. (Pl. Opp., Doc. 130 at 43.) This is not a claim specifically plead in the FAC against Argent, and Plaintiff may not "amend" the FAC by way of his Opposition. But to the extent Count I contains a separate claim against Argent for "breach of the duty of disclosure," it too fails as a matter of law and should therefore be dismissed.[5]

As noted in State Street's Motion to dismiss argument related to tolling the statute of limitations, ESOP Trustees have no duty to communicate share prices directly to Employee Participants or to continuously disclose information concerning the financial condition of the company. (*See* State St. Br., Doc. 97 at 8) (citing *Hill v. Tribune Co.*, Nos. 05-cv2602, 05-cv2927V, 06-cv0741, 2006 U.S. Dist. LEXIS 71244 (N.D. Ill. Sep. 29, 2006); *Herrington v. Household Int'l, Inc.*, No. 02-cv-8257, 2004 U.S. Dist. LEXIS 5461 (N.D. Ill. Mar. 30, 2004)). That is particularly true here where the Appvion ESOP documents required only that Argent disclose the bi-annual PDC stock valuation determinations to the Appvion ESOP Committee and Appvion (upon request), and that the Appvion ESOP Committee and Appvion in turn would handle all communications with Employee Participants. (*E.g.*, FAC ¶¶ 238-40, 319-20; 2013 Trust Ag., Doc. 102-4 at §3.4(i),(j); 2015 Trust Ag., Doc. 102-5 at §2.6(h).)

---

[5] The conclusory allegations about nondisclosure in the FAC appear targeted only at somehow tolling the six-year statute of limitations, which is inapplicable to Argent.

Indeed Plaintiff fails to identify any ERISA provision imposing this newfound duty to disclose. And the two cases cited in Plaintiff's Opposition provide no help either. (Pl. Opp., Doc. 130 at 43.) *See Kenseth v. Dean Health Plan, Inc*., 610 F.3d 452, 456 (7th Cir. 2010) (non-ESOP case concerning an insurer's obligation to an insured); *Howell v. Motorola, Inc.*, 633 F.3d 552, 569-72 (7th Cir. 2011) (non-ESOP case concerning public company SEC disclosures). Neither case suggests that an ESOP trustee like Argent has a duty to disclose valuation reports directly to Employee Participants, particularly like here where the ESOP documents provide otherwise.

### B.     Count IV Fails to State a Prohibited Transaction Claim Against Argent

ERISA § 406(a)(1) states that "a fiduciary with respect to a plan shall not cause the plan to engage" in any of five different types of prohibited transactions identified in subsections (A) through (E). (29 U.S.C. § 1106(a)(1); Argent Br., Doc. 102 at 12.) The FAC asserts a claim against Argent (Count IV) based on the fourth type of transaction identified in subsection (D) of 406(a)(1), "a transfer to, or use by or for the benefit of a party in interest, of any assets of the plan". Argent moved to dismiss Count IV because there are no facts alleging (1) that any transaction of the type prohibited by section 406(a)(1)(D) occurred while Argent was Trustee or (2) that, even assuming such a transaction was plead, Argent "caused" the ESOP to engage in that transaction. (*Id.*)

### 1.     The FAC Fails to Allege that the Type of Transaction Prohibited By ERISA Section 406(a)(1)(D) Even Occurred

Plaintiff responds to our first argument by contending he "identified specific prohibited transactions" in paragraphs 583 to 588 of the FAC. (Pl. Opp., Doc. 130 at 34.) Yet a review of those paragraphs only further supports Argent's argument for dismissal. Those paragraphs contain nothing more than conclusory allegations lumping together the "Trustee Defendants, the Prior Committee Defendants, and the Director Defendants"—claiming in relevant part that they all caused "the ESOP Plan to overpay for PDC stock beginning as early as December 2001." (FAC

¶ 583.) Neither those paragraphs nor any others in the FAC allege a specific transaction of the type section 406(a)(1)(D) prohibits and that occurred after Argent became trustee in 2014. With no prohibited transaction alleged specifically against Argent, Count IV must be dismissed. *Knight*, 725 F.3d at 818; *Stanard v. Nygren*, 658 F.3d 792, 799 (7th Cir. 2011).[6]

Although Count IV against Argent is premised only upon ERISA § 406(a)(1)(D), Plaintiff now asserts for the first time in his Opposition that the Trustee Defendants also violated ERISA § 406(a)(1)(E)—a provision not mentioned in the FAC. Plaintiff argues that "[t]he clearest prohibited transactions are the acquisitions of employer securities under ERISA § 406(a)(1)(E)— this occurred each time the ESOP bought stock from PDC or repurchased shares from Employees Participants upon redemption, which occurred at least twice per year." (Pl. Opp., Doc. 130 at 34.) Plaintiff's unplead claim establishes neither a violation of 406(a)(1)(E) nor 406(a)(1)(D).

*First*, even if the FAC alleged Argent also violated section 406(a)(1)(E)—and it does not— any claim based on this subsection would fail as a matter of law. ERISA § 406(a)(1)(E) prohibits "the acquisition, on behalf of the plan, . . . of any employer security . . . in violation of section 407(a) [29 U.S.C. § 1107(a)]." Thus, section 406(a)(1)(E) has two components: (1) the acquisition of an "employer security" on behalf of the plan; and (2) a "violation of section 407(a)." As a matter of law, there can be no violation of section 407(a) here, and therefore no claim against Argent under section 406(a)(1)(E), because the provisions of sections 407(b)(1) and 407(d)(3) together provide that 407(a) "*shall not apply* to any acquisition or holding of qualifying employer securities . . . by an eligible individual account plan . . . which [includes] . . . an *employee stock ownership*

---

[6]     Paragraphs 583-588 of the FAC reference executive compensation programs, that Argent explained could not possibly form the basis of a § 406(a)(1)(D) claim against Argent because they were established long before Argent became Trustee in 2014, and because they don't involve any "assets of the plan." (Argent Br., Doc. 102 at 13.) Plaintiff does not contend otherwise, and therefore concedes this point and waives any opposition to it. *Bonte*, 624 F.3d at 466; *Van Den Heuvel*, 2014 U.S. Dist. LEXIS 199881 at *21.

*plan*." 29 U.S.C. § 1107(b)(1), (d)(3)(A) (emphasis added.)[7] The PDC stock the Appvion ESOP

acquired constitutes "qualified employer securities," and therefore ERISA § 406(a)(1)(E) does not

apply.[8]

*Second*, what Plaintiff has mislabeled the "clearest prohibited transactions"—i.e., the

repurchases of PDC stock from participants upon a triggering event such as retirement—are not

prohibited transactions under ERISA § 406(a)(1)(D). As the Supreme Court has explained, the

rules of ERISA § 406 target "commercial bargains that present a special risk of plan underfunding

because they are struck with insiders, presumably not at arm's length." *Lockheed Corp. v. Spink*,

517 U.S. 882, 893 (1996). "What the 'transactions' identified in § 406(a) thus have in common is

that they generally involve uses of plan assets that are potentially harmful to the plan." *Id.* Plaintiff

challenges not a "transaction" struck with an insider that is potentially harmful to the plan and its

participants but, just the opposite, namely the payment of *benefits to plan participants* in the form

of the "repurchase[] . . . upon redemption" of their shares after a triggering event like retirement,

as mandated by the express terms of the Appvion ESOP plan documents. (Pl. Opp., Doc. 130 at

34.) (*See e.g.*, FAC ¶¶ 167-169, 554 (describing repurchase obligations under the terms of the

Appvion ESOP); (Appvion ESOP eff. 1/1/14, Doc. 102-3 at Article 7)). This "payment of benefits to

plan participants and beneficiaries pursuant to the terms of an otherwise lawful plan is wholly outside

the scope of § 406(a)(1)(D)." *Lockheed Corp.*, 517 U.S. at 892.

The two cases Plaintiff cites in support of his section 406 claim illustrate this point. (Pl.

Opp., Doc. 130 at 34-35.) In both *Allen* and *Keach*, the plaintiffs challenged not the routine

---

[7]     ERISA § 407(d) defines "employer security" as "a security issued by an employer of employees covered by the plan, or by an affiliate of such employees," and "qualifying employer security" as "an employer security which is . . . stock." 29 U.S.C. 1107(d)(1),(5).

[8]     Furthermore, even if the redemption of PDC stock was actionable under 406(a)(1)(E), which it is not, any such hypothetical claim against Argent would still fail as a pleading matter because the FAC contains no allegations explaining how there has been "a violation of section 407(a)." 29 U.S.C. 1106(a)(1)(E).

redemption of participant shares under the plan, but rather extraordinary transactions where the ESOPs bought a large number of shares outside of the standard repurchase requirements in the plan. *See Allen*, 835 F.3d at 673 (challenging leveraged transaction where plan purchased $60 million in stock from the company's principal shareholders); *Keach*, 419 F.3d 626 (challenging leveraged transaction where plan purchased over 3.5 million shares from several officers and directors for $70 million). Contrary to Plaintiff's argument, the routine payments of retirement benefits to Employee Participants according to the terms of the Appvion ESOP—which are the very *purpose* of the Appvion ESOP and any other ESOP—do not constitute "clear[] prohibited transactions." (Pl. Opp., Doc. 102 at 34.) *Lockheed Corp.*, 517 U.S. at 895 ("We thus hold that the payment of benefits pursuant to an amended plan . . . does not constitute a prohibited transaction.") *See also Armstrong,* 2004 U.S. Dist. LEXIS 14776 at *32-36 (following *Lockheed Corp.* and dismissing section 406 prohibited transaction claims based on repurchase of stock from employee participants). Any other conclusion leads to the absurd result where a retirement plan could not legally pay routine retirement benefits to retired employees.

## 2. The FAC Does Not Allege that Argent Caused the Plan to Engage in a Prohibited Transaction

Even if Plaintiff had specifically alleged a transaction of the type prohibited by section 406(a)(1)(D) during Argent's tenure as Trustee, his claim would still fail because he has not alleged how Argent "caused" the Appvion ESOP to engage in any such transaction. As explained in our Motion, by its express terms section 406(a)(1) applies only when a *"fiduciary . . . cause[s]"* the plan to engage in one of the five types of transactions prohibited in subsections (A) through (E). (29 U.S.C. § 1106(a)(1) (emphasis added); Argent Br., Doc. 102 at 13-14; *Lockheed Corp.*, 517 U.S. at 888-89 n.3 ("the only transactions rendered impermissible by § 406(a) are transactions *caused by fiduciaries*" and "[u]nless a plaintiff can make that showing, there can be no violation

of § 406(a)(1)") (emphasis added)).

Plaintiff argues in his Opposition that because the "Trustee Defendants were responsible for setting the price of PDC stock used in those transactions [i.e., the repurchase of shares from Employee Participants]," they "therefore caused the ESOP to enter into prohibited transactions within the meaning of ERISA § 406." This is a non sequitur. Although Argent determined the value of PDC stock bi-annually, Argent did not *cause* the legally required repurchase of shares from Employee Participants nor the borrowing of money (if necessary) to help fund that repurchase. (*See e.g.,* FAC ¶¶ 167-169, 554 (describing repurchase obligation caused by terms of Appvion ESOP); FAC ¶ 588 ("the *Director Defendants* arranged for Appvion to loan cash to PDC to fund the ESOP's repurchase obligations") (emphasis added); (Appvion ESOP eff. 1/1/14, Doc. 102-3 at Article 7)). It was Appvion and its Board that established the Appvion ESOP and plan documents creating these legally required repurchase obligations, which was a settlor function by Appvion and its Board rather than a fiduciary one. *Lockheed Corp. v. Spink*, 517 U.S. at 890-91 ("the act of amending a pension plan does not trigger ERISA's fiduciary provisions"); *McGath v. Auto-Body N. Shore*, 7 F.3d 665, 671 (7th Cir. 1993) ("an employer does not act as a fiduciary when it amends or otherwise sets the terms of a plan").[9]

Contrast again the two cases Plaintiff cites in support of his section 406 claim. (Pl. Opp., Doc. 130 at 34-35.) In both *Allen* and *Keach*, unlike here, there is no question the defendant trustees "caused" the plan to enter into the challenged transactions. *See Allen*, 835 F.3d at 673 (defendant, a transactional trustee, "instructed the Plan to acquire . . . $60 million worth of stock"); *Keach*, 419 F.3d at 628, 630-31 (defendant transactional trustee reviewed, negotiated, and approved the plan's purchase of $70 million worth of stock).

---

[9] In any event, the Appvion ESOP plan documents were amended and restated as of January 1, 2014 – six months *prior* to Argent's retention as Trustee in July, 2014. (*See* Doc. 102-3; FAC ¶¶ 90-91.)

Count IV must be dismissed because there are no facts alleging that any transaction of the type prohibited by section 406(a)(1)(D) occurred while Argent was Trustee, or, even assuming such a transaction was plead, that Argent "caused" the ESOP to engage in that transaction.

### C.     The Declaratory Judgment Claim in Count VI Should be Dismissed

Argent moved to dismiss Plaintiff's declaratory judgment claim (Count VI) for two alternative reasons—(1) pursuant to Rule 12(b)(1) because Argent has made no indemnification demand and therefore no justiciable controversy exists; and (2) pursuant to Rule 12(b)(6) because the indemnification provisions are not void under ERISA § 410. (Argent Br., Doc. 102 at 14-17.)

Although it's not clear from the Opposition, Plaintiff appears to respond to Argent's Rule 12(b)(1) argument for dismissal by acknowledging the "prohibition on advisory opinions," but then citing two decisions where "courts have allowed similar claims" to survive a motion to dismiss and "stand a determination of Defendants' liability." (Pl. Opp., Doc. 130 at 56 *citing Hurtado v. Rainbow Disposal Co.*, No. 17-cv-01605, 2018 U.S. Dist. LEXIS 118128 (C.D. Cal. July 9, 2018) *and Pfeifer v. Wawa, Inc.*, 214 F. Supp. 3d 366 (E.D. Pa. 2016). But in those two cases, neither court addressed whether there was a justiciable controversy. In fact, unlike the undisputed situation here, in both cases it appears the defendant was seeking indemnification.

Plaintiffs' response to Argent's Rule 12(b)(6) argument also fails. Plaintiff alleges that "any indemnification provision that *purports to relieve a fiduciary of the duty of care under ERISA*" is void under ERISA § 410. (Pl. Opp., Doc. 130 at 56) (emphasis added.) Argent does not argue otherwise. It is precisely because the Argent indemnification provisions in the engagement and trust agreements *do not* relieve Argent of liability for any ERISA breach of fiduciary duty that they are valid and enforceable. (*See* Argent Br., Doc. 102 at 16-17.) In fact, these agreements expressly *prohibit* indemnification for any breaches of Argent's ERISA fiduciary duties. (*Id.* at

16.) As explained in Argent's Motion, courts have routinely upheld these exact types of indemnification provisions because they land comfortably outside of the ERISA section 410 prohibition. (*Id.* at 16-17.) Plaintiff does not refute, or even address, any of those decisions.

Under both Rule 12(b)(1) and Rule 12(b)(6), Count VI against Argent should be dismissed.

### D.     Count VII Fails to State a Claim for Co-Fiduciary Liability Against Argent Under ERISA § 405

Argent moved to dismiss Count VII alleging co-fiduciary liability. Beyond the argument that such a claim is derivative of wrongdoing against others that the FAC does not establish (Argent incorporates here the arguments of its co-defendants where they establish that there is not a co-fiduciary to Argent that committed a breach of duty), Argent argued that the FAC does not, as it must, sufficiently allege that Argent had knowledge of a breach of duty by a co-fiduciary.

Plaintiff's Opposition is barely able to muster any argument against Argent's Motion to dismiss Count VII (which is telling). Indeed Plaintiff's entire opposition is to cite a snippet of a pre-*Twombly* case (*In re Polaroid ERISA Litigation*, 362 F. Supp. 2d 461, 479-80 (S.D.N.Y. 2005)) that Plaintiff appears to believe lightens his pleading burden and then the bare assertion that "Plaintiff has both pled knowledge as well as facts from which actual knowledge can be inferred." (Pl. Opp., Doc. 130 at 45-46.) But this is a bare, conclusory statement. Plaintiff never identifies what knowledge Argent had, of what alleged breach of fiduciary duty, and by what co-fiduciary. Plaintiff falls well short of what must be alleged to survive a motion to dismiss and Count VII is therefore subject to dismissal.

### E.     Count XIV Fails to State a Federal Securities Claim Against Argent

Argent moved to dismiss the federal securities claims where the claims "attribute[d] misrepresentations to all defendants, lumped together for pleading purposes." *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 599 (7th Cir. 2019) (Griesbach, J.). Plaintiff fails to

point to specific allegations in the FAC distinguishing among defendants. Even in the Opposition Brief Plaintiff advances unspecific statements of alleged fraud against multiple trust companies, employees and their spouses. (*See* use of term "Trustee Defendants" at, *i.e.*, Pl. Opp., Doc. 130 at 72) Federal courts do not condone this form of pleading. The Court should dismiss the securities claims for this reason alone.

Beyond that, Argent moved to dismiss the securities claims because Plaintiff failed to identify the alleged fraudulent misstatements with particularity. Plaintiff's arguments in response fail. One way to measure the inadequacy of his arguments (and allegations) with respect to Argent is to compare the allegations against other defendants. While those arguments fall short of the required pleading standard, Plaintiff can at least identify alleged misstatements other defendants made to Employee Participants directly concerning the share price. (See Pl. Opp., Doc. 130 at 79-81.) Plaintiff can allege nothing similar about Argent.

As to Argent, the best Plaintiff can do is contend that not making the valuation reports available to Employee Participants is an actionable omission. *Id*. at 78. But the FAC does not allege that Employee Participants were legally entitled to this information or that it would be customary or appropriate for the valuation reports to be shared with them. Nor does the FAC allege that it was Argent's responsibility (or even its right) to share the valuation reports with Employee Participants. Indeed, as shown above, Argent was obligated to provide the PDC stock valuations only to the ESOP Committee (or Appvion upon request). It would be bizarre if Argent's full compliance with ERISA disclosure obligations and controlling plan documents constituted a violation of federal securities laws.

Argent cited the Court's decision in *Iron Workers Local No. 25 Pension Fund v. Oshkosh Corp.*, No. 08-cv-797, 2010 U.S. Dist. LEXIS 30693 (E.D. Wis. Mar. 30, 2010) for the proposition

that generalized allegations of overvaluation occurring over an extended period of time failed to state a claim for securities fraud. Under *Oshkosh,* it is not enough to survive a motion to dismiss for the FAC to identify a general misstatement, the valuation of PDC stock, without alleging specific misstatements and the precise information Argent had for each valuation that would have given it knowledge that the PDC stock was overvalued. *Oshkosh,* 2010 U.S. Dist. LEXIS 30693 at *47. Plaintiff tries two ways to distinguish *Oshkosh*. Each fails.

*First*, where Argent claimed it was implausible that the exact misstatements could exist for 16 years, Plaintiff responds that only Argent's valuations since beginning in 2014 are relevant. Plaintiff, of course, overlooks his allegations in the FAC that the exact misstatements attributed to Argent also occurred for over a decade before Argent became Trustee. The purported fraudulent overvaluation—the crux of the alleged misrepresentations against Argent—is alleged to have begun in 2001, meaning Plaintiff is asserting that Argent would secure a new engagement as successor Trustee to the Appvion ESOP in 2014, uncover a long-existing fraud, and then perpetuate the exact scheme with no reason to do so. That is deeply implausible. In any event, the supposed temporal distinction Plaintiff identifies makes no difference; the nine valuations Argent performed over four years match up to the exact implausible scenario identified in *Oshkosh* that also lasted four years.

*Second*, Plaintiff contends the ever-changing business circumstances in *Oshkosh*—which made it implausible the same fraud would occur quarter-after-quarter—is irrelevant in this case because the wrongdoing Plaintiff alleges with respect to the PDC stock valuations was consistent over time. Such consistency was, however, the rub in *Oshkosh*. The alleged wrongdoing, failure to take an impairment charge to goodwill, was consistent over time. Just as in *Oshkosh*, the business circumstances facing an operating company like Appvion were fluid, as alleged

throughout the FAC. That is why the valuation of PDC stock, like the accounting decisions for goodwill in *Oshkosh,* was fluid.

Argent also moved to dismiss the securities claims because Plaintiff failed to plead the requisite inference of scienter. Here again, the comparison to other defendants shows that the inference of scienter with respect to Argent is inadequate as a pleading matter. For example, in the case of the Appvion director defendants, Plaintiff alleged that they prepared financial projections that supported the valuations and that they were aware, as insiders, that these projections were false; and further that these individuals had bonus and other financial compensation that served as an incentive to engage in fraud. By contrast, Argent had none of this, most importantly no financial reason or motivation to engage in fraud.

Plaintiff resists Argent's argument that it had no motive to engage in fraud as being irrelevant and outside that which it needs to plead. This Court has disagreed, noting that "because '[t]he strength of an inference cannot be decided in a vacuum,' it is worth exploring the full context of the Defendants' alleged intent and motive to deceive." *Oshkosh*, 2010 U.S. Dist. LEXIS 30693, at *58. Here, as Argent contended in its Motion and as Plaintiff does not dispute, Argent had no financial motivation or incentive to have deliberately participated in a scheme to commit fraud. Plaintiff has not met the scienter pleading standards of *Oshkosh* and other cases.

The Court should dismiss Plaintiff's federal securities claim.

**F.      Count XIII Fails to State a Wisconsin Securities Claim Against Argent**

Argent also moved to dismiss the Wisconsin securities claim. The state law securities claims fail for the same reasons identified immediately above.

Argent advanced the additional argument that Plaintiff's Wisconsin securities claim failed because the term "security" defined in Wis. Stat. § 551.102(28)(c) states that the term "[d]oes not

19

include an interest in a contributory or noncontributory pension or welfare plan subject to the Employee Retirement Income Security Act of 1974 . . . ." Plaintiff acknowledges that the statute bars an Employee Participant claim, but that the claim is permitted if asserted by Plaintiff. (Pl. Opp., Doc. 130 at 83-84.) Plaintiff cites no authority or compelling argument for this distinction. Moreover, Plaintiff is a representative of the Employee Participants, and has stepped into their shoes to assert claims on their behalf. The Plaintiff is, to quote Wis. Stat. § 551.102(28)(c), impermissibly pursuing security claims for those with "an interest in a . . . plan subject to [ERISA]." In addition, this ERISA-carve out plainly recognizes that state law is not an enforcement mechanism for conduct covered by ERISA. Finally, despite Plaintiff's attempt to distinguish it, we trust that the Court will see *Bacon v. Stiefel*, 677 F.Supp.2d 1331 (D. Fla. 2010) as on point. This Court should follow it and hold that ERISA preempts the state law securities claim. (Argent Br., Doc. 102 at 27-28.)

### G. Any Claims Against Argent That Survive Dismissal Can Only be Premised on Alleged Wrongdoing That Occurred, at the Earliest, After Argent Became Trustee

Plaintiff does not oppose Argent's argument that it cannot be liable for any wrongdoing that occurred prior to July 1, 2014. (Argent Br., Doc. 102 at 3-4; *Bonte*, 624 F.3d at 466; *Van Den Heuvel*, 2014 U.S. Dist. LEXIS 199881 at *21.) Therefore, if the Court does not dismiss all the claims against Argent—and it should—at a minimum the Court should grant Argent's unopposed request for dismissal of all claims against Argent premised upon alleged wrongdoing that occurred prior to July 1, 2014.

## III. Conclusion

For all the foregoing reasons, and the reasons stated in Argent's opening Motion and Memorandum in Support (Doc. 101, 102), the Court should grant Argent's Motion to Dismiss.

Dated: June 20, 2019

By: : /s/ William P. McKinley
      William P. McKinley SBN # 1072959
      MENN LAW FIRM, LTD.
      2501 E. Enterprise Ave.
      Appleton, Wisconsin 54912
      Email: William-Mckinley@mennlaw.com
      Tel: (920) 731-6631
      Fax (920) 560 4757

             -and-

By: /s/ Michael L. Scheier
      Michael L. Scheier
      Brian P. Muething
      Jacob D. Rhode
      KEATING MUETHING & KLEKAMP PLL
      One East Fourth Street, Suite No. 1400
      Cincinnati, Ohio 45202
      Email: mscheier@kmklaw.com
           bmuething@kmklaw.com
           jrhode@kmklaw.com
      Tel: (513) 579-6400
      Fax: (513) 579-6457

      *Counsel for Argent Trust Company*

## CERTIFICATE OF SERVICE

    I certify that on June 20, 2019, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Jacob D. Rhode*