140 S.Ct. 768
Supreme Court of the United States.

INTEL CORPORATION INVESTMENT POLICY COMMITTEE, et al., Petitioners
v.
Christopher M. SULYMA

No. 18-1116
|
Argued December 4, 2019
|
Decided February 26, 2020

**Synopsis**
**Background:** Retirement plan participant brought action against former employer, alleging that employer invested funds in violation of the Employee Retirement Income Security Act (ERISA). The United States District Court for the Northern District of California, Nathanael M. Cousins, United States Magistrate Judge, 2017 WL 1217185, granted employer's motion for summary judgment. Participant appealed. The Court of Appeals for the Ninth Circuit, Wallace, Circuit Judge, 909 F.3d 1069, reversed and remanded. Certiorari was granted.

The Supreme Court, Justice Alito, held that to meet the "actual knowledge" requirement triggering ERISA's three-year limitations period, a plaintiff must in fact have become aware of the information, and so a plaintiff does not necessarily have "actual knowledge" of information contained in disclosures that he receives but does not read or cannot recall reading, abrogating *Brown v. Owens Corning Inv. Review Committee,* 622 F.3d 564.

Affirmed.

*Syllabus*[*]

The Employee Retirement Income Security Act of 1974 (ERISA) requires plaintiffs with "actual knowledge" of an alleged fiduciary breach to file suit within three years of gaining that knowledge, 29 U.S.C. § 1113(2), rather than within the 6-year period that would otherwise apply. Respondent Sulyma worked at Intel Corporation from 2010 to 2012 and participated in two Intel retirement plans. In October 2015, he sued petitioners—administrators of those plans—alleging that they had

managed the plans imprudently. Petitioners countered that the suit was untimely under § 1113(2) because Sulyma filed it more than three years after they had disclosed their investment decisions to him. Although Sulyma had visited the website that hosted many of these disclosures many times, he testified that he did not remember reviewing the relevant disclosures and that he had been unaware of the allegedly imprudent investments while working at Intel. The District Court granted summary judgment to petitioners under § 1113(2). The Ninth Circuit reversed. That court agreed with petitioners that Sulyma could have known about the investments from the disclosures, but held that his testimony created a dispute as to when he gained "actual knowledge" for purposes of § 1113(2).

*Held*: A plaintiff does not necessarily have "actual knowledge" under § 1113(2) of the information contained in disclosures that he receives but does not read or cannot recall reading. To meet § 1113(2)'s "actual knowledge" requirement, the plaintiff must in fact have become aware of that information. Pp. 775 – 779.

(a) ERISA's "plain and unambiguous statutory language" must be enforced "according to its terms." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251, 130 S.Ct. 2149, 176 L.Ed.2d 998. Although ERISA does not define the phrase "actual knowledge," its meaning is plain. Dictionaries confirm that, to have "actual knowledge" of a piece of information, one must in fact be aware of it. Legal dictionaries give "actual knowledge" the same meaning. The law will sometimes impute knowledge—often called "constructive" knowledge—to a person who fails to learn something that a reasonably diligent person would have learned. The addition of "actual" in § 1113(2) signals that the plaintiff's knowledge must be more than hypothetical. Congress has repeatedly drawn the same "linguistic distinction," *Merck & Co. v. Reynolds*, 559 U.S. 633, 647, 130 S.Ct. 1784, 176 L.Ed.2d 582, elsewhere in ERISA. When Congress has included both actual and constructive knowledge in ERISA limitations provisions, Congress has done so explicitly. But Congress has never added to § 1113(2) the language it has used in those other provisions to encompass both forms of knowledge. Pp. 775 – 777.

(b) Petitioners' arguments for a broader reading of § 1113(2) based on text, context, purpose, and statutory history all founder on Congress's choice of the word "actual." Petitioners may well be correct that heeding the plain meaning of § 1113(2) substantially diminishes the protection that it provides for ERISA fiduciaries. But if policy considerations suggest that the current scheme should be altered, Congress must be the one to do it. Pp. 777 – 779.

(c) This opinion does not foreclose any of the "usual ways" to prove actual knowledge at any stage in the litigation. *Farmer v. Brennan*, 511 U.S. 825, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811. Plaintiffs who recall reading particular disclosures will be bound by oath to say so in their depositions. Actual knowledge can also be proved through "inference from circumstantial evidence." *Ibid.* And this opinion does not preclude defendants from contending that evidence of "willful blindness"

supports a finding of "actual knowledge." Cf. *Global-Tech Appliances, Inc. v. SEB S. A.*, 563 U.S. 754, 769, 131 S.Ct. 2060, 179 L.Ed.2d 1167. Pp. 778 – 779.

909 F.3d 1069, affirmed.

ALITO, J., delivered the opinion for a unanimous Court.

 *772 ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

**Attorneys and Law Firms**

Matthew W.H. Wessler, Jonathan E. Taylor, Gupta Wessler PLLC, Gregory Y. Porter, Bailey & Glasser LLP, R. Joseph Barton, Block & Leviton LLP, Washington, DC, Joseph A. Creitz, Creitz & Serebin LLP, San Francisco, CA, for Respondent.

John J. Buckley, Jr., Daniel F. Katz, Vidya Atre Mirmira, David Kurtzer-Ellenbogen, Juli Ann Lund, Tanya Abrams, Jyoti Jindal, Williams & Connolly LLP, Donald B. Verrilli, Jr., Ginger D. Anders, Munger, Tolles & Olson LLP, Washington, DC, Jordan D. Segall, Munger, Tolles & Olson LLP, Angeles, CA, for Petitioners.

**Opinion**

Justice ALITO delivered the opinion of the Court.

 *773 The Employee Retirement Income Security Act of 1974 (ERISA) requires plaintiffs with "actual knowledge" of an alleged fiduciary breach to file suit within three years of gaining that knowledge rather than within the 6-year period that would otherwise apply. § 413(a)(2)(A), 88 Stat. 889, as amended, 29 U.S.C. § 1113. The question here is whether a plaintiff necessarily has "actual knowledge" of the information contained in disclosures that he receives but does not read or cannot recall reading. We hold that he does not and therefore affirm.

I

A

Retirement plans governed by ERISA must have at least one named fiduciary, § 1102(a)(1), who must manage the plan prudently and solely in the interests of participants and their beneficiaries, § 1104(a). Fiduciaries who breach these duties are personally liable to the plan for any resulting

losses. § 1109(a). ERISA authorizes participants and their beneficiaries, as well as co-fiduciaries and the Secretary of Labor, to sue for that relief. § 1132(a)(2).

**\*774** Such suits must be filed within one of three time periods, each with different triggering events. The first begins when the breach occurs. Specifically, under § 1113(1), suit must be filed within six years of "the date of the last action which constituted a part of the breach or violation" or, in cases of breach by omission, "the latest date on which the fiduciary could have cured the breach or violation." We have referred to § 1113(1) as a statute of repose, which "effect[s] a legislative judgment that a defendant should be free from liability after the legislatively determined period of time." *California Public Employees' Retirement System* v. *ANZ Securities, Inc.*, 582 U.S. ––––, ––––, 137 S.Ct. 2042, 2049, 198 L.Ed.2d 584 (2017) (internal quotation marks omitted).

The second period, which accelerates the filing deadline, begins when the plaintiff gains "actual knowledge" of the breach. Under § 1113(2), suit must be filed within three years of "the earliest date on which the plaintiff had actual knowledge of the breach or violation." Section 1113(2) is a statute of limitations, which "encourage[s] plaintiffs to pursue diligent prosecution of known claims." *Id.*, at ––––, 137 S.Ct., at 2049 (internal quotation marks omitted).

The third period, which applies "in the case of fraud or concealment," begins when the plaintiff discovers the alleged breach. § 1113. In such cases, suit must be filed within six years of "the date of discovery." *Ibid.*

B

Respondent Sulyma worked at Intel Corporation from 2010 to 2012. He participated in two Intel retirement plans, the Intel Retirement Contribution Plan and the Intel 401(k) Savings Plan. Payments into these plans were in turn invested in two funds managed by the Intel Investment Policy Committee.[1] These funds mostly comprised stocks and bonds. After the stock market decline in 2008, however, the committee increased the funds' shares of alternative assets, such as hedge funds, private equity, and commodities. These assets carried relatively high fees. And as the stock market rebounded, Sulyma's funds lagged behind others such as index funds.

Sulyma filed this suit on behalf of a putative class in October 2015, alleging primarily that the committee and other plan administrators (petitioners here) had breached their fiduciary duties by overinvesting in alternative assets. Petitioners countered that the suit was untimely under § 1113(2). Although Sulyma filed it within six years of the alleged breaches, he filed it more than three years after petitioners had disclosed their investment decisions to him.

ERISA and its implementing regulations mandate various disclosures to plan participants. See generally 29 U.S.C. §§ 1021–1031; see also *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. ——, —— – ——, 136 S.Ct. 936, 944, 194 L.Ed.2d 20 (2016). Sulyma received numerous disclosures while working at Intel, some explaining the extent to which his retirement plans were invested in alternative assets. In November 2011, for example, he received an e-mail informing him that a Qualified Default Investment Alternative (QDIA) notice was available on a website called NetBenefits, where many of his disclosures were hosted. See App. 149–151; see also 29 CFR §§ 2550.404c–5(b)–(d) (2019) (QDIA **\*775** notices); § 2520.104b–1(c) (regulating electronic disclosure). This notice broke down the percentages at which his 401(k) fund was invested in stocks, bonds, hedge funds, and commodities. See App. 236. In 2012, he received a summary plan description explaining that the funds were invested in stocks and alternative assets, *id.*, at 227, and referring him to other documents—called fund fact sheets—with the percentages in graphical form. See 29 U.S.C. §§ 1022, 1024(b) (summary plan descriptions); see also App. 307 (June 2012 fact sheet for his 401(k) plan fund); *id.*, at 338 (June 2012 fact sheet for his retirement contribution plan fund); *id.*, at 277–340 (other fact sheets provided during his tenure at Intel). Also in 2012, he received e-mails directing him to annual disclosures that petitioners provided for both his plans, which showed the underlying funds' return rates and again directed him to the NetBenefits site for further information. See 29 CFR § 2550.404a–5; see also App. 242–243 (retirement contribution plan annual disclosure); *id.*, at 250–251 (401(k) plan annual disclosure).

Petitioners submitted records showing that Sulyma visited the NetBenefits site repeatedly during his employment. *Id.*, at 258–276. But he testified in his deposition that he did not "remember reviewing" the above disclosures during his tenure. *Id.*, at 175; see also *id.*, at 183, 193, 196–197. He also stated in a declaration that he was "unaware" while working at Intel "that the monies that [he] had invested through the Intel retirement plans had been invested in hedge funds or private equity." *Id.*, at 212. He recalled reviewing only account statements sent to him by mail, which directed him to the NetBenefits site and noted that his plans were invested in "short-term/other" assets but did not specify which. See, *e.g.*, *id.*, at 375.

The District Court granted summary judgment to petitioners under § 1113(2), reasoning that "[i]t would be improper to allow Sulyma's claims to survive merely because he did not look further into the disclosures made to him." 2017 WL 1217185, \*9 (N.D. Cal., Mar. 31, 2017). The Ninth Circuit reversed. As relevant here,[2] the court construed "actual knowledge" to mean "what it says: knowledge that is actual, not merely a possible inference from ambiguous circumstances." 909 F.3d 1069, 1076 (2018) (internal quotation marks omitted). Although Sulyma "had sufficient information available to him to know about the allegedly imprudent investments" more than three years before filing suit, the court held that his testimony created a dispute as to when he actually gained that knowledge. *Id.*, at 1077.

Several Circuits have likewise construed § 1113(2) to require "knowledge that is actual," *id.*, at 1076, but one has construed it to require only proof of sufficient disclosure.[3] We granted certiorari, 587 U.S. ––––, 139 S.Ct. 2692, 204 L.Ed.2d 1089 (2019), to resolve whether the phrase "actual knowledge" does in fact mean "what it **\*776** says," 909 F.3d at 1076, and hold that it does.

## II

### A

"We must enforce plain and unambiguous statutory language" in ERISA, as in any statute, "according to its terms." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010). Although ERISA does not define the phrase "actual knowledge," its meaning is plain. Dictionaries are hardly necessary to confirm the point, but they do. When Congress passed ERISA, the word "actual" meant what it means today: "existing in fact or reality." Webster's Seventh New Collegiate Dictionary 10 (1967); accord, Merriam-Webster's Collegiate Dictionary 13 (11th ed. 2005) (same); see also American Heritage Dictionary 14 (1973) ("In existence; real; factual"); *id.*, at 18 (5th ed. 2011) ("Existing in reality and not potential, possible, simulated, or false"). So did the word "knowledge," which meant and still means "the fact or condition of being aware of something." Webster's Seventh New Collegiate Dictionary 469 (1967); accord, Merriam-Webster's Collegiate Dictionary 691 (2005) (same); see also American Heritage Dictionary 725 (1973) ("Familiarity, awareness, or understanding gained through experience or study"); *id.*, at 973 (2011) (same). Thus, to have "actual knowledge" of a piece of information, one must in fact be aware of it.

Legal dictionaries give "actual knowledge" the same meaning: "[r]eal knowledge as distinguished from presumed knowledge or knowledge imputed to one." Ballentine's Law Dictionary 24 (3d ed. 1969); accord, Black's Law Dictionary 1043 (11th ed. 2019) (defining "actual knowledge" as "[d]irect and clear knowledge, as distinguished from constructive knowledge").[4] The qualifier "actual" creates that distinction. In everyday speech, "actual knowledge" might seem redundant; one who claims "knowledge" of a topic likely means to suggest that he actually knows a thing or two about it. But the law will sometimes impute knowledge—often called "constructive" knowledge—to a person who fails to learn something that a reasonably diligent person would have learned. See *id.*, at 1043. Similarly, we held in *Merck & Co. v. Reynolds*, 559 U.S. 633, 130 S.Ct. 1784, 176 L.Ed.2d 582 (2010), that the word "discovery," when used in a statute of limitations without qualification, "encompasses not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff would have known." *Id.*, at 648, 130 S.Ct. 1784. The addition of "actual" in § 1113(2) signals that the plaintiff's knowledge must be more than "potential, possible, virtual, conceivable, theoretical, hypothetical, or nominal." Black's Law Dictionary 53 (4th ed.

1951). Indeed, in *Merck*, we cited § 1113(2) as evidence of the "linguistic distinction" between " '*actual knowledge*' " and the "hypothetical" knowledge that a reasonably diligent plaintiff would have. **\*777** 559 U.S. at 646–647, 130 S.Ct. 1784 (quoting § 1113(2); emphasis in original).

Congress has drawn the same distinction elsewhere in ERISA. Multiple provisions contain alternate 6-year and 3-year limitations periods, with the 6-year period beginning at "the date on which the cause of action arose" and the 3-year period starting at "the earliest date on which the plaintiff acquired *or should have acquired* actual knowledge of the existence of such cause of action." §§ 1303(e)(6), (f)(5) (emphasis added); accord, §§ 1370(f)(1)–(2), 1451(f)(1)–(2). ERISA also requires plaintiffs challenging the suspension of benefits under § 1085 to do so within "one year after the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action." § 1085(e)(9)(I)(iv). Thus, Congress has repeatedly drawn a "linguistic distinction" between what an ERISA plaintiff actually knows and what he should actually know. *Merck*, 559 U.S. at 647, 130 S.Ct. 1784. And when Congress has included both forms of knowledge in a provision limiting ERISA actions, it has done so explicitly. We cannot assume that it meant to do so by implication in § 1113(2). Instead we "generally presum[e] that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *BFP v. Resolution Trust Corporation*, 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (internal quotation marks omitted).

Petitioners dispute the characterization of anything less than actual knowledge as constructive knowledge, arguing that the latter term usually refers to information that a plaintiff must seek out rather than information that is sent to him. But if a plaintiff is not aware of a fact, he does not have "actual knowledge" of that fact however close at hand the fact might be. § 1113(2). And Congress has never added to § 1113(2) the language it has used in other ERISA limitations provisions to encompass both what a plaintiff actually knows and what he reasonably could know.

As presently written, therefore, § 1113(2) requires more than evidence of disclosure alone. That all relevant information was disclosed to the plaintiff is no doubt *relevant* in judging whether he gained knowledge of that information. See Part III, *infra*. To meet § 1113(2)'s "actual knowledge" requirement, however, the plaintiff must in fact have become aware of that information.

B

Petitioners offer arguments for a broader reading of § 1113(2) based on text, context, purpose, and statutory history. All founder on Congress's choice of the word "actual."

As for text, petitioners do not dispute the normal definitions of "actual," "knowledge," or "actual knowledge." They focus instead on the least conspicuous part of the phrase "had actual

knowledge": the word "had." § 1113(2). Once a plaintiff receives a disclosure, they argue, he "ha[s]" the knowledge that § 1113(2) requires because he effectively holds it in his hand. *Ibid.* In other words, he has the requisite knowledge because he could acquire it with reasonable effort. That turns § 1113(2) into what it is plainly not: a constructive-knowledge requirement.

Petitioners' contextual argument fails for the same reason. As they point out, ERISA's disclosure regime is meant to "ensur[e] that 'the individual participant knows exactly where he stands with respect to the plan.' " *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (quoting H.R. Rep. No. 93–533, p. 11 (1973)). **\*778** This is the reason for ERISA's requirements that disclosures be written for a lay audience. See, *e.g.*, 29 U.S.C. § 1022(a). Once plan administrators satisfy their obligations to impart knowledge, petitioners say, § 1113(2)'s knowledge requirement is satisfied too. But that is simply not what § 1113(2) says. Unlike other ERISA limitations periods—which also form § 1113(2)'s context—§ 1113(2) begins only when a plaintiff actually is aware of the relevant facts, not when he should be. And a given plaintiff will not necessarily be aware of all facts disclosed to him; even a reasonably diligent plaintiff would not know those facts immediately upon receiving the disclosure. Although "the words of a statute must be read in their context," *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989), petitioners' argument again gives the word "actual" little meaning at all.

Petitioners also argue that § 1113(2)'s plain meaning undermines its purpose of protecting plan administrators from suits over bygone investment decisions. If a plan participant can simply deny knowledge, they say, administrators will rarely get the benefit of § 1113(2). But even if this is true, as it may well be, we cannot say that heeding the clear meaning of the word "actual" renders the statute so " '[in]coherent' " that it must be disregarded. *Kingdomware Technologies, Inc. v. United States*, 579 U.S. ––––, ––––, 136 S.Ct. 1969, 1976, 195 L.Ed.2d 334 (2016).

For one thing, plan participants are not the only potential plaintiffs subject to § 1113. The Secretary of Labor, for example, may also sue imprudent fiduciaries for the benefit of plan participants. See § 1132(a)(2). And the United States represents that the Secretary will have a hard time doing so within § 1113(2)'s timeframe if deemed to have actual knowledge of the facts contained in the many reports that the Department receives from ERISA plans each year. See Brief for United States as *Amicus Curiae* 27–28. Moreover, the statute's repose period will still protect defendants from suits filed more than six years after the alleged breach. See § 1113(1).

Petitioners may well be correct that heeding the plain meaning of § 1113(2) substantially diminishes the protection that it provides for ERISA fiduciaries, but by the same token, petitioners' interpretation would greatly reduce § 1113(1)'s value for beneficiaries, given the disclosure regime that petitioners themselves emphasize. Choosing between these alternatives is a task for Congress, and we must assume that the language of § 1113(2) reflects Congress's choice. If policy considerations suggest that the current scheme should be altered, Congress must be the one to

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

do it. See, *e.g.*, *Azar* v. *Allina Health Services*, 587 U.S. ––––, ––––, 139 S.Ct. 1804, 1813, 204 L.Ed.2d 139 (2019).

Finally, petitioners argue that the plain meaning of "actual knowledge" renders an *earlier* version of § 1113(2) incoherent. As originally enacted, the § 1113(2) limitations period began either when the plaintiff gained actual knowledge of the alleged breach or when "a report from which [the plaintiff] could reasonably be expected to have obtained knowledge ... was filed with" the Secretary of Labor. 29 U.S.C. § 1113(2) (1976 ed.). That latter, constructive-knowledge clause was later repealed. See Omnibus Budget Reconciliation Act of 1987, § 9342(b), 101 Stat. 1330–371. According to petitioners, if "actual knowledge" means what it says, then the original version of § 1113(2) charged plan participants with learning what was sent to the Secretary but not what was sent to them.

**\*779** The version at issue here, however, is the current one—from which Congress removed any mention of constructive knowledge. "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 258–259, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004) (internal quotation marks omitted). Section 1113(2)'s history thus more readily suggests that the current version does in fact require actual knowledge.

III

Nothing in this opinion forecloses any of the "usual ways" to prove actual knowledge at any stage in the litigation. *Farmer v. Brennan*, 511 U.S. 825, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Plaintiffs who recall reading particular disclosures will of course be bound by oath to say so in their depositions. On top of that, actual knowledge can be proved through "inference from circumstantial evidence." *Ibid.*; see also *Staples v. United States*, 511 U.S. 600, 615–616, n. 11, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) ("[K]nowledge can be inferred from circumstantial evidence"). Evidence of disclosure would no doubt be relevant, as would electronic records showing that a plaintiff viewed the relevant disclosures and evidence suggesting that the plaintiff took action in response to the information contained in them. And though, "[a]t the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party," that is true "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoting Fed. Rule Civ. Proc. 56(c)). If a plaintiff's denial of knowledge is "blatantly contradicted by the record," "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." 550 U.S. at 380, 127 S.Ct. 1769.

Today's opinion also does not preclude defendants from contending that evidence of "willful blindness" supports a finding of "actual knowledge." Cf. *Global-Tech Appliances, Inc. v. SEB S. A.*, 563 U.S. 754, 769, 131 S.Ct. 2060, 179 L.Ed.2d 1167 (2011).

In the case before us, however, petitioners do not argue that "actual knowledge" is established in any of these ways, only that they need not offer any such proof. And that is incorrect.

\* \* \*

For these reasons, we affirm.

It is so ordered.

**All Citations**

140 S.Ct. 768, 2020 Employee Benefits Cas. 69,188, 20 Cal. Daily Op. Serv. 1487, 2020 Daily Journal D.A.R. 1524

Footnotes

| | |
|---|---|
| \* | The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.*, 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499. |
| 1 | Specifically the Intel Global Diversified Fund, in which his retirement contribution plan was automatically invested, and the Intel Target Date 2045 Fund, which he chose for his 401(k) plan. |
| 2 | The court also addressed the separate question of what exactly a plaintiff must actually know about a defendant's conduct and the relevant law in order for § 1113(2) to apply. That question is not before us and we do not address it. |
| 3 | Compare *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 194 (CA2 2001); *Reich v. Lancaster*, 55 F.3d 1034, 1056–1057 (CA5 1995); *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1176 (CA3 1992); *Radiology Center, S. C., v. Stifel, Nicolaus & Co.*, 919 F.2d 1216, 1222 (CA7 1990); *Brock v. Nellis*, 809 F.2d 753, 754–755 (CA11 1987), with *Brown v. Owens Corning Investment Review Comm.*, 622 F.3d 564, 571 (CA6 2010) ("Actual knowledge does not require proof that the individual Plaintiffs actually saw or read the documents that disclosed the allegedly harmful investments" (internal quotation marks omitted)). |
| 4 | Petitioners cite this dictionary's somewhat puzzling second definition of "actual knowledge," which it dubs "implied actual knowledge": "[k]nowledge of information that would lead a reasonable person to inquire further." Black's Law Dictionary 1043 (11th ed. 2019). Not even this entry, however, appears to equate "implied actual knowledge" with "actual knowledge" as normally understood. It instead proceeds to reference the common-law "discovery rule," *ibid.*, under which a limitations period begins when "the plaintiff discovers (or reasonably *should have* discovered) the injury giving rise to the claim," *id.*, at 585 (emphasis added); see also *Merck & Co. v. Reynolds*, 559 U.S. 633, 646, 130 S.Ct. 1784, 176 L.Ed.2d 582 (2010). As we noted in *Merck*, that rule is broader than "*actual knowledge*." *Id.*, at 647, 130 S.Ct. 1784. |

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 805527
United States District Court, D. Arizona.

Patrick R. PIZZELLA, Acting Secretary of Labor, Plaintiff,
v.
RELIANCE TRUST COMPANY, et al., Defendants.

No. CV-19-03178-PHX-JJT
|
Signed 02/18/2020

**Attorneys and Law Firms**

Eric Carl Lund, G. Brendan Ballard, Isidro Mariscal, US Dept. of Labor, Washington, DC, for Plaintiff.

Gregory Bryan Iannelli, Jessica Rae Maziarz, Bryan Cave Leighton Paisner LLP, Phoenix, AZ, Meredith Jacobowitz, Pro Hac Vice, Bryan Cave Leighton Paisner LLP, St. Louis, MO, William Bard Brockman, Pro Hac Vice, Bryan Cave Leighton Paisner LLP, Atlanta, GA, for Defendant Reliance Trust Company.

Lindsey R. Camp, Pro Hac Vice, Greenberg Traurig LLP, Miami, FL, Michael Cajer Mason, Greenberg Traurig LLP, Phoenix, AZ, Todd D. Wozniak, Pro Hac Vice, Greenberg Traurig LLP, Atlanta, GA, for Defendants Eric Bensen, Randall Smalley, Robert Smalley, Jr., Family Trust Created Under the Smalley Revocable Trust Dated July 8, 2004, Marital Trust Created Under the Smalley Revocable Trust Dated July 8, 2004, Survivor's Trust Created Under the Smalley Revocable Trust Dated July 8, 2004, RVR Incorporated.

## ORDER

Honorable John J. Tuchi, United States District Judge

 *1  At issue is the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) by Defendants Eric Bensen, Randall Smalley and Robert Smalley, Jr. (the Individual Defendants); the Family Trust, Marital Trust and Survivor's Trust all created under the Smalley Revocable Trust Dated July 8, 2004 (the Trust Defendants); and RVR, Inc. (Doc. 22.) Plaintiff, Acting Secretary of Labor Patrick Pizzella, has filed a Response in opposition (Doc. 26) and RVR, the Individual and Trust Defendants filed a Reply in support. (Doc. 27.) The Court will deny the Motion.

# I. LEGAL STANDARD

When analyzing a complaint for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).

A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(citations omitted). To survive a Rule 12(b)(6) motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The complaint must thus contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.' " *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

# II. ANALYSIS

Collectively, RVR and the Individual and Trust Defendants seek dismissal of five Claims in the Complaint. The Court will group three of those claims which the parties argue turn on analysis of a common issue. In Claim 3, Plaintiff alleges the Individual Defendants breached their fiduciary duty to monitor the Plan Trustee, co-Defendant Reliance Trust Company, as imposed by ERISA Section 404(a)(A), (B) and (D), 29 U.S.C. § 1104(a)(1)(A), (B) and (D). (Doc. 5, Complaint, ¶¶ 72-74.) Plaintiff alleges in Claim 4 that the Individual Defendants are liable for Reliance's breaches as co-fiduciaries pursuant to ERISA Section 405(a)(1-3), 29 U.S.C. § 1105(a)(1-3). (Complaint, ¶¶ 76-79.) And in Claim 5, Plaintiff charges the Individual Defendants are liable for their knowing participation in Reliance's breaches of its fiduciary duty under Sections 1104(a)(1)(A), (B) and (D) and 1106 (a)(1)(A) and (D), regardless of their own respective fiduciary statuses. (Complaint, ¶¶ 81-83.) The Individual Defendants argue that each of these three claims is infirm for the same reason—Plaintiff has failed to allege sufficient facts that would show their knowledge that the ESOP transaction was illegal under ERISA.

### A. Claim 3: Fiduciary Duty to Monitor

**\*2** As an initial matter, the parties dispute whether liability for failure of a fiduciary duty to monitor under ERISA requires actual knowledge or a "knew or should have known" standard. (Motion at 7-9; Response at 8-10.) While the Court agrees with Plaintiff that the "knew or should have known" standard applies to this question under ERISA Section 404(a), [1] that determination is immaterial for purposes of deciding the instant motion, because the Court concludes Plaintiff has alleged sufficient facts to show the Individual Defendants had actual knowledge Reliance breached its fiduciary duties and the transaction violated ERISA. Thus, Plaintiff's allegations, taken as true and construed in the light most favorable to Plaintiff for purposes of the Rule 12(b)(6) analysis, plead factual content that allows the Court to draw reasonable inferences as to liability. *Iqbal*, 556 U.S. at 678.

Plaintiff alleges in his Complaint that the Individual Defendants "controlled every aspect" of RVR as its principal officers, sole shareholders and sole directors. (Complaint ¶¶ 5-6.) All three Defendants are alleged to have appointed Reliance as Trustee. (Complaint ¶¶ 13-15.) RVR, which the Individual Defendants controlled, engaged Chartwell Business Valuation LLC to advise a structure for the transaction between the Individual Defendant sellers and the Plan, estimate RVR's value, and represent the Individual Defendant sellers in negotiations with trustee Reliance. (Complaint ¶ 19.) At the April 16, 2014 Transaction Kick-Off meeting, the Individual Defendants presented information including an overview of RVR operations and outlook to the Trustee and to Stout Risius Ross, Inc. (SRR), the entity selected to appraise and value RVR for purposes of negotiating the sale of Individual Defendants' shares in RVR to the Plan. (Complaint ¶¶ 19-20.) The Individual Defendants set the timeline for the transaction that Plaintiff alleges to have been intentionally rushed. (Complaint ¶¶ 20, 42-43.) Plaintiff alleges that Reliance, as Trustee, caused the Plan to pay "tens of millions of dollars" too much to the Individual Defendants for all of the then-outstanding stock of RVR. (Complaint ¶ 7.) The transaction which the Individual Defendants negotiated with the Trustee resulted in them maintaining their positions as controlling officers and sole members of the board of RVR despite the Plan having paid a control premium for RVR. (Complaint ¶ 7.)

From these allegations, taken as true and viewed in the light most favorable to Plaintiff, the Court can draw an obvious inference that the Individual Defendants, controlling RVR and its actions and communicating directly with trustee Reliance and appraiser SRR, controlled and therefore knew of the information both Reliance and SRR received in valuing the company and evaluating the fairness of stock price for the Plan. Because Chartwell was retained to advise RVR, through its directors and officers—the Individual Defendants—on a transaction structure and to negotiate on behalf of the sellers—again the Individual Defendants—the Court can infer that Defendants knew how the information was being used and the price their shares ultimately would fetch. And the Court can infer from the allegations that the Individual Defendants, as the senior officers, sole directors and sole shareholders of RVR, knew its approximate value at least. Finally, the Court can infer from the allegations that the transaction was rushed and completed according to the Individual

Defendants' dictated timeline, that there was inadequate review and scrutiny of the transaction by the Trustee and its agent appraiser.

**\*3** These inferences drawn from the allegations in the Complaint would establish the actual knowledge of circumstances demonstrating breach by the trustee. The allegations are thus adequate to state a claim for breach of a fiduciary's duty to monitor. Whether the evidence ultimately developed supports these allegations and inferences at the summary judgment stage or at trial is a wholly different question and one this Court does not approach. But under the Rule 12 standard as clarified by *Twombly*, *Iqbal* and progeny, Plaintiff adequately states his Claim 3.

### B. Claims 4 and 5: Breach of Duty of a Co-Fiduciary and Participation in a Fiduciary's Breach by a Non-Fiduciary

Although the parties do not squarely address the issue, it is clear to the Court that the necessary standard of knowledge to sustain a claim for breach of the duties of a co-fiduciary under Section 405(a) of ERISA is actual knowledge. *E.g., Acosta,* 355 F.Supp. 3d at 924-25. But for the same reasons the Court sets forth above, it concludes at this stage that Plaintiff has adequately alleged facts which, when taken as true, yield inferences that support a claim for breach of duty as co-fiduciary. Similarly, the Court concludes Plaintiff has adequately pleaded actual knowledge as to the Individual Defendants for the non-fiduciary participation claim. The Court thus will deny the motion as to Claims 4 and 5.

### C. Claim 7: Avoidance of Indemnification of Individual Defendants

The Complaint sufficiently alleges, and no party contests, that the Individual Defendants are ERISA fiduciaries with respect to the Plan. Because Claims 3 and 4 will survive the Individual Defendants' Motion to Dismiss, the possibility that one or more of the Individual Defendants may be found to have breached his fiduciary duties remains at this stage. Therefore, the Court may still have to evaluate in equity at some later stage Plaintiff's claim that ERISA Sections 409(a) and 410(a) operate to void those provisions of the Plan that would indemnify Defendants for breaches of their fiduciary duties under ERISA. 29 U.S.C. §§ 1109(a), 1110(a). The Court will deny the motion as to Plaintiff's Claim 7.

### D. Dismissal of RVR as a Defendant

The Court readily concludes, based on Plaintiff's allegations, that RVR is a necessary party to the action under Rule 19(a)(1)(A), Fed. R. Civ. P. The injunctive relief sought in the Complaint includes avoidance of Plan provisions that would require RVR or the Plan to indemnify the Individual Defendants for losses and costs associated with breaches of their ERISA fiduciary duties. While Plaintiff argues alternative bases for finding RVR to be a necessary party, the Court

need not reach them. It finds the above to be an adequate basis. The Court will deny Defendants' motion to dismiss RVR.

IT IS ORDERED denying the Motion to Dismiss. (Doc. 22.)

**All Citations**

Slip Copy, 2020 WL 805527, 2020 Employee Benefits Cas. 57,519

Footnotes

| | |
|---|---|
| 1 | The parties cite several cases in support of their diametrically opposed positions on the knowledge standard for ERISA Section 404(a). None of the cases are binding on the Court, as they are either orders from our sister districts within the Ninth Circuit, or an unpublished 2009 Ninth Circuit memorandum decision. The Court still considers all of the cases cited for persuasive value, and in so doing, finds Judge Mollway's reasoning in the recently decided *Acosta v. Saakvitne*, 355 F. Supp. 3d 908 (D. Hawai'i 2019), to be the most thorough, convincing and ultimately persuasive. The Court also notes a striking similarity between the facts alleged in *Acosta* and those alleged in this case. Finally, in reaching her conclusion, Judge Mollway relied in part on another case Plaintiff cites, *Solis v. Couturier*, No. 2:08-CV-02732-RRB-GGH, 2009 WL 1748724, at *7 (E.D. Cal. June 19, 2009). *Acosta*, 355 F.Supp. 3d at 923-24. |

**End of Document**  © 2020 Thomson Reuters. No claim to original U.S. Government Works.