UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

APPVION, INC. RETIREMENT SAVINGS
AND EMPLOYEE STOCK OWNERSHIP
PLAN, by and through Grant Lyon in his
capacity as the ESOP Administrative
Committee of Appvion,

    Plaintiff,

   v.            Case No. 18-C-1861

DOUGLAS P. BUTH, et al.,

    Defendants.

## DECISION AND ORDER

   In 2001, Appleton Papers, Inc., a Wisconsin-based paper products company, which was owned at that time by a French conglomerate, Arjo Wiggins Appleton (AWA), was sold as part of an Employee Stock Ownership Plan, or ESOP, to Paperweight Development Corp. (PDC) for $810 million. The purchase was funded by Appleton Paper employees' $106 million contribution from their 401(k) retirement accounts. Under the terms of a newly amended Retirement Savings and Employee Stock Ownership Plan, the ESOP trustee used the employee contributions to purchase 100% of the shares of PDC's common stock. PDC, in turn used the funds from that purchase, together with other financing, to purchase Appleton Papers. Upon completion of the transaction, employees continued to make contributions of their retirement savings to purchase PDC stock, thereby increasing their equitable interest in Appleton Papers. Appleton Papers later changed its name to Appvion, Inc., the name used to refer to the company hereinafter. In October 2017, some 16 years later, Appvion filed for bankruptcy, making the stock of its parent company, PDC, worthless. This lawsuit followed.

Grant Lyon commenced this action in his capacity as the sole member of Appvion's Employee Stock Ownership Plan Administrative Committee (the ESOP Committee) on behalf of the Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan (ESOP). The complaint asserts claims for violations of the Employee Retirement Income Security Act (ERISA), as well as federal securities fraud and various state law claims. It alleges that the defendants played various roles in fraudulently inducing Appvion's employees to adopt the ESOP as part of their retirement plan and then, over the following sixteen years, artificially inflating the value of stock owned by the ESOP, resulting in losses to the ESOP. Altogether, the Amended Complaint asserts 19 counts against 8 entities and 51 individuals, including their spouses. The defendants include 17 former officers and directors of Appvion, some of whom also served at various times over the years as members of the ESOP Committee; Houlihan Lokey Capital, Inc. (f/k/a Houlihan Lokey Howard & Zukin Capital, Inc.), and Houlihan Lokey Howard & Zukin Financial Advisors (collectively, Houlihan), who were engaged by PDC to advise PDC on the 2001 Transaction; Louis Paone, Houlihan's managing director in 2001; State Street Bank and Trust Company, a nationally chartered trust company which served as the trustee of the ESOP from 2001 until 2013; State Street employees Kelly Driscoll and Sydney Marzeotti (collectively, the State Street Defendants); Reliance Trust Company, which replaced State Street as the trustee for the ESOP in 2013; Argent Trust Company, N.A., which replaced Reliance as the trustee for the ESOP in 2014, Howard Kaplan, Stephen Martin, and David Williams (collectively, the Individual Trustee Defendants and, along with the State Street Defendants, Argent, and Reliance, the Trustee Defendants); Willamette Management Associates, Inc., which provided valuations of Appvion stock during the period from 2001 to 2004; Stout Risius Ross, Inc. and Stout Risius Ross, LLC (collectively, SRR), which provided Appvion stock valuations after 2004; Scott Levine, Aziz El-Tahch, and Robert Socol (collectively with SRR, the SRR Defendants); the spouses of each individually-named defendant;

2

and yet to be identified defendants (Does 1–50, ABC Corporations 1–5, DEF Partnerships 1–5, GHI Limited Partnerships 1–5, and JKL Limited Liability Companies 1–5). The court has jurisdiction over the ERISA claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

On February 28, 2019, the defendants filed eight motions to dismiss. The court approved the parties' stipulation to extend the briefing period, and briefing was not complete until June 20, 2019. Once the motions were fully briefed, the parties requested oral argument on the motions on July 26, 2019, and the court scheduled argument. The court's trial calendar twice postponed oral argument, resulting in the motions remaining undecided. On January 8, 2020, the court scheduled oral argument on the motions for April 2, 2020 but advised the parties on March 13, 2020 that the hearing scheduled for April 2, 2020 was removed from the court calendar in light of the COVID-19 pandemic. Although the court indicated an intent to issue a tentative ruling and allow the parties to comment in lieu of oral argument, having carefully considered the thorough briefing on the issues and the lengthy delay that has already occurred, the court has decided to issue its decision. For the reasons that follow, the motions to dismiss will be granted.

## LEGAL STANDARD

A motion to dismiss tests the sufficiency of the complaint to state a claim upon which relief can be granted. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990); *see* Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded factual allegations as true and draw all inferences in the light most favorable to the non-moving party. *Gutierrez v. Peters*, 111 F.3d 1364, 1368–69 (7th Cir. 1997); *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991). Rule 8 mandates that a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's short and plain statement must "give the defendant fair notice of

3

what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, it must plead "more than labels and conclusions." *Id.* A simple, "formulaic recitation of the elements of a cause of action will not do." *Id.* A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

Fraud-based claims must meet a heightened pleading standard. Fed. R. Civ. P. 9(b). This heightened pleading standard requires plaintiffs to "provide the who, what, when, where, and how" of the alleged fraud. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal quotations omitted). A heightened pleading standard in fraud cases is justified because "public charges of fraud can do great harm to the reputation of a business firm or other enterprise (or individual) . . . because fraud is frequently charged irresponsibly by people who have suffered a loss and want to find someone to blame for it, . . . and because charges of fraud (and also mistake, the other charge that Rule 9(b) requires be pleaded with particularity) frequently ask courts in effect to rewrite the parties' contract or otherwise disrupt established relationships." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (internal citations omitted).

In addition, "[e]xacting pleading requirements are among the control measures Congress included in the PSLRA [Private Securities Litigation Reform Act of 1995]." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). "The PSLRA requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention 'to deceive, manipulate, or defraud.'" *Id.* (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 184, 194 & n.12 (1976)).

4

## ALLEGATIONS OF THE AMENDED COMPLAINT

On February 12, 2001, AWA signed a letter of intent to sell Appvion to PDC for $843,000,000. AWA also agreed to pay Appvion CEO Douglas Buth and other Appvion executives bonuses, consisting of a value-related completion bonus and loyalty payments, contingent on the parties completing the sale in 2001. The completion bonus created a bonus pool of up to $10 million depending on the final sale price. The executives would not receive a completion bonus if the sale price was at or below $700 million. "According to the prospectus, the sales incentive was ultimately $2.46 million, with 40% of it allocated to Buth and the rest to be distributed to other employees at Buth's discretion." First Amended Complaint (FAC), Dkt. No. 77, at ¶ 138. The executives would also receive loyalty bonuses if the sale price exceeded $759,403,000.

> Each individual who would receive a Loyalty Payment agreed to defer 30% of the payment for between 5 and 10 years. Under the Deferred Compensation Plan, the value of the deferred portion of this payment was tied to the increase in the value of stock. According to the prospectus, the loyalty payments ultimately totaled $4.1 million, with $1.2 million of it deferred.

*Id.* Prior to the closing, the bonus payments were to be recorded as obligations of Appvion.

Buth retained Houlihan to develop a plan for the employee buyout. In the February 14, 2001 engagement letter, Buth stated that Houlihan was to act as PDC's "exclusive financial advisor with respect to the possible acquisition . . . by a to-be-formed Employee Stock Ownership Plan." *Id.* at ¶ 141. The letter also stated that Houlihan would receive a transaction fee at closing equal to "1.0% of the 'Aggregate Consideration' paid for the stock of the Company with respect to an ESOP Acquisition." *Id.* at ¶ 142. An addendum to the letter set forth two phases of work that Houlihan was to complete, including corporate due diligence, transaction value parameters, ESOP transaction model construction, financing assessment and capital tranche sources and terms, management deferred compensation and option/stock rollovers, and management bonus

5

participation as an ongoing investment tool. Houlihan was also required to assist management in negotiations regarding the purchase of PDC, advise management on the selection of the ESOP team, advise on the structure of management performance warrants as part of bonus/incentive plans, prepare materials to be presented to employees, and assist in the documentation of transaction terms. *Id.* at ¶ 143. Copies of these letters were not distributed to the ESOP or the Employee Participants. "The plan developed by Houlihan was to use at least $100 million from the employees' 401(k) retirement plans to fund a portion of the buyout, with the rest of the sale price coming from bank debt, bonds and seller financing." *Id.* at ¶ 145. As of July 2001, the Appvion Retirement Savings Plan 401(k)s totaled approximately $155 million.

In anticipation of the buyout, Appvion's retirement savings plan was amended and restated as of January 1, 2001, and renamed the "[Appvion] Retirement Savings and Employee Stock Ownership Plan." *Id.* at ¶ 163. The amended plan added an ESOP component and retained the traditional non-ESOP component. *Id.* Under the ESOP Plan, Employee Participants could make a one-time irrevocable election in 2001 to transfer a portion of their non-ESOP accounts to an ESOP account. The ESOP account funds would then be invested in PDC stock. The ESOP would be the sole shareholder of PDC. The shares owned by the ESOP would be allocated to the accounts of the Employee Participants, who were the beneficial owners of PDC. Under the ESOP Plan, share repurchase obligations would be funded from employee contributions to the ESOP, and "[i]f net repurchases exceeded contributions to the ESOP, repurchases were funded through a loan from [Appvion] to PDC, which PDC loaned to the ESOP." *Id.* at ¶ 168. "Withdrawals from a participant's ESOP account were limited to statutory diversification, additional diversification, participant loans, retirement, disability, death, termination of employment and hardship distributions." *Id.* at ¶ 170. Sales or purchases of PDC stock were required to be at fair market value.

The ESOP Plan also authorized the creation of the ESOP Committee, which would be made up of at least three members who were appointed by Appvion's Board of Directors. The ESOP Committee was "the named fiduciary with respect to the financial management of the ESOP and the control or management of the assets of the Plan." *Id.* at ¶ 174. The ESOP Committee had the following powers and responsibilities:

- to establish and carry out, or cause to be established and carried out by those persons (including without limitation, any investment manager or trustee) to whom responsibility or authority therefor has been allocated or delegated in accordance with this ESOP Plan or the Trust Agreement, funding and investment policies and methods consistent with the objectives of the ESOP Plan and the requirements of ERISA.

- to appoint a trustee or trustees to hold the assets of the ESOP Plan, and who, upon acceptance of being appointed, shall have authority and discretion to manage and control the assets of the ESOP Plan, except to the extent that the authority to manage, acquire or dispose of assets of the ESOP Plan is delegated to one or more investment managers pursuant to paragraph (3) below; and

- to appoint an investment manager or managers, as defined in Section 3(38) of ERISA, to manage (including the power to acquire, invest and dispose of) any assets of the ESOP Plan.

*Id.* at ¶ 175. The ESOP Committee also had the right to delegate its responsibilities under the ESOP to third parties.

The ESOP trustees appointed by the ESOP Committee, pursuant to agreements with the trustees, were required to retain an independent appraiser to value the PDC stock. The ESOP trustees were also responsible for reviewing the valuation completed by the independent appraiser and finalizing the valuation. The ESOP trustees were believed to have met with Appvion and PDC's Boards of Directors to report on the ESOP. The first ESOP trustee, State Street, was appointed on June 1, 2001. *Id.* at ¶ 179. The independent appraisers retained by the trustees—initially Willamette, who served from 2001 until June 30, 2004, followed by SRR from December

7

31, 2004 through 2017—used the guideline company method and the discounted cash flow method to value the PDC stock.  *Id.* at ¶¶ 218–20.

In addition to appointing the members of the ESOP Committee under the ESOP Plan, Appvion and PDC's Boards of Directors were responsible for selecting a chairman and secretary for the ESOP Committee.  PDC's Board of Directors also had the following responsibilities under the ESOP Plan document:

- Discretion for determining the percentage of matching contributions to the ESOP as well as whether matching contributions to the non-ESOP Component or the ESOP Component would be in the form of cash or company stock.

- The power to amend the ESOP Plan Document. Starting in approximately 2008, the Board delegated the authority to make non-material amendments to the ESOP Plan to the ESOP Committee.

*Id.* at ¶ 194.  A March 19, 2001 employee newsletter emphasized the Board of Directors' fiduciary role in managing the company.  *Id.* at ¶ 198.  In response to the question "How do we know the board of directors will make good decisions for us?" the following answers were provided:

- The board of directors has a fiduciary obligation to the company's shareholders. That is, they have a legal responsibility to ensure that the shareholder interests are served.

- In an ESOP company, the board has a legal obligation to the ESOP trustee as the shareholder.

- The ESOP trustee has a fiduciary obligation to act in the best interests of plan participants.

- The plan participants are the company's beneficial shareholders. Thus, in ESOP companies, there are two entities charged with acting in the best interests of the participant shareholders, the trustee and the board of directors.

*Id.* at ¶ 199.  A March 26, 2001 newsletter stated the entities that would issue ESOP fairness opinions would have "[n]o conflicts of interest and/or fee arrangements based on contingencies, both of which would impair the independence of the financial advisor."  *Id.* at ¶ 148.

8

Appvion's management circulated a prospectus dated July 23, 2001, to employees to assist their evaluation as to whether to participate in the ESOP. The prospectus included the following statements:

- Paperweight Development's financial advisor, Houlihan, and the CEO team believe that the purchase price as negotiated is fair to the buyers.

- Houlihan has rendered its preliminary opinion to Paperweight Development's board of directors that the purchase price that Paperweight Development is paying for us in the acquisition is fair, from a financial point of view, to the ESOP, as the sole shareholder of Paperweight Development. Houlihan's preliminary fairness opinion was based on a number of facts and assumptions, including financial information through the end of April 1, 2001. Its preliminary opinion was rendered to the board of directors of Paperweight Development and may not be relied upon by any other person. Houlihan has been asked to render a fairness opinion to the Board of Directors of Paperweight Development effective as of the closing of the transaction to the effect described above.

*Id.* at ¶ 153. "The Prospectus did not disclose that Houlihan's fees were contingent on the deal closing or that they were structured as a percentage of the purchase price." *Id.* at ¶ 154. But the prospectus did indicate that there were risks involved in investing in the ESOP. *See* Dkt. No. 106-1 at 2 ("Investing in the ESOP involves risks. Please refer to the discussion under the heading 'Risk Factors' beginning on page 14."); *id.* at 18 ("Investing in the Paperweight Development common stock through ownership of the ESOP interests involves a high degree of risk. The occurrence of any one or more of the following cold materially adversely affect or business and operating results and the value of your investment in the ESOP."); *id.* at 18–26 (describing risks related to the business and industry and risks relating to the offering).

On July 20, 2001, Houlihan and Buth executed another retainer agreement that engaged Houlihan to "render an opinion as to the fairness to the Shareholder of the Company, from a financial point of view of the consideration to be paid by the Company . . . in connection with the Transaction and that such consideration is not more than the fair market value of [Appvion]." FAC

9

at ¶ 147. Houlihan charged $100,000 for the fairness opinion, which was credited toward its 1% contingent fee.

In a letter to employees dated July 25, 2001, Buth stated that the ESOP buyout offered employees "the potential for extraordinary rewards for initial investors and greater control of our company's future" and that "during the past few months we have made every effort to educate you about employee stock ownership." *Id.* at ¶ 155. Buth also stated employees would receive "independent validation of the deal" from Lou Paone of Houlihan and Kelly Driscoll of State Street, the ESOP trustee at the time.

Appvion executives, along with Driscoll of State Street, Paone of Houlihan, Rick Braun of Willamette, and others, held a series of meetings referred to as "road shows" to present the buyout to Appvion's employees. At these road shows, "employees were told that the buyout was necessary or the company would be sold to an equity firm and be sold off for scrap, or that an equity firm would bleed the company dry and run it into the ground." *Id.* at ¶ 159. During a road show in August 2001, Paul Karch, Appvion's general counsel, stated that Houlihan's Paone was "going to provide an independent view and validation" of the buyout transaction. *Id.* at ¶ 414.

The transaction closed on November 9, 2001, and the purchase price was later adjusted to $810,000,000. State Street retained Willamette to issue a valuation opinion at the time of the 2001 Transaction. The initial share price was set at $10.

On November 9, 2001, "the [Appvion] Employee Stock Ownership Trust, through State Street as trustee, entered into a Security Holders Agreement with PDC." *Id.* at ¶ 209. Under § 1.2(a) of that agreement, State Street and PDC agreed to jointly nominate the seven members of Appvion's Board of Directors who could only be removed by mutual agreement of the trustee and the CEO. No director could be elected or removed without CEO approval. Under § 2.2 of the agreement, PDC and Appvion were authorized to engage in acquisitions of other companies for

10

less than $100 million without the trustee's permission. The terms of the agreement were not disclosed in the prospectus and were not released until November 19, 2001.

On December 31, 2001, State Street, acting as the ESOP trustee, began conducting the required semi-annual valuations of PDC stock with Willamette retained as the independent appraiser. Willamette employees Scott Levine, who served as the principal individual handling Appvion's account, Aziz El-Tahch, and Robert Socol left Willamette for SRR, and SRR subsequently replaced Willamette as the appraiser. In March 2013, State Street stepped down as the ESOP Trustee, and Appvion retained Reliance to serve as the trustee effective April 1, 2013. In 2014, Reliance sold its ESOP business unit to Argent, who took over as trustee effective July 1, 2014. The ESOP Committee later voted for Argent to continue to be the trustee in May 2015. Appvion designated Argent as a discretionary trustee in a May 2015 engagement letter and an amended trust agreement effective August 3, 2015. After each valuation, Appvion released the share price to the ESOP and its participants with a brief explanation of the share price. Appvion did not disclose the valuation process used in reaching the PDC stock price, however. Beginning in January 2008, the minutes of the ESOP Committee show that SRR and the Trustee Defendants presented the valuations to the ESOP Committee after each valuation.

The Boards of Directors for Appvion and PDC also viewed the stock valuations and oversaw PDC and the company's operations through an Audit Committee and a Compensation Committee. The Audit Committee reviewed the audited financial statements and was tasked with "provid[ing] assistance to the Board of Directors in fulfilling its responsibility to the ESOP participants relating to financial accounting and reporting practices and the quality and integrity of [PDC's] financial reports." *Id.* at ¶ 327.

As part of the 2001 Transaction, Appvion management represented that the fourteen members of the executive team would put 100% of their 401(k) plans into the ESOP and,

11

"[i]mmediately after the 2001 Transaction, the named executive officers reported holding 4.2% of the shares in the ESOP." *Id.* at ¶ 343. After the 2001 Transaction, however, Appvion's executives "began leaving the company and receiving distributions of their ESOP accounts for a combined gain of over $7.2 million." *Id.* at ¶ 344. Appvion CEO Buth retired in 2005 and gained over $850,000 on his investments in the ESOP Component of the Plan. Rick Fantini, Vice President of Operations, also left in 2005 and gained over $577,000 in his investments in the ESOP. By November 2006, only one member of the original executive team remained at the company. This employee left the company in 2007 and gained over $300,000 from his investments in the ESOP. By December 2006, top executives held only 1.59% of the ESOP shares, and by December 2010, that number was reduced to 0.93%.

Appvion continued to implement incentive programs to reward its executives and directors following the 2001 Transaction. These programs included the following:

**Long-Term Incentive Plan (LTIP)** - Allowed the Compensation Committee to award a number of phantom stock units equal to 3% of a total stockholders' equity in the Company each year that vested over 3 years and expired after 10 or upon leaving the company. When the rights to the phantom stock are exercised, a participant would receive a cash bonus equal to the increase in the value of the stock from the date of issue until the exercise date.

**Deferred Compensation Plan and The Executive Nonqualified "Excess" Plan** - These plans allowed for the deferral of all or a portion of a person's salary and/or bonus and provided for matching contributions.

**The Non-Employee Director Deferred Compensation Plan** - Established in 2006, it awarded non-employee members of the Board of Directors with phantom stock units. "The value of the stock awarded under this plan was to be paid in five equal annual cash installments following a director's conclusion of service on the board of directors, based on the stock valuation as of the payment date." *Id.* at ¶ 364.

**The Long-Term Restricted Stock Unit** - Began in 2010, it awarded management employees with future cash payments based on the full fair market value of Appvion common stock.

12

*See id.* at ¶¶ 353–75.  Lyon alleges that these plans, combined with the allegedly over-inflated stock value, resulted in excessive compensation being paid to executives and management when compared to company performance and the true value of the PDC stock.

From 2001 through 2017, various communications regarding the ESOP were sent to Employee Participants, explaining the information the independent appraiser would consider when determining Appvion's fair market value, the role that the trustees played in reviewing the independent appraiser's valuation, and Appvion's performance as a company that accounted for changes in the stock price.  *See id.* at ¶¶ 417–81.  Appvion continued to hold bi-annual road shows to present the share price to its employees and to discuss the company's performance.

On October 1, 2017, Appvion and some of its subsidiaries filed for Chapter 11 Bankruptcy. On August 14, 2018, the Bankruptcy Court for the District of Delaware issued a Conformation Order stating the order did not "operate as a waiver or release or otherwise impair in any respect . . . any claim held by the ESOP, the ESOP Committee or its members, or ESOP Participants."  *Id.* at ¶ 408.

The Board of Directors appointed Grant Lyon as the sole member of the ESOP Committee effective August 9, 2017, in conjunction with an amendment to the ESOP that allowed the ESOP Committee to consist of one member.  The Bankruptcy Court's order "confirmed that Grant Lyon, in his capacity as an ESOP Committee Member, has standing to prosecute claims on behalf of the ESOP Plan and the Employee Participants."  *Id.*  After his appointment, Lyon conducted an investigation into the valuations and alleges that the following deficiencies, among others, *see* ¶¶ 246–318, resulted in the overstatement of the PDC stock's fair market value and Appvion and the ESOP overpaying for repurchased PDC stock:

- SRR failed to account for certain known liabilities, including unfunded pension and post-retirement liabilities.

13

- SRR relied heavily on projections of future cash flow created by Appvion's management, even though the appraisers, the Trustee Defendants, the Prior Committee Defendants, and the Director Defendants knew that Appvion consistently missed these projections.

- SRR changed the methodology of their valuations to compensate for periods of low earnings.

- SRR used the perpetuity model to capitalize a declining income stream, overstating the value of PDC stock.

- SRR improperly included a control premium that inflated the valuations.

- SRR failed to include all overhead costs in the projections by breaking Appvion out into business segments, thus failing to account for overhead costs not allocated to individual business segments.

- SRR failed to apply a large enough discount for the lack of liquidity and marketability of the shares.

- SRR failed to appropriately consider the impact on the discounted cash flow of the need to repurchase PDC stock.

- SRR failed to correctly apply the Guideline Company Method by manipulating the choice of publicly traded companies to compare with Appvion and by failing to make appropriate and consistent adjustments to compensate for differences in the companies.

- They failed to account for market indicia of value by, for example, failing to consider the market discount to the value of Appvion's debt.

- The appraisals failed to stress test Appvion's projections.

*Id.* at ¶ 241.   Although Lyon did not have access to Willamette's valuation reports, upon information and belief, Lyon asserts that those valuations contained the same or similar flaws.

Lyon filed his initial complaint on November 26, 2018, and the FAC on January 8, 2019. Thereafter, the defendants filed their motions to dismiss.

14

## ANALYSIS

### A.    The Spouses of the Individually Named Defendants

The FAC names as a defendant the spouse of each individually named defendant.  The FAC contains no factual allegations against the individual defendants' spouses, other than alleging that they are married to a defendant, and does not assert any of the FAC's nineteen causes of action against them.  Lyon asserts that the spouses were included "as nominal defendants for collections purposes based on the belief that the spouse defendants may be in possession of funds or property derived from the violations alleged in the FAC."  Pl.'s Resp. Br., Dkt. No. 130, at 100.

"A 'nominal defendant' is a person who can be joined to aid the recovery of relief without an assertion of subject matter jurisdiction only because he has no ownership interest in the property which is the subject of litigation."  *S.E.C. v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991).  "Because the nominal defendant is a 'trustee, agent, or depositary,' who has possession of the funds which are the subject of litigation, he must often be joined purely as a means of facilitating collection."  *Id.* (citations omitted).  "A nominal defendant is not a real party in interest, however, because he has no interest in the subject matter litigated. His relation to the suit is merely incidental and 'it is of no moment [to him] whether the one or the other side in [the] controversy succeed[s].'"  *Id.* (citing *Bacon v. Rives*, 106 U.S. 99, 104 (1882)).  Due to "the non-interested status of the nominal defendant, there is no claim against him and it is unnecessary to obtain subject matter jurisdiction over him once jurisdiction over the defendant is established."  *Id.* (citing *Farmers' Bank v. Hayes*, 58 F.2d 34, 36 (6th Cir. 1932)).

The spouse defendants will be dismissed from this matter because they are not nominal defendants.  The FAC merely alleges the spouses' marital relationship to the individually named defendants and is devoid of any allegations that they are trustees, agents, or depositories or that they possess ill-gotten profits.  *See id.* at n.11 ("A court can obtain equitable relief from a non-

15

party against whom no wrongdoing is alleged if it is established that the non-party possesses illegally obtained profits but has no legitimate claim to them."). Although Lyon asserts that ERISA and the Wisconsin Marital Property Act allow for the recovery of marital assets, absent any allegations that the spouses participated in the wrongdoing or are holding specifically traceable proceeds of the wrongdoing, it would be improper for the spouses to remain as defendants in this action. The defendants' motions to dismiss will therefore be granted with respect to the spouses of the individually named defendants.

**B.      The Director and Committee Member Defendants**

The FAC alleges a number of ERISA-based claims against the former Board of Directors and Committee Member Defendants: breach of fiduciary duty and breach of the duty to monitor against the Committee Member Defendants (Count II); breach of fiduciary duty against the Board of Directors Defendants (Count III); engagement in prohibited transactions (Count IV); violations of ERISA § 410 and breach of fiduciary duty (Count VI); and co-fiduciary liability against the Director and Committee Member Defendants (Count VII). The FAC also asserts a federal securities fraud claim against certain Director and Committee Member Defendants (Count XIV) as well as Wisconsin state law claims of securities fraud (Count XIII) and breach of fiduciary duty (Count XVI). The Director and Committee Member Defendants seek to dismiss these claims in their entirety.

**1.      ERISA Claims (Counts II, III, IV, VI, VII)**

**a.      The ERISA claims based on conduct that occurred prior to November 26, 2012, are barred by ERISA's six-year statute of repose**

The Director and Committee Member Defendants maintain that Lyon cannot assert ERISA claims against them based on any alleged conduct occurring before November 26, 2012, because those claims are barred by ERISA's six-year statute of repose, 29 U.S.C. § 1113. An ERISA claim

16

arising from a fiduciary's breach of any responsibility, duty, or obligation is time barred after the earlier of

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.

29 U.S.C. § 1113. In the case of fraud or concealment, ERISA provides that an action may be commenced no later than six years after the date of discovery of the breach or violation. *Id.* The defendants contend that, because the initial complaint was filed on November 26, 2018, Lyon's ERISA claims based on any acts or omissions occurring before November 26, 2012, are barred by the statute of repose. Lyon contends that the statute of repose period is tolled under § 1113's fraud or concealment exception because the Director and Committee Member Defendants have engaged in a pattern of fraud or concealment since 2001.

"An ERISA fiduciary commits fraud or concealment by delaying a wronged beneficiary's discovery of his claim either by misrepresenting the significance of facts the beneficiary is aware of (fraud) or by hiding facts so that the beneficiary does not become aware of them (concealment)." *Laskin v. Siegel*, 728 F.3d 731, 735 (7th Cir. 2013) (citation omitted). The plaintiff bears the burden of establishing that the fraud or concealment exception applies by showing "some act on the part of the defendant designed to avoid detection." *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1093–94 (7th Cir. 1992). Such acts include "actual concealment—*i.e.*, 'some trick or contrivance intended to exclude suspicion and prevent injury,'" *id.* at 1095, and "underlying ERISA violations that are self-concealing," *Laskin*, 728 F.3d at 735. Fraudulent concealment, like all fraud claims, must be plead with particularity in accordance with

17

Rule 9(b) of the Federal Rules of Civil Procedure. *See Fiene v. V & J Foods, Inc.*, 962 F. Supp. 1172, 1183–84 (E.D. Wis. 1997).

In this case, Lyon has failed to allege that the Director and Committee Member Defendants engaged in a course of conduct designed to conceal evidence of their alleged wrongdoing. With respect to the 2001 Transaction, Lyon alleges that the Director and Committee Member Defendants persuaded employees to invest in the ESOP without advising them that the stock was overvalued and that the defendants approved communications that justified the stock valuations, but intentionally omitted certain factors that resulted in the stock's overvaluation. Lyon claims that Buth, Karch, Parker, and Fantini breached their fiduciary duties by concealing that Houlihan had a conflict of interest in light of the fact that its "fees were contingent on the deal closing or that they were structured as a percentage of the purchase price" and representing that Houlihan would provide an independent fairness opinion. FAC at ¶ 154. To support his contention that the defendants took affirmative acts to conceal these breaches, Lyon asserts that Houlihan's fee arrangement was never disclosed to the employees, that Karch represented at road shows that Houlihan's Paone was independent and Buth and others failed to correct him, and that the prospectus drafted by Houlihan, Buth, Karch, Parker, and State Street did not disclose Houlihan's contingent fee, even though a prior communication to employees stated that a conflict of interest would disqualify an advisor from giving a fairness opinion. Pl.'s Resp. Br., Dkt. No. 130, at 33–34.

After the 2001 Transaction, Lyon claims the Director and Committee Member Defendants released fraudulently inflated PDC stock prices to the ESOP and the Employee Participants, failed to determine the fair market value of the stock in good faith, and put their own interests above the interests of the Employee Participants. He contends that the acts of fraud and concealment include the valuations themselves, because they were not disclosed, the inflated stock prices, and various

18

misleading statements to employees regarding the valuation process, the duties of care being exercised by the defendants, and the content of the valuation reports. *Id.* at 34–35.

Lyon's claims against the Director and Committee Member Defendants do not come within the fraud or concealment exception. Lyon fails to allege facts from which the court can infer that each Director and Committee Member Defendant "engaged in a course of conduct designed to conceal evidence of their alleged wrongdoing." *Martin*, 966 F.2d at 1093. Lyon contends that the defendants' conduct may be considered a self-concealing act or an affirmative failure to disclose. But even self-concealing acts require some "misleading, deceptive, or otherwise contrived act or scheme" designed to "mask the existence of a cause of action." *Id.* at 1094. "[F]raud claims do not receive the benefit of ERISA's six-year statute of limitations simply because they are fraud claims. There must be actual concealment . . . ." *Id.* at 1905. Concealment must occur not only in the course of the fraud itself but must also consist of "steps taken by wrongdoing fiduciaries to cover their tracks." *Id.* (quoting *Radiology Center, S.C. v. Stifel, Nicolaus & Co.*, 919 F.2d 1216, 1221 (7th Cir. 1990)). As the Seventh Circuit has recognized, "[f]raudulent concealment . . . is distinct from fraud that is concealed. . . . Otherwise the statute of limitations would not start to run in a fraud case until the fraud was exposed, even if the defendant had made no effort to conceal it beyond what is implicit in committing fraud and the plaintiff should have discovered the fraud long before its public exposure." *Wolin v. Smith Barney Inc.*, 83 F.3d 847, 851 (7th Cir. 1996), *disapproved of on other grounds by Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) (citations omitted). To hold otherwise would render the statute of repose's fraud and concealment exception meaningless.

Lyon's allegations of fraud or concealment are neither separate nor independent from the underlying wrongdoing. The acts and omissions alleged, without more, are not the kinds of "affirmative acts" of fraud or concealment that trigger the exception. In addition, Lyon fails to

19

allege with any specificity the "steps taken" by each Director and Committee Member Defendant to render the fraud or concealment exception applicable. Consequently, Counts II, III, IV, VI, and VII are barred by 29 U.S.C. § 1113's six-year statute of repose to the extent those claims are based on conduct that occurred before November 26, 2012. Because there are no allegations in the FAC related to the actions of Buth, Karch, Fantini, Parker, Tyzckowski, Scherbel, and Pace that occurred after November 26, 2012, they will be dismissed as defendants.

> **b.** **The FAC fails to state ERISA claims against the Director and Committee Member Defendants for actions taken after November 26, 2012**

The Director and Committee Member Defendants assert that the ERISA claims based on conduct that occurred after November 26, 2012, should also be dismissed because the FAC fails to allege with particularity any wrongful conduct these defendants committed. They argue that the FAC constitutes improper group pleading because it only outlines "each defendant's position and contends that their positions tie them to the alleged fraud." Defs.' Br., Dkt. No. 106, at 29.

"In order to state a claim for breach of fiduciary duty under ERISA, the plaintiff must plead '(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff.'" *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (quoting *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010)). As an initial matter, the parties dispute whether these claims are subject to the pleading requirements of Rule 8(a) or Rule 9(b). "While claims for breach of fiduciary duty under ERISA generally are not subject to heightened pleading standards, Rule 9(b) does apply where the plaintiff alleges that a defendant's breach of fiduciary duty took the form of a fraudulent act." *Rogers v. Baxter Int'l, Inc.*, 417 F. Supp. 2d 974, 984 (N.D. Ill. 2006), *aff'd*, 521 F.3d 702 (7th Cir. 2008). Because Lyon claims that the Director and Committee Defendants breached their fiduciary duty through their fraudulent acts, the court will apply Rule 9(b)'s heightened pleading requirements.

20

Rule 9(b) requires that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). A plaintiff satisfies the heightened pleading requirements of Rule 9(b) by alleging "the who, what, when, where, and how" of the fraud." *United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 779 (7th Cir. 2016) (citations omitted). When a plaintiff sues multiple defendants, the general rule is that the plaintiff must "'inform each defendant of the nature of his alleged participation in the fraud.'" *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)). The Seventh Circuit has repeatedly "rejected complaints that have 'lumped together' multiple defendants." *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2011) (quoting *Vicom*, 20 F.3d at 778).

Lyon's claims must be dismissed because the FAC's allegations fall short of the heightened pleading standards required by Rule 9(b). Lyon's complaint makes general allegations against all of the Director and Committee Member Defendants, asserting that the defendants were connected to or engaged in fraudulent misconduct based on their role as a director or committee member. Lyon does not allege what each specific defendant did and how each defendant's alleged misconduct violated ERISA. The conclusory group pleading allegations that the defendants uniformly violated their fiduciary duties do not provide fair notice to each individual defendant concerning his or her participation in the fraud. The FAC's allegations are insufficient to state claims against the Director and Committee Member defendants. Accordingly, the Director and Committee Member Defendants' motion to dismiss will be granted with respect to Counts II, III, IV, VI, and VII as they relate to events that occurred after November 26, 2012.

### 2. The FAC fails to state a federal securities fraud claim (Count XIV)

The FAC asserts a federal securities fraud claim against the following Director and Committee Member Defendants: Richards, Ferree, Arent, Gilligan, Carter, Murphy, Reardon,

21

Suwyn, and Seifert. The FAC asserts that former Committee Member Defendants Richards, Ferree, Arent, and Gilligan committed securities fraud when they "directly or indirectly, intentionally and willfully made untrue statements of a material fact and failed to disclose a material fact that rendered the Prior Committee Defendants' statements misleading." FAC at ¶ 740. The FAC alleges, in particular, that these defendants falsely represented the value of PDC stock from December 2013 to June 2015, *id.* at ¶ 716, approved the release of communications that discussed and justified these stock prices, *id.* at ¶ 717, and "omitted material facts that were necessary to render not misleading their representations relating to the value of PDC stock," *id.* at ¶ 718. The FAC alleges that these defendants omitted facts related to the deficiencies contained in the valuations performed by SRR and approved by the ESOP Trustees. *See id.* The FAC further alleges that Ferree and Gilligan engaged in similar conduct with respect to the valuations released between December 2015 and June 2017. *Id.* at ¶¶ 719–21.

The FAC also alleges that, during this time period, Director Defendants Carter, Murphy, Reardon, Suwyn, Seifert, Richards, and Gilligan were responsible for monitoring Appvion's financial performance and appointing the Trustee Defendants and Committee Member Defendants. The FAC claims that the Director Defendants "knew or in the exercise of reasonable care could have known of the misrepresentations and omissions discussed above," *id.* at ¶ 744, and "did not act in good faith in connection with their supervision or monitoring of the Trustee Defendants and the Prior Committee Defendants." *Id.* at ¶ 747.

"To state a claim for federal securities fraud, a complaint must allege '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019) (quoting *Pugh v. Tribune Co.*, 521 F.3d

22

686, 693 (7th Cir. 2008)). The Director and Committee Member Defendants contend that the federal securities fraud claim should be dismissed because the FAC fails to plead the necessary elements of a federal securities fraud claim.

Allegations of fraud are subject to heightened pleading requirements. A party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b)'s particularity standard, a complaint must 'state the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Cornielsen*, 916 F.3d at 599 (quoting *Vicom*, 20 F.3d at 777 (internal quotation marks omitted)). "A complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient." *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990)).

The PSLRA adds further requirements that must be satisfied to state a federal securities fraud claim. The PSLRA requires that complaints alleging a claim of securities fraud "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). The "required state of mind" refers to "an intent to deceive, demonstrated by knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false." *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 756 (7th Cir. 2007). The plaintiff "must create a strong inference of scienter with respect to each individual defendant." *Cornielsen*, 916 F.3d at 602 (citation omitted). A complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 313. In addition, any complaint alleging a material misstatement or omission must "specify each statement alleged to have been misleading" and the "reasons why the statement is misleading." § 78u-4(b)(1).

23

In this case, the FAC fails to state a claim for securities fraud against Committee Defendants Richards, Ferree, Arent, and Gilligan because it does not sufficiently plead scienter. The FAC alleges that the Committee was responsible for reviewing the financial statements, preparing financial projections, and reviewing and approving the inflated valuations. Although Lyon asserts that former Committee Member Defendants Richards, Ferree, Arent, and Gilligan acted "intentionally and willfully," the FAC does not contain specific allegations suggesting that they knew the valuations were artificially inflated as alleged and, despite that fact, intended to release the prices to the Employee Participants for fraudulent purposes. The fact that Richards, Ferree, Arent, and Gilligan were members of the ESOP Committee does not relieve Lyon of his obligation to sufficiently plead scienter. *See Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 432 (5th Cir. 2002) ("[A] pleading of scienter may not rest on the inference that defendants must have been aware of the misstatement based on their positions within the company."). While the FAC explains that the valuations were objectively deficient, it does not allege that Richards, Ferree, Arent, and Gilligan should have been or were actually aware of these deficiencies. *See Higginbotham*, 495 F.3d at 758 ("[T]here is a big difference between knowing about the reports . . . and knowing that the reports are false. The complaint documents the former but not the latter."). The FAC does not allege facts that support an inference of scienter. Therefore, the federal securities fraud claim against these defendants must be dismissed.

The federal securities fraud claim asserted against Director Defendants Carter, Murphy, Reardon, Suwyn, Seifert, Richards, and Gilligan fails as well. Lyon's claim against these defendants is based on a theory of "control persons" liability. Section 20(a) of the Securities Exchange Act of 1934 states that "[e]very person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person is liable . . . ." 15

24

U.S.C. § 78t(a). "[T]o state a claim under § 20(a), a plaintiff must adequately plead a primary violation of securities laws." *Pugh*, 521 F.3d at 693. Because Lyon has not adequately pled a federal securities fraud violation against the Committee Member Defendants, it follows that the FAC fails to state a claim against the Director Defendants. Accordingly, the Director and Committee Member Defendants' motion to dismiss will be granted with respect to Count XIV.

### 3. State Law Claims (Counts XIII and XVI)

The FAC alleges that the Director and Committee Member Defendants violated the Wisconsin Uniform Securities Act (WUSA), Wis. Stat. § 551.501, *et seq.*, and that the Director and Committee Member Defendants breached their fiduciary duty under Wisconsin state law by paying Appvion management and directors excessive compensation, selling the Encaps unit of Appvion in 2015, and allowing the ESOP "to repeatedly purchase shares from the ESOP Plan and Employee Participants at a price above fair market value and repeatedly bought shares on behalf of the Employee Participants at a price above the shares [sic] fair market value." FAC at ¶ 783. The defendants assert that Lyon's state law claims are completely preempted by ERISA § 502(a).

ERISA's preemption clause provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Congress enacted ERISA to "provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). ERISA's "expansive pre-emption provisions . . . are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Id.* (citations and internal quotation marks omitted); *see also Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*, 756 F.3d 1032, 1035 (7th Cir. 2014) ("ERISA . . . may contain the broadest preemption clause of any federal statute and completely occupies the field of employees' health and welfare benefits . . . ."). A state law claim is completely preempted by ERISA "(1) 'if an individual, at some point in time, could have brought his claim

under' ERISA's expansive civil enforcement mechanism . . . and (2) 'where there is no other independent legal duty that is implicated by a defendant's actions.'" *Studer v. Katherine Shaw Bethea Hosp.*, 867 F.3d 721, 724 (7th Cir. 2017) (quoting *Davila*, 542 U.S. at 210).

There is no dispute that Lyon's breach of fiduciary duty claim could have been brought under ERISA's civil enforcement provision. Indeed, Lyon has brought such a claim, alleging that the Director and Committee Member defendants breached their fiduciary duties under ERISA. Instead, Lyon argues that the state law claim for corporate breach of fiduciary duty is not preempted because it is based on a legal duty independent from ERISA. Citing *Sommers Drug Stores Co. Employee Profit Sharing Tr. v. Corrigan Enterprises, Inc.*, 793 F.2d 1456 (5th Cir. 1986), Lyon asserts that, even though the state law and ERISA duties are parallel, they are independent. Pl.'s Resp. Br., Dkt. No. 130, at 77. Lyon's claim does not implicate a legal duty independent of ERISA. Although the breach of fiduciary duty claim is brought by Lyon on behalf of the ESOP as the sole shareholder of PDC rather than by the Employee Participants in their capacities as shareholders, Lyon only seeks redress for injury to the ESOP through the recovery of plan benefits. *See* FAC at ¶ 1 (noting that Lyon "seeks to recover damages suffered by the ESOP Plan and ultimately by its employee participants"). In other words, Lyon is not pursuing damages arising from an independent legal duty between Appvion and the defendants; he only seeks to recover benefits under the plan, which is governed by ERISA. In short, Lyon's claim for corporate breach of fiduciary duty does not implicate a legal duty independent of ERISA. Count XVI is therefore completely preempted by ERISA and must be dismissed.

The defendants also assert that Lyon's claim for violations of the Wisconsin Uniform Securities Act (WUSA), Wis. Stat. § 551.501, *et seq.*, is preempted by ERISA. Regardless of whether ERISA preempts this claim, the WUSA excludes claims based on ERISA-related

26

interests. Under the WUSA, it is unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly,

> (1) To employ a device, scheme, or artifice to defraud.

> (2) To make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

> (3) To engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

Wis. Stat. § 551.501. The WUSA specifically excludes from its definition of "security" "an interest in a contributory or noncontributory pension or welfare plan subject to the Employment Retirement Income Security Act of 1974." Wis. Stat. § 551.102(28)(c). Lyon asserts that the ESOP owns shares of PDC stock and does not have an interest in a pension plan like the Employee Participants do. Yet, the PDC stock, of which the ESOP is the sole shareholder, is to be allocated to the Employee Participants' accounts in accordance with their respective interests in the ESOP. Lyon's claim is related to ESOP interests that are subject to ERISA, and thus the WUSA does not apply here. Consequently, the FAC fails to state a claim for securities fraud under Wisconsin law, and the Director and Committee Member Defendants' motion to dismiss will be granted with respect to Count XIII.

## C.    The Houlihan Defendants

The FAC asserts a number of claims against the Houlihan Defendants, which consist of Houlihan Lokey Capital, Inc. and Houlihan Lokey Financial Advisors, Inc. (collectively, Houlihan), and Louis Paone, Houlihan's managing director in 2001. Houlihan acted as a financial advisor to PDC on the sale of the PDC stock to the ESOP in 2001. After the closing of the 2001 Transaction, Houlihan was not involved with any other event alleged in the FAC. Lyon alleges the following federal claims against these defendants: knowing participation in breaches of

fiduciary duty under ERISA (Count V) and violations of ERISA § 410 and breach of fiduciary duty (Counts VI and XV). It also asserts Wisconsin state law claims of fraud (Count XVII), breach of fiduciary duty (XVIII), and negligent misrepresentation (Count XIX).

### 1. The ERISA Claims

The Houlihan Defendants assert that the ERISA claims based on conduct occurring before November 26, 2012, are barred by ERISA's six-year statute of repose, 29 U.S.C. § 1113. Lyon asserts that the statute of repose period is tolled by the fraud and concealment exception. The FAC does not allege facts that support Lyon's contention that the Houlihan Defendants engaged in fraud or concealment to warrant application of § 1113's exception. The FAC asserts that, "[i]n the fall of 2018, Lyon for the first time discovered that Houlihan was not 'independent' as had been fraudulently represented by Buth, Paul Karch and Mr. Paone, but in fact stood to gain a contingent fee of as much as 1% of the $810 million purchase price (over $8 million), but only if the ESOP transaction closed." FAC at ¶ 48. Lyon maintains that the Houlihan Defendants misrepresented their role and compensation to the ESOP and investors in the 2001 Transaction by failing to disclose that they would receive a contingent fee upon the closing of the 2001 Transaction, asserting at road shows that the sale was a good deal, and by not correcting others when they represented at road shows that the Houlihan Defendants were independent.

Though Lyon claims that the Houlihan Defendants hid their alleged conflicts from the ESOP and its investors, the FAC does not allege with specificity that the Houlihan Defendants misrepresented the significance of facts the ESOP Committee was aware of or hid facts so that the ESOP Committee could not become aware of them. Indeed, the ESOP Committee knew about Houlihan's role and compensation at the time of the 2001 Transaction, and the ESOP investors were told that Houlihan acted as PDC's advisor, Houlihan prepared a fairness opinion solely for PDC's benefit, and the ESOP was represented by a trustee and its own advisor. The FAC alleges

28

that Buth signed the February 14, 2001 and July 20, 2001 engagement letters on behalf of PDC whereby PDC engaged Houlihan and that members of the ESOP Committee were aware of Houlihan's role and compensation. FAC at ¶¶ 64, 69. In addition, the prospectus distributed to investors and employees advised that Houlihan served as a financial advisor to PDC and that Houlihan's fairness opinion was rendered to PDC's Board of Directors and may not be relied upon by any other person. *Id.* at ¶ 153. The FAC does not contain any allegations that the Houlihan Defendants engaged in "some misleading, deceptive or otherwise contrived action or scheme, in the course of committing the wrong, that is designed to mask the existence of a cause of action." *Martin*, 966 F.2d at 1094. Plaintiff's ERISA claims against the Houlihan Defendants are therefore time barred and must be dismissed.

## 2. State law claims (Counts XVII, XVIII, and XIX)

The Houlihan Defendants assert that ERISA preempts Plaintiff's state law claims. Conflict preemption under ERISA § 514(a) is an affirmative defense to a state law action. *See Rice v. Panchal*, 65 F.3d 637, 639 (7th Cir. 1995). The doctrine of conflict preemption provides that ERISA "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." *Pohl v. Nat'l Benefits Consultants, Inc.*, 956 F.2d 126, 127 (7th Cir. 1992) (quoting 29 U.S.C. § 1144(a)). In this case, Lyon's state law claims are preempted because they relate to the ESOP, an ERISA-governed plan. Lyon alleges that the Houlihan Defendants improperly encouraged investors to move their retirement savings from 401(k) accounts into the ESOP. Lyon pled the state law claims in the alternative to the ERISA counts and acknowledged that the state law claims should be dismissed if the court decides the Houlihan Defendants are ERISA fiduciaries. Lyon's state law claims are related to an ERISA-governed plan and are preempted by ERISA. Therefore, these claims must be dismissed.

29

Although ERISA preemption mandates dismissal of the state law claims, these claims fail for the independent reason that the FAC fails to state claims upon which relief can be granted. Lyon claims the Houlihan Defendants breached their fiduciary duties under Wisconsin law when they failed to disclose Houlihan Lokey's arrangement with PDC. The Houlihan Defendants assert that Lyon has failed to allege that a fiduciary relationship existed between the Houlihan Defendants and the ESOP. The Wisconsin Supreme Court has recognized that a "fiduciary relationship arises from a formal commitment to act for the benefit of another (for example, a trustee) or from special circumstances from which the law will assume an obligation to act for another's benefit." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Boeck*, 127 Wis. 2d 127, 136, 377 N.W.2d 605 (1985). In this case, Lyon has not alleged that a formal agreement or commitment between the Houlihan Defendants and the ESOP created a fiduciary relationship or that there were special circumstances from which it can be assumed that a fiduciary obligation exists. Again, the Houlihan Defendants were retained by PDC to advise PDC, not the ESOP. The prospectus referred to Houlihan Lokey as PDC's "financial advisor" and disclosed that Houlihan Lokey's preliminary fairness opinion "was rendered to the board of directors of Paperweight Development and may not be relied upon by another person." Dkt. No. 106-1 at 95. In addition, the ESOP and the Employee Participants were represented by a trustee and a third-party appraiser whose sole purpose was to act on the ESOP's behalf. The FAC contains no allegations that there was a formal commitment or there were special circumstances present to support an inference that the Houlihan Defendants had a fiduciary duty to the ESOP. Consequently, Lyon has failed to state a claim of breach of fiduciary duty under Wisconsin law.

Lyon also alleges that the Houlihan Defendants made negligent and intentional misrepresentations. To state a claim for intentional misrepresentation or fraud, the plaintiff must allege:

> (1) the defendant made a misrepresentation of fact; (2) the representation was untrue; (3) the defendant knew the representation was untrue or made it recklessly; (4) the representation was made with intent to deceive and induce the plaintiff to act upon it to the plaintiff's pecuniary damage; and (5) the plaintiff believed the representation to be true and relied on it.

*Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 70 n.38, 270 Wis. 2d 146, 677 N.W.2d 233 (citing Wis. JI—Civil 2401 (2002)). To state a claim of negligent misrepresentation under Wisconsin law, the plaintiff must allege that "(1) the defendant made a representation of fact; (2) the representation was untrue; (3) the defendant was negligent in making the representation; and (4) the plaintiff believed that the representation was true and relied on it." *Malzewski v. Rapkin*, 2006 WI App 183, ¶ 20, 296 Wis. 2d 98, 723 N.W.2d 156. The FAC fails to state a claim against the Houlihan Defendants for negligent or intentional misrepresentation because it does not identify any actionable statements made to the ESOP or omissions attributable to the Houlihan Defendants. Lyon's claims hinge on the fact that the Houlihan Defendants failed to disclose that they would receive a contingent fee upon the closing of the 2001 Transaction and that Paone asserted at road shows that the sale was a good deal. As an initial matter, "[a] statement is not a representation of fact if it expresses mere opinions on quality, value, authenticity or other matters of judgment." *Slane v. Emoto*, 582 F. Supp. 2d 1067, 1085 (W.D. Wis. 2008). Thus, Paone's qualitative statement does not constitute a statement of fact. In addition, to the extent Lyon asserts that employees and investors relied on Paone's silence at road shows where others represented that the Houlihan Defendants were independent, this contention does not support allegations of misrepresentation because Lyon cannot assert claims on behalf of the individual investors. Lyon has failed to state claims for intentional and negligent misrepresentation. In sum, Houlihan's motion to dismiss will be granted.

31

### D. The Trustee Defendants

Lyon asserts claims against the State Street Bank and Trust Company, Reliance Trust Company, Argent Trust Company, and individual employees of these companies (Trustee Defendants). The Trustee Defendants were appointed by the ESOP Committee as plan trustees. State Street was the first trustee, appointed in June 2001, and served in that role until March 2013. Reliance became the plan trustee effective April 1, 2013. The State Street Defendants are comprised of State Street Bank and Trust Company, Kelly Driscoll, and Sydney Marzeotti. Reliance subsequently sold its ESOP business unit to Argent in 2014. The Reliance Defendants are comprised of Reliance Trust Company, who acted as the trustee from April 1, 2013, to June 30, 2014, David Williams, Howard Kaplan, and Stephen Martin. Kaplan served as Senior Vice President of Reliance from 2000 to 2014, and Martin and Williams served as Vice Presidents of Reliance and later Argent. The individual defendants filed a separate motion to dismiss. The Argent Trust Company became the trustee in July 2014 and served in that capacity until November 2017. As plan trustees, the Trustee Defendants were required to retain an independent appraiser to value the PDC stock and to review and finalize those valuations.

Lyon alleges the following claims against the Trustee Defendants: breach of fiduciary duty and breach of the duty to monitor (Counts I and VI), engagement in prohibited transactions (Count IV), and co-fiduciary liability (Count VII). Lyon also alleges claims of Wisconsin securities fraud (Count XIII) and federal securities fraud (Count XIV) against Reliance, Argent, and the individual trustee defendants.

1. **ERISA Claims**

   a. **Kaplan, Martin, and Williams are not fiduciaries as defined by ERISA (Counts I, IV, VI, and VII)**

Lyon asserts a number of ERISA claims against Kaplan, Martin, and Williams. These claims must be dismissed because these defendants are not fiduciaries as defined by ERISA. A person is a fiduciary with respect to a plan to the extent

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

ERISA § 3(21)(A); 29 U.S.C. § 1002(21)(A). Courts have read the terms "discretionary authority," "discretionary control," and "discretionary responsibility" as "speaking to actual decision-making power rather than to the influence that a professional may have over the decisions made by the plan trustees she advises." *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 535 (7th Cir. 1991) (collecting cases). In this case, the FAC does not contain allegations that Kaplan, Martin, and Williams exercised or were capable of exercising the type of discretionary control that is required in order to hold an individual liable as a fiduciary for his actions. Although these defendants may have worked as senior-level executives at Reliance or Argent and were responsible for the oversight of the independent evaluator, the facts alleged in the FAC, without more, are insufficient to support a claim that Kaplan, Martin, and Williams exercised the discretionary authority required by § 3(21)(A). *See Twombly*, 550 U.S. at 555 (holding that factual allegations "must be enough to raise a right to relief above the speculative level" and must "contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action." (quoting 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, at 235–

33

36 (3d ed. 2004) (alterations omitted))).  Consequently, the individual trustee employee defendants' motion to dismiss is granted with respect to Counts I, IV, VI, and VII.

> **b.** **The ERISA claims against the State Street Defendants related to events that occurred prior to November 26, 2012, are barred by ERISA's six-year statute of repose (Counts I, IV, and VII)**

The State Street Defendants assert that the ERISA claims, as they relate to events occurring before November 26, 2012, are barred by ERISA's six-year statute of repose, 29 U.S.C. § 1113. Lyon contends that § 1113's fraud or concealment exception tolls the statute of repose period. Like his allegations against the Director and Committee Member Defendants, Lyon claims the State Street Defendants concealed Houlihan's conflict of interest and made misleading disclosures that Houlihan was independent.  To support his assertions, Lyon claims that at least State Street, Houlihan, Buth, and Karch were involved in negotiating the purchase price of the ESOP buyout but concealed Houlihan's conflicts in doing so.  He also asserts that State Street and others concealed the fact that Houlihan would receive a fee contingent on the ESOP closing, which disqualified it from giving the fairness opinion; that Karch represented at road shows that Houlihan's Paone was independent and that State Street's Driscoll and others failed to correct him; that the prospectus drafted by Houlihan, Buth, Karch, Parker, and State Street did not disclose Houlihan's contingent fee; and that State Street and others glossed over the risks of moving retirement funds from a 401(k) fund to an ESOP.  Pl.'s Resp. Br., Dkt. No. 130, at 33–34.

The FAC does not allege facts that support Lyon's contention that the State Street Defendants engaged in a course of conduct designed to conceal evidence of their alleged wrongdoing or prevent Lyon from discovering the facts relevant to his claims.  Even if the State Street Defendants knew of a purported conflict, mere silence is not enough to constitute concealment under the exception, and the FAC contains no allegations that the State Street Defendants took affirmative acts to conceal their alleged wrongdoing.  *Martin*, 966 F.2d at 1094.

34

The FAC does not allege that the State Street Defendants made any representations concerning Houlihan's contingent fee, had any role in drafting the prospectus, or had a motive to conceal Houlihan's contingent fee. In short, Lyon has failed to allege facts from which the court can infer that the State Street Defendants engaged in a course of conduct designed to conceal the alleged breaches of fiduciary duty with respect to Houlihan's purported conflict.

Lyon also asserts that the State Street Defendants released fraudulently inflated PDC stock prices to the ESOP and the Employee Participants and concealed material valuation irregularities, including the omission of pension and post-retirement liabilities. Although the FAC alleges that the State Street Defendants released the stock prices to the ESOP and the Employee Participants, it does not allege with specificity that the State Street Defendants took any acts to conceal their alleged wrongdoing. Lyon's contention that the State Street Defendants engaged in fraud or concealment is not distinct from the alleged ERISA violations. That is, Lyon has not alleged that the State Street Defendants engaged in acts separate from the substantive breach which aimed to conceal the underlying breach. Again, concealment must occur not only in the course of the fraud itself but must also consist of "steps taken by wrongdoing fiduciaries to cover their tracks." *Id.* at 1095. And although the State Street Defendants collected fees for their services, receiving payment for services rendered does not establish intent or a motive to commit fraud. *See Grove Holding Corp. v. First Wis. Nat'l Bank of Sheboygan*, 803 F. Supp. 1486, 1502 (E.D. Wis. 1992) ("Although [the defendant auditor] apparently received a fee for its services, this is not sufficient to support an inference of scienter.").

Finally, Lyon asserts that statements Driscoll made in a September 2003 Appvion newsletter distributed to employees support fraudulent concealment. In the newsletter, Driscoll described the stock valuation process and stated, among other things, that:

- State Street hired Willamette Management Associates "to assist us with our responsibilities for overseeing the plan's investment in PDC stock and for determining the appropriate value for the stock." FAC at ¶ 445.

- State Street's "oversight of PDC stock includes frequent monitoring of Appleton's financial condition and the stock's performance." *Id.*

- Throughout the oversight process "State Street and Willamette build a greater understanding of Appleton's business operations, the basis for your company's financial projections, and the risks and likelihood of meeting those projections." *Id.*

Though Lyon contends that the State Street Defendants were deficient in their oversight and evaluation of the PDC stock, there is no indication that these statements were either false or made with an intent to deceive or to conceal any fraudulent behavior.

Lyon has failed to allege facts from which the court can infer that each State Street Defendant "engaged in a course of conduct designed to conceal evidence of their alleged wrongdoing." *Martin*, 966 F.2d at 1093. Consequently, Counts I, IV, and VII are barred by 29 U.S.C. § 1113's six-year statute of repose, except to the extent those claims concern the December 2012 valuation. Because the FAC contains no specific allegations against Driscoll and Marzeotti related to events that occurred after November 26, 2012, these defendants will be dismissed.

### c. ERISA claims after November 26, 2012

#### i. ERISA claims against Reliance are not barred by 29 U.S.C. § 1113's three-year statute of limitations

Reliance contends that Lyon's ERISA-based claims against it are barred by 28 U.S.C. § 1113's three-year statute of limitations, rather than the six-year statute of limitations, because the ESOP Administrative Committee had actual knowledge of the alleged behavior prior to Lyon's appointment as the sole member of the Committee in August 2017. "Section 1113 sets a high standard for barring claims against fiduciaries prior to the expiration of the section's six-year limitations period." *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1176 (3d Cir. 1992). "'The application

36

of the three-year exception to the six-year default rule turns on the meaning of "actual knowledge," which must be distinguished from "constructive" knowledge or inquiry notice.'" *Fish v. GreatBanc Trust Co.*, 749 F.3d 671, 678 (7th Cir. 2014) (quoting *Martin*, 966 F.2d at 1086). The Seventh Circuit defines "actual knowledge" as "'knowledge of the essential facts of the transaction or conduct constituting the violation, with the caveat that it is not necessary for a potential plaintiff to have knowledge of every last detail of a transaction, or knowledge of its illegality.'" *Id.* at 679 (quoting *Rush v. Martin Petersen Co.*, 83 F.3d 894, 896 (7th Cir. 1996) (internal quotation marks and citations omitted)).

Reliance asserts that, even though Lyon did not discover the alleged violations until his appointment to the ESOP Administrative Committee, the Committee itself is the plaintiff in this case and its previous members had actual knowledge of the alleged wrongdoing. Since Lyon stands in the shoes of the Committee, such knowledge would be imputed to him. Reliance contends that determining whether the Committee had actual knowledge of alleged wrongdoing based solely on the current member's knowledge would allow for a situation where "an entire committee could know of alleged wrongdoing for years and then resign en mass to allow for the prosecution of an otherwise time-barred claim." Defs.' Reply Br., Dkt. No. 145 at 11. On the other hand, imputing actual knowledge from one party to another might "undermine one of the primary purposes of ERISA: To protect pension plans from looting by unscrupulous employers and their agents." *Landwehr v. DuPree*, 72 F.3d 726, 732–33 (9th Cir. 1995). The court need not resolve this issue, however, because, for the reasons stated below, the claims against Reliance fail.

### ii. The FAC fails to state a claim for breach of fiduciary duties against the Trustee Defendants (Count I)

Lyon alleges the Trustee Defendants breached their fiduciary duties in violation of ERISA § 404(a), §29 U.S.C. § 1104(a). "In order to state a claim for breach of fiduciary duty under

37

ERISA, the plaintiff must plead '(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff.'" *Allen*, 835 F.3d at 678 (quoting *Kenseth*, 610 F.3d at 464).

Lyon claims that the Trustee Defendants violated the duty of prudence when they failed to adequately review the deficient SRR assessment relied upon to value the PDC stock. Lyon claims that the SRR assessment was deficient because it "failed to account for certain known liabilities, including unfunded pension and post-retirement liabilities," among other reasons. FAC at ¶¶ 241, 246–318. Because the Trustee Defendants valued the PDC stock based on SRR's assessment and did not correct for these alleged errors, Lyon asserts the ESOP purchased PDC stock at inflated prices. The Trustee Defendants contend that Lyon failed to assert specific factual allegations regarding each trustee's processes in evaluating the PDC stock. Citing *Allen v. GreatBanc Trust Co.*, 835 F.3d 670 (7th Cir. 2016), Lyon asserts that it is enough "to allege facts from which a factfinder could infer that the process was inadequate." *Id.* at 678. Indeed, the Seventh Circuit has recognized that "[a] district court errs in making the 'assumption that [the plaintiff] was required to describe directly the ways in which appellees breached their fiduciary duties'; rather, it is 'sufficient for a plaintiff to plead facts indirectly showing unlawful behavior.'" *Id.* (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009)). But the FAC does not contain allegations from which the court can infer that any of the Trustee Defendants acted imprudently. The FAC contains conclusory allegations against the Trustee Defendants as a group and fails to explain how each trustee engaged in conduct that would have been imprudent at the time of the valuation or how each trustee's reliance on a particular assessment was unreasonable. In sum, Lyon has failed to state a claim of imprudence against the Trustee Defendants.

The FAC also fails to state a claim for the other alleged breaches of fiduciary duty against the Trustee Defendants. Lyon contends that the Trustee Defendants "breached the duty of loyalty

when they put their own interests in receiving fees as the trustee ahead of the Employee Participants." Pl.'s Resp., Dkt. No. 130, at 53. A breach of the duty of loyalty exists when a fiduciary has "substantial conflicts of interest" and does not act "with an eye single to the interests of the participants and beneficiaries." *Chesemore v. Alliance Holdings Inc.*, 886 F. Supp. 2d 1007, 1041 (W.D. Wis. 2012), *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016). The FAC fails to assert any action taken by the Trustee Defendants that was self-interested and resulted in a detriment to the Employee Participants. The Trustee Defendants received a fixed fee for their services, and the FAC does not allege that these defendants received an incentive to provide artificially inflated valuations. Further Lyon's assertion that the Trustee Defendants "put[] their interests of Appvion management in receiving bonuses and incentives ahead of the Employee Participants," Pl.'s Resp., Dkt. No. 130, at 53, is not supported by any factual allegations contained in the FAC.

The FAC also fails to state a claim for a breach of the duty to monitor against the Trustee Defendants. "It is well-settled that ERISA's duty to monitor applies only to a person or entity that has the power to appoint and remove an ERISA fiduciary." *Fish v. Greatbanc Tr. Co.*, No. 09 C 1668, 2016 WL 5923448, at *49 (N.D. Ill. Sept. 1, 2016) (citing *Howell v. Motorola, Inc.*, 633 F.3d 552, 573 (7th Cir. 2011)). Lyon asserts that the "Trustee Defendants, together with the CEO, were jointly responsible for appointing the members of Appvion's Board of Directors (other than the CEO himself)," and were "required to exercise prudence in the selection, retention, and maintenance of Appvion's Board." *Id.* But, as alleged in the FAC, "after January 1, 2005, no director could be elected without CEO approval and no director could be removed without CEO approval." FAC at ¶ 212. Thus, the Trustee Defendants were limited in their ability to impact the composition of the Board, which effectively gave Appvion's management control. Because the

39

FAC alleges that the Trustee Defendants essentially had no appointment or removal powers, it has failed to state a claim for breach of the duty to monitor.

Lyon further asserts that the Trustee Defendants breached the duty to disclose when they failed to take affirmative steps to correct misrepresentations in the communications the employees received regarding the valuation process. But those communications were made by Appvion and the ESOP Committee, not the Trustee Defendants, and the Trustee Defendants were not required to continuously disclose information about Appvion's financial condition. *See Hill v. The Tribune Co.*, No. 05 C 2602, 2006 WL 2861016, at *20 (N.D. Ill. Sept. 29, 2006), *aff'd sub nom. Pugh*, 521 F.3d 686 ("For plans involving investment in the employer's stock, there is no general duty to continuously disclose information about the financial condition of the employer."); *Herrington v. Household Int'l., Inc.*, No. 02 C 8257, 2004 WL 719355, at *8 (N.D. Ill. Mar. 31, 2004) ("The disclosure standard urged by Plaintiffs in this case is too broad as it would require defendants to continuously gather and disclose nonpublic information bearing some relation to the plan sponsor's financial condition. Such a burdensome and unprecedented level of disclosure has not been approved by the Seventh Circuit . . . ."). Accordingly, the FAC fails to state a claim for beach of the duty to disclose.

Finally, Lyon's claim that the Trustee Defendants did not act in accordance with plan documents fails because Lyon did not identify specific provisions in the plan documents that he believes the Trustee Defendants did not follow. Consequently, the Trustee Defendants' motions to dismiss are granted with respect to Count I.

### iii.    The FAC fails to state a claim of co-fiduciary liability against the Trustee Defendants (Count VII)

Lyon alleges the Trustee Defendants are liable for the breaches of their co-fiduciaries.  A plan fiduciary shall be liable for a breach of the fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

ERISA § 405, 29 U.S.C. § 1105.  The FAC alleges that the Trustee Defendants violated § 405 because they failed to properly monitor Willamette and SRR to ensure the share prices they calculated were reasonably accurate and that their processes and information were reasonably reliable.  *See* FAC at ¶ 618.  But Lyon cannot assert a claim under § 405 against the Trustee Defendants on this basis as he concedes that Willamette and SRR are not ERISA fiduciaries.

Lyon also claims that the Trustee Defendants are liable for the breaches and violations of the Director and Committee Member Defendants because the Trustee Defendants were aware of their breaches and violations but made no effort to remedy them.  *Id.* at ¶ 619.  "It is well-established that actual knowledge by a fiduciary is required in order for co-fiduciary liability to attach under § 405(a)."  *Keach v. U.S. Tr. Co.*, 240 F. Supp. 2d 840, 844 (C.D. Ill. 2002) (citing *Donovan*, 716 F.2d at 1467 ("Section 405 does not impose vicarious liability—it requires actual knowledge by the co-fiduciary.")); *Ellis v. Rycenga Homes, Inc.*, 484 F. Supp. 2d 694, 712 (W.D. Mich. 2007) (collecting cases) ("Given the clarity of the statutory language in section 405, the courts hold that actual knowledge is required and that constructive knowledge will not do.").

41

Although the FAC contains a conclusory assertion that the Trustee Defendants knew of the Director and Committee Member Defendants' breaches and failed to remedy those breaches, it identifies no specific facts from which it can be inferred that the Trustee Defendants had actual knowledge of any breaches by the Director and Committee Member Defendants or knowingly participated or concealed an act or omission by those individuals that they knew to be a breach. "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). The FAC fails to state a claim against the Trustee Defendants for co-fiduciary liability under § 405. Accordingly, the Trustee Defendants' motions to dismiss will be granted with respect to Count VII.

### iv. The FAC fails to state a prohibited transaction claim (count IV)

Lyon alleges that the Trustee Defendants' December 2012 valuations constitute prohibited transactions in violation of ERISA § 406, 29 U.S.C. § 1106. Section 406(a)(1) provides that a plan fiduciary shall not cause the plan to engage in a transaction if he knows or should know that the transaction constitutes a direct or indirect "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan" or "acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a)." §§ 406(a)(1)(D), (E). "A person cannot 'cause' a prohibited transaction unless he or she 'exercise[s] discretionary authority or control' over whether the plan enters into the transaction." *Fish*, 2016 WL 5923448, at *60 (quoting *Corrigan*, 883 F.2d at 352 ("The jury's finding that the defendants did not exercise discretionary authority or control over the trustees' decision to sell the trust stock is also a finding that they did not 'cause' the plan to enter into such a transaction.")).

The FAC asserts that the "Trustee Defendants were fiduciaries who caused the ESOP Plan to purchase the Prior Committee Defendants' and the Director Defendants' stock at artificially

42

high stock prices. As such, the Trustee Defendants caused the ESOP Plan to engage in prohibited transactions . . . ." FAC at ¶ 590. But the Trustee Defendants' valuations did not cause or require the ESOP to engage in a transaction. While the valuations by the Trustee Defendants may have been necessary for the transaction to occur, the FAC does not contain any allegations that the Trustee Defendants had discretionary authority to demand that the transaction take place. Instead, the ESOP was ultimately responsible for purchasing stock from PDC or repurchasing shares at the price set by the Trustee Defendants as required by the Plan. To the extent Lyon claims that the directors and former committee members received incentive payments, that claim is not actionable because the executive compensation-related transactions did not involve any Plan assets. Accordingly, the FAC does not state a claim under § 406(a).

Lyon also claims the Trustee Defendants violated § 406(b). Under § 406(b), a plan fiduciary shall not "deal with the assets of the plan in his own interest or for his own account" or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." §§ 406(b)(1), (3). The FAC does not allege that the Trustee Defendants dealt with the Plan's assets for their own interest or received any consideration from a party dealing with the Plan in connection with a transaction involving the Plan's assets. The FAC does not state a claim under §§ 406(b)(1) or (3). Consequently, the FAC fails to state a claim that the Trustee Defendants engaged in a prohibited transaction, and the Trustee Defendants' motions to dismiss will be granted with respect to Count IV.

> ### v. The indemnification provisions contained in the agreements between Appvion and the Trustee Defendants is permissible (Count VI)

Lyon seeks a declaratory judgment that the indemnification provisions contained in the agreements between Appvion and the Trustee Defendants is void under ERISA § 410(a), 29 U.S.C. 1110(a). Section 410(a) provides that any provision in an agreement which purports to relieve a

43

fiduciary from liability for any duty shall be void as against public policy. § 410(a). The Department of Labor has interpreted this section to allow indemnification agreements that leave the fiduciary "fully responsible and liable" for breaches of a fiduciary obligation and finds that any arrangement for indemnification of a plan fiduciary by a plan is void. *See* 29 C.F.R. § 2509.75-4. Lyon contends that any agreements requiring Appvion to indemnify the Trustee Defendants are void.

The indemnification provisions contained in the agreements between Appvion and the Trustee Defendants are entirely permissible, as each agreement was entered into between each Trustee Defendant and Appvion, not the Plan. Indemnification provisions are enforceable where the provision "permits recourse by the [indemnitor] in the case of a breach of a fiduciary obligation by such fiduciary." § 410(a). Each of the indemnification provisions provide that the indemnitor (Appvion) has no duty to indemnify the fiduciary (the respective Trustee Defendant) in instances where the fiduciary has breached its fiduciary duties. *See* State Street Indemnification Agreement, Dkt. No. 98-4 at 3–4; Amendment to State Street Trust Agreement, Dkt. No. 98-5, at 4; Reliance Trust Agreement, Dkt. No. 1115-1, at 15; Argent Trust Agreement, Dkt. No. 102-2 at 5. And a fiduciary can be indemnified where it succeeds in defending itself against breach of fiduciary duty claims. *See Packer Eng'g, Inc. v. Kratville*, 965 F.2d 174, 176 (7th Cir. 1992) ("How could anyone take seriously the proposition that ERISA forbids the indemnification of fiduciaries wrongly accused of misconduct, when ERISA itself allows a court to award fees to the prevailing side?"). In short, the indemnification provisions in the agreements between the Trustee Defendants and Appvion are permissible. Therefore, the Trustee Defendants' motions to dismiss are granted with respect to Count VI.

2. **The FAC fails to state a federal securities fraud claim against Reliance, Argent, Kaplan, Martin, and Williams (Count XIV)**

Lyon asserts a federal securities fraud claim against Reliance, Argent, Kaplan, Martin, and Williams. As noted previously, to state a federal securities fraud claim, "a complaint must allege '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *Cornielsen*, 916 F.3d at 598 (quoting *Pugh*, 521 F.3d at 693). The plaintiff "must create a strong inference of scienter with respect to each individual defendant." *Id.* at 602 (citation omitted). A complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 313. With respect to Reliance and Argent, the FAC fails to meet "the PSLRA's clear statutory prerequisites 'that the untrue statements or omissions be set forth with particularity as to "the defendant" and that scienter be pleaded with regard to "each fact or omission" sufficient to give "rise to a strong inference that the defendant acted with the required state of mind."'" *Id.* at 600 (quoting *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 363 (5th Cir. 2004)). The FAC states that Reliance and Argent "directly or indirectly, intentionally and willfully made untrue statements of a material fact and failed to disclose a material fact that rendered their statements misleading." FAC at ¶¶ 735–36. But Lyon does not identify the particular fraudulent or untrue statements each defendant made. In addition, Lyon has not alleged facts from which the court can plausibly infer scienter. The FAC fails to plead what Reliance or Argent stood to gain from their alleged actions, beyond the collection of fees associated with their work. Standing alone, the court cannot plausibly infer that Reliance or Argent was motivated to deliberately engage in a scheme to commit fraud. Consequently, the FAC fails to

45

state a claim for federal securities fraud against Reliance and Argent, and their motions to dismiss will be granted with respect to Count XIV.

As to Kaplan, Martin, and Williams, the FAC fails to state a claim for federal securities fraud against them because it does not sufficiently plead scienter. "A complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient." *Cornielsen*, 916 F.3d at 599 (quoting *Sears*, 912 F.2d at 893). Here, the FAC does not identify any actions by the individual trustee employee defendants, and instead relies on their positions with their employers as the basis for this claim. Therefore, the individual trustee defendants' motion to dismiss is granted with respect to Count XIV.

### 3. The FAC fails to plead a claim for securities fraud under Wisconsin law against Reliance, Argent, Kaplan, Martin, and Williams (Count XIII)

The FAC alleges that Reliance, Agent, Kaplan, Martin, and Williams violated the Wisconsin Uniform Securities Act (WUSA), Wis. Stat. § 551.501, *et seq.* As explained previously, the WUSA does not apply to claims based on interests in a contributory or noncontributory pension or welfare plan subject to ERISA. *See* Wis. Stat. § 551.102(28)(c). Accordingly, Lyon's claim for securities fraud under Wisconsin law against these defendants will be dismissed.

### E. The Independent Appraiser Defendants

The FAC asserts a number of claims against the Independent Appraiser Defendants, which consist of Willamette as well as SRR, Scott Levine, Aziz El-Tahch, and Robert Socol (the SRR Defendants). These defendants were retained by the Trustee Defendants to conduct semi-annual valuations of the PDC stock. Willamette served as the first independent appraiser for the ESOP, performing its first evaluation of the PDC stock in 2001 and its last in December 2004. Levine, El-Tahch, and Socol all worked at Willamette before joining SRR in 2004. The SRR Defendants evaluated the PDC stock from June 2005 through June 2017. Lyon asserts the following claims

46

against the Appraiser Defendants: knowing participation in breaches of fiduciary duty under ERISA (Count VIII) as well as Wisconsin state law claims of fraud (Count IX) and negligent misrepresentation (Count XI). Lyon also asserts a securities fraud claim under Wisconsin law (Count XIII) and a federal securities fraud claim (Count XIV) against the SRR Defendants.

### 1. ERISA claims

#### a. The ERISA claims against Willamette related to events that occurred prior to November 26, 2012 are barred by ERISA's six-year statute of repose (Count VIII)

The last action Lyon alleges against Willamette took place in 2004, the last date of any valuation performed by Willamette. Willamette asserts that the ERISA claims against it are barred by ERISA's six-year statute of repose, 29 U.S.C. § 1113. Lyon maintains that the statute of repose period is tolled by the fraud and concealment exception. He alleges that Willamette's Rick Braun failed to correct a representation that Karch made in a road show presentation regarding Houlihan's independence; that Willamette and others concealed the fact that Houlihan was receiving a contingent fee; and that Willamette glossed over the risks of moving retirement funds from a 401(k) fund to an ESOP. Pl.'s Resp. Br., Dkt. No. 130, at 33–34.

The FAC does not allege facts that support Lyon's assertion that Willamette engaged in fraud or concealment to warrant application of § 1113's exception. Even if Willamette knew of a purported conflict with Houlihan, which the FAC does not allege, mere silence is not enough to constitute concealment under the exception. *See Martin*, 966 F.2d at 1094. In addition, while Lyon asserts that Willamette knowingly participated in a prohibited transaction by helping negotiate the price, helping set the initial share price, advising that the transaction was fair to the ESOP, and ultimately approving the transaction, Lyon's claims of fraud or concealment are not distinct from the ERISA violations. In other words, Lyon has not alleged that Willamette engaged in acts separate from the substantive breach to conceal the underlying breach. *See Wolin*, 83 F.3d

47

at 851–52.  Because Lyon has not alleged that Willamette "engaged in a course of conduct designed to conceal evidence of [its] alleged wrongdoing," *Martin*, 966 F.2d at 1093, Count VIII is barred by the statute of repose and will be dismissed.

### b. The FAC fails to plead a claim of knowing participation in a breach of fiduciary duty claim against the SRR Defendants (Count VIII)

Lyon claims the SRR Defendants knowingly participated in breaches of fiduciary duty pursuant to ERISA § 502(a)(3).  In particular, he alleges that the SRR Defendants knew that the Trustee Defendants relied on their opinions in setting the fair market value of PDC stock and knew that the Trustee Defendants failed to conduct appropriate diligence and breached their fiduciary duties to the ESOP.  FAC at ¶ 624.  The SRR Defendants assert that a nonfiduciary's knowing participation in a fiduciary breach does not give rise to a § 502(a)(3) claim.  In *Mertens v. Hewitt Associates*, the Supreme Court noted, in dicta, that ERISA § 502(a)(3) does not provide a private cause of action against a nonfiduciary for knowing participation in a fiduciary's breach of duty under § 404.  508 U.S. 248, 253–54 (1993).  The Seventh Circuit subsequently affirmed the dismissal of a claim against a nonfiduciary for knowing participation in a breach of fiduciary duty in *Reich v. Continental Casualty Co.*, 33 F.3d 754 (7th Cir. 1994), observing that "[a] majority of the Supreme Court has made clear its view that Congress's omission to impose on nonfiduciaries a duty not to participate knowingly in an ERISA fiduciary's breach of fiduciary obligations was not inadvertent."  *Id.* at 757.

Citing *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000), Lyon contends that § 502(a)(3) allows equitable relief against nonfiduciaries who knowingly participate in breaches of fiduciary duty by plan fiduciaries.  In *Harris*, the Supreme Court addressed whether ERISA authorized a cause of action against a nonfiduciary for engaging in a transaction prohibited under ERISA § 406.  The Court concluded that ERISA did allow a claim

48

against a nonfiduciary party in interest who knowingly participated in a transaction prohibited under § 406. *Id.* at 241. Although the Court did not consider whether § 502(a)(3) authorizes a claim against a nonfiduciary for participating in a fiduciary breach under ERISA § 404, Lyon asserts that the case contains "broad language" that can support a claim for a nonfiduciary's knowing participation in breaches of fiduciary duties. Pl.'s Resp. Br., Dkt. No. 130, at 64.

The Seventh Circuit has not yet addressed whether ERISA authorizes claims against a nonfiduciary for knowing participation of breaches of fiduciary duty following the Supreme Court's decision in *Harris*, but other circuit courts that have addressed the issue have continued to find that a nonfiduciary's knowing participation in a breach of fiduciary duty is not actionable under § 502(a)(3). *See Renfro v. Unisys Corp.*, 671 F.3d 314, 325 (3d Cir. 2011) ("[W]e find *Mertens* persuasive and hold that 29 U.S.C. § 1132(a)(3) does not authorize suit against nonfiduciaries charged solely with participating in a fiduciary breach."); *Gervosa v. Savasta & Co.*, 329 F.3d 317, 322–23 (2d Cir. 2003) (holding that a cause of action against a nonfiduciary for knowing participation in a breach of fiduciary duty would be an impermissible judicially-created interstitial remedy under Supreme Court precedent); *Gordon v. Cigna Corp.*, 890 F.3d 463, 477 n.2 (4th Cir. 2018) (expressing doubt that a cause of action against a nonfiduciary for participation in a breach of fiduciary duties exists). The court finds the reasoning of these cases persuasive and concludes that ERISA does not authorize a claim for knowing participation in a § 404 fiduciary breach. Lyon's claim against the SRR Defendants is for a knowing participation in the Trustee Defendants' breach of fiduciary duty. Because ERISA does not authorize this cause of action, Count VIII must be dismissed.

## 2. The FAC fails to state a claim for federal securities fraud against the SRR Defendants (Count XIV)

Lyon asserts a federal securities fraud claim against the SRR Defendants. As noted previously, to state a claim for federal securities fraud, "a complaint must allege '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *Cornielsen*, 916 F.3d at 598 (quoting *Pugh*, 521 F.3d at 693). The FAC fails to plead scienter. Lyon alleges that the SRR Defendants knew that the valuation analyses contained significant flaws and irregularities. But these allegations are insufficient to infer scienter or an intent to deceive. Absent specific allegations regarding an intent to deceive, the court cannot infer that the SRR Defendants intended to deceive the ESOP without receiving any benefit from the alleged deception. The fact that the SRR Defendants received a fix fee in connection with SRR's services, without more, does not establish the requisite intent. *See Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) ("Typically, an accountant's interest in fees, standing alone, will not suffice to establish fraudulent intent."). Accordingly, the SRR Defendants' motion to dismiss will be granted with respect to Count XIV.

### 3. State Law Claims

#### a. ERISA preempts the negligent misrepresentation and fraud claims (Counts IX and XI)

The Appraiser Defendants assert that the state law claims of negligent misrepresentation and fraud are preempted by ERISA. ERISA supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" created by any employer engaged in interstate commerce. ERISA § 514(a), 29 U.S.C. § 1144(a); *see also Pohl*, 956 F.2d at 127. In

this case, Lyon's state law claims against the Appraiser Defendants are preempted because they relate to the ESOP, an ERISA-governed plan.

Although Lyon asserts that his claims are akin to "garden variety" professional malpractice claims, he has not asserted professional malpractice claims against the Appraiser Defendants. Pl.'s Resp. Br., Dkt. No. 130, at 72. Instead, Lyon's claims are premised on "Defendants' breaches of fiduciary duties and fraudulent misrepresentations and omissions to the ESOP Plan." FAC at ¶ 2. Lyon alleges that the Appraiser Defendants made misrepresentations that induced the ESOP Plan and the Employee Participants to purchase shares of PDC stock and that the Appraiser Defendants intentionally or negligently overvalued the shares of PDC stock, causing the Plan to overpay for company stock. But the Appraiser Defendants' role as appraisers stems from the Plan. The FAC acknowledges that "[u]nder the Trust Documents, the Trustee Defendants were required to retain an 'Independent Appraiser,' as described by Section 401(a)(28)(C) of the Internal Revenue Code, to value PDC stock" and that the valuations were reviewed and finalized "in accordance with Section 3(18)(B) of ERISA, which requires the fair market value to be determined in good faith by the trustee." FAC at ¶ 186. It thus follows that the Appraiser Defendants' engagement arose out of the ERISA fiduciary obligations to have the Plan's stock holdings valued by an independent appraiser and that their conduct related directly to the Plan's administration. Lyon's claim, at its core, relates to an ESOP plan. Allowing these state law claims to proceed would create a cause of action that supplements what ERISA already provides. Therefore, Lyon's state law claims of negligent misrepresentation and fraud against the Appraiser Defendants are preempted by ERISA and must be dismissed.

**b.  The FAC fails to state a claim for securities fraud under Wisconsin law against the SRR Defendants (Count XIII)**

The FAC alleges that the SRR Defendants violated the Wisconsin Uniform Securities Act (WUSA), Wis. Stat. § 551.501, *et seq.* As explained previously, the WUSA does not apply to claims based on interests in a contributory or noncontributory pension or welfare plan subject to ERISA. *See* Wis. Stat. § 551.102(28)(c). Accordingly, Lyon's claim for securities fraud under Wisconsin law will be dismissed.

## CONCLUSION

For these reasons, the former Director and Committee Member Defendants and the uninvolved spouses' motion to dismiss (Dkt. No. 105), the Houlihan Defendants' motion to dismiss (Dkt. No. 109), the State Street Defendants' motion to dismiss (Dkt. No. 96), Reliance's motion to dismiss (Dkt. No. 114), Argent's motion to dismiss (Dkt. No. 101), the Individual Trustee Defendants' motion to dismiss (Dkt. No. 112), Willamette's motion to dismiss (Dkt. No. 94), and the SRR Defendants' motion to dismiss (Dkt. No. 107) are **GRANTED**. The FAC fails to state a claim upon which relief can be granted and will be dismissed for that reason pursuant to Federal Rule of Civil Procedure 12(b)(6). The dismissal is without prejudice, however, and Lyon will be allowed thirty days from the date of this order in which to file an amended complaint curing the defects noted herein. If no amended complaint is filed within the time allowed, the case will be dismissed.

**SO ORDERED** at Green Bay, Wisconsin this 27th day of July, 2020.

s/ William C. Griesbach
William C. Griesbach
United States District Judge