**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
<u>**GREEN BAY DIVISION**</u>

| | | |
|---|---|---|
| Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan, by and through Grant Lyon in his capacity as the ESOP Administrative Committee of Appvion, Inc., | ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.: 18-cv-01861 |
| v. | ) ) | |
| Buth, *et al*., | ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT AGAINST ARGENT TRUST COMPANY

**Table of Contents**

I.      INTRODUCTION .................................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................... 1

III.    LEGAL ARGUMENT .......................................................................................... 2

        A.      Plaintiff's Claims Are Timely ................................................................. 2

                1.      Argent's Argument That the Claims Accrued in 2001 Is
                        Illogical. .................................................................................... 2
                2.      The Six-Year Statute of Limitations Applies ............................. 4

        B.      Plaintiff Has Stated a Claim for Breach of Fiduciary Duty. ................... 6

                1.      Rule 9(b) Does Not Apply Unless an Allegation is Based on
                        Fraud. ......................................................................................... 7
                2.      Argent Failed to Act Prudently in Connection With the
                        Valuations. .................................................................................. 8
                3.      Argent Breached the Duty of Loyalty ....................................... 17
                4.      Argent Acted Imprudently in Approving the Encapsys
                        Transaction. ............................................................................... 18
                5.      Argent Failed to Remedy Breaches of Predecessor
                        Fiduciaries. ............................................................................... 20
                6.      Argent's Breaches of Fiduciary Duty Caused Harm to the
                        ESOP. ....................................................................................... 21
                7.      Plaintiff's Claims are Plausible ................................................ 21

        C.      Argent Caused the ESOP to Engage in Prohibited Transactions ......... 22

                1.      The Transactions at Issue Were Prohibited. ............................. 24
                2.      Argent "Caused" the Transactions. .......................................... 25

        D.      The SAC States a Claim for Co-Fiduciary Liability ............................ 25

        E.      Plaintiff Has Stated a Claim for Securities Fraud Against Argent. ...... 27

                1.      Argent Made Misrepresentations and Omitted Material
                        Facts. ........................................................................................ 28
                2.      Argent Acted with Scienter ...................................................... 29

        F.      Incorporation by Reference of Plaintiff's Other Arguments. .............. 30

**TABLE OF AUTHORITIES**

Page(s)

Cases

*Acosta v. Saakvitne*,
   355 F.Supp. 3d 908 (D. Haw. 2019) .................................................................................. 25
*Acosta v. Vinoskey*,
   310 F.Supp. 3d 662 (W.D. Va. 2018) ............................................................................ 9, 11
*Adamczyk v. Lever Bros. Co., Div. of Conopco*,
   991 F.Supp. 931 (N.D. Ill. 1997) ...................................................................................... 17
*Allen v. GreatBanc Trust Co.*,
   835 F.3d 670 (7th Cir. 2016) ................................................................................. 7, 17, 24
*Armstrong v. Amsted Indus., Inc.*,
   No. 01 C 2963, 2004 WL 1745774 (N.D. Ill. July 30, 2004) ............................................ 25
*Biglands v. Raytheon Employee Sav. & Inv. Plan*,
   801 F.Supp. 2d 781 (N.D. Ind. 2011) .................................................................................. 4
*Brundle v. Wilmington Trust, N.A.*,
   919 F.3d 763 (4th Cir. 2019) ................................................................................. 8, 15, 16, 21
*Bussian v. RJR Nabisco, Inc.*,
   223 F.3d 286 (5th Cir. 2000) ............................................................................................ 17
*Carr v. Int'l Game,*
   *Tech.*, 770 F.Supp. 2d 1080 (D. Nev. 2011) ..................................................................... 26
*Castle v. Cohen*,
   676 F.Supp. 620 (E.D. Pa. 1987), *aff'd and remanded*, 840 F.2d 173 (3d Cir. 1988) .............. 6
*Chesemore v. Alliance Holdings, Inc.*,
   886 F.Supp. 2d 1007 (W.D. Wisc. 2012) ........................................................................... 23
*Chu v. Sabratek Corp.*,
   100 F.Supp.2d 815 (N.D. Ill. 2000) .................................................................................. 29
*Dist. 65 Ret. Tr. for Members of Bureau of Wholesale Sales Representatives v. Prudential Sec., Inc.*,
   925 F.Supp. 1551 (N.D. Ga. 1996) ...................................................................................... 5
*Donovan v. Bierwirth*,
   680 F.2d 263 .......................................................................................................................... 8
*Donovan v. Cunningham*,
   716 F.2d 1455 (5th Cir. 1983) ....................................................................................... 8, 27
*Donovan v. Schmoutey*,
   592 F.Supp. 1361 (D. Nev. 1984) ........................................................................................ 8
*Eckelkamp v. Beste*,
   201 F.Supp. 2d 1012 (E.D. Mo.), *aff'd*, 315 F.3d 863 (8th Cir. 2002) .................................. 15
*Ellis v. Rycenga Homes, Inc.*,
   484 F.Supp. 2d 694 (W.D. Mich. 2007) ............................................................................. 27
*Feinberg v. T. Rowe Price Group, Inc.*,
   No. CV MJG-17-0427, 2018 WL 3970470 (D. Md. Aug. 20, 2018) ............................... 20, 26

Case 1:18-cv-01861-WCG   Filed 02/12/21   Page 3 of 38   Document 213

*Fernandez v. K-M Indus. Holding Co.*,
   585 F.Supp. 2d 1177 (N.D. Cal. 2008) ......................................................... 3, 20
*Fish v. GreatBanc Trust Co.*,
   749 F.3d 671 (7th Cir. 2014) .................................................................... 4, 8
*Fish v. Greatbanc Trust*,
   No. 09 C 1668, 2016 U.S. Dist. LEXIS 137351 (N.D.Ill. Sept. 1, 2016) ............... 12, 13, 14
*Fleming Cardiovascular, P.A. v. Comm'r of Internal Revenue*,
   110 T.C.M. (CCH) 481 (T.C. 2015) ............................................................ 24
*Free v. Briody*,
   732 F.2d 1331 (7th Cir. 1984) .................................................................. 26
*Gruby v. Brady*,
   838 F.Supp. 820 (S.D.N.Y. 1993) .............................................................. 3
*Higginbotham v. Baxter Int'l, Inc.*,
   495 F.3d 753 (7th Cir. 2007) ................................................................... 29
*In re Cardinal Health Inc. Securities Litigation*,
   426 F.Supp.2d 688 (S.D.Ohio 2006) .......................................................... 29
*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
   284 F.Supp. 2d 511 (S.D. Tex. 2003) ....................................................... 8, 26
*In re Morgan Stanley ERISA Litig.*,
   696 F.Supp. 2d 345 (S.D.N.Y. 2009) .......................................................... 26
*In re NationsMart Corp. Securities Litigation*,
   130 F.3d 309 (8th Cir.1997) .................................................................... 7
*In re Polaroid ERISA Litigation*,
   362 F.Supp.2d 461 (S.D.N.Y. 2005) ........................................................... 26
*Intel Corp. Investment Policy Comm. v. Sulyma*,
   140 S.Ct. 768 (2020) ............................................................................ 4
*Kalda v. Sioux Valley Physician Partners, Inc.*,
   481 F.3d 639 (8th Cir.2007) .................................................................... 18
*Keach v. U.S. Tr. Co.*,
   240 F.Supp. 2d 840 (C.D. Ill 2002) ........................................................... 27
*Keach U.S. Trust Co.*,
   419 F.3d 626 (7th Cir. 2005) ................................................................... 9
*Kennedy v. Venrock Associates*,
   348 F.3d 584 (7th Cir. 2003) ................................................................... 7
*Kenseth v. Dean Health Plan, Inc.*,
   610 F.3d 452 (7th Cir. 2010) ............................................................... 7, 18
*L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc.*,
   558 F.Supp. 2d 378 (E.D.N.Y. 2008), aff'd, 710 F.3d 57 (2d Cir. 2013) ............... 3
*Landwehr v. DuPree*,
   72 F.3d 726 (9th Cir. 1995) ............................................................... 4, 5, 6
*Leigh v. Engle*,
   727 F.2d 113 (7th Cir. 1984) ................................................................... 17
*Lockheed v. Spink*,
   517 U.S. 882 (1996) ............................................................................. 25
*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*,
   238 F.3d 363 (5th Cir.2001) .................................................................... 7

iii

*Martin v. Consultants & Administrators, Inc.*,
  966 F.2d 1078 (7th Cir. 1992) .................................................................... 2, 3
*McLemore v. Regions Bank*,
  682 F.3d 414 (6th Cir. 2012) ........................................................................ 6
*Muehlgay v. Citigroup Inc.*,
  649 Fed.Appx. 110 (2nd Cir. 2016)............................................................... 4
*Pension and Employee Stock Ownership Plan Administrative Committee of Community
  Bancshares, Inc., o/b/o Community Bancshares, Inc. v.* Patterson,
  547 F.Supp.2d 1230 (N.D. Ala. 2008)........................................................... 6
*Perez v. Bruister*,
  823 F.3d 250 (5th Cir. 2016) ....................................................................... 17
*Perez v. First Bankers Trust Servs., Inc.*,
  210 F.Supp.3d 518 (S.D.N.Y. 2016)............................................................ 17
*Perez v. First Bankers Trust Servs., Inc.*,
  No. CV124450MASDEA, 2017 WL 1232527 (D.N.J. Mar. 31, 2017) ................. 17
*Phillips v. Alaska Hotel & Rest. Employees Pension Fund*,
  944 F.2d 509 (9th Cir. 1991) ........................................................................ 3
*Pizzella v. Vinoskey*,
  409 F.Supp. 3d 473 (W.D. Va. 2019) ........................................................... 15
*Pugh v. Tribune Co.*,
  521 F.3d 686 (7th Cir. 2008) ...................................................................... 29
*Puskala v. Koss Corp.*,
  799 F.Supp. 2d 941 (E.D. Wis. 2011)........................................................... 30
*Schacht v. Brown*,
  711 F.2d 1343 (7th Cir. 1983) ...................................................................... 5
*Silverman v. Mut. Ben. Life Ins. Co.*,
  138 F.3d 98 (2d Cir. 1998)......................................................................... 20
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)................................................................................... 29
*Tinley v. Gannet Co., Inc.*,
  55 Fed.Appx. 74 (3rd Cir. 2003)................................................................... 4
*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ...................................................................... 7


Statutes


26 U.S.C. § 401(28)(A) and (C) .................................................................... 24
29 U.S.C. 1113 ............................................................................................. 3
29 U.S.C. § 1002(14)(E) and (H).................................................................. 24
29 U.S.C. § 1002(18)(B)................................................................................ 8
29 U.S.C. § 1104(a)....................................................................................... 8
29 U.S.C. § 1104(a)(1)............................................................................. 8, 17
29 U.S.C. § 1106(a)(1)............................................................................. 8, 22
29 U.S.C. § 1107(d)(6)................................................................................. 24
29 U.S.C. § 1113(2)................................................................................... 4, 5
§ 1105(a)(1) and (3) ............................................................................... 26, 27
§ 1105(a)(2) ............................................................................................... 25

Case 1:18-cv-01861-WCG   Filed 02/12/21   Page 5 of 38   Document 213

Rules

Fed. R. Civ. P. 9(b) ................................................................................................ 7, 26, 29

Other Authorities

Restatement (Second) of Torts § 525 ................................................................................ 29
Restatement (Second) of Trusts § 200 ............................................................................... 5
Restatement (Second) of Trusts § 223 ............................................................................... 6
Restatement (Third) of Trusts § 107 ................................................................................. 5

# I.    INTRODUCTION

As trustee from July 2014 until Appvion filed for bankruptcy, Argent adopted increasingly unreliable valuations even as Appvion's financial condition deteriorated and Appvion was forced to sell off its most profitable division, then ultimately file for bankruptcy. After Mr. Lyon became a fiduciary of the ESOP in August 2017, he met with Argent's Stephen Martin who admitted to many of the deficiencies in the valuations alleged in the SAC. Argent failed to follow any kind of prudent process and knowingly allowed Stout to use inflated projections, exclude material amounts of pension debt, and otherwise improperly value PDC's stock. Using these inflated valuations, Argent improperly continued to invest in Appvion's stock after it should have been worthless.

Argent's Motion to Dismiss now argues that Plaintiff's claims against Argent accrued in 2001 – some 13 years before Argent became the ESOP's trustee. This argument, and Argent's other arguments, are merely attempts to evade responsibility for Argent's clear breaches of fiduciary duty and securities fraud and are not supported by the law.

# II.    FACTUAL BACKGROUND

Argent became the ESOP's trustee 1 July 2014, when Argent purchased Reliance's ESOP division. SAC ¶603. The Reliance employees who were working on the PDC stock valuations became Argent employees. SAC ¶260. Argent determined the following stock values:

| Valuation Date | Share Price |
|---|---|
| 06/30/2014 | $ 16.30 |
| 12/31/2014 | $ 11.00 |
| 06/30/2015 | $ 12.90 |
| 12/31/2015 | $ 12.30 |
| 06/30/2016 | $ 13.70 |
| 12/31/2016 | $ 10.35 |
| 06/30/2017 | $ 6.85 |

SAC ¶208. Argent used those prices to purchase stock as described in Appendices A and B to the SAC. Argent also used the 31 December 2013 share valuation (at $16.25 per share) to purchase

Case 1:18-cv-01861-WCG   Filed 02/12/21   Page 7 of 38   Document 213

stock as of June 2013. SAC ¶607.

In doing so, Argent acted imprudently as described herein. Argent had an obligation to act solely in the interest of plan participants and to exercise its duties with the "care, skill, prudence, and diligence" of an objectively prudent person and it failed to do so in breach of its fiduciary duties. Because Argent's misrepresentations and omissions were made in connection with the purchase and sale of securities, this also constitutes actionable securities fraud.

III.   **LEGAL ARGUMENT**

   A.   **Plaintiff's Claims Are Timely**

   1.   **Argent's Argument That the Claims Accrued in 2001 Is Illogical.**

The SAC alleges that beginning in 2001 with the ESOP buyout transaction and ending in 2017 when Appvion filed for bankruptcy, the ESOP's fiduciaries conducted semi-annual valuations of PDC's stock as of 30 June and 31 December each year; each of those valuations was inflated as described in the SAC. However, the claims against Argent relate only to Argent's breaches of fiduciary duty on or after it became the ESOP's trustee on 1 July 2014. These claims are all timely as discussed more below.

Argent argues that Plaintiff's claims against Argent somehow accrued "back in 2001" – well before Argent became the ESOP's trustee in 2014 and breached its fiduciary duties. This bad faith argument has no factual or legal support and should be soundly rejected.

The Seventh Circuit has already rejected Argent's argument in *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078 (7th Cir. 1992). In May 1987, the Department of Labor sued a plan's trustees relating to illegal kickbacks paid to trustees as part of the bidding process for contracts awarded in 1984 and 1987. The DOL had investigated the 1984 bidding and identified fiduciary violations in April 1984; the claims based on the 1984 bidding were therefore untimely. *Id.* at 1087. The defendants argued that because the bidding procedure was the same in 1984 and

1987, the 1987 claim was barred too. The Seventh Circuit disagreed – the bidding activities for the 1987 contract "involve[d] a new transaction and a distinct violation." *Id.* at 1087-88.

> **If knowledge of an ERISA violation barred claims based on similar *future* conduct, this continuing fiduciary duty would be severely weakened**, and **trustees would be left free to engage in repeated violations**, so long as they have once been discovered but not sued.

*Id.* (italics in original). The court was faced with a "*repeated*, rather than a *continued* violation" which gave rise to a separate claim. *Id.; see also L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc.*, 558 F.Supp. 2d 378, 400 (E.D.N.Y. 2008), aff'd, 710 F.3d 57 (2d Cir. 2013) ("[A] new cause of action accrues for each violation where separate violations of the same type, or character, are repeated over time. These cases are marked by repeated decision-making, of the same character, by the fiduciaries."); *Gruby v. Brady*, 838 F.Supp. 820, 831 (S.D.N.Y. 1993) (same).

As in *Martin*, each valuation and purchase of stock was a separate, distinct violation. Each time Argent adopted a stock price it had a separate duty to prudently review the valuations. These repeated violations give rise to distinct claims; thus, even if the Court finds that some of Plaintiff's claims are time-barred, the ones within the six-year period are still timely. The statute of limitations for claims against Argent could not accrue until after those breaches of fiduciary duty occurred, no earlier than 1 July 2014.[1]

Argent's case law is based on continuing violations, not repeated violations. In *Phillips v. Alaska Hotel & Rest. Employees Pension Fund*, 944 F.2d 509, 520 (9th Cir. 1991), the plaintiff's

_____

[1] The prior allegations are relevant to the claims against Argent insofar as they relate to Argent's failure to remedy the breaches of predecessor fiduciaries; this claim does not accrue until the time under ERISA § 413 (29 U.S.C. 1113) lapses without the successor fiduciary bringing suit. *See Fernandez v. K-M Indus. Holding Co*., 585 F.Supp. 2d 1177, 1186 (N.D. Cal. 2008).

claims were based on a repeated failure to amend the vesting rules, not distinct actions by the fiduciaries. *See also Tinley v. Gannet Co., Inc.*, 55 Fed.Appx. 74, 78-79 (3rd Cir. 2003) (failures to reclassify workers from independent contractors to employees were not separate and distinct actions); *Muehlgay v. Citigroup Inc.*, 649 Fed.Appx. 110 (2d Cir. 2016) (plaintiffs had actual knowledge of Citigroup's exposure to subprime mortgages more than three years before filing suit; failure to divest that stock was not a distinct violation); *Biglands v. Raytheon Employee Sav. & Inv. Plan*, 801 F.Supp. 2d 781, 789 (N.D. Ind. 2011) (claim began running on denial of benefits, not from continued effects of decision on plaintiff). This case law is not applicable.

### 2. The Six-Year Statute of Limitations Applies.

To the extent Argent argues that the ESOP Committee's knowledge should be imputed to Grant Lyon as its sole member, that argument should also be rejected. "The presumptive limitation period for violations is six years from the date of the last action constituting part of the breach or violation, but the statute provides a limited exception. The time is shortened to just three years from the time the plaintiff gained 'actual knowledge of the breach or violation.'" *Fish v. GreatBanc Trust Co.*, 749 F.3d 671, 673-74 (7th Cir. 2014). It is the plaintiff's *actual* knowledge that matters, not constructive or imputed language. *Intel Corp. Investment Policy Comm. v. Sulyma*, 140 S.Ct. 768, 777 (2020) ("[I]f a plaintiff is not aware of a fact, he does not have 'actual knowledge' of that fact however close at hand the fact might be.").

Mr. Lyon, in his capacity as the only ESOP Committee member, has standing to prosecute the ESOP's claims and this action was brought "by and through Grant Lyon." SAC ¶37. It is Mr. Lyon's actual knowledge as the plaintiff that matters for purposes of ERISA § 413(2) (29 U.S.C. § 1113(2), and he had no actual knowledge of Argent's breaches prior to at least August 2017. *Fish* 749 F.3d at 688 ("We agree with the Ninth Circuit's reasoning in *Landwehr* [] that knowledge should not be imputed from one party to another for purposes of the 'actual knowledge' standard

under § 1113(2).”); *Landwehr v. DuPree*, 72 F.3d 726, 732 (9th Cir. 1995) (“We now expressly hold that the limitations period in an ERISA action begins to run on the date that the person bringing suit learns of the breach or violation.”).

Argent argues that the ESOP Committee, not Grant Lyon, is the plaintiff. According to Argent, the former ESOP Committee had “actual knowledge” of breaches similar to Argent’s, and therefore the present-day ESOP Committee (consisting solely of Mr. Lyon) had actual knowledge and the three-year statute of limitations applies. This is incorrect.

**First**, the ESOP Committee is an unincorporated association that can only have the imputed knowledge of its members, which runs afoul of the actual knowledge requirement of ERISA § 413(2). This argument is just an end run around the “actual knowledge” requirement of § 413(2). *Dist. 65 Ret. Tr. for Members of Bureau of Wholesale Sales Representatives v. Prudential Sec., Inc.*, 925 F.Supp. 1551, 1566 (N.D. Ga. 1996) (argument that the “office of the trustee is the proper plaintiff” and the statute of limitations began running when the former trustees had knowledge was just an attempt to impute knowledge to the current trustees.). The present-day ESOP Committee consists solely of Mr. Lyon, and there is no reason to impute knowledge over the prior wrongdoing fiduciaries either to him or the ESOP Committee.

**Second**, as alleged in the SAC, those wrongdoers were acting adversely to the ESOP and their knowledge should not be imputed to the present-day ESOP Committee or Mr. Lyon. SAC ¶¶566-571*; Schacht v. Brown*, 711 F.2d 1343, 1347-48 (7th Cir. 1983).

**Third**, Mr. Lyon’s role is that of a fiduciary. He is not charged with the knowledge of wrongdoing predecessor or co-fiduciaries and is able to sue them for their breaches of fiduciary duty. Restatement (Third) of Trusts § 107, cmt. b(1) (2012); Restatement (Second) of Trusts § 200, cmt. e (1959) (“If there are several trustees, one or more of them can maintain a suit against

5

another… A trustee is not precluded from maintaining such a suit by the fact that he himself participated in the breach of trust, since the suit is on behalf of the beneficiary."); Restatement (Second) of Trusts § 223; *see also Pension and Employee Stock Ownership Plan Administrative Committee of Community Bancshares, Inc., o/b/o Community Bancshares, Inc. v. Patterson*, 547 F.Supp.2d 1230, 1234-36 (N.D. Ala. 2008) (ESOP Committee brought claims against former member of the committee who breached his fiduciary duties to the ESOP). Mr. Lyon is the only fiduciary in a position to bring suit under the Bankruptcy Court's order designating Mr. Lyon as the one with standing to bring claims on behalf of the ESOP and its beneficiaries. SAC ¶37.

**Fourth**, Argent's argument is no different than applying *in pari delicto* or unclean hands to Mr. Lyon. Courts have rejected these doctrines in the ERISA context as inconsistent with the statutory purpose because recovery only benefits the defrauded plans and beneficiaries. *See McLemore v. Regions Bank*, 682 F.3d 414, 421-22 (6th Cir. 2012); *Castle v. Cohen*, 676 F.Supp. 620, 627–28 (E.D. Pa. 1987), *aff'd and remanded*, 840 F.2d 173 (3d Cir. 1988); *Donovan v. Schmoutey*, 592 F.Supp. 1361, 1403 (D. Nev. 1984).

**Finally**, if the knowledge of the former ESOP Committee members triggered ERISA § 413(2) it would "exemplify[y] the unfairness" of imputing knowledge – "the statute of limitations would begin running on the first date that any plan fiduciary or other agent of the Plan had actual knowledge of the violation" even if they committed the violation. *Landwehr*, 72 F.3d at 732. This would defeat the purpose of the actual knowledge provision and "would undermine one of the primary purposes of ERISA: To protect pension plans from looting by unscrupulous employers and their agents." *Id*. The six-year statute applies and Plaintiff's claims are timely.

B. <u>Plaintiff Has Stated a Claim for Breach of Fiduciary Duty.</u>

An ERISA claim for breach of fiduciary duty against a plan trustee requires allegations of the following elements: "(1) that the defendant is a plan fiduciary; (2) that the defendant breached

its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (*quoting Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010)). The question here is whether Argent breached its fiduciary duties.

### 1. Rule 9(b) Does Not Apply Unless an Allegation is Based on Fraud.

Argent argues extensively Rule 9(b) applies to Plaintiff's ERISA claims, without ever explaining that that means in the context of claims for breach of fiduciary duty, co-fiduciary liability, or prohibited transactions.

Under the Court's prior ruling, Plaintiff's claims are subject to Rule 9(b) to the extent they involve averments of fraud. However, if they do not aver fraud, Rule 9(b) does not apply. "To require that non-fraud allegations be stated with particularity merely because they appear in a complaint alongside fraud averments … serves no … reputation-preserving function, and would impose a burden on plaintiffs not contemplated by the notice pleading requirements of Rule 8(a)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003). "Rule 9(b) is strictly construed; it applies to fraud and mistake and nothing else. And if both fraudulent and nonfraudulent conduct violating the same statute or common law doctrine is alleged, only the first allegation can be dismissed under Rule 9(b)…" *Kennedy v. Venrock Associates*, 348 F.3d 584, 593 (7th Cir. 2003) (*citing Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir.2001) and *In re NationsMart Corp. Securities Litigation*, 130 F.3d 309, 315 (8th Cir.1997)).

The SAC alleges that Argent failed to prudently review the valuations and adopted an inflated stock price. Had Argent fulfilled its fiduciary duties by prudently reviewing the valuations as required under ERISA, it would have recognized that the valuations were inflated on their face. These process-based claims, as well as other allegations such as failure to remedy breaches of a prior fiduciary and breach of the duty of loyalty for failure to act solely in the interests of the beneficiaries, do not aver fraud and are not subject to Rule 9(b).

7

## 2. Argent Failed to Act Prudently in Connection With the Valuations.

"ERISA imposes general standards of loyalty and prudence that require fiduciaries to act solely in the interest of Employee Participants and to exercise their duties with the "care, skill, prudence, and diligence" of an objectively prudent person." *Fish*, 749 F.3d at 679-80 (quoting 29 U.S.C. § 1104(a)(1)). The fiduciary duties imposed by ERISA have been described as "the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n. 8 (2d Cir. 1982).

### a. Argent Had to Prudently Review the Valuations.

Argent's central role as trustee was to value PDC's stock and buy or sell stock on behalf of the ESOP. The ESOP could not pay more than "adequate consideration" – defined as "the fair market value of the asset as determined in good faith by the trustee." ERISA §3(18)(B) (29 U.S.C. § 1002(18)(B)). Failure to prudently determine the value of the stock is a breach of ERISA § 404(a) (29 U.S.C. § 1104(a)); causing the ESOP to buy stock for more than fair market value is a breach of ERISA § 406(a)(1) (29 U.S.C. § 1106(a)(1)).

Argent was required to determine the fair market value of PDC of PDC's stock in good faith using a prudent process – based on an objective, not subjective standard. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F.Supp. 2d 511, 548 (S.D. Tex. 2003) ("[T]he standard of the prudent man is an objective standard, and good faith is not a defense to a claim of imprudence."); *Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983) ("[T]his is not a search for subjective good faith—a pure heart and an empty head are not enough"). Since PDC's stock was not publicly traded, Argent was required to retain an independent appraiser. However, trustees cannot blindly rely on an independent appraisal: "An independent appraisal is not a magic wand that fiduciaries may simply wave over a transaction to ensure that their responsibilities are fulfilled." *Fish*, 749 F.3d at 680; *see also Brundle v. Wilmington Trust, N.A.*, 919 F.3d 763, 773 (4th Cir. 2019). "A fiduciary must investigate the expert's qualifications, provide the expert with

complete and accurate information and make certain that reliance on the expert's advice is reasonably justified under the circumstances." *Keach v. U.S. Trust Co.*, 419 F.3d 626, 636-67 (7th Cir. 2005) (internal citations omitted). While a trustee is "not required to be an expert" it was required "to make an honest, objective effort to read the valuation, understand it, and question the methods and assumptions that do not make sense." *Acosta v. Vinoskey*, 310 F.Supp. 3d 662, 682–83 (W.D. Va. 2018) (internal citations omitted). Argent failed to meet this standard.

Plaintiff has pled a prima facie case of breach of fiduciary duty against Argent. Argent was responsible for the valuations as of 30 June 2014 through 30 June 2017 and had to prudently determine the stock price. SAC ¶608. Argent also adopted the 31 December 2013 stock price (as determined by Reliance) in connection with the purchase of stock as of June 2014 and had to prudently determine whether reliance on that stock price was reasonably justified. SAC ¶607.

Argent relied on Stout to conduct the valuations and adopted the valuations despite facts which Argent knew which rendered the valuations unreliable. SAC ¶610-622. All of these facts would have been apparent to Argent at the time of the appraisals – Plaintiff's claim is not based on hindsight. These facts included the following:

**b.** __The Valuations Failed to Consider All Debt.__

The valuations failed to subtract Appvion's material pension and post-retirement debt as well as some interest-bearing debt, which included the following for the relevant valuations:

| Valuation Date | Pension/Post-Retirement Debt | Other Long-Term Debt | Revolving Line of Credit Excluded from Valuation | Unamortized Discounts |
|---|---|---|---|---|
| 30-Jun-14 | $85,303 | $38,834 | N/A | $6,333 |
| 31-Dec-14 | $124,656 | $43,753 | N/A | $5,843 |
| 30-Jun-15 | $124,427 | $46,169 | N/A | $5,342 |
| 31-Dec-15 | $128,331 | $35,354 | $9,600 | $3,761 |
| 30-Jun-16 | $129,444 | $34,093 | $27,000 | $3,371 |
| 31-Dec-16 | $132,805 | $30,536 | $16,898 | $2,966 |

| 30-Jun-17 | $132,598 | $28,975 | $8,484 | $3,242 |

SAC ¶¶247-48, 288, 614-615. These debts exceeded the equity value for all of these valuations.

The 30 June 2016 appraisal, in particular, demonstrates that Stout intentionally excluded Appvion's pension debt. Appvion's projections for that period included an additional $19 million in pension contributions – however, Stout decided to exclude these planned pension contributions from Appvion's projections:

> **Additional Pension Contributions**
>
> As a result of recent actuarial estimates and the continued low interest rate environment, **the Company has identified a need to make additional contributions** to its defined benefit pension plan. Between 2017 and 2019, **the Company expects to make additional contributions totaling approximately $19.0 million above previously projected amounts**.
>
> **We did not account for the expected increase in contributions in our analysis because Company management believes these contributions will likely be offset by potential profit** enhancement opportunities (discussed herein). In addition, the Company's projected contributions could change should interest rates increase in the future as well as other changes in the financial markets.

Stout Valuation 30 Jun 16, p. 10 (Ex. 1). Since the projections were the basis of Stout's valuation, removing $19 million directly inflated the valuation. The "profit enhancement opportunities" discussed were identified by a third-party consultant and totaled $30 million in potential cost savings for fiscal year 2017, which were not reflected in Appvion's projections. *Id.* at p. 13. There is no indication that these measures were ever implemented or that Appvion intended to implement them; regardless, since Appvion filed for bankruptcy in 2017 it is clear that it did not realize any profits to offset its pension contributions. Since Argent had to review and understand the valuation to fulfill its fiduciary duties, it knew that Stout was arbitrarily excluding this $19 million in expected contributions based on expected profits above and beyond the already inflated projections but adopted the valuation anyway.

Further, when Mr. Lyon met with Argent's Martin, Martin admitted that Argent had

10

discussed the pension debt issue with Stout but failed to insist on any change. SAC ¶614. Mr. Lyon's report of this conversation, which was shared with Mr. Martin for comment before it was submitted to Appvion's Board of Directors, states:

> Currently, no deduction has been given for unfunded pension liability. I asked Argent what their opinion was on it. **They have discussed the issue with SRR and may need to start including a portion of all of it in determining equity value**.

Grant Lyon Decl, ¶ 12. This is an absolute admission that Argent knew the pension liability should be deducted, but that Argent did nothing about it in clear breach of its fiduciary duties.

As to the additional amounts excluded from the valuations, the valuations purported to subtract all interest-bearing debt. However, the amounts drawn on the revolving line of credit were unquestionably interest-bearing. SAC ¶1298. Similarly, the unamortized discounts were just unexplained discounts that were used to reduce the interest-bearing debt listed in the financial statements. These deductions had a material impact on the valuations. SAC ¶615. There was just no basis for allowing these amounts to be excluded from the valuations and Argent's adoption of the valuations despite these irregularities was a breach of its fiduciary duties.

Argent's adoption of the valuations despite these material irregularities is a clear breach of its fiduciary duties of prudence and loyalty.

### c.     The Valuations Were Based on Inflated Projections.

Plaintiff has alleged that the projections which formed the basis of each of the valuations were drastically inflated. SAC ¶¶264-270. These inflated projections caused the stock values to be inflated. *Id.* Further, Plaintiff alleged (based on direct conversation with Argent's Steve Martin) that Argent and Stout knew the valuations were inflated. *Id.* at ¶¶269, 612. Mr. Lyon's report of his conversation with Mr. Martin (which was given to Mr. Martin to review before presenting to Appvion's Board) states that "On a consolidated basis, Appvion hasn't ever hit their business plans in Argent's history." Grant Lyon Decl., Ex B. Mr. Martin claimed that neither SRR nor Argent

adjusted the projections, and Argent allowed Stout to "adjust for the riskiness of the projections in the discount rate." *Id.*, ¶612. Argent breached the duty of prudence by allowing projections it knew to be inflated to be used as the basis of the valuations. *Id.* ¶612.

Argent relies on the district court opinion in *Fish v. GreatBanc Trust*, No. 09 C 1668, 2016 U.S. Dist. LEXIS 137351 (N.D. Ill. Sept. 1, 2016) ("*Fish II*") (see Argent Unreported Cases, Dkt. 199-1, Ex. D) to argue that adjusting the projections and adjusting the discount rate would have caused a "double-count" of risk. Argent Br. at 10. Leaving aside that Plaintiff's allegation is that it was improper to use the projections at all not merely that they should have lowered the projections *and* increased the discount rate, *Fish II* does not support Argent's argument.

In *Fish II*, the plaintiffs alleged that the projections were unreasonable and that the trustee breached its fiduciary duty by not rejecting the projections out of hand. 2016 U.S. Dist. LEXIS 137351 at *165, ¶341. Alternatively, the plaintiff criticized the discount rate the trustee's advisor used. *Id.* at ¶342. The court ultimately disagreed, in a ruling issued after a 34-day bench trial with extensive testimony. However, the analysis in the *Fish II* opinion demonstrates why it would be inappropriate to decide this issue on a motion to dismiss. The *Fish II* opinion describes extensive discusses testimony about how the projections were created and whether they were reasonable and consistent with the company's financial performance for the five years prior to the ESOP transaction at issue. 2016 U.S. Dist. LEXIS 137351 at *29-36, ¶¶51-62. The trustee's valuation advisor Duff & Phelps "concluded that management's ten-year Transaction projections were 'reasonable and reliable.'" *Id.* at *34 (¶59). Representatives from Houlihan (who issued a fairness opinion) and Deloitte also testified that those projections were reasonable in part because they were consistent with the company's historical results. *Id.* (¶¶60-61).

Duff "nonetheless independently developed and relied upon significantly lower projections

than both management's projections and the Company's historical results suggested would be achieved, adjusting them downward for industry and company-specific risks." *Id.* at \*38, ¶259; *id.* at \*27, ¶¶176-79. Duff did not apply further apply a company-specific risk premium ("CSRP") to its discount rate analysis; because it had already lowered the projections, adding a CSRP would have "amounted to inappropriate double-counting." *Id.* at \*28, ¶¶182-83. The trustee's expert witness agreed that because Duff had already lowered the projections, also increasing the discount rate would have double-counted the risk. *Id.* at \*123-24, ¶¶263. The court found that the trustee had not breached its fiduciary duties by failing to insist that Duff use a higher discount rate in addition to the lowered projections in its discounted cash flow analysis. *Id.* at \*165, ¶342.

The incredibly fact-specific analysis in *Fish II* based on the testimony of multiple fact and expert witnesses does not help Argent. Unlike in *Fish II*, Argent and Stout *knew* the projections were inconsistent with Appvion's historical results and that Appvion consistently missed its projections. SAC ¶¶269, 612. The *Fish II* opinion describes testimony from two Houlihan witnesses discussing what to do when management projections are not reasonable –

> Houlihan's practice is to further diligence the projections in an attempt to understand them. **If Houlihan is still uncomfortable with the reasonableness of the projections, it either attempts to persuade the company to alter the projections, or will simply not use the projections and forgo a DCF analysis**.

*Id.* at \*104-5 (¶222). This supports Plaintiff's allegations that the projections should not have been used as the basis of the valuations at all. Further, the *Fish II* court also noted that Houlihan's valuation determined that the company's projections were reliable and used them for its valuation, but still applied a company-specific risk premium of 3% in its valuation analysis to reach a similar fair market value determination as Duff. *Id.* at \*105, ¶223. *Fish II* did not involve starting with inflated projections and adjusting for their riskiness in the discount rate and does not support a "fundamental valuation principle" that it is appropriate to do so.

Here, it is also not actually clear from the valuations whether Stout made adjustments to the discount rate at all as claimed by Mr. Martin, and plaintiff also alleges the discount rate was not reliable. SAC at ¶¶271-72. However, the reasonableness of the discount rate is not something that can be decided on a motion to dismiss without expert testimony.

As *Fish II* shows, this is ultimately an issue that is too complicated for a motion to dismiss and should be decided with the benefit of fact and expert discovery. The Court should decline Argent's request to decide these factual issues now.

### d. <u>Stout Applied an Improper Control Premium.</u>

Argent breached its fiduciary duties by adopting valuations as of 30 June 2014 and 31 December 2015 that included substantial control premiums which directly inflated the equity value of the company. SAC ¶¶253, 288. The valuations after that date still state that they are on a controlling-interest basis but do not include a clear control premium. SAC ¶616.

Control premiums are based on the idea that people are willing to pay more for "control" of a company; an owner with a controlling interest has benefits including "the ability to change the capital structure of the firm to achieve efficiencies in the cost of capital to the company." SAC ¶255 (quoting Stout's Valuation, 31 Dec 12, p. 84). A recent settlement agreement describes the Department of Labor's view of when a control premium is allowable:

> **The right to control the company includes all of the unencumbered rights that a shareholder would have** that acquired the shares to be purchased by the ESOP, **and the right to control the company's direction**, including, but not limited to: **the unencumbered ability to vote its shares**; the **ability to appoint and remove the company's officers**; the **ability to appoint and remove the majority of the members of the company's board of directors**; the **ability to set management compensation** and perquisites; the **ability to acquire, lease, or liquidate the company's assets**; the ability to liquidate, dissolve, sell, or recapitalize the company; decision-making authority over mergers, acquisitions; and sales of company stock; **authority to decide whether the company incurs significant debt or engages in debt refinancing; the ability to authorize or veto major capital expenditures**….

Consent Order and Judgment, *Scalia v. the Farmers National Bank of Danville, et al.*, No. 1:20-cv-00674 (S.D. Ind. 28 Feb 20), Ex. 15. The ESOP lacked these rights.

In a brief filed with the Fourth Circuit Court of Appeals in another case, Argent agreed that the power to control the board of directors is "a key indicator of control." SAC ¶259. However, Argent could not independently nominate or remove any members of Appvion's Board as trustee. SAC ¶¶143-44, 256. Argent also could not change Appvion's capital structure. SAC ¶258.

Argent was a directed trustee from 1 July 2014 to 3 August 2015. SAC ¶603-4. Argent had limited voting rights; outside of very limited circumstances such as the sale of the company which would be opened to an employee vote, Argent was to "vote all shares of Company Stock as directed by the [ESOP] Committee." SAC ¶257. This provision remained in place even after Argent became a discretionary trustee in August 2015.

Further, a control premium was not warranted because the purpose of the valuations was not a sale of the ESOP's entire interest –the purposes was for buying and selling relatively small numbers of shares. *See Eckelkamp v. Beste*, 201 F.Supp. 2d 1012, 1018, 1028-30 (E.D. Mo.), *aff'd*, 315 F.3d 863 (8th Cir. 2002).

Adopting valuations that inappropriately apply control premiums absent actual control is a breach of fiduciary duty. *Pizzella v. Vinoskey*, 409 F.Supp. 3d 473, 515 (W.D. Va. 2019); *Brundle*, 919 F.3d at 777-8. The application of a control premium was imprudent and Argent should have required Stout to correct the valuations. The failure to do so was a breach of its fiduciary duties.

e.     **The Valuations Were Otherwise Unreliable.**

Argent approved the 30 June 2015 valuation even though Stout significantly changed its methodology that year. Stout 1) added a sixth year of data to its discounted cash flow analysis for that valuation only; 2) disregarded Thermal's actual EBITDA results; and 3) and adding an additional three -year average category to its guideline company method analysis of Thermal. SAC

15

¶274-77, 618. These changes helped prop the valuation despite the sale of Encapsys, bad year-to-date EBITDA numbers for the Thermal division, and extra expenses from the retirement of CEO Richards and the employee-termination costs from selling Encapsys. *Id.* ¶274.

Beginning with the 31 December 2015 valuation, Stout chose to disregard all of Thermal's previous and projected EBITDA numbers in favor of only revenue numbers without reference to profitability. *Id.* These changes substantially increased the valuations, covering up the effect of the Thermal's low earnings. SAC ¶¶274-77, 618. These changes were inconsistent with the August 2015 trust agreement which required Argent to determine fair market value "with consideration being given to methods consistently followed and uniformly applied." SAC ¶618.

Argent allowed Stout to apply a 5% discount for limited marketability, which was meant to account for the restricted nature of PDC's stock. SAC ¶¶278-80. However, the 5% discount did not reflect the real repurchase obligation or Appvion's increasingly precarious financial condition. In 2015 and 2016 alone, distributions from the ESOP totaled $19.6 million while contributions to the ESOP were only $3.5 million but Stout's valuations put the discount for limited marketability at $3.8 to $5 million. See ¶¶278-79. Argent's Mr. Martin admitted that Argent had questioned the low discount for limited marketability but Stout had failed to change it. SAC ¶619. Contrary to Argent's argument, this does not show a prudent process – Mr. Martin did not provide any explanation for why it allowed Stout to continue applying such a low discount rate. Mr. Martin's admission only shows that Argent questioned it but did nothing about it.

Finally, Argent adopted the valuations despite Stout's practice of rounding numbers throughout the valuation process. See ¶286. This increased the value of PDC's stock for all of the valuations that Argent adopted, some of them by material amounts. Argent also adopted the 31 December 2014 valuation despite an apparent arithmetic error; combined with the rounding

practices, that inflated PDC's stock value by approximately $0.37/share. SAC ¶617. *See Perez v. Bruister*, 823 F.3d 250, at 264-65 (5th Cir. 2016) (trustee was not justified in relying on an independent appraiser where the trustee "failed to double-check or significantly review [the appraiser's] ultimate conclusions").

### 3. Argent Breached the Duty of Loyalty.

The duty of loyalty requires fiduciaries to act "solely in the interest" of plan participants. ERISA § 404(a)(1) (29 U.S.C. § 1104(a)(1)); *Allen*, 835 F.3d at 678. This duty overlaps with the duty of care. *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 299 (5th Cir. 2000). "The duty of loyalty 'requires that fiduciaries keep the interests of beneficiaries foremost in their minds, taking all steps necessary to prevent conflicting interests from entering into the decision-making process.'" *Bruister*, 823 F.3d at 261 (*quoting Bussian*, 223 F.3d at 298). "[T]he central question is whether the fiduciaries acted solely in the interests of the beneficiaries and for the exclusive purpose of providing them with benefits." *Leigh v. Engle*, 727 F.2d 113, 125 (7th Cir. 1984).

The bar for breach of the duty of loyalty is not high. It is enough if the trustee put its own interests in retaining its position as trustee first. *Perez v. First Bankers Trust Servs., Inc.*, 210 F.Supp.3d 518, 534 (S.D.N.Y. 2016) (finding trustee could have breached the duty of loyalty by placing its own interests in receiving fees as the ongoing trustee); *Perez v. First Bankers Trust Servs., Inc.*, No. CV124450MASDEA, 2017 WL 1232527, at *66 (D.N.J. Mar. 31, 2017) ("[The trustee] was subject to dual loyalties because it was in its interest to complete the ESOP Transaction so that it could earn 15,000 in annual fees as the SJP ESOP's ongoing trustee.").

In addition, a fiduciary's failure to correct misleading information is a breach of the duty of loyalty. *Adamczyk v. Lever Bros. Co., Div. of Conopco*, 991 F.Supp. 931, 939 (N.D. Ill. 1997) ("A fiduciary breaches its duties of loyalty and care by affirmatively misleading plan participants about the operation of a plan or by remaining silent in circumstances when silence could be

considered misleading."); *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 466 (7th Cir. 2010) ("[T]he duty of loyalty requires a fiduciary to disclose material information that could adversely affect a participant's interests[.]") (quoting *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 644 (8th Cir.2007)). Fiduciaries have "an affirmative obligation to communicate material facts affecting the interests of beneficiaries." *Kenseth*, 610 F.3d at 466.

In conducting the valuations, Argent failed to put the interests of the beneficiaries in having accurate valuations first and instead approved inflated valuations as requested by Appvion management. Argent, at best, chose not to rock the boat and insist on accurate valuations, an action that would have caused conflict with the ESOP Committee and jeopardized Argent's role as trustee. SAC ¶1178. Argent also failed to correct misleading statements about the valuations and instead allowed the ESOP Committee to communicate misleading information that supported the valuations while omitting information that showed the valuations were not reliable. SAC ¶625. These were breaches of both the duties of loyalty.

### 4. Argent Acted Imprudently in Approving the Encapsys Transaction.

Argent makes a mountain out of a molehill regarding Plaintiff's revisions to the SAC relating to the Encapsys transaction, accusing Plaintiff of gamesmanship. There was no attempt to hide something that has already been included in a publicly filed document in this same lawsuit; Plaintiff simply rewrote the complaint and attempted to streamline the complaint as much as possible while still meeting the pleading standard requested by the Court.

The claim for breach of fiduciary duty in connection with the Encapsys sale is based on Argent's imprudence in approving the sale, not the sale price. Argent knew that two out of three of Appvion's business divisions (Carbonless and Thermal) were declining in profitability and that Stout was overstating their value. Encapsys was Appvion's only growth division. For example, Appvion's net income in 2014 (even with the profitable Encapsys division) was negative by $69

million. (PDC Form 2014 10-K, p. 43). Further, the need to dispose of Encapsys in order to pay down Appvion's debt, combined with the other factors such as Appvion's book insolvency, its need to repeatedly amend its credit agreements, Appvion's reliance on its revolving line of credit for working capital, years of negative income, and the increasingly burdensome repurchase obligation should have raised concerns about Appvion's ability to continue as a going concern with the profits from the Encapsys division. SAC ¶¶274, 276, 334; *see, e.g.*, Auditing Standard 2415.06.[2] The sale of Encapsys was a death blow to Appvion, as demonstrated by Appvion's bankruptcy less than two years later. Argent acted imprudently in approving the sale.

Argent cites to a document discussed in the FAC stating that Argent got a fairness opinion and concluded that the transaction was fair and in Appvion's best interests. Dkt. 77, ¶396. However, this document which is the only document Plaintiff has access to that describes Argent's review process in any way and it is insufficient to establish that Argent followed a prudent process or that Argent determined the factors above.

The SAC also indicates Appvion management may have received incentive compensation in connection with the sale. SAC ¶302, 620. At the time, Plaintiff only has a single document filed with the SEC referencing an "Encapsys Long Term Performance Cash Plan" with no further information, but approving payments to insiders would be a violation of ERISA § 406 and Argent's duty of prudence.[3] This claim should stand. In the alternative, Plaintiff is entitled to amend its complaint later based on information learned during discovery.

---

[2] Available at https://pcaobus.org/oversight/standards/auditing-standards/details/AS2415 (last accessed 9 Feb 21).

[3] Plaintiff did not waive its right to bring claims based on the Encapsys sale in the previous briefing.

## 5. __Argent Failed to Remedy Breaches of Predecessor Fiduciaries.__

ERISA fiduciaries are not liable for the breaches of prior fiduciaries, but it is well-settled law that they are liable if they fail to remedy breaches of prior fiduciaries. *See Fernandez*, 585 F.Supp. 2d at 1184; *Silverman v. Mut. Ben. Life Ins. Co.*, 138 F.3d 98, 104 (2d Cir. 1998); *See Feinberg v. T. Rowe Price Group, Inc.*, No. CV MJG-17-0427, 2018 WL 3970470, at *9 (D. Md. Aug. 20, 2018).[4] The Department of Labor has approved this type of claim, opining that failure to take remedial action to address a breach by a prior fiduciary "would constitute a separate breach of fiduciary responsibility by the successor fiduciary."[5] *Id.* (quoting DOL Opinion No. 76–95).

Argent became trustee as of 1 July 2014, which is when its purchase of Reliance was completed. Because the same employees continued to work on the Appvion account as they did under Reliance, their knowledge of their breaches of fiduciary duty and State Street's breaches of fiduciary duty is imputed to Argent. Argent therefore knew that Reliance, State Street, and the other fiduciaries involved in approving at least the 31 December 2012 to 31 December 2013 valuations had breached their fiduciary duties but failed to take action to remedy those breaches.

Argent argues that the SAC fails to plead any facts regarding what Argent should have done to remedy the prior breaches, but ignores allegations in the very paragraph it cites. The SAC alleges that steps to remedy the prior breaches "should have included correcting the stock values and adjusting accounts of ESOP holders, as well as litigation against its predecessor fiduciaries to remedy the overpayments for stock." SAC ¶632. The SAC states a claim for failure to remedy.

---

[4] Argent cites to two unpublished district court cases to argue that this is not a viable claim. These opinions are outliers and should be disregarded.

[5] Plaintiff has pled this as a separate breach of fiduciary duty under ERISA § 404, though some courts classify this claim under ERISA § 405.

### 6. <u>Argent's Breaches of Fiduciary Duty Caused Harm to the ESOP.</u>

Argent bizarrely argues that the ESOP suffered no harm. However, Argent itself used the ESOP's money to buy PDC's stock for millions more than fair market value while it was trustee. SAC Appx. A, B. Plaintiff is seeking damages primarily based on the difference between the price paid and the fair market value at the time of these purchases. *Brundle*, 919 F.3d at 781. This money will go to the ESOP to be distributed to the ESOP's Employee Owners, who lost all of the funds they had invested in the ESOP at the time of Appvion's bankruptcy. Its baffling that Argent is arguing that this complete loss of money invested into the ESOP is not a damage at all.

Argent focuses on the small number of participants who received payouts from the ESOP from 2014 to 2017. These individuals may have benefited – but at the expense of the remaining participants who lost their entire investment. The payments to a percentage of the ESOP's participants does not negate the damage to the rest of the participants or the ESOP as a whole.

### 7. <u>Plaintiff's Claims are Plausible.</u>

Argent its attention on the time period before it became trustee, arguing it is implausible that the company could have been worthless but continued operating for so many years. However, Plaintiff contends that the share values were worthless because there was no equity in the company; Appvion was able to function because it could leverage its physical assets to refinance repeatedly and used its revolving line of credit to fund working capital. Appvion's financial statements show that it was book value insolvent by the end of 2013, with assets valued at $547 million but debt of $592 million. (PDC Form 2013 10-K, p. 46) By the time Argent took over as trustee, Appvion's financial condition had deteriorated even more, but the valuations did not reflect this.[6]

_____

[6] Argent points to the decisions by lenders as support for its prudence – disregarding the fact that Appvion's creditor's committee has filed a lawsuit claiming that the 2013 loans were made based

In the end, the plausibility arguments are irrelevant. Argent's Martin admitted at least that 1) the valuations were not including pension debt but that they had "discussed the issue with SRR" without insisting on a change 2) that "Appvion hasn't ever hit their business plans in Argent's history" but that they were still allowing Stout to rely on the inflated projections; and 3) that Argent had questioned the low discount for lack of marketability but did nothing to insist on a change. Grant Lyon Decl., Ex. B, SAC ¶¶612-619. These statements do not support an inference that Argent "carefully probed" these issues – rather, they are clear admissions of an imprudent process.

## C.    Argent Caused the ESOP to Engage in Prohibited Transactions.

Argent argues that it did not "cause" any prohibited transactions, citing the Court's prior ruling. However, the Court's prior ruling was based on the allegations in the FAC, which failed to describe the trust agreements. As alleged in the SAC, the actual purchases of stock were carried out by the trustees and the ESOP Committee. Argent, as trustee, "caused" the purchase of stock within the meaning of ERISA § 406(a)(1) (29 U.S.C. § 1106(a)(1)) as described in the SAC.

Between 1 July 2014 and 3 August 2015, the Trust Agreement between Reliance and Appvion applied to Argent. It stated that Argent was responsible for purchasing PDC's stock, but for not more than fair market value:

> "**The Trustee will purchase Company Stock** with the assets contained in the Participants' accounts under the Plan on the Committee's direction, **unless the Trustee determines that such purchase is prohibited by ERISA**. The Trustee will purchase Company Stock from the Company or from any shareholder, if the Trustee is directed by the Committee to do so…. All such purchases must be at a price not in excess of fair market value, as determined by an Independent Appraiser and approved by the Trustee, if such stock is not publicly traded."

---

on Stout's inflated valuations. *See* Revised Second Amended Complaint, *Halperin, et al. v. Richards, et al.*, No. 1:19-cv-01561-WCG, E.D. Wisc., Dkt. 2, 2 Jul 19.

SAC ¶1125.

On 3 August 2015, Appvion and Argent entered into a new Trust Agreement naming Argent a discretionary trustee. This Trust Agreement is even more explicit that Argent cannot purchase PDC's stock for more than fair market value, and it only says Argent "may" purchase company stock instead of requiring it:

> Assets held by the Trustee in the Trust Fund **shall be invested by the Trustee primarily in Company Stock, to the extent consistent with ERISA. To the extent permitted by the Code and ERISA, Contributions** and Dividends made by the Company to the Trust (pursuant to the terms of the Plan) in cash, and other assets of the Trust Fund, **may be used to purchase shares of Company Stock from the Company or from any shareholder of the Company**, or to repay an Exempt Loan. **Company Stock shall be purchased by the Trustee only at prices which do not exceed the fair market value of the shares purchased, as determined by the Trustee, in its sole discretion, based upon an appropriate valuation** performed by an independent appraiser to support the Trustee's decision on establishing the fair market value of such Company Stock on the Valuation Date.

SAC ¶1128.

Argent did, in fact, purchase stock from PDC on behalf of the ESOP as described in Appendix A to the SAC and from Appvion's employees as listed in Appendix B. SAC ¶1129. In doing so, Argent knew the stock prices were not for adequate consideration because Argent had failed to value the stock in good faith according to a prudent process. SAC ¶¶610-624.

Argent had an affirmative obligation to determine that the stock purchase was not prohibited by ERISA – it could not buy the stock for more than fair market value under ERISA or either Trust Agreement. *See Chesemore v. Alliance Holdings, Inc.*, 886 F.Supp. 2d 1007, 1047 (W.D. Wisc. 2012) (directed trustees "caused" an ESOP transaction by purchasing shares for more than fair market value even though they were directed to buy them, because "the transaction would not have occurred without their choice to accept" the improper direction.). The language of the August 2015 trust agreement is even clearer because it gave Argent discretion to purchase stock: "The Trustee shall be a discretionary trustee with respect to all the assets of the Trust Fund,

including, but not limited to, purchases, holding, and sales of Company Stock…" SAC ¶1128.
Therefore Argent clearly caused the purchases after it became a discretionary trustee.

### 1. The Transactions at Issue Were Prohibited.

Argent argues that the transactions described in Count XXIV were not actually prohibited transactions. However, in doing so Argent completely ignores the primary transactions that Plaintiff contends were prohibited – the purchases of stock from PDC which occurred at least twice a year. SAC ¶1127. PDC is clearly a "plan insider" and party-in-interest under ERISA. SAC ¶1123; ERISA § 3(14)(E) and (H) (29 U.S.C. § 1002(14)(E) and (H)). A purchase of employer stock by the plan is "indisputably" a prohibited transaction. *Allen*, 835 F.3d at 677. This is exactly the type of purchase that ERISA § 406 is concerned with – it was not at arm's length but at prices set entirely by Reliance in coordination with Appvion's insiders. These purchases constituted either the "sale or exchange, or leasing of any property between the plan and a party in interest" under ERISA § 406(a)(1)(A) and/or the "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan" under ERISA § 406(a)(1)(D).[7]

As to the other transactions, the SAC contends the repurchases from employees "through diversifications and loans" were prohibited transactions. SAC ¶1129. These were repurchases from current employees, not former employees; Argent's arguments related to former employees are moot. Current employees are parties in interest under ERISA. SAC ¶1124. These are transactions that caused money to flow out from the ESOP at the inflated prices set by Argent and therefore

---

[7] As alleged in the SAC, they are also prohibited transactions under ERISA § 406(a)(1)(E) if the appraisals are not "qualified appraisals" under the internal revenue code. ERISA § 407(d)(6) (29 U.S.C. § 1107(d)(6); 26 U.S.C. § 401(28)(A) and (C); *Fleming Cardiovascular, P.A. v. Comm'r of Internal Revenue*, 110 T.C.M. (CCH) 481 (T.C. 2015), 2015 WL 7445501.

24

harmed the ESOP. [8]

Argent further argues that the Company, not the ESOP, repurchased the shares; however, while the exact procedure is something that Argent should know well, it only cites to the ESOP Plan document, which is ambiguous about whether the ESOP or Appvion repurchased shares. The document is clear that the "put option" can provide that "the Company, or the Plan if the Plan so elects, will repurchase the Company Stock…." Dkt. 102-3, at ¶6.14. Further, the trust agreements discussed above stated that Argent would purchase stock from employees.

### 2. Argent "Caused" the Transactions.

Argent obliquely cites to Articles 2, 3, 5, 6, and 7 in the ESOP Plan document, arguing that because those required the ESOP to purchase PDC's stock, Argent has no responsibility. However, the Plan document does not allow the purchase stock for more than fair market value. Further, the trust agreements expressly prohibited the purchase of stock for more than fair market value. Argent had an affirmative obligation to make sure its purchases of stock complied with ERISA; it did not do so. Argent "caused" the purchases of stock under ERISA § 406.

### D. The SAC States a Claim for Co-Fiduciary Liability.

A fiduciary is liable for breaches of co-fiduciaries even without actual knowledge if his own breaches of fiduciary duty "enabled such other fiduciary to commit a breach." ERISA § 405(a)(2) (29 U.S.C. § 1105)(a)(2)); *Acosta v. Saakvitne*, 355 F.Supp. 3d 908, 924 (D. Haw. 2019)

---

[8] Reliance cites *Lockheed v. Spink*, 517 U.S. 882, 892-93 (1996) to argue that the repurchase of stock from employees was merely the payment of benefits, not a prohibited transaction. However, *Lockheed* was not dealing with an ESOP but with an amendment to a plan. The memorandum opinion *Armstrong v. Amsted Indus., Inc.*, No. 01 C 2963, 2004 WL 1745774 (N.D. Ill. July 30, 2004) (Dkt. 199-1, Ex. B) interprets it to bar prohibited transactions claims for share purchases from employees, but it should be disregarded as inconsistent with the statutory language.

("Unlike co-fiduciary liability under § 1105(a)(1) and (3), co-fiduciary liability under § 1105(a)(2) does not require a plaintiff to prove knowledge."); *Carr v. Int'l Game Tech.*, 770 F.Supp.2d 1080, 1097 (D. Nev. 2011); *see also Free v. Briody*, 732 F.2d 1331, 1335-6 (7th Cir. 1984).[9] This clause only requires a plaintiff to "prove that the fiduciary failed to comply with its duties under ERISA, and thereby enabled a co-fiduciary to commit a breach." *Enron*, 284 F.Supp. at 581 (internal citations omitted).

Plaintiff has alleged that Argent breached its fiduciary duties by failing to act prudently in setting the stock price, thereby enabling the ESOP Committee Defendants' own breaches of fiduciary duty in, e.g., supplying inflated projections that inflated the stock value, approving the inflated stock values, and communicating those inflated stock values to the Employee Owners. SAC ¶1177. Plaintiff has stated a claim for co-fiduciary liability. *See Saakvitne*, 335 F.Supp.3d at 924; *In re Morgan Stanley ERISA Litig.*, 696 F.Supp. 2d 345, 367 (S.D.N.Y. 2009) ("Where a complaint adequately pleads a defendants' breach of fiduciary duty, the complaint generally also states a valid claim for co-fiduciary liability against that same defendant.").

Regardless, Plaintiff has alleged actual knowledge both of Argent's participation in the breaches and knowledge that the co-fiduciaries were committing breaches of fiduciary duty, which supports claims under ERISA § 405(a)(1) and (3) (29 U.S.C. § 1105(a)(1) and (3)). There is no special language for pleading knowledge, and knowledge can be averred generally. Fed. R. Civ. P. 9(b); *In re Polaroid ERISA Litigation*, 362 F.Supp.2d 461, 479-80 (S.D.N.Y. 2005); *Feinberg*, 2018 WL 3790470, at *8-9.

---

[9] The Court's prior ruling assumed that knowledge was necessary for co-fiduciary liability, but none of the cases the Court relied on discussed ERISA § 405(a)(2).

The facts alleged support an inference that Argent had knowledge of its co-fiduciary's breaches of fiduciary duty. Argent knew, from the face of the valuations, that they were inflated. SAC ¶¶610-624. Argent knew that the ESOP Committee was responsible for preparing the projections that were consistently higher than Appvion's performance, knew that the valuations were excluding significant amounts of balance sheet debt, and contained a control premium that was not warranted.[10] Argent also met in-person with the ESOP Committee who approved the valuations. SAC ¶178. Argent therefore knew that the ESOP Committee was breaching its fiduciary duties in connection with the valuations. These are not mere conclusory allegations.

Argent's additional reasons why the co-fiduciary liability claim should be dismissed also have no merit. The damages caused by the co-fiduciary breaches are the purchases of stock for more than fair market value, causing the Employee Owners to lose millions that they invested in the ESOP. For the claims against Argent, this will be limited to the amounts paid while Argent was trustee. The statute of limitations does not bar this claim, and the SAC states comprehensive claims against the ESOP Committee Member Defendants.

### E.     Plaintiff Has Stated a Claim for Securities Fraud Against Argent.

While this claim is based on the same underlying concerns about the valuation as Plaintiff's breach of fiduciary duty claim, the focus is different. The question for this claim is whether Argent acted either intentionally or was reckless in ignoring the deficiencies and representing the stock values it set were fair market value for the stock.

---

[10] Argent's cases deal with proving knowledge, not pleading knowledge, and were all decided with the benefit of discovery. *See Keach v. U.S. Tr. Co.*, 240 F.Supp. 2d 840 (C.D. Ill 2002) (ruling on motion for summary judgment); *Ellis v. Rycenga Homes, Inc.*, 484 F.Supp. 2d 694, 698 (W.D. Mich. 2007) (ruling on motion for summary judgment); *Donovan*, 716 F.2d at 1458 (appeal after bench trial and judgment). In addition, none of them discussed ERISA § 405(a)(2).

27

### 1.    Argent Made Misrepresentations and Omitted Material Facts.

The misrepresentations here were that PDC's stock was properly valued at the prices set by Argent for each valuation between 30 June 2014 to 30 June 2017. SAC ¶1207. Argent communicated these stock values to the ESOP Committee, knowing that the ESOP Committee would report the stock value to the ESOP's Employee Owners. SAC ¶1208. Argent also issued account statements directly to the Employee Owners that purported to represent the value of their stock. *Id.* Argent omitted to disclose material facts about the valuations that were necessary to render the representation of stock value not misleading – such as the processes Argent followed in approving the stock price and the irregularities with the valuations described above at pages 8-17.

As the SAC alleged, Argent's representations of the stock price had an implied assertion that Reliance had critically read and reviewed the valuations, verified that the information that the valuations were based on was correct and appropriate, and that Stout was applying consistent and appropriate methods in conducting its valuations. At a minimum, Argent's representation of the stock price had an implied assertion that it had valued the stock in good faith using a reliable process. SAC ¶1209. This was false because Argent did not value PDC's stock in good faith, did not critically read and review the valuations, and otherwise lacked a basis for its representations. SAC ¶1211. Plaintiff has therefore pled actionable fraud.

The complaint has pled with detail how the stock prices were inflated, with particularized allegations relating to the specific valuations that Argent was responsible for as discussed above. See SAC ¶¶610-624, 1212-1224. These facts are more than sufficient to "differentiate between the vastly different circumstances surrounding each reporting period." Argent Memo, Dkt. 199. These facts support the allegation that Argent failed to value PDC's stock price in good faith and therefore lacked a basis for its representations of stock value. The fact that Stout's valuation reports committed the same errors over the course of multiple valuations or that certain items will require

further qualification from expert witness analysis does not disqualify Plaintiff's claims or take away from Plaintiff's specific allegations about the valuations for which Argent was responsible.

The representations of stock value are actionable fraud. *See, e.g.,* Restatement (Second) of Torts § 525, cmt. c (A statement of opinion is actionable if the person in question does not hold the opinion). Argent also allowed the ESOP Committee to misleadingly communicate the share prices to the Employee Owners and omitted to disclose material facts about the valuation process and the valuations themselves. SAC ¶¶1177.

## 2. <u>Argent Acted with Scienter.</u>

Scienter does not have to be pled with particularity. Fed. R. Civ. P. 9(b). A plaintiff must only allege facts that "give rise to a strong inference that" each defendant acted with scienter, defined as "knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false." *Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008); *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 756 (7th Cir. 2007) ("That "required state of mind" is an intent to deceive, demonstrated by knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false."); *Chu v. Sabratek Corp.*, 100 F.Supp.2d 815, 822-823 (N.D. Ill. 2000). Scienter has been pled if "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 310 (2007).

"[T]he scienter analysis in these types of securities fraud cases is akin to looking at a painting. Though one or two brush strokes may be more powerful up close, to fully appreciate the painting, the viewer must step back to take in the 'big picture.'" *In re Cardinal Health Inc. Securities Litigation*, 426 F.Supp.2d 688, 741 (S.D.Ohio 2006). Plaintiff's allegations considered as a whole support an inference of scienter.

The valuations Argent was responsible for were done at a time when Appvion's financial

condition was deteriorating significantly. They were inflated on their face – they were inconsistent with the financial statements and 1) excluded both pension and postretirement liabilities as well as material amounts of interest-bearing debt; 2) included a control premium for which there was no factual support; 3) relied on inflated projections; and 4) otherwise had flaws that rendered them unreliable. SAC ¶¶1212-1224. In particular, the exclusion in the 30 June 2016 valuation report of $19 million of pension debt that had been included in Appvion's projections (presumably for the first time) is clear evidence that the valuations were manipulated – and Argent knew about this since it reviewed and approved the valuations. And even more, Mr. Martin admitted to knowing about these problems with the valuations but accepting them anyway.

On these facts, the trier of fact can clearly find that either Argent knew that its representation of fair market value was too high or Argent was reckless because it was "in possession of facts that would have caused a reasonable person in its position to recognize a substantial risk that the" stock values were inflated. *Puskala v. Koss Corp.*, 799 F.Supp. 2d 941, 952 (E.D. Wis. 2011). The allegations are clearly sufficient to plead scienter.

### F.    Incorporation by Reference of Plaintiff's Other Arguments.

Argent seeks to incorporate unidentified arguments made in briefs by other Defendants. This is inappropriate and would allow Argent to drastically expand its arguments with no notice to Plaintiff. However, to the extent the Court allows this incorporation, Plaintiff expressly incorporates its responses to the motions to dismiss and supporting memoranda filed by the other Defendants in this action to the extent they are applicable to Plaintiff's claims against Argent.

DATED this 12th day of February 2021

**BEUS GILBERT MCGRODER PLLC**

By    */s/ L. Richard Williams*
L. Richard Williams
Leo R. Beus (Admitted *Pro Hac Vice*)
L. Richard Williams (Admitted *Pro Hac Vice*)
Abigail Terhune (Admitted *Pro Hac Vice*)
701 North 44th Street
Phoenix, AZ 85008-6504
480-429-3001
Fax: 480-429-3100
docket@beusgilbert.com
Attorneys for Plaintiff

- and -

**PREVIANT LAW FIRM, S.C.**
Frederick Perillo
Sara J. Geenen
310 West Wisconsin Avenue, Suite 100 NW
Milwaukee, WI 53203

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of February 2021, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.


_____*/s/ L. Richard William*_____
L. Richard Williams