**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**GREEN BAY DIVISION**

| | |
|---|---|
| Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan, by and through Grant Lyon in his capacity as the ESOP Administrative Committee of Appvion, Inc., <br><br>           Plaintiff, <br><br>        v. <br><br>Douglas P. Buth and Gayle Buth, husband and wife; et al., <br><br>          Defendants. | Civil Action No.:  18-cv-01861 |

## DECLARATION OF GRANT LYON

## I. AVERMENT OF PURPOSE, COMPETENCY, AND ACCURACY OF EXHIBITS

1. I make this Declaration in support of Appvion, Inc Retirement Savings and Employee Stock Ownership Plan's Oppositions to Motions to Dismiss the Second Amended Complaint in the above-captioned matter.

2. I am over twenty-one years of age and make this Declaration from personal knowledge based on information reviewed and/or referenced herein.

3. Attached hereto as Exhibit A is a true and accurate recitation of my work experience and qualifications.

4. Attached hereto as Exhibit B is a true and correct copy of the Appvion ESOP Committee Report dated 1 September 2017.

## II. QUALIFICATIONS

5. I have attached my resume to this Declaration as **Exhibit A**.  When I was appointed as the sole member of Appvion's ESOP Committee, I had over 30 years of experience in corporate

restructuring, expert testimony and corporate governance. I have served on numerous boards of directors, all of which involve companies in distress and/or needing an independent board member. I have also served as the financial advisor to the Government of the Commonwealth of the Bahamas. I have served numerous times as a Chapter 11 Trustee, state-court receiver, chief executive officer, chief financial officer, and chief restructuring officer.

6.     I have testified over 30 times in numerous jurisdictions, including bankruptcy court, federal district court and state court. As reflected on my resume, I have been an expert witness on valuation issues.

7.     In addition, the bankruptcy related assignments I have participated in virtually all valuation issues that I have been required to analyze. I have also been involved in many forensic accounting projects including those that involve financial fraud. I hold a Bachelor of Science degree (magna cum laude) from Brigham Young University (1987). I also hold an MBA (high distinction) from Brigham Young University (1989).

III.     **INVESTIGATION AT APPVION**

8.     As a result of Appvion's rapidly declining financial condition, I was asked to replace the prior members of Appvion's ESOP Committee in August 2017. I had no prior relationship with Appvion or any of its management.

9.     As a result of my review of the Stout valuations together with Appvion audited financial statements, I concluded, among other things, that each Stout valuation had been inflated because it did not subtract Appvion's post-retirement debt ("Pension" and "post-retirement obligations other than pension") from PDC's enterprise value when calculating PDC's equity value.

2

10.     In my review of the valuations, I saw nothing that would cause me to believe that Stout had either explicitly or implicitly reduced PDC's equity value in any of its valuations by the amount of Appvion's post-retirement debt.

11.     In connection with my investigation, I asked the ESOP's trustee, Steve Martin of Argent, why the valuations did not adjust for the unfunded pension debt.

12.     I included Argent's response in a PowerPoint presentation entitled "Appvion ESOP Committee Report" which was dated 1 September 2017 which I have attached as **Exhibit B** to this Declaration.  It states:

> Currently, no deduction has been given for unfunded pension liability.  I asked Argent why they haven't adjusted equity for the unfunded liability.  <u>They have discussed the issue with SRR and may need to start including a portion of all of it in determining equity value.</u>  With the change in CFO, Argent is still reviewing the impact (if any) on the change in CFO and impact on valuation.  Just too soon to determine yet.

Appvion ESOP Committee Report, 1 Sep 17, p. 7 (emphasis added).

13.     Specifically, Steve Martin did not tell me the unfunded pension liability had already been incorporated into PDC's valuation to reduce PDC's equity value.

14.     I gave Steve Martin a copy of my PowerPoint presentation to review for correctness.  Argent made no objections to its content.

15.     It was important for me to know if either Argent or Stout objected to my conclusions regarding the post-retirement debt, or other issues I raised in the PowerPoint presentation, because I had to decide whether to recommend that the ESOP stop trading in PDC stock.

16.     I will not repeat here the other factual statements contained in the Second Amended Complaint regarding my investigation, but when I read for the first time in Stout's Motion to

Dismiss the factual assertion that they had "implicitly" included the pension liability in their valuations, I thought it important to explain my interaction with Argent on that issue.

17.     No later than 1 September 2017, I recommended that Appvion stop trading in PDC stock.

## IV.     <u>AVERMENT PURSUANT TO 28 U.S.C. § 1746</u>

I, Grant Lyon, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the foregoing is true and correct.

Executed this 11th day of February, 2021.

By:  Grant Lyon
Its:  Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan Administrative Committee Member

Revised Grant Lyon Declaration (Edits)

# EXHIBIT
# A

# Curriculum Vitae
# G. Grant Lyon

Grant Lyon has over 30 years of experience in corporate restructuring, expert testimony and corporate governance.

He has served on numerous boards of directors, all of which involved companies in distress and/or needing an independent board member. Mr. Lyon has also served as the financial advisor to the Government of the Commonwealth of the Bahamas.

Mr. Lyon has served numerous times as a Chapter 11 Trustee, state-court receiver, chief executive officer, chief financial officer and chief restructuring officer.

He has testified over 30 times in numerous jurisdictions, including bankruptcy court, federal district court and state court.

BOARD OF DIRECTORS EXPERIENCE:

1. Norwood Promotional Products (2004 – 2006 – Audit Chairman)

2. Tickets.com (Public - 2005)

3. Trussway, LTD. (2005- Independent Board Member)

4. Three Five Systems (Public - 2006-2011 - Chairman)

5. Fairfield Properties, LLC (2009 – 2010 Independent Board Member)

6. Marietta Products (2009 – Independent Board Member)

7. Vitesse Semiconductor (Public - 2009 – 2013)

8. Mesa Airlines (Public - 2011 – 2020)

9. Ultura (2014 – 2016 CEO and Chairman)

10. Rochem, GmbH (includes German, Swiss and Italian board positions - 2014-2016)

11. Capital Contractors (2015 – 2019 - Independent Board Member)

12. Jumio (2016 – 2017 - Independent Board Member)

13. GIP Genesis (2016 - 2017 - Independent Board Member)

14. Green Valley Hospital (2016 - 2018 - Independent Board Member)

15. Daw Technologies (2018 - 2019 - Independent Board Member)

16. Appvion, Inc. (2017 – 2018 - ESOP Committee Chairman)

17. Vision Media (2018 – Independent Board Member)

18. Lisbon Valley Mining (2018 – 2020 – Independent Board Member)

19. Raben Tires (2019 - 2020 – Independent Board Member)

20. Deluxe Entertainment (2019 – 202 – Independent Board Member, Chairman)

21. Qmax (2020 - Independent Board Member)

22. Clover Wireless (2020 – Present – Independent Board Member)

23. The Switch (2020 – Present – Independent Board Member)

24. Daniel's Jewelers (2020- Present – Independent Board Member)

25. CircusTrix (2020-Present – Independent Board Member)

26. Black Angus (2020 – Present – Independent Board Member)

27. Cred, Inc. (2020 – Present – Independent Board Member)

TRUSTEE/CRO/RECEIVERSHIP EXPERIENCE

- Liquidation Trustee for Skymall, LLC - (Skymall LLC, Case # 2:15-bk-00679-BKM D. Ariz. 2015).

- Chapter 11 Trustee – (Ara Macao Holdings, LP, Case #3:18-bk-03615-PS). 600 acre land development project in Belize.

- Family Real Estate Trust - (Receiver for Arizona based real estate trust with assets of approximately $300 million).

- Hospital – Pre and post-petition CRO (Apache Junction Hospital, LLC, Case #4-13-bk-18188-EWH Bankr. D. Ariz. 2013)

- Hotel – Post Confirmation Liquidation Trustee (Madison Hotel, LLC, Case #11-bk-12560-MG Bankr. S.D. N.Y. 2011)

- Real Estate Resort Operation CRO (CSD, LLC, Case #12-21668-BAM Bankr. D. Nev. 2012)

- Real Estate Portfolio Sale – Chapter 11 CRO (Nesbitt Portland Property LLC, Case #12-bk-12883-RR Bankr. C.D. Cal. 2012)

- Defense Contractor Asset Sale – Independent Debtor Representative (Armorworks Enterprises, LLC Case # 2:13-bk-10332-BMW Bankr. D. Ariz. 2013)

- Dairy Farm – Chapter 11 Trustee (Schuburg Holstein's LLC, Case #384 B.R.263 (D. Ariz. 2008)

- Golf Community – Chapter 11 Trustee (FRGC Development, LLC, Case #06-bk-00842-RTBP Bankr. D. Ariz. 2006)

- Mortgage/Real Estate Fraud – Chapter 11 Trustee (Greenbelt Property Management, LLC Case #2:07-bk-00790-RTB Bankr. D. Ariz. 2007)

- Commercial Mortgage Real Estate Fund – Chapter 11 Trustee (Radical Bunny, LLC, Case #2:08-bk-13884-CGC Bankr. D. Ariz. 2008)

- Residential Mortgage Servicer – Chapter 11 Trustee (First Magnus Financial Corporation, Case #4:07-bk-01578-JMM Bankr. D. Ariz. 2007)

- Mezzanine Real Estate Lender – Chapter 11 CRO (Specialty Trust, Case #10-bk-51432-GWZ Bankr. D. Nev. 2010)


EXPERT TESTIMONY EXPERIENCE:

Bankruptcy Court in the Districts of:

- Arizona (Feasibility, Interest Rates, Liquidation, Sale Process, Governance)

- Southern Texas (Feasibility, Liquidation)

- Northern Ohio (Feasibility, Liquidation, Sale Process)

- Florida (Feasibility, Valuation)

- Northern Illinois (Feasibility)

- Nevada (Valuation, Fraudulent Conveyance, Interest Rates)

- Delaware (Sales Process, Governance)

District Court in the District of:

- Virginia (Forensic Accounting, Fraud/Fraudulent Transfer, Avoidance Actions, Fiduciary Duties, Zone of Insolvency, Money Laundering)

- Southern District of New York (Damages)

State Court in:

- Arizona (Valuation, Damages, Fraudulent Transfer, Fraud, and Related Financial Issues

- New York (Damages, Bond Pricing)

FINANCIAL ADVISORY  ENGAGEMENTS 2009-2019:


- Financial advisor to the Government of the Bahamas (Baha Mar) in connection with a $5 billion hotel and casino project in Nassau Bahamas.

- Expert Witness – Swift Air -2:12-BK-14362. Testified in Arizona Bankruptcy court on solvency, preference and fraudulent conveyance.


- Expert Witness – Amco Insurance Company, et al.  No. 16-cv-4422-LTS-HBP. Testified on f damages on early redemption of bond.  Case pending in United States District Court – Southern District of New York.

- Expert Witness – Caesars Entertainment.  (Caesars Entertainment Operating Co. Inc. et al., case number 1:15- bk-01145).   Testified in North Illinois bankruptcy district on feasibility of payments to junior lenders.

-  Family Real Estate Trust - (Receiver for Arizona based real estate trust with assets of approximately $300 million).

- Expert witness for secured lender in a hotel bankruptcy case in Arizona. Opined and testified regarding interest rate and feasibility. (Lodge Partners, LLC Case #4:13-bk-7952 Bankr. D. Ariz. 2013).

- Real Estate Resort Operation CRO (CSD, LLC, Case #12-21668-BAM Bankr. D. Nev. 2012)

- Real Estate Portfolio Sale – Chapter 11 CRO (Nesbitt Portland Property LLC, Case #12-bk-12883-RR Bankr. C.D. Cal. 2012)

- Fairfield Properties, LLC  Board Member (2009 – 2010 Terminated when company sold in 2011)

- Hotel – Post Confirmation Liquidation Trustee (Madison Hotel, LLC, Case #11-bk-12560-MG Bankr. S.D. N.Y. 2011)

- Financial advisor and investment banker for Debtor of 1300 acres of master planned, undeveloped land in North Las Vegas. Marketed and conducted a section 363 sale of the Debtor's assets. (November 2005 Land Investors, LLC, Case #11-20704-MKN Bankr. D. Nev. 2011).

- Financial advisor to a $3 billion commercial office-building fund.  Services included valuation, feasibility, capital acquisition and negotiations with creditors.

- Financial advisor to a $500 million retail shopping-mall developer.  Services included valuation, cash flow analysis, structuring of reorganization strategy and negotiations with creditors.

- Expert witness for lender in a single asset real estate case. Opined on interest rates and refinancing. (Carefree Willows, LLC, Case #10-29932-MKN Bankr. D. Nev. 2010).

- Financial advisor to the special committee of the board for a $5B casino company. Services included review of LBO transaction, valuation and opine on validity of

potential fraudulent conveyance claims. (Stations Casinos, Inc., Case #09-bk-52477-GWZ Bankr. D. Nev 2009).

- Financial advisor to $400 million Florida based residential homebuilder. Services include analysis of company operations and development of strategic plan, cash flow analysis and liquidity alternatives, negotiation with secured lenders, and restructuring alternatives. (Mercedes Homes Inc., Case #09-bk-11191-PGH Bankr. S.D. Fl. 2009).

- Financial advisor to the Debtor and expert witness in the chapter 11 bankruptcy of the largest privately held homebuilder in Arizona. Restructured $190 million of debt. (Fulton Homes Corporation, Case #09-bk-01298-GBN Bankr. D. Ariz. 2009).

- Commercial Mortgage Real Estate Fund – Chapter 11 Trustee (Radical Bunny, LLC, Case #2:08-bk-13884-CGC Bankr. D. Ariz. 2008)

- Mortgage/Real Estate Fraud – Chapter 11 Trustee (Greenbelt Property Management, LLC Case #2:07-bk-00790-RTB Bankr. D. Ariz. 2007)

- Residential Mortgage Servicer – Chapter 11 Trustee (First Magnus Financial Corporation, Case #4:07-bk-01578-JMM Bankr. D. Ariz. 2007)

- Golf Community – Chapter 11 Trustee (FRGC Development, LLC, Case #06-bk-00842-RTBP Bankr. D. Ariz. 2006)

- Financial advisor and investment banker to California based tech company. Oversaw marketing and sale of company for over 2x stalking horse bid. (Fuhu, Case # 15-12465 (CSS) Bankr. D. Delaware).

- Expert witness for ad hoc committee of unsecured noteholders in the Caesars Entertainment Operating Company's chapter 11 case. Testified in the bankruptcy court in the Northern District of Illinois. Testimony resulted in positive outcome for client. (Caesars Entertainment, Case # 15-00149 Bankr. N.D. Illinois).

- Served as Interim CEO and Board member for a water treatment company based in California with subsidiaries in Europe. Assisted in stabilizing the company, executing a strategy to sell certain assets and wind down other operations to maximize the recovery of creditors. Involved a court sanctioned 363 process in Delaware bankruptcy court and an out of court sale process in CA and Europe. (Ultura (LA) Inc., Case # 2-14-bk-12382 Bankr. D. Del. 2014).

- Expert witness for plaintiff in an admiralty law "alter ego" and fraudulent transfer case in the United States District Court, Norfolk Virginia. (Glory Wealth v. Vista Shipping, Case # 2:13cv658-RGD-LRL).

- Expert witness for stalking horse bidder in asset sale in United States Bankruptcy Court District of Columbia. Provided expert report regarding valuation and fair value analysis of certain healthcare provider assets and liabilities. Valuation dispute settled in June 2014 prior to trial. (Specialty Hospital, Case #14-00298 Bankr. D.C. 2014).

- Financial advisor to a consumer products company in bankruptcy in the United States Bankruptcy Court District of Arizona. Assisting in bankruptcy advisory as well as plan confirmation and asset sale. (Prime Time International Company Case # 2:14-bk-03518 Bankr. D. Ariz. 2014).

- Expert witness for Banco Popular de Puerto Rico in fraudulent transfer litigation in the United States Bankruptcy Court, United States Virgin Islands Division. Provided expert report addressing solvency and other fraudulent transfer issues. Expert report produced January 2014, deposition and trial pending. (Banco Popular De Puerto Rico Case #07-30012 (MFW); adv. Pro. No. 09-03090 (MFW) Bankr. USVI 2009).

- Expert witness for American Express in a fraudulent transfer in the United States District Court for the Southern District of Florida. Provided an expert report including forensic accounting and fraudulent transfer analysis. Was deposed in March of 2014, trial pending. (Perlman v. Amex, Case # 13-20515-CIV-Martinez S.D. Flor. 2013).

- Financial advisor to Unsecured Creditor's Committee of a digital media production company. Provided valuation and other financial advisory services. (Kit Digital, Inc., Case #13-bk-11298-REG Bankr. S.D. N.Y. 2013.

- Served as financial advisor and financial expert for the unsecured creditor's committee in its $1.2 billion fraudulent transfer litigation. Provided in depth financial, accounting and valuation analysis. The case settled after mediation prior to trial. (Mervyn's Holdings, LLC, Case # 08-bk-11586-KG Bankr. D. Del. 2008).

- Financial advisor to the debtor involved in the distribution of frozen meats. Provided financial, accounting and feasibility analysis throughout the bankruptcy

proceeding. (N'Genuity Enterprises Co., Case #11-bk-28705-GBN Bankr. D. Ariz. 2011).

- Financial advisor to the Unsecured Creditor's Committee of a large dairy farm. Assisted in the formulation of a competing Chapter 11 plan and provided other advisory services. (Dairy Production Systems-Georgia, Case #10-bk-11752-JDW Bankr. M.D. Ga. 2010).

- Expert witness for lender in a machinery and equipment company chapter 11 case. Provided expert testimony on interest rates and feasibility. (Red Mountain Machinery Company, Case # 09-bk-19166-RJH Bankr. D. Ariz. 2009).

EDUCATIONAL BACKGROUND:

| | |
|---|---|
| 1987 | Bachelor of Science Degree in Accounting<br>Magna Cum Laude<br>Brigham Young University<br>Provo, Utah |
| 1989 | Masters of Business Administration<br>High Distinction<br>Brigham Young University<br>Provo, Utah |
| 1994 | Certified Public Accountant (Arizona- Inactive) |
| 2002 | Series 7, 63 and 24 Broker/Dealer Licenses (Inactive) |
| | Fluent in Spanish – Lived in Colombia, South America |

EMPLOYMENT:

| | |
|---|---|
| 2020- Current | Arete Capital Partners, LLC<br>Co-founder |
| 2017-2020 | Atera Capital, LLC<br>Founder |
| 2014-2017 | KRyS Global USA<br>Managing Director |
| 1998-2002, 2004-2014 | Odyssey Capital Group, LLC<br>Founder |
| 2005 | Chief Financial Officer<br>Hypercom Corporation (NYSE:HYC) |
| 2002- 2004 | Ernst &Young Corporate Finance, LLC<br>Managing Director |
| 1997 | Evans Withycombe Residential, Inc.<br>Vice President - Capital Markets (NYSE:EWR) |
| 1989-1997 | Arthur Andersen LLP |

# EXHIBIT B

# Appvion ESOP Committee Report

September 1, 2017

# Process For Argent's Engagement of and Selection of Valuation Firm

History - SRR was brought on by Appvion's predecessor ESOP Trustee, State Street.

Argent has used SRR for many of its Trustee clients.

Argent has not run a process for selecting valuation firm. With Argent's knowledge of SRR and their qualifications, Argent felt that SRR knew the Company and the industry well and didn't feel that a change to the valuation firm was necessary.

To date, Argent has not felt a reason to change valuation firms.

# Argent's View on Lawsuit Filed Against Wilmington Trust where Stout Risius Ross (SRR) was Allegedly Asleep at the Wheel

Argent knows about Constellis law suit.

Argent says they will consider the lawsuit going forward, but based on their review of the court's decision, don't believe SRR did anything wrong (in Argents opinion).

Still deciding whether to use SSR for the 12/31/2017.

# Argent's Involvement in Reviewing Valuation

Argent believes there is always some value to equity, even if it is just option value.

Given Company's performance and restructuring, Argent feels we are getting close to option value for Appvion.

On a consolidated basis, Appvion hasn't ever hit their business plans in Argent's history.

# Argent's View and Methodology on the Discount Rates Used in the Valuation.

Thermal and carbonless have different discount rates. Thermal is where the risk is.

Carbonless less volatile. Argent reviews components of discount rate.

Argent also uses the end results enterprise value vs third party offers.

Argent has questioned SSR on discount for lack of marketability of 5%, but it hasn't changed. Considering increasing discount from 5% to 10% or more, given the Company's deteriorating financial condition.

# Enterprise Values and Discount Rates

| Valuation Date | 6/30/14 | 12/31/14 | 6/30/15 | 12/31/15 | 6/30/16 | 12/31/16 | 6/30/17 |
|---|---|---|---|---|---|---|---|
| **Thermal** | | | | | | | |
| Enterprise Value | $319,000 | $291,000 | $263,000 | $267,000 | $274,000 | $281,000 | $278,000 |
| Overall WACC | 12.0% | 12.5% | 12.5% | 12.0% | 12.5% | 13.0% | 13.0% |
| Company Specific Risk Premium | 1.0% | 2.0% | 2.0% | 2.0% | 4.0% | 4.0% | 4.0% |
| Projected EBITDA CAGR | | 8.1% | | 54.9% | | 20.0% | |
| | | | | | | | |
| **Carbonless** | | | | | | | |
| Enterprise Value ($ million) | $251,000 | $243,000 | $246,000 | $246,000 | $242,000 | $213,000 | $209,000 |
| Overall WACC | 13.0% | 11.0% | 11.5% | 11.5% | 11.5% | 10.5% | 10.5% |
| Company Specific Risk Premium | 2.0% | 0.0% | 0.0% | 1.0% | 2.0% | 0.0% | 0.0% |
| Projected EBITDA CAGR | | 2.0% | | 0.8% | | -4.0% | |

# Methodology of Preparation of Financial Projections and Argent's Methodology of Reviewing the Financial Projections to Determine if Projections Reasonable

- Appvion prepares financial projections. Given history of Company not hitting projections, SRR and Argent both review the Company's projections, but typically haven't not adjusted the projections.

- Argent, alongside SRR, does interview management to discuss the projected financial performance and recent operations. (Also note that the projected financial performance is consistent with the projections provided to and reviewed by the Company's Board) SRR will adjust for the assessed riskiness of the projections in the discount rate.

- Currently, no deduction has been given for unfunded pension liability. I asked Argent what their opinion was on it. They have discussed the issue with SRR and may need to start including a portion of all of it in determining equity value. With the change in CFO, Argent still reviewing the impact (if any) on the change in CFO and impact on valuation. Just to soon to determine yet.

# Historical Projections

**Projections Analysis (EBITDA)**
*RED= ACTUAL*

| Thermal | FY 2014 | FY 2015 | FY 2016 | FY 2017 |
|---|---|---|---|---|
| 6/30/14 | $37,788 | $44,069 | $46,407 | $51,409 |
| 12/31/14 | $33,805 | $33,034 | $37,932 | $42,626 |
| 6/30/15 | $33,805 | $20,759 | $31,499 | $41,527 |
| 12/31/15 | $33,805 | $6,296 | $28,593 | $41,089 |
| 6/30/16 | $33,805 | $6,296 | $31,593 | $41,089 |
| 12/31/16 | $33,805 | $6,296 | $24,304 | $33,890 |
| 6/30/17 | $33,805 | $6,296 | $31,593 | $31,429 |

| Carbonless | FY 2014 | FY 2015 | FY 2016 | FY 2017 |
|---|---|---|---|---|
| 6/30/14 | $43,776 | $43,594 | $49,923 | $53,219 |
| 12/31/14 | $43,211 | $43,152 | $44,356 | $46,455 |
| 6/30/15 | $43,211 | $44,677 | $45,173 | $45,823 |
| 12/31/15 | $43,211 | $43,826 | $44,107 | $47,371 |
| 6/30/16 | $43,211 | $43,826 | $40,607 | $47,371 |
| 12/31/16 | $43,211 | $43,826 | $31,231 | $32,565 |
| 6/30/17 | $43,211 | $43,826 | $31,231 | $30,423 |

# Status of Current Redemption Asks

Company is still allowing employees to invest new funds into ESOP. Does that make sense?

Argent says it expressed concern to the Company. Company is looking into the situation.

Redemption requests have not moved materially. But with the upcoming layoffs, redemptions will likely be higher.

Distribution process is handled at the Company level with assistance from the ESOP's TPA (Principal Group). Argent doesn't really get involved.

# Does Contingency Plan Exist if Financial Restructuring at Appvion Prohibits Purchase of Stock of ESOP

Don't have one at the moment. They need to sit down with the Company to discuss, both with the communication plan and effect on illiquidity discount (the 5%)

# Status of Discussion with Key Employees/Union Leader in Regards to Financial Condition of Appvion

No real forum for explaining financial condition nor SRR per share valuations. Typically Argent hasn't done this. Argent lets the Company lead and Argent in support.

# Conclusions and Recommendations

- Consider running a process to choose a new valuation firm

- Consider stop taking contributions from employees

- Consider developing a PR plan to explain stock price changes

- Consider how to involve (it at all) employee representatives on status of restructuring process

- Consider forecasting methodology to try and understand why forecasts are missed given forecasts are basis for SSR valuation