## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| APPVION, INC. RETIREMENT SAVINGS AND EMPLOYEE STOCK OWNERSHIP PLAN, BY AND THROUGH GRANT LYON IN HIS CAPACITY AS THE ESOP ADMINISTRATIVE COMMITTEE OF APPVION, INC., <br><br> Plaintiff, <br> v. <br><br> DOUGLAS P. BUTH, *et al.*, <br><br> Defendants. | Case No.: 1:18-cv-01861-WCG |

## ARGENT TRUST COMPANY'S OBJECTION TO REPORT AND RECOMMENDATIONS CONCERNING ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

# Table of Contents

I. Preliminary Statement ................................................................................................ 1

II. Standard of Review ................................................................................................... 2

III. Argument ................................................................................................................... 2

    A. The Court Should Not Adopt the Recommendation Related to the Section 406 Prohibited Transactions Claim (Count XXIV). ............................................... 2

        1. The Magistrate Judge clearly erred by ignoring the applicable ESOP provisions and applying the wrong section of the Trust Agreement. ................................................................................................ 2

        2. The Magistrate Judge Failed to Recognize the Court's Prior Decision. ................................................................................................ 7

    B. The Court Should not Adopt the Recommendation Regarding the Section 404 Prudence Claim (Count II). ............................................................................ 8

        1. The Report and Recommendation Incorrectly Concluded that Federal Rule 9(b) Did Not Apply to Allegations about Argent's Conduct. ................................................................................................ 8

        2. The Court Inverted Burdens of Proof. ........................................................ 9

        3. The Report and Recommendation Contradicts the Court's Prior Holding that Plaintiff Failed to State a Plausible Claim Argent Acted Imprudently. ................................................................................. 10

        4. Argent's "Merits" Arguments are Properly Considered. ........................... 12

IV. Conclusion ............................................................................................................... 14

# Table of Authorities

**Cases**

*Allen v. GreatBanc Trust Co.*,
     835 F.3d 670 (7th Cir. 2016) ................................................................................ 4-5, 9

*Armstrong v. Amsted Indus.*,
     No. 01-cv-2963, 2004 U.S. Dist. LEXIS 14776 (N.D. Ill. July 30, 2004) ................ 6

*Lockheed Corp. v. Spink*,
     517 U.S. 882 (1996) ................................................................................................ 6

*Loud Records LLC v. Minervini*,
     621 F. Supp. 2d 672 (W.D. Wisc. 2009) ............................................................... 12

*Walker v. McArdle*,
     2018 U.S. Dist. LEXIS 123100 (E.D. Wis. 2018) ................................................... 2

*Young v. Bell Atl. Cash Balance Plan*,
     615 F.3d 808 (7th Cir. 2010) ................................................................................... 5

**Statutes & Rules**

29 U.S.C. § 1106 ............................................................................................................. 6

29 U.S.C. § 1107 ............................................................................................................. 4

26 U.S.C. § 4975 ............................................................................................................. 4

Federal Rule of Civil Procedure 12(b)(6) ..................................................................... 13

Federal Rule of Civil Procedure 72 ................................................................................ 2

## I. Preliminary Statement

Argent Trust Company objects to the Magistrate Judge's March 17, 2022 Report and Recommendations (Doc. 235) that two claims should survive Argent's motion to dismiss (the "R&R"). There are two compelling reasons to believe the Court will disagree with the R&R: (1) the Magistrate Judge's recommendation regarding the ERISA section 406(a)(1) prohibited transactions claim was based on a simple error—misapplication of the ESOP and Trust Agreement provisions to such claim, and overlooking the Court's prior ruling that the ESOP required Argent to act the way it did, and (2) the Court already found Plaintiff's allegations to be wanting in regard to both the prohibited transactions claim (Count XXIV) and the prudence claim under ERISA section 404(a) (Count II).

Argent's objection is different than a "typical" objection to a magistrate judge's recommendation. In the more common case, the district court judge refers a case or an issue to the magistrate judge in the first instance. The recommendation that comes from the magistrate judge is the first judicial word on the issue. The district court judge, under that scenario, has not considered the issues adjudicated in the recommendation. Rearguing to the district court judge that which was already argued to the magistrate judge is one of, if not the only, arrows in the objector's quiver. This is why objecting to a magistrate judge's recommendation is typically a low percentage strategy.

This case is far from the typical situation because this Court has already issued an exhaustive, 52-page opinion dismissing all Plaintiff's claims. It was only when Plaintiff amended its complaint (a second time) that the Court referred the renewed motions to dismiss to the Magistrate Judge. Thus, the Magistrate Judge's recommendation should only be adopted where Plaintiff has shown that it has asserted something new or different that compels a result different from the one the Court previously reached.

The Magistrate Judge himself agreed. He acknowledged that his task was to assess "whether the plaintiff's second amended complaint successfully cured the defects [the Court] identified in the first amended complaint." (R&R at 1.) But then, in recommending that Argent's motion to dismiss be denied in part, the Magistrate Judge relied entirely on (and in regard to the prohibited transactions claim misread) allegations in the Second Amended Complaint ("SAC"), that were previously plead in the First Amended Complaint ("FAC"), which the Court already held were insufficient to state a prohibited transactions or prudence claim against Argent. There is nothing new or different in the SAC. The Court should therefore not adopt the R&R, and instead dismiss the claims against Argent for failure to state a claim.

## II. Standard of Review

"Federal Rule of Civil Procedure Rule 72(b) allows a party who disagrees with a magistrate judge's report and recommendation to file written specific objections. The district court judge must make a *de novo* determination of those portions of the magistrate judge's decision to which the party specifically objects." *Walker v. McArdle*, 2018 U.S. Dist. LEXIS 123100, *3 (E.D. Wis. 2018) (Griesbach, J.), citing *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

## III. Argument

### A. The Court Should Not Adopt the Recommendation Related to the Section 406 Prohibited Transactions Claim (Count XXIV).

#### 1. The Magistrate Judge clearly erred by ignoring the applicable ESOP provisions and applying the wrong section of the Trust Agreement.

The Court previously rejected Plaintiff's allegation that the mandatory stock purchases challenged in Count XXIV that occurred as part of routine plan administration somehow constituted prohibited transactions under ERISA section 406(a)(1). (Doc. 186 at 42-43.) In the R&R, the Magistrate Judge reaches a similar conclusion as to State Street and Reliance—the

2

predecessor trustees to Argent—but recommends that the prohibited transactions claim against Argent proceed. In doing so, the Magistrate Judge incorrectly read the SAC to say that Argent, unlike State Street and Reliance, had discretion to make the challenged purchases of PDC stock, or not, and thus "caused" those transactions as required under ERISA section 406. There is, however, no basis for such distinction. The Magistrate Judge was simply wrong.

Recall the alleged prohibited transactions at issue in Count XXIV are two routine, plan administration mechanisms: (1) the ESOP's biannual purchases of PDC stock for employee participants using their elective pay deferrals and PDC matching contributions; and (2) the payment of cash to employee participants upon triggering events (their retirement, etc.) in exchange for repurchases of their PDC stock. (*See* SAC ¶¶ 150, 293, 1127, 1129, Appendix A, B.) These transactions are clearly laid out in the SAC as in the FAC. (*Id.*; *compare*, FAC ¶¶ 165-69, 334, 338, 554.) As explained below, the two alleged prohibited transactions at issue in Court XXIV were required by mandatory provisions in the ESOP. Argent did not have discretion to "cause" either of these transactions.

Starting with the first alleged prohibited transaction in Count XXIV, the biannual purchases of PDC stock, the SAC alleges: "the Employee Owners could elect to contribute a portion of their wages on an ongoing basis to the ESOP, which the ESOP would use to purchase additional stock from PDC in approximately June and December of each year and then allocate to accounts of Employee Owners." (SAC ¶ 150.) Where an employee participant did so, ESOP section 6.4 by its terms *required* Argent (as it did Reliance) to use the cash asset contributed by the employee participant to purchase PDC stock for the participant's ESOP account. Section 6.4(a)(1) states: "to the extent a Participant directs his Elective Contributions to be invested under the ESOP Component of the Plan, such contributions . . . *shall* be converted to Company Stock on a semi-

3

annual basis." (Appvion ESOP, Doc. 193-1, at § 6.4(a)(1)) (emphasis added). ESOP section 6.2(b) likewise mandates: "The portion of the Fund constituting the ESOP Component *shall* be invested primarily in Company Stock." (*Id.* at § 6.2(b)) (emphasis added). Plaintiff pleads these as the controlling provisions. (*E.g.,* SAC ¶ 293 ("these purchases were made twice a year . . . under § 6.4(a)(1) of the Plan.").) In sum, the ESOP provisions relevant to this alleged prohibited transaction, sections 6.4(a) and 6.2(b), did not provide Argent with discretion; rather they required Argent to use the employee participant's "Elective Contributions" to purchase PDC stock.

The requirements of the ESOP sections cited above make sense because after all, this is an *employee stock ownership* plan; its *raison d'être* is investment in company stock. *See* 26 U.S.C. § 4975(e)(7)(A) ("employee stock ownership plan means a defined contribution plan . . . designed to invest primarily in qualifying employer securities"); 29 U.S.C. § 1107(d)(6) (same). No surprise then that the ESOP makes such purchases of PDC stock mandatory, and not left to Argent's discretion as the Magistrate Judge incorrectly concluded.

The Magistrate Judge ignored these mandatory provisions and instead relied solely on section 2.4 of the August 3, 2015 Trust Agreement to reach his erroneous conclusion that Argent had discretion to "cause" purchases of PDC stock that the prior trustees lacked. (*Id*. at 54 *quoting* SAC ¶ 1128, 8/3/15 Trust Agreement at § 2.4, Doc. 193-2).) But Section 2.4 of the Trust Agreement has nothing to do with the transactions Plaintiff attacks in Count XXIV. Section 2.4 is titled "Purchase and Sale Transactions" and gives Argent discretion to enter into extraordinary "purchase and sale transactions" other than the routine and mandatory purchases of PDC stock under ESOP sections 6.4 and 6.2. (*See* Trust Agreement at § 2.4, Doc. 193-2). An example of the type of different and extraordinary "purchase and sale transaction" that would be governed by Section 2.4 is what the Seventh Circuit considered in *Allen v. GreatBanc Trust Co.*, 835 F.3d 670

4

(7th Cir. 2016), the sole decision the Magistrate relies upon for recommending that the prohibited transactions claim against Argent should not be dismissed. (R&R at 62.) *Allen* involved a significant leveraged transaction where the ESOP purchased $60 million in stock from the company's principal shareholders. 835 F.3d at 673. That is precisely the type of extraordinary and discretionary "purchase and sale transaction" that would be governed by section 2.4—not the routine and mandatory mechanisms for plan administration required by ESOP sections 6.4 and 6.2 that Plaintiff challenges here.

Tellingly, Trust Agreement section 2.3, located *immediately prior* to section 2.4, states plainly and consistent with the ESOP provisions discussed above that cash "assets held by the trustee in the [ESOP] Trust *shall* be invested primarily in [PDC] stock". (Trust Agreement at § 2.3, Doc. 193-2.) Section 2.4, with its general language about Argent having discretion to enter into extraordinary "purchase and sale transactions", necessarily does not apply to the routine transactions challenged in Count XXIV, which are specifically mandated by ESOP sections 6.4 and 6.2 and Trust Agreement section 2.3. *See Young v. Bell Atl. Cash Balance Plan,* 615 F.3d 808, 823 (7th Cir. 2010) (specific benefits plan provisions control over general). Were it to be otherwise, there would be no reason for Trust Agreement Section 2.3 or the specific provisions in ESOP sections 6.4 and 6.2.

Turning to the second alleged prohibited transaction in Count XXIV, the payment of cash to departing employee participants upon retirement or other triggering events, Argent plainly had no discretion regarding these repurchases of PDC stock from employee participants. In the SAC, just like in the FAC, it is alleged those repurchases were an obligation under the express terms of the ESOP. (*Compare* SAC ¶¶ 151-53, 278 ("Appvion or PDC was obligated to repurchase stock when employees were entitled to distributions") *with* FAC ¶¶ 167-69, 554 ("Under the ESOP Plan

5

documents, when an employee was eligible for distributions, the Company was required to repurchase the shares of stock allocated to that employee"). (*See also* ESOP, Doc. 193-1, at Art. 7: Distribution.) This repurchase obligation was the very means through which benefits were paid to departing employee participants. *See* ESOP § 7.1(b) ("distributions of ESOP Accounts . . . *will be made*" upon a qualifying event like death or retirement) (emphasis added). The Magistrate Judge's conclusion that Argent exercised discretion and therefore "caused" these repurchases from participants is again based solely on misapplication of section 2.4, which for the reasons explained above, has nothing to do with the routine and administrative repurchases of PDC stock from departing employee participants.

The Magistrate Judge also failed to consider at least two additional reasons that independently require dismissal of this second alleged prohibited transaction in Count XXIV.

First, as noted above, the SAC, just like the FAC, *expressly* alleges it was "Appvion or PDC" that repurchased stock from departing employee participants—*not* the ESOP. (SAC ¶ 278; *see also id.* at ¶ 279 (describing the "Appvion . . . repurchase obligations"). This means there was no prohibited transaction because section 406(a) only implicates transactions in which the ESOP "engage(s)". 29 U.S.C. § 1106(a).

Second, even if Argent had discretion and "caused" the repurchases (which it didn't) and the ESOP "engage(d) in" those transactions (which it didn't)—the Magistrate Judge still erred because the Supreme Court has explicitly held that the payment of benefits to employee participants pursuant to the terms of a n ERISA retirement plan are not prohibited transactions under section 406 as a matter of law. *Lockheed Corp. v. Spink*, 517 U.S. 882, 892 (1996). *See also Armstrong v. Amsted Indus.*, No. 01-cv-2963, 2004 U.S. Dist. LEXIS 14776, at *32-36 (N.D. Ill.

6

July 30, 2004) (following *Lockheed Corp.* and dismissing section 406 prohibited transaction claims based on repurchase of employee participants' shares in accordance with ESOP terms).

Based on the foregoing, it is clear that the Magistrate Judge erred in the R&R. The Court should dismiss Count XXIV.

### 2. The Magistrate Judge Failed to Recognize the Court's Prior Decision.

The Court previously dismissed the ERISA section 406(a)(1) prohibited transactions claim against all trustee defendants including Argent, but the Magistrate Judge has reversed this Court's determination by recommending that the prohibited transactions claim stand against Argent. The Magistrate Judge failed to heed the Court's previous opinion on these very same two types of purchases of PDC stock, which again underlay the prohibited transactions claim in Count XXIV. (Doc. 186 at 42-43.) As the Court rightly concluded after fully considering the same two categories of alleged prohibited transactions and same ESOP and Trust Agreement provisions in dismissing the FAC, "purchasing stock from PDC [and] repurchasing shares" from employee participants upon triggering events are "***required*** by the Plan." (*Id.* at 43 (emphasis added).) As described throughout this brief, the Plaintiff did not substantively alter its allegations that the Court previously held were insufficient in the FAC to state the same prohibited transactions claim that is asserted against Argent in the SAC, and the August 3, 2015 Trust Agreement that the Magistrate Judge relied upon in siding with the Plaintiff was likewise before this Court when it dismissed the same prohibited transaction claims in the FAC against Argent. (*See* FAC ¶ 184; Aug. 3, 2015 Trust Agreement, Doc. 102-5.) The result should be no different here.

Based on the foregoing, the Court should not adopt the R&R as it pertains to the section 406(a)(1) prohibited transactions claim against Argent, and dismiss SAC Count XXIV.

### B. The Court Should not Adopt the Recommendation Regarding the Section 404 Prudence Claim (Count II).

While recommending the dismissal of other aspects of Plaintiffs section 404 claim, the Magistrate Judge recommended that Argent's motion to dismiss be denied with respect to Plaintiff's prudence claim against Argent in Count II concerning the "adopt[ion] of SRR's stock valuations." (R&R at 55, 57-59.) This recommendation should not be accepted because the R&R (i) failed to apply Federal Rule 9(b) to the allegations against Argent, (ii) inverted an ERISA Plaintiff's pleading burden even if Rule 8 applies, (iii) cannot be squared with the Court's prior decision, and (iv) incorrectly determined that arguments on the purported "merits" may not be considered on a Federal Rule 12(b)(6) motion. We address each reason in turn.

#### 1. The Report and Recommendation Incorrectly Concluded that Federal Rule 9(b) Did Not Apply to Allegations about Argent's Conduct.

The Magistrate Judge erred in concluding that "unlike the allegations against the other trustees, which are inextricably intertwined with fraud allegations . . . the allegations against Argent can be extracted from the rest of the fraud allegations to be considered as stand-alone allegations of imprudence." (R&R at 56.) The SAC makes clear that every single section 404 prudence allegation against Argent, just like the section 404 prudence allegations against the other trustees, are inextricably premised on Argent's alleged *fraudulent* conduct related to the bi-annual stock valuations. *See e.g.* SAC ¶ 340 (describing that from 2001 until Appvion's bankruptcy "each defendant took steps in furtherance" of fraud, including the "release of 32 fraudulently inflated semi-annual PDC stock prices each of which concealed that each previous PDC stock price had been fraudulently inflated."; *id.* at ¶ 565 ("The Defendants [including Argent] continued to engage in fraudulent concealment after 2013.").)

8

That Plaintiff's section 404 prudence claim against Argent unquestionably sounds in fraud is further demonstrated by the fact that the SAC asserted a separate fraud claim against Argent (securities fraud – Count XXXII) based on the *same* alleged fraudulent conduct that underlies the section 404 prudence claim (Count II). (*Compare* Count II, SAC ¶¶ 611-625 *with* Count XXXII, SAC ¶¶ 1212-1224. *See e.g.* SAC ¶ 1223 ("Argent's representation of the share prices despite these known issues [described in the preceding 17 paragraphs] that affected the stock price render [Argent's] representations fraudulent.").) The Court should reject this aspect of the R&R, and instead, dismiss the claims against Argent for failure to meet the Rule 9(b) pleading standard.

## 2. The Court Inverted Burdens of Proof.

The R&R misapplied important standards for the adjudication of Argent's motion to dismiss. In multiple instances, the Magistrate Judge placed the burden on *Argent* to demonstrate *its* prudence instead of testing whether *Plaintiff's* SAC stated a claim of imprudence. Consider an example. In rejecting Argent's position, the Magistrate Judge stated that "[a] single conversation [by an Argent employee] with the valuator does not allow a judge to conclude, as a matter of law, that Argent acted prudently." (R&R at 58.) This is an inversion of the applicable burdens. At no point—including at this motion to dismiss stage—does this Court have to determine that *Argent* acted *prudently*. The burden is instead on *Plaintiff* to identify facts that plausibly allege Argent acted *imprudently*. *Allen*, 835 F.3d at 678 (noting it is a plaintiff's burden to plausibly allege a breach of duty). Yet, when addressing similar allegations in the SAC that State Street, like Argent, improperly relied on management projections (SAC ¶ 654-55), failed to subtract certain debt (SAC ¶ 656-57), and improperly applied a control premium (SAC ¶ 660) but also, like Argent, relied on its valuation professional, the Magistrate Judge held that such allegations "make[] it less plausible that [State Street] acted imprudently." (R&R at 40.) The very same allegations that Argent, too, relied on its valuation professional and even further specifically discussed management projections

9

and the treatment of certain debt with its valuation professional should likewise make it "less plausible that Argent acted imprudently". But the R&R took an inexplicably different view of these allegations against Argent. (R&R at 58) ("That's all fine but that gets into the merits of the dispute . . . .") That is a real difference in treatment of similar allegations and one that clouds the reliability of the R&R as to Argent. The Court should reject this plain error and dismiss the prudence claim in Count II against Argent.

### 3. The Report and Recommendation Contradicts the Court's Prior Holding that Plaintiff Failed to State a Plausible Claim Argent Acted Imprudently.

The Court should reject the R&R because the Court considered the very same allegations underlying Plaintiff's ERISA section 404(a) prudence claim in the SAC when it dismissed the FAC for failure to meet the plausibility threshold of *Iqbal* and *Twombly*. Count II should therefore be dismissed for the same failure to state a plausible claim against Argent.

The first "new" allegation of imprudence that the Magistrate Judge misidentified is that "Argent accepted Appvion's business projections at face value despite a lengthy history of failing to meet such projections." (R&R at 58.) It is beyond question that throughout the FAC, Plaintiff alleged that Argent improperly relied on management's business projections. In the FAC, Plaintiff alleged, "The appraisals relied heavily on projections of future earnings created by Appvion's management, even though [Argent] knew, but did not disclose, that Appvion consistently missed these projections." (Doc. 77 at ¶ 44.) Plaintiff further alleged in the FAC that Argent's valuations were flawed because they "relied heavily on projections of future cash flow created by Appvion's management, even though [Argent] knew that Appvion consistently missed these projections." (*Id*. at ¶ 241.) Still further, Plaintiff alleged in the FAC that "Argent acknowledged that Appvion had consistently missed their financial projections during Argent's time as trustee." (*Id*. at ¶ 498.) The Court found all of these allegations wanting in its prior order dismissing the prudence claim against

10

Argent. There is nothing new in the SAC, so allegations in the SAC about Argent's alleged reliance on projections does not support a different result than the Court reached when reviewing the plausibility of the same allegations in the FAC.

The second "new" allegation in the SAC that the Magistrate Judge misidentified is Plaintiff "alleges that Argent's Steve Martin was aware of a valuation problem resulting from the failure to subtract certain debt; the matter was discussed with SRR but no immediate change occurred." Here again, this allegation featured prominently in the FAC. *See* FAC at ¶ 501 ("*Argent acknowledged* that unfunded pension and post-retirement benefits other than pension liabilities were never included in the SRR valuation, even though those liabilities and post-retirement benefits other than pension were included in the audited financial statements.") (Emphasis added.) There is nothing new in the SAC about the treatment of debt, so allegations in the SAC about Argent's alleged knowledge of a "valuation problem" does not support a different result than the Court reached when reviewing the plausibility of the same allegations in the FAC.

The third "new" allegation misidentified by the Magistrate Judge is that "Argent imprudently failed to challenge the control premium SRR applied…[.]" In the FAC, however, Plaintiff made substantial issue of the allegedly improper use of a control premium, and the Court dismissed that complaint in its entirety. *See id*. at ¶ 311 ("The appraisals improperly applied a control premium in many of their valuations.") *See also* ¶¶ 207-214, 312-316, 536, 711 (alleging improper application of control premium). There is nothing new in the SAC about the use of a control premium, so a repeat of the same allegations in the SAC about Argent's alleged improper application of a control premium to value PDC stock does not support a different result than the Court reached when reviewing the plausibility of the same allegations in the FAC.

Those are the three "new" allegations, misidentified as such in the section 404 prudence section of the R&R, that lead the Magistrate Judge to incorrectly find the Plaintiff alleged sufficient facts to push Plaintiff's claim over the plausibility threshold that it failed to meet in the FAC. (R&R at 57-59.) These precise allegations, however, featured prominently in the FAC, and the Court deemed them to be insufficient to state a claim. (Doc. 186 at 13-14, 48.)

Because the R&R contradicts the Court's prior decision, the Court to reject the R&R and dismiss the ERISA section 404(a) prudence claim against Argent.

### 4. Argent's "Merits" Arguments are Properly Considered.

There is another fundamental legal error with the R&R. In at least three crucial instances the Magistrate Judge did not reject Argent's argument, but simply concluded that Argent prematurely argued the merits of the dispute. (R&R at 58-60.) But there was nothing inappropriate or premature about the arguments identified in the R&R relating to the "merits" of Plaintiff's prudence claim.

It is, of course, true that there are restrictions on what a Court may consider on a motion to dismiss. These are familiar and well-settled. The Court may not rely on matters outside the pleadings such as extrinsic evidence, or weigh the credibility of allegations. *See e.g., Loud Records LLC v. Minervini*, 621 F. Supp. 2d 672, 675 (W.D. Wisc. 2009) (on Rule 12 motions to dismiss, "the court considers the pleadings alone, which consist of the complaint, the answer, and any written instruments attached as exhibits"). Also, the Court must accept plaintiff's allegations as true. But there is no jurisprudential bar to pointing out that Plaintiff's claim lacks "merit". If, as here, a defendant simply uses a plaintiff's allegations and nothing more to show that those allegations are implausible or make no sense, the case should be dismissed. Indeed, there is no functional difference between a challenge to the "merits" and to say that a plaintiff's claim "fail[s] to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6).

Argent, for example, argued that Plaintiff failed to allege a plausible damages theory. Argent pointed out that *Plaintiff's allegations* defeat any plausible claim of damages to ESOP participants because *Plaintiff alleges* PDC stock was worthless long before Argent was retained (so Argent could not have caused any further diminution to a worthless asset), and *Plaintiff alleges* that ESOP participants only benefited during Argent's time as trustee through the receipt of cash for allegedly worthless stock upon departing the ESOP. (*See* Argent Memo In. Supp., Doc. 199 at 13-14; Argent Reply, Doc. 222 at 13-14.) The Magistrate Judge did not grapple with the logic of these arguments that were based solely on the allegations in the SAC, and certainly did not reject Argent's position. Nor does the Magistrate Judge suggest that Argent introduced outside evidence or argued credibility. Instead, the Magistrate Judge passed on the issue entirely because Argent was asserting an "argument[] about the merits that do[es] not demonstrate the SAC fails to state a claim." (R&R at 60.) But the Magistrate Judge cites no authority for the proposition that "Plaintiff failed to plead plausible damages allegations" is off-limits on a Rule 12(b)(6) motion to dismiss. This is one example, but there are others. (*See* R&R at 58 (projections allegation), 59 (control premium allegation)).

The Magistrate Judge appears to have, in error, not considered many of Argent's actual arguments because they were on the "merits". Argent therefore incorporates its memorandum in support (Doc. 199) and reply brief (Doc. 222) on these points and asks the Court to consider the totality of those briefs on *de novo* review. Asking the Court to do so on this particular aspect of the R&R is not "reargument" because, in improperly rejecting Argent's arguments as "merits-based", the Magistrate Judge never analyzed Argent's arguments in its briefs. Upon full consideration of Argent's arguments, the only proper conclusion is that the ERISA section 404(a) prudence claim in Count II should be dismissed.

## IV. Conclusion

For the foregoing reasons, the Court should dismiss Count XXIV and Count II of the Second Amended Complaint.

Dated: March 31, 2022

By: : */s/ William P. McKinley*
William P. McKinley SBN # 1072959
MENN LAW FIRM, LTD.
2501 E. Enterprise Ave.
Appleton, Wisconsin 54912
Email: William-Mckinley@mennlaw.com
Tel: (920) 731-6631
Fax (920) 560 4757

-and-

By: */s/ Michael L. Scheier*
Michael L. Scheier
Brian P. Muething
Jacob D. Rhode
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite No. 1400
Cincinnati, Ohio 45202
Email: mscheier@kmklaw.com
bmuething@kmklaw.com
jrhode@kmklaw.com
Tel: (513) 579-6400
Fax: (513) 579-6457

*Counsel for Argent Trust Company*

**CERTIFICATE OF SERVICE**

      I certify that on March 31, 2022, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                      */s/ Michael L. Scheier*