## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
## GREEN BAY DIVISION

| | | |
|---|---|---|
| Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan, by and through Grant Lyon, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | Civil Action No.: 18-cv-01861 |
| Douglas P. Buth, et al., | ) ) | |
| Defendants. | ) ) ) ) ) | |

## PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION CONCERNING THE FORMER APPVION INC DIRECTOR AND OFFICER DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

## Table of Contents

I.     Introduction ................................................................................................ 5

II.    Argument ..................................................................................................... 6

    A.    The Magistrate Improperly Refused to Consider All Allegations
           Pled in the SAC ................................................................................. 7

    B.    The Magistrate Improperly Applied Rule 9(b) To Recommend
           Dismissal of All ERISA Claims Against the D&O Defendants. ............ 9

    C.    The SAC States Claims Against the D&O Defendants for Breaches
           of Fiduciary Duty on or After November 26, 2012. ............................ 12

           1.    The Magistrate Expressly Found That the SAC States an
                   Actionable Claim Against Richards and Other D&O
                   Defendants but Recommends Dismissal Anyway. .................... 12
           2.    The Magistrate Erred in Applying Rule 9(b) to All Aspects
                   of the Fiduciary Duty Claims Against the D&O Defendants.
                   ......................................................................................... 14

    D.    The ERISA Violations Occurring Before November 26, 2012 are
           Not Time-Barred. ............................................................................. 17

           1.    The SAC Added Significant Allegations of Fraudulent
                   Concealment. .......................................................................... 17
           2.    The SAC Alleges Active Concealment by the D&O
                   Defendants. ............................................................................ 19

    E.    The ESOP Committee Defendants Are Liable for Causing
            Prohibited Transactions. .................................................................. 22

    F.    The D&Os Are Liable for the Breaches of Their Co-Fiduciaries. ....... 23

    G.    The SAC States a Claim for Securities Fraud Against the D&O
           Defendants. ..................................................................................... 27

           1.    The SAC States a Claim Against Richards, Ferree, Gilligan,
                   and Arent ................................................................................ 27
           2.    The SAC Pleads Control Person Liability Against Carter,
                   Murphy, Reardon, Suwyn, and Seifert .................................... 30

II.    Conclusion ................................................................................................. 31

Case 1:18-cv-01861-WCG   Filed 05/02/22   Page 2 of 32   Document 243

## Table of Authorities

Page(s)

<u>Cases</u>

*Ahrendsen v. Prudent Fiduciary Servs., LLC*,
  2022 WL 294394 (E.D. Pa. Feb. 1, 2022) ........................................................ 26
*Allen v. GreatBanc Trust Co.*,
  835 F.3d 670 (7th Cir. 2016) .......................................................................... 22
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................. 9, 24
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................... 9, 10
*Chao v. Hall Holdings*,
  285 F.3d 415 (6th Cir. 2002) .......................................................................... 22
*Chamberlain Grp., Inc. v. Techtronic Indus. N. Am., Inc.*,
  No. 16 CV 06113, 2017 WL 4269005, at *5 (N.D. Ill. Sept. 26, 2017)…........... 15
*Cornielsen v. Infinium Capital Management, LLC*,
  916 F.3d 589 (7th Cir. 2019) .......................................................................... 26
*Enneking v. Schmidt Builders Supply, Inc.*
  917 F.Supp.2d 1200, 1203 (D. Kan. 2013)…................................................... 21
*Fid. Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*,
  412 F.3d 745 (7th Cir. 2005) .......................................................................... 11
*Gutierrez v. Peters*,
  111 F.3d 1364 (7th Cir. 1997) .......................................................................... 8
*Haley v. Tchrs. Ins. & Annuity Assoc. of Am.*,
  377 F. Supp. 3d 250 (S.D.N.Y. 2019) .............................................................. 23
*Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*,
  530 U.S. 238 (2000) ..................................................................................... 22
*Hensiek v. Bd. of Directors of Casino Queen Holding Company, Inc.*,
  2022 WL 263321 (S.D. Ill. Jan. 28, 2022) ................................................. 20, 21
*In re Cardinal Health Inc. Securities Litigation*,
  426 F.Supp.2d 688 (S.D. Ohio 2006) .............................................................. 29
*In re NationsMart Corp. Securities Litigation*,
  130 F.3d 309 (8th Cir.1997) ........................................................................... 14
*In re Spiegel, Inc. Sec. Litig.*,
  382 F. Supp. 2d 989 (N.D. Ill. 2004) ............................................................... 26
*In re Sprint Corp. ERISA Litig.*,
  2004 WL 2182186 (D. Kan. Sept. 24, 2004)..................................................... 24
*Keach v. U.S. Trust Co.*,
  419 F.3d 626 (7th Cir. 2005) .......................................................................... 22
*Kennedy v. Venrock Associates*,
  348 F.3d 584 (7th Cir. 2003) .......................................................................... 14
*Laskin v. Siegel*,
  728 F.3d 731 (7th Cir. 2013) .......................................................................... 21
*Leigh v. Engle*,
  727 F.2d 113 (7th Cir. 1984) .......................................................................... 24

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*,
   238 F.3d 363 (5th Cir.2001) .................................................................. 14, 15
*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015) ....................................................................... 12
*Makor Issues & Rts., Ltd. v. Tellabs Inc.*,
   513 F.3d 702 (7th Cir. 2008) .................................................................... 9, 29
*Martin v. Consultants & Administrators, Inc.*,
   966 F.2d 1078 (7th Cir. 1992) ................................................................. 20, 21
*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
   631 F.3d 436 (7th Cir. 2011) ......................................................................... 9
*Puskala v. Koss Corp.*,
   799 F. Supp. 2d 941 (E.D. Wis. 2011) .................................................... 26, 30
*Siegal v. Shell Oil Co.*,
   480 F. Supp. 2d 1034 (N.D. Ill. 2007) ..................................................... 15, 16
*Studio & Partners, s.r.l. v. KI*,
   2006 WL 3813697 (E.D. Wis. Dec. 27, 2006) ....................................... 9, 11, 14, 17
*Swanson v. Citibank, N.A.*,
   614 F.3d 400 (7th Cir. 2010) ...................................................................... 10
*Sweda v. Univ. of Pennsylvania*,
   923 F.3d 320 (3d Cir. 2019) .......................................................................... 8
*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .................................................................. 15, 16
*W. Bend Mut. Ins. Co. v. Schumacher*,
   844 F.3d 670 (7th Cir. 2016) ...................................................................... 10
*Walsh v. Vinoskey*,
   19 F.4th 672 (4th Cir. 2021) ...................................................................... 26
*Wood v. Carpenter*,
   U.S. (11 Otto) 135, 25 25 L.Ed. 807 (1879) ............................................... 20
*Zavala v. Kruse-W., Inc.*,
   2021 WL 5883125 (E.D. Cal. Dec. 13, 2021) ............................................ 25

Statutes

29 U.S.C. § 1106(a)(1) .................................................................................. 22

Rules

F.R.C.P. 9(b) ................................................................................ 12, 13, 14, 15

Plaintiff Grant Lyon hereby objects to the Magistrate Judge's 17 March 2022 Report and Recommendation recommending that the Court grant the Former Appvion Inc. Director and Officer Defendants' Motion to Dismiss the Second Amended Complaint (Dkt. 192, 193).

## I.    **INTRODUCTION**

The Second Amended Complaint ("SAC") brought claims under ERISA and the federal securities laws against former members of Appvion's ESOP Committee (the "ESOP Committee Defendants") and former outside directors (the "Outside Director Defendants")[1] of Appvion and Paperweight Development Corp. The claims were based on their roles in 1) the 2001 Transaction that caused the Appvion, Inc.[2] Employee Stock Ownership Plan (the "ESOP") to purchase all of Appvion's stock for more than fair market value; and 2) the ongoing biannual stock valuations that continued to value Appvion's stock at more than fair market value.

In error, the Magistrate applied Rule 9(b) to Plaintiff's ERISA claims against the D&O Defendants and relied on that standard to reject Plaintiff's claims against each ESOP Committee Defendant and each Outside Director Defendant. It was also error to apply 9(b) into the manner that the Magistrate did. For example, the fact that the Magistrate did not find the scope of the alleged fraud given the number of participants, does not mean that it was not plausible that the D&O ESOP fiduciaries breached their duty of prudence. In fact, the Magistrate did not identify any failures to plead with specificity other than finding that it was not plausible that so many parties participated in the fraud, and therefore the claims the claims were not plausible. Dkt. 235

_____

[1] The ESOP Committee and Outside Director Defendants are jointly referred to herein as the "D&Os" or the "D&O Defendants."

[2] As used herein, "Appvion" refers to both Appvion, Inc. and Paperweight Development Corp. Appvion was formerly known as Appleton Papers, Inc., but Plaintiff refers to it as Appvion regardless of time period.

at p. 15.  The Magistrate even acknowledges, as an example, that the SAC states an "actionable claim against Richards" and describes a claim that is pled with specificity, but he then commits error by recommending dismissal of the breach of fiduciary claims solely based his opinion that a 16-year fraud was implausible.  Dkt. 235 at p. 16.

The Magistrate also refused to consider most of the factual allegations in the SAC; because, in error, he concluded that the Court's ruling on the FAC actually rejected the substance of the facts pled in the FAC as insufficient to state a claim, when in reality, the Court rejected what he reconsidered was the FAC's group pleading.  The Magistrate therefore incorrectly disregarded facts that were pled in any form in the FAC, regardless of how much the SAC fleshed out those allegations or whether the totality of all the SAC allegations was sufficient.  He also disregarded many new facts that had not been pled in the FAC at all, claiming simply that the SAC pleads nothing new.  See Dkt. 235 at pp. 12, 15, 20.

For these reasons and for the reasons discussed below, the Court should decline to follow the Magistrate's Report and Recommendation with respect to D&O Defendants' Motion to Dismiss the SAC.

## II.   <u>ARGUMENT</u>

The Magistrate committed two key errors that permeate his analysis of the claims against the D&O Defendants.  First, he refused to consider most of the facts pled in the SAC, incorrectly determining that the Court already dismissed the factual substance of the claims.  Second, he misapplied Rule 9(b); he applied it to all of the ERISA breach of fiduciary claims regardless of the elements of the claim and rejected Plaintiff's breach of fiduciary claims for failing to plausibly plead a 16-year fraud (viewed as a whole), not for a failure to plead specific facts against any individual defendant.  It does not follow that if it were implausible for the defendants to participate in a 16-year fraud, it is implausible that they (or any single defendant) breached their RISA based

fiduciary duty. Just like the Court rejected the FAC's group pleading, the Court should also reject the Magistrates group dismissal of all the D&O Defendants without considering the facts of their individual involvement in the alleged breach of fiduciary duty.

### A.   The Magistrate Improperly Refused to Consider All Allegations Pled in the SAC.

Plaintiffs filed the First Amended Complaint ("FAC") in this case on 8 January 2019. The Complaint included ERISA claims (Counts 2-4, 6-7) against the ESOP Committee Defendants (ten former Appvion officers who were members of Appvion's ESOP Committee) and the Outside Director Defendants (seven former members Appvion's board of directors), as well as state and federal securities fraud claims (Counts 13 and 14) for actions within the statute of repose. On 27 June 2020, the Court granted the D&O Defendants' motion to dismiss all claims.

In relevant part, the Court found that Rule 9(b) applied to the ERISA claims, but that the FAC's allegations against the D&O Defendants were too general and based on their role with the corporation rather than their actual knowledge. The Court particularly took issue with the FAC's group pleading. For example:

> **Lyon does not allege what each specific defendant did** and how each defendants' alleged misconduct violated ERISA. **The conclusory group pleading allegations** that the defendants uniformly violated their fiduciary duties do not provide fair notice to each defendant concerning his or her participation in the fraud.

Dkt. 186 at p. 21. Accordingly, Plaintiff revised the complaint, filing the Second Amended Complaint ("SAC") on 25 September 2020. The SAC significantly expanded the factual allegations against each of the D&O Defendants. It added a substantial amount of factual background, better developed and detailed the existing factual allegations including information about who authored any alleged misrepresentations and broke out the counts by specific defendant to better identify the breaches of fiduciary duty by each defendant. *See* SAC Counts 4-21, 25-27,

Case 1:18-cv-01861-WCG   Filed 05/02/22   Page 7 of 32   Document 243

33-34. For example, the FAC only briefly mentioned any facts about Stout's subtraction of Appvion subsidiary BemroseBooth's pension liability from fair market value in connection with the 2007 and 2008 valuations, but the SAC adds a significant number of critical and compelling allegations about this and why it put each of the D&Os involved at that time on notice that the much longer Appvion pension liability must also be subtracted from fair market value. *Compare* FAC ¶¶ 250 with SAC ¶¶ 209-36, 1258. Since there has been no discovery in this case, Plaintiff's access to information is limited – however, the SAC alleges, with as great specificity as possible, each Defendants' personal involvement with the BemroseBooth transaction and with the PDC valuations together with specificity concerning each Defendant's knowledge and actions which give rise to the claims.

Despite the Court's relatively narrow ruling on the FAC, the Magistrate assumed that the Court already ruled on the substance of the allegations in dismissing the FAC. He therefore rejected analysis of them for his Report and Recommendation. *See, e.g.*, Dkt. 235 at pp. 12, 15, 20. This was improper. "In reviewing the plaintiff's complaint, all well-pleaded facts are assumed to be true, and all such facts, as well as the reasonable inferences therefrom, are viewed in the light most favorable to the plaintiff." *Gutierrez v. Peters*, 111 F.3d 1364, 1368–69 (7th Cir. 1997).

Regardless, there is no rule that requires entirely new and different allegations in an amended complaint or that allows the Court to disregard any allegations that were pled in the first complaint and only consider (in isolation) newly added allegations. *Sweda v. Univ. of Pennsylvania*, 923 F.3d 320, 331–32 (3d Cir. 2019) (an ERISA "complaint should not be parsed piece by piece to determine whether each allegation, in isolation, is plausible.") (citations omitted). Plaintiff is entitled to a de novo review of its expanded and restated allegations to determine if they state a claim against the Defendants.

## B. The Magistrate Improperly Applied Rule 9(b) To Recommend Dismissal of All ERISA Claims Against the D&O Defendants.

There are two pleading standards implicated here – the Rule 9(b) pleading requirement for fraud and the Rule 8(a) plausibility standard.

Rule 9(b) goes to the standard for pleading fraud allegations; it creates a higher standard for pleading the "who, what, when, where, and how" of the fraud. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co*., 631 F.3d 436, 439 (7th Cir. 2011) ("[D]etail ('particularity') is what a plaintiff needs in alleging fraud to satisfy the requirements of the Federal Rules of Civil Procedure."). The Seventh Circuit has stated that this is a flexible test that varies based on the facts of a given case, but it ordinarily requires the "who, what, when, where, and how of the fraud – the first paragraph of any newspaper story." *Id.* at 442 (internal citations omitted). "This specificity requirement extends only to the particulars of the allegedly misleading statement itself; the other elements of fraud, such as intent, knowledge, and reliance, may be averred in general terms under the notice-pleading standard." *Studio & Partners, s.r.l. v. KI*, No. 06-C-0628, 2006 WL 3813697, at *2 (E.D. Wis. Dec. 27, 2006). Rule 9(b) goes to whether a complaint contains well-pleaded facts; once the plaintiff meets the Rule 9(b) standard, those well-pleaded facts are accepted as true and the court must "draw all reasonable inferences in favor of the plaintiff." *Makor Issues & Rts., Ltd. v. Tellabs Inc*., 513 F.3d 702, 705 (7th Cir. 2008) (internal citations omitted).

As described by the Supreme Court in *Twombly* and *Iqbal*, Rule 8(a) requires the well-pled facts to be "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Plausible is, unfortunately, an ill-defined word; as explained by the Supreme Court in *Twombly* and *Iqbal*, it is more than merely "conceivable." *Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

9

misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.") (citations omitted). However, there is no "probability requirement at the pleading stage." *Twombly*, 550 U.S. at 556.

> "**Plausibility' is not a synonym for 'probability' in this context, but it asks for 'more than a sheer possibility that a defendant has acted unlawfully**." After *Twombly* and *Iqbal*, a plaintiff seeking to survive a motion to dismiss must "plead **some facts that suggest a right to relief that is beyond the speculative level**." That is, "[w]hile a plaintiff need not plead detailed factual allegations to survive a motion to dismiss, she still **must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action** for her complaint to be considered adequate."

*W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675–76 (7th Cir. 2016) (internal citations omitted). "[**A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely**." *Twombly*, 550 U.S. at 556 (citations omitted). The Seventh Circuit has interpreted the standard as requiring that "the plaintiff ... give enough details about the subject-matter of the case to present a story that holds together. In other words, **the court will ask itself *could* these things have happened, not did they happen**." *Id.* (*quoting Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (italics in original). Certainly, the question of whether a 16-year fraud among 24 defendants was plausible is different from the question of whether it was plausible that any one of those 24 defendants breached his fiduciary duty. It is also a different question of plausibility to analyze the facts of fraud relating to any particular defendant and ask if it is plausible that individually, that defendant participated in fraud.

The Magistrate thought that Rule 9(b) should apply to Plaintiff's claims; however, the way the Magistrate applied Rule 9(b) was erroneous. First, the Magistrate interpreted the SAC as pleading a unified 16-year fraud involving 24 defendants. Even if the Magistrate's analysis was otherwise correct, he erred in only viewing the fiduciary duty claims against the D&Os in view of

all of the claims in the SAC instead of determining whether the SAC states claims against any individual D&Os based on their individual actions. For example, President Kennedy was assassinated by Lee Harvey Oswald; over the years there have been numerous conspiracy theories that he did not act alone but was part of a larger conspiracy, but no one has been able to prove these larger conspiracy theories. But did the inability to prove the plausibility of these larger conspiracy allegations mean Oswald was innocent, that his particular involvement should be ignored and, therefore, he should not be charged? Obviously not. No individual defendant should be let off the hook for their individual bad acts (particularly for breach of fiduciary duty) just because the Magistrate found that a larger conspiracy lacked plausibility.

Notably, when the Magistrate did consider the individual claims pled against Richards (discussed below), he did find that it stated an "actionable claim" for breach of fiduciary duty as discussed below – but he still dismissed the claim based on the implausibility of the 16-year fraud. Regardless of whether Rule 9(b) applies, the claims against each of the ESOP Committee Defendants and the Outside Director Defendants must be analyzed individually to determine whether they state a claim. It was an error for the Magistrate to not consider the specific factual allegations pleaded against each D&O Defendant.

Second, Rule 9(b) only requires pleading of the "who, what, when where, and how" of fraud. "This specificity requirement extends only to the particulars of the allegedly misleading statement itself; the other elements of fraud, such as intent, knowledge, and reliance, may be averred in general terms under the notice-pleading standard." *Studio & Partners, s.r.l. v. KI*, No. 06-C-0628, 2006 WL 3813697, at *2 (E.D. Wis. Dec. 27, 2006); *see also Fid. Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co*., 412 F.3d 745, 749 (7th Cir. 2005) ("All the acts alleged to constitute fraud by STG are set forth, with dates, in the complaint; no more was

required.").  The Magistrate, however, distinguishes between the "limited plausibility standard of *Iqbal* and *Twombly*" and the Rule 9(b) standard for plausibility.  Dkt. 235 at pp. 15-16, 58.  However, other than a failure to plead scienter for purposes of the securities fraud claim (Count 33), the Magistrate did *not* find that the SAC fails to plead any key information with particularity as required by Rule 9(b).  He only took issue with the "how" (plausibility) of the overall fraud scheme.[3]  Dkt. 235 at p. 15.  This was an error.

As discussed below, this misapplication of Rule 9(b) caused the Magistrate to improperly recommend dismissal of each Plaintiff's claims against the pleaded against each of the D&O Defendants.

### C. The SAC States Claims Against the D&O Defendants for Breaches of Fiduciary Duty on or After November 26, 2012.

#### 1. The Magistrate Expressly Found That the SAC States an Actionable Claim Against Richards and Other D&O Defendants but Recommends Dismissal Anyway.

In footnote 6 of his R&R, the Magistrate admits that Plaintiff has stated actionable and plausible claims for breach of fiduciary duty against the D&Os, using the claim against Mark Richards (Count 8, SAC ¶¶ 816-844) as an example:

> For what it's worth, I agree with Lyon that the second amended complaint is no longer inappropriately group-pled.  I believe **any singular defendant has adequate notice of the allegations against themselves to satisfy the *Twombly* pleading standard**.  For example, **Mark Richards is alleged to have breached his fiduciary duties of loyalty and prudence on June 30, 2014 when he approved, adopted, and disseminated a PDC stock valuation**

---

[3] To the extent the Magistrate actually weighing the probability of the 16-year fraud, this was particularly inappropriate on a motion to dismiss.  *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 174 (2d Cir. 2015) ("While Rule 9(b) requires that 'the circumstances constituting fraud' be 'state[d] with particularity,' it does not require factual pleadings that demonstrate the probability of wrongdoing.") (quoting F.R.C.P. 9(b)).

12

**at $17.55 despite his knowledge that the stock price did not account for the sizeable pension obligation**. SAC ¶¶ 816-28; 843. Furthermore, he did this for his own financial benefit, allegedly. *Id*. **This is a short and plain statement of an actionable claim against Richards. The SAC is full of allegations like this**, and any defendant can understand the grounds upon which they rest**. Lyon accuses Richards, based on a specific and articulable course of conduct, of putting his financial interests in front of the ESOP, to whom he owed a fiduciary duty**. This allegation is **specific to Richards, and it is not alleged solely because of his title as CEO**, or premised on a theory that he should have known better because he was the CEO. **In this sense, Lyon has cured one defect, the group pleading problem**.

Dkt. 235 at p. 16. These allegations against Richards are pled with specificity – the example above describes his knowledge of why the specific stock valuation was inflated, the date of the valuation, and even Richards' large financial motive. Assuming Rule 9(b) applies, nothing more is required, and it is entirely plausible that Richards individually breached his fiduciary duties in the ways alleged.

However, despite the Magistrate's admission that the SAC states an actionable breach of fiduciary duty claim against Richards for conduct within the statute of limitations period, the Magistrate still recommends dismissal of this claim under Rule 9(b) – not for a failure to plead any specific elements with specificity but based on the Magistrate's improperly heightened plausibility standard used to find the totality of 16-year fraud scheme to not be plausible. *Id.* In other words, if it is not plausible that X number of defendants participated in a fraud it is not plausible that any particular defendant participated (in either fraudulent concealment or breach of fiduciary duty) regardless of how egregious the specific facts are that are alleged against the particular defendant. There is no basis for this finding.

Further, the Magistrate states that the counts against the D&Os "simply track ERISA's language and conclude that each actor violated the law, based on a factual background that already came up short in the FAC." Dkt. 235 at p. 15. But his own depiction of "an actionable claim"

pled against Richards based on his individual conduct directly conflicts with this description. *Id.* at p. 16, fn. 6. The SAC cannot both be conclusory and "full of allegations" like the ones against Richards which allow "any defendant [to] understand the grounds upon which [the claims] rest." *Id.* As noted above, the Court's ruling on the FAC did not reject all of the underlying facts as insufficient or not relevant to state a claim. Further, the SAC added a significant amount of specific factual allegations against the D&O Defendants, particularly their individual involvement with BemroseBooth. These allegations state claims against the D&O Defendants based on conduct occurring on or after November 26, 2012, which are timely without regard to fraud or concealment. *See* Counts 8-10, 12-18.

### 2. The Magistrate Erred in Applying Rule 9(b) to All Aspects of the Fiduciary Duty Claims Against the D&O Defendants.

"Rule 9(b) is strictly construed; it applies to fraud and mistake and nothing else. And if both fraudulent and nonfraudulent conduct violating the same statute or common law doctrine is alleged, only the first allegation can be dismissed under Rule 9(b)…" *Kennedy v. Venrock Associates*, 348 F.3d 584, 593 (7th Cir. 2003) (*citing Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir.2001) and *In re NationsMart Corp. Securities Litigation*, 130 F.3d 309, 315 (8th Cir.1997)); *see also Studio & Partners, s.r.l. v. KI*, No. 06-C-0628, 2006 WL 3813697, at *5 (E.D. Wis. Dec. 27, 2006) (in a claim for breach of fiduciary duty, Rule 9(b) only applied to the failure to disclose, not to allegations that the defendant breached its duties of loyalty and care). In *Lone Star Ladies Inv. Club*, the court explained:

> **Where averments of fraud are made in a claim in which fraud is not an element, an inadequate averment of fraud does not mean that no claim has been stated**. The proper route is to **disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated**. There is a qualification. A district court need not rewrite such a deficient complaint. It may dismiss, without prejudice, placing that responsibility upon counsel.

238 F.3d at 368. Even where a complaint pleads a fraudulent scheme, "the fact that an allegation fails to satisfy Rule 9(b)'s particularity requirements warrants only excising deficient averments of fraud from the complaint rather than dismissal of a theory that might be viable even in the absence of fraud; it 'does not necessarily sound a death knell' for the complaint." *Chamberlain Grp., Inc. v. Techtronic Indus. N. Am., Inc.*, No. 16 CV 06113, 2017 WL 4269005, at *5 (N.D. Ill. Sept. 26, 2017) (*quoting Siegal v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1040 (N.D. Ill. 2007)). Courts still must evaluate the "contentions concerning each defendant under each of the liability theories the complaint advances…, considering allegations of fraudulent conduct only if they are necessary to the validity of the claim in light of the other allegations and then only if they pass muster under Rule 9(b)." *Id.*

In footnote 4, the Magistrate erred in opinions that the allegations against the D&Os are "*entirely* premised on their knowing and self-motivated participation in fraud. There is no other way to read the allegations against the D&Os. Accordingly my analysis for the D&Os' duty of prudence claims must proceed under Rule 9(b) whereas my analysis for Argent's duty of prudence claims proceeds under Rule 8(a)." Dkt. 235, p. 14, fn.4. He therefore committed error in applying Rule 9(b) to all ERISA claims against these Defendants.

The Magistrate is correct that a "unified course of fraudulent conduct" can require all allegations to meet Rule 9(b), but this requires *all* of the allegations to sound in fraud. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104–05 (9th Cir. 2003). For example, in *Vess*, the plaintiff brought claims against three defendants for deceptive business practices and untrue or misleading statements under California law. *Id.* at 1101. Fraud was not an essential element of the claims, but the majority of the pleading alleged a fraudulent conspiracy to increase drug prices. The fraudulent conspiracy claims failed to satisfy Rule 9(b), but the Ninth Circuit still found that

some non-conspiracy allegations against were sufficient to state a claim against a single defendant. *Id.* at 1105-6; *see also Siegel v. Shell Oil Co*., 480 F. Supp. 2d 1034, 1043-44 (N.D. Ill. 2007) (in case alleging deceptive trade practices based on intentional deceptive misrepresentations about gas prices, the court rejected fraud claims based on failure to comply with Rule 9(b) but found non-fraud allegations stated claims for relief).

The allegations of breach of fiduciary duty against the D&O Defendants within the 6-year ERISA statute of limitations, do not all rely or depend on fraud. For Count 8 against Richards, the Magistrate even outlines in FN6 the specific well-pleaded facts against Richards for breach of fiduciary duty which does not depend on fraud. Dkt. 235 at p. 16. At a minimum, the allegations that Richards put his own financial interest in front of the ESOP, failed to value the stock in good faith using a prudent process and determine that reliance on the valuation reports was reasonably justified under the circumstances," and that Richards failed to properly monitor the trustees are breaches of fiduciary duty that do not sound in fraud. SAC ¶¶ 822, 824, 842. And since the Magistrate agrees that the SAC states a claim against at least Argent, Richards is similarly liable for his failure (as CEO, chairman of the Board of Directors, and a member of the ESOP Committee) to monitor Argent during the time they overlapped as fiduciaries of the ESOP without any need to reply on any fraud allegations. SAC ¶ 602-33.

Further, the allegation that Richards approved the valuations despite knowing facts that caused the stock price to be overstated and directed the trustee to purchase PDC's stock at these stock prices is not an allegation of fraud. SAC ¶¶ 822-23. Only allegations of actual fraud must be pled with particularity. *See Studio & Partners*, 2006 WL 3813697 at *5 ("[T]he particularity requirement extends only to the allegedly fraudulent statement itself…"). And these allegations

of knowledge also do not elevate the entire count to fraud. SAC ¶ 822. But in any event, the allegation can be ignored without impacting the well pleaded breach of fiduciary duty claim.

The same applies to the claims against the other D&O Defendants. In particular, the claims against the Outside Directors are based on their individual obligation to monitor the ESOP Committee and the ESOP's trustee. *See, e.g.,* ¶ 970 (alleging Carter breached his fiduciary duties by failing to monitor the ESOP Committee and the ESOP Trustees). The only misrepresentations alleged by Carter were the 10-K filings, which Carter signed and approved; however, those facts are pled with particularity. SAC ¶ 969. But again, if ignored, the fiduciary duty claim would stand on its own.

### D. The ERISA Violations Occurring Before November 26, 2012 are Not Time-Barred.

#### 1. The SAC Added Significant Allegations of Fraudulent Concealment.

The Magistrate was dismissive of the allegations of fraudulent concealment in the SAC, stating that "the SAC does not add any new, material factual allegations." Dkt. 235 at p. 12. But the SAC adds a significant number of specific allegations of active concealment.

For example, the SAC alleges that each of Appvion's quarterly and annual SEC filings concealed the stock's overvaluations, with specific allegations relating to statements in many the 10-K filings. See SAC ¶¶ 349-67 and, e.g., ¶¶ 394, 406-07, 421-22. The FAC only contained a few references to the 10-Ks, none of which explained how they fraudulently concealed the breaches of fiduciary duty. See FAC ¶¶ 204, 258, 320, 392, 490.

The SAC identifies the Form 5500s which were filed with the Department of Labor each year, which attested to the value of PDC's stock and contributed to the ongoing pattern of concealment. SAC ¶ 368-72. The FAC did not mention the Form 5500s at all.

The SAC specifically identifies numerous communications to employees about the consistent series of stock values that, by their consistency, caused the reader to believe that earlier stock values were accurate. It also identifies communications about the valuation processes. The SAC describes what was said in the communications, who authored them, and what they concealed. *See, e.g.*, SAC ¶¶ 379, 381-83, 403-04, 409, 412-20, 487, 541-43. Not all of these communications were alleged in the FAC and the FAC did not contain as much detail about who was responsible for each communication and their specific role in the fraudulent concealment. *See* ¶ 473.

The SAC includes critical additional detailed allegations about BemroseBooth's pension liability, which was subtracted from Appvion's fair market value in the 31 December 2007 valuation and caused Stout to value BemroseBooth at zero in the 30 June 2008 valuation; this issue was only lightly discussed in the FAC. Compare FAC ¶ 250 with SAC ¶¶ 209-36, 1258. While the FAC included allegations of communications that discussed these valuations as general allegations of concealment, the SAC provides context which explains what was being concealed and includes the full communications. Compare FAC ¶ 473, p. 123 with SAC ¶¶ 214-15, 221-22, 470-86. The SAC also explains how each of the ESOP Committee Defendants was involved in reviewing and approving these valuations and who approved the communications to employees (Richards, Ferree, and Tyczkowski for the first communication and Richards, Ferree, Arent, and Willets for the second). *Id*. The SAC also explains how each of these ESOP Committee Defendants knew about Appvion's much larger pension debt. SAC ¶¶ 197-236.

Similarly, each Outside Director Defendant (other than Suwyn) was a director at the time of these BemroseBooth valuations. SAC ¶¶ 971, 987, 1004, 1020, 1051, 1064. The claims against these directors are only based on their conduct after December 2007 (post BemroseBooth); at that

point, Plaintiff contends that these defendants were put on notice that the valuations should be subtracting Appvion's pension liability through direct review of the related valuations, through review of the 10-K filings and through their participation in BemroseBooth. SAC ¶¶ 224-229. By signing the 10-Ks as directors, they indicated they were monitoring the ESOP Committee Defendants; this was an affirmative act that tolled the statute of limitations.

With respect to the 2001 transaction, the SAC includes additional detailed factual allegations about the acts of fraudulent concealment that were only partially alleged in the FAC. *See* SAC ¶¶ 82-140. The SAC also adds allegations about the November 2001 Prospectus Update, which referenced $8 million in investment banking fees but fraudulently omitted who they were paid to or explain that the fees were contingent. SAC ¶ 141. Other documents relating to the transactions listed Bear, Stearns as the investment banker for the deal. *Id.* This was misdirection and fraudulent omission that concealed Houlihan's fees, separate from the underlying breaches of fiduciary duty. This language was not referenced in the FAC; the only reference to the Prospectus Update was in connection with the Security Holder's Agreement. FAC ¶ 214. At least Buth, Parker, and Karch (as directors of Appvion and PDC at the time of this update) authored this official communication.

It was error to not consider these new and expanded allegations.

## 2. The SAC Alleges Active Concealment by the D&O Defendants.

The SAC alleges the following distinct types of acts: breaches of fiduciary duty in failing to implement adequate processes to review the valuations and then in approving inflated stock valuations and representations to employees about the value of PDC's stock which served to conceal their breaches of fiduciary duty. The latter category includes the representations of the stock value themselves, which served the separate objective of reaffirming the earlier valuations; it also includes the stock price communications which selectively described (and therefore

19

misrepresented) the valuation methodology and the Form 5500s and securities filings which represented the value of the ESOP's stock.

Again, the Magistrate failed to consider these allegations of concealment; instead, he summarized them all as two actions: inflating the stock price ("the underlying fraud") and "publish[ing] a series of company valuations over the years that essentially repeated that inflated price (the concealment)." Dkt. 235 at p. 12. The Magistrate then found that these actions are all "part of the same fraud," so the acts of concealment do not count for fraudulent concealment. Dkt. 235 at pp. 11-13. Plaintiff disagrees; the 10-Ks and Form 5500s, at a minimum, should be considered separate acts. Regardless, in *Martin*, the Seventh Circuit rejected the idea that fraudulent concealment is limited to active concealment separate from the underlying wrongdoing: "We think that fraudulent concealment as incorporated in section 1113 is not so limited, but can include genuine acts of concealment committed in the course of the underlying wrong." *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1095 (7th Cir. 1992). There must be some actual concealment – some "trick or contrivance intended to exclude suspicion and prevent inquiry," but that concealment can take place as part of the fraud. *Id.* (*quoting Wood v. Carpenter*, 101 U.S. (11 Otto) 135, 143, 25 L.Ed. 807, 809 (1879).

In *Hensiek v. Bd. of Directors of Casino Queen Holding Company, Inc.*, No. 3:20-CV-377-DWD, 2022 WL 263321 (S.D. Ill. Jan. 28, 2022), the plaintiffs alleged that an ESOP's stock price was inflated due to unreliable and unrealistic projections; this caused the ESOP to pay more than fair market value for the stock. 2022 WL 263321, at *1. The ESOP transaction took place in 2012, but the plaintiffs claimed they did not learn of the breaches of fiduciary duty until 2019, when an annual report indicated the value of the shares had decreased by 95%. *Id.* at *2. The plaintiffs pointed to the following acts of fraudulent concealment: 1) misrepresentations about the

terms of the stock purchase transaction at company meetings; 2) Form 5500s which were filed with the Department of Labor and misrepresented the value of the stock; and 3) annual reports provided to ESOP participants. *Id.* at *2, 4. The court found that these allegations pled "fraud or concealment" for purposes of a motion to dismiss even though they were also part of the same fraud. *Id.* at *4.

Consistent with *Martin*, *Hensiek* did not attempt to distinguish between whether these acts occurred as part of the breach of fiduciary duty or separately but only focused on their purpose to conceal the fraud. Similarly, in *Enneking v. Schmidt Builders Supply, Inc.*, the plaintiffs alleged breach of fiduciary duty because the defendants induced them to agree to an ESOP while concealing, among other things, the true nature of the underlying transaction, the fiduciaries' conflicts of interest, and the criminal background of the company's CFO. 917 F.Supp.2d 1200, 1203 (D. Kan. 2013). The plaintiffs pointed to statements in an Information Statement about the CFO's which explained his public accounting background but concealed his conviction for felony theft and securities fraud as active concealment, and the court agreed even though it was also part of the breach of fiduciary duty. *Id.* at 1208.

Whether these acts of concealment constitute part of the underlying wrongdoing is not determinative – they still consisted of specific "steps taken by wrongdoing fiduciaries to cover their tracks" and therefore are acts of "fraud or concealment" under ERISA § 413. *Martin*, 966 F.2d at 1095-96; *Laskin v. Siegel*, 728 F.3d 731, 735 (7th Cir. 2013) ("An ERISA fiduciary commits fraud or concealment by delaying a wronged beneficiary's discovery of his claim either by misrepresenting the significance of facts the beneficiary is aware of (fraud) or by hiding facts so that the beneficiary does not becomes aware of them (concealment).") Plaintiff has alleged fraudulent concealment.

## E. The ESOP Committee Defendants Are Liable for Causing Prohibited Transactions.

To state a claim for prohibited transactions under ERISA § 406, all a plaintiff must allege is a plausible "occurrence of a section 406 transaction" under the *Twombly/Iqbal* standard. *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 677 (7th Cir. 2016). As the Court has noted, the fiduciary must also cause the transaction. ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1).

There is no scienter requirement for a claim under ERISA § 406, nor do the other elements of fraud apply. ERISA is a remedial statute, designed to protect participants and beneficiaries. ERISA § 406 is part of that remedial scheme – it recognizes that fiduciaries control all aspects of ERISA plan transactions and are designed to bar "transactions deemed likely to injure the pension plan." *Keach v. U.S. Trust Co.*, 419 F.3d 626, 635 (7th Cir. 2005) (*quoting Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241–42 (2000)). "A plan need not suffer an injury in order for a court to find a transaction prohibited by section 406." *Id.*; *see also Chao v. Hall Holdings*, 285 F.3d 415, 434 (6th Cir. 2002) (a violation of § 406 is a per se violation). Once a plaintiff alleges a prohibited transaction occurred, the burden is on the fiduciary to establish that the transaction is acceptable because the fiduciary employed a prudent process. *Keach*, 419 F.3d at 636 ("In order to rely on the adequate consideration exemption, a trustee or fiduciary has the burden to establish that the ESOP paid no more than fair market value for the asset, and that the fair market value was determined in good faith by the fiduciary."); *Allen*, 835 F.3d at 676 ("[A]n ERISA plaintiff need not plead the absence of exemptions to prohibited transactions. It is the defendant who bears the burden of proving a section 408 exemption…").

Even though there is no precedent for requiring Rule 9(b) pleading for a prohibited transaction claim, the Magistrate determined that Rule 9(b) applied to Plaintiff's prohibited

transactions claims against the ESOP Committee Defendants (Counts 21, 27).[4]  Dkt. 235 at p. 14. This claim does not depend on fraud in any way and the Magistrate does not explain what the SAC fails to plead – he just dismisses these claims as implausible.  *Id.* at pp. 14-15.

The SAC pleads the specific transactions (by date) and alleges that the purchases were for more than fair market value.  SAC ¶¶ 1082-1086, 1137-1139, Appendices A and B.  In addition, the SAC pleads that the ESOP Committee "caused" these transactions by directing the trustees to purchase PDC's stock.  SAC ¶¶ 1088, 1137.  There is no basis for requiring pleading of other elements or analyzing the plausibility of this claim as part of a fraud scheme.  "The transactions covered by Section 406(a)(1) are per se violations of ERISA regardless of the motivation which initiated the transaction, the prudence of the transaction, or the absence of any harm arising from the transaction."  *Haley v. Tchrs. Ins. & Annuity Assoc. of Am.*, 377 F. Supp. 3d 250, 264 (S.D.N.Y. 2019) (citations omitted).

Further, the Magistrate's determination on at least Count 27 is internally inconsistent since he separately found that the SAC states individual claims against Argent for some of those very same prohibited transactions.  Dkt. 235 at pp. 60-62.

The Magistrate erred in recommending dismissal of Counts 21 and 27.

### F.     The D&Os Are Liable for the Breaches of Their Co-Fiduciaries.

The D&O Defendants' breaches of fiduciary duty (such as the "actionable claim" against Richards that the Magistrate describes in footnote 6 of his R&R) enabled the other D&O Defendants and the Trustee Defendants to breach their fiduciary duties.  Accordingly, they are liable under ERISA § 405(a)(2) without regard to actual knowledge.  For example, the SAC alleges

---

[4] Plaintiff did not bring a prohibited transaction claim against the Outside Director Defendants.

Gilligan had authority and control with regard to appointing Argent as trustee and failed to monitor Argent; this would be sufficient as a stand-alone claim against Gilligan both for direct breach and for enabling Argent's breaches of fiduciary duty. SAC ¶¶ 947, 955; *see Leigh v. Engle*, 727 F.2d 113, 135 (7th Cir. 1984) (members of board of directors had a fiduciary duty to monitor fiduciaries). However, because the Magistrate improperly applied Rule 9(b) to recommend dismissal of all of the breach of fiduciary duty claims against the D&O Defendants, he disregards this prong of ERISA § 405(a).

The Magistrate acknowledges that since he found the SAC states some claims against Argent, the D&O Defendants could be liable for their breaches of fiduciary duty. However, he incorrectly recommends dismissal based on a failure to plead "actual knowledge" as required by ERISA § 405(a)(1) and (3).

"Actual knowledge" is a state of mind and an allegation that a defendant "knew" something is conclusory. Actual knowledge is pled through factual allegations sufficient to allow a court to draw a reasonable inference that a defendant had knowledge. *See Iqbal*, 556 U.S. at 683; *In re Sprint Corp. ERISA Litig*., No. 03-2202-JWL, 2004 WL 2182186, at *5 (D. Kan. Sept. 24, 2004). The Magistrate points only to Paragraph 955 in Count 13 which alleges Gilligan failed to monitor Argent. The Magistrate complains that Paragraph 955 is conclusory and "does not substantiate its conclusion that Gilligan *knew* the stock prices were inflated." Dkt. 235 at pp. 17-18. However, Count 13 against Gilligan contains a detailed list of supporting facts:

- Gilligan approved and adopted the valuations starting June 30, 2015. SAC ¶¶ 348, 951.

- Gilligan attended ESOP Committee meetings where the valuations were discussed and approved. SAC ¶¶ 952, 1237.

- Gilligan knew the valuations were being conducted on a controlling-interest basis even though he knew the ESOP did not have control of the company. SAC ¶ 953.

- Gilligan knew the valuations excluded substantial debt, including substantial pension and postretirement liabilities as well as millions in interest-bearing debt. SAC ¶ 953. The fact that the pension liability was not being included in the valuations was discussed at a May 26, 2016 ESOP Committee meeting which Gilligan attended. SAC ¶ 954. The minutes from that meeting note that they may have to start including the pension liability and that it would affect the share price. *Id.*

- Gilligan was involved in reviewing and preparing the projections that each of the valuations were based on and knew they were inflated. ¶ 953. Paragraph 953 also states that these projections were discussed during ESOP Committee meetings and cites Paragraph 1260,[5] which contains a detailed chart of all of the ESOP Committee meeting minutes which discussed the valuations. These meetings make it clear that Gilligan knew the projections were being provided for the purpose of the valuation. *Id.* at ¶ 1260.

These are specific, non-conclusory allegations that support a claim for Gilligan's own breaches of fiduciary duty as well as an inference that he actually knew Argent was breaching its fiduciary duties in adopting the valuations. *See, e.g., Zavala v. Kruse-W., Inc.*, No. 119CV00239DADSKO, 2021 WL 5883125, at *11 (E.D. Cal. Dec. 13, 2021) (allegations that defendants were involved in preparing inaccurate financial projections and knew about the

---

[5] Paragraph 953 lists Paragraph 1264 in error; the correct citation is to Paragraph 1260.

trustee's reliance on the inaccurate projections sufficiently pled actual knowledge of a co-fiduciary's breach); *Ahrendsen v. Prudent Fiduciary Servs., LLC*, No. CV 21-2157, 2022 WL 294394, at *9 (E.D. Pa. Feb. 1, 2022) (allegations that defendant prepared the financial statements underlying the valuation and knew they excluded liabilities were sufficient to allege actual knowledge); *Walsh v. Vinoskey*, 19 F.4th 672, 678-81 (4th Cir. 2021) (affirming judgment after a bench trial that defendant fiduciary had actual knowledge that stock price was greater than fair market value based on circumstantial evidence, including review of the appraisals, review of financial statements and an understanding of the company, and knowledge that the ESOP would not control the company). In error, the Magistrate ignores these allegations.

The Magistrate instead describes Plaintiff's theory as Gilligan and other D&O Defendants' mere knowledge of red flags and rejects them because they "require an inferential step between knowing about certain red flags, and 'actually knowing' that Argent was violating its duty of prudence." Dkt. 235 at p. 18. But the even under the heightened PSLRA standard for securities fraud (which certainly does not apply to this claim), all a plaintiff must do is allege facts giving rise to a strong inference that the defendant acted with the required state of mind. *See Cornielsen v. Infinium Capital Management, LLC*, 916 F.3d 589, 601-02 (7th Cir. 2019); *In re Spiegel, Inc. Sec. Litig.*, 382 F. Supp. 2d 989, 1035 (N.D. Ill. 2004) (allegations of red flags that were available to auditor but were ignored were sufficient to plead scienter); *Puskala v. Koss Corp.*, 799 F. Supp. 2d 941, 952 (E.D. Wis. 2011) (allegations that defendant was in possession of facts that would have caused a reasonable person in his position to recognize a substantial risk that financial statements were misleading were sufficient to plead scienter). Even if he was applying Rule 9(b) (which is not clear from his opinion), there's no basis for the Magistrate's refusal to make any kind

of inference from the facts alleged. Fraud is rarely proven by a written confession, but by a series of underlying facts.

At a minimum, the SAC states claims for co-fiduciary liability against Gilligan, Richards, Ferree, and Arent based on the breach of fiduciary duty claims that the Magistrate agreed are pled against Argent. For the reasons discussed herein and in Plaintiff's concurrently filed objections, the SAC also states claims for co-fiduciary liability against each D&O Defendant based on the other E&O Defendants' breaches of fiduciary duty and breaches by State Street and Reliance. *See* Counts 26, 27.

### G. The SAC States a Claim for Securities Fraud Against the D&O Defendants.

The Magistrate erred in recommending the dismissal of the securities fraud claims based on failure to plead scienter.

#### 1. The SAC States a Claim Against Richards, Ferree, Gilligan, and Arent.

Count 33 (SAC ¶ 1229-1274) alleges securities fraud against Richards, Ferree, Gilligan, and Arent for their actions in connection with the valuations on or after November 26, 2013. In the FAC, these allegations were part of Count 13 (Wisconsin securities fraud against Reliance, Argent, and certain D&O Defendants) and Count 14 (federal securities fraud against Reliance, Argent, and certain D&O Defendants). FAC ¶¶ 701-753.

The Court dismissed the securities fraud claim in the FAC against Richards, Ferree, Gilligan, and Arent for failure to plead scienter; the Court's main criticism was that the FAC did "not contain specific allegations suggesting that they knew the valuations were artificially inflated as alleged and, despite that fact, intended to release the prices to the Employee Participants for fraudulent purposes." Dkt. 186 at p. 24. As the Court stated, the fact that the defendants were members of the ESOP Committee, without more allegations about what they actually knew (as

opposed to what they should have known due to their positions in the company), was not sufficient to allege that they knew or should have known of the deficiencies in the valuations. *Id.*

The SAC specifically addressed the Court's concerns, breaking out the securities fraud allegations against the defendants into multiple counts (Counts 31-34) and significantly expanding the specific allegations against each of the defendants. For Count 33, the SAC added detailed allegations about the ESOP Committee Defendant's (Richards, Ferree, Arent, and Gilligan's) review and approval of the valuations (SAC ¶ 1237), their statements relating to the valuations (SAC ¶¶ 1239-1255), their knowledge of the valuations and why they knew the valuations were inflated (SAC ¶¶1256-1260), and their motivation to increase the stock price for their own gain (SAC ¶¶ 1261-1266). The latter two categories go directly to scienter.

For example, the FAC only alleged generally that Appvion management was involved in preparing the projections. FAC ¶¶ 267-74. The SAC alleges that each of Richards, Ferree, Gilligan, and Arent were involved in preparing the projections, and it quotes from the minutes for each ESOP Committee meeting where the valuations and the valuation process were discussed. SAC ¶ 1237; *id.* at 267-74. The SAC also describes how each of Richards, Ferree, Arent, and Gilligan were involved in preparing the 5-year financial projections and describes each ESOP Committee meeting from 2013 to 2017 where those projections were discussed, including, how they compared to the actual results and their critical role in the valuations. SAC ¶ 1260. For example, for a June 5, 2015 meeting, the minutes state the following:

> Review Stout Risius Ross Due Diligence Materials. **Mr. Ferree led a discussion regarding the methodology and process of the valuation**. The Committee **discussed the 5-year due diligence projections** updated from the December valuation. Mr. Ferree explained the comparison. The Committee and Mr. Fletcher engaged in discussion answering all questions from the Committee."

SAC ¶ 1260.  Because of their direct role in preparing the projections and their regular review of those projections as compared to actual results, they knew that Appvion consistently missed its projections; because they knew the projections formed the basis of the valuations, they knew the valuations were overstating Appvion's fair market value.  *See* SAC ¶¶ 264-70, 1260.  These are specific factual allegations that are not based merely on the defendants' access to information.

The SAC also alleges in great detail that Richards, Ferree, and Arent knew that pension and postretirement debt should be deducted because each of them were individually involved with the ESOP Committee at the time that Stout insisted BemroseBooth's pension debt had to be subtracted in 2008 but at the same time knew that over $100 million in Appvion's pension debt was not being subtracted from tis fair market value.  The BemroseBooth facts were only lightly mentioned in the FAC.  Compare FAC ¶¶ 250 with SAC ¶¶ 209-36, 1258.  Again, these are specific and compelling allegations that support an inference of knowledge.

Similarly, the FAC generally alleged that the D&O Defendants had a personal stake in the stock price through various incentive compensation plans, but did not describe how Richards, Ferree, Arent, or Willets benefited outside of allegations about Richards' 2012 compensation.  FAC ¶¶ 351-79.  The SAC again solves this problem by providing detailed allegations about how much Richards, Ferree, Arent, and Gilligan gained or stood to gain from incentive compensation plans that were tied to the stock price but not subject to the restrictions of the ESOP.  SAC ¶¶ 1261-66.

These allegations support a strong inference that Richards, Ferree, Arent, and Gilligan acted intentionally, consciously, or at least recklessly in making representations relating to the stock price.  *See, e.g., Makor Issues & Rts., Ltd. v. Tellabs Inc*., 513 F.3d 702, 704 (7th Cir. 2008); *In re Cardinal Health Inc. Securities Litigation*, 426 F.Supp.2d 688, 741 (S.D. Ohio 2006).

The Magistrate erred in disregarding these new allegations, stating that "other than listing each defendant by name instead of as a group, the SAC does not provide any new, material facts upon which" he could base an inference of scienter. Dkt. 235 at p. 20. This is clearly wrong. The expanded allegations in the SAC relating to Richards, Ferree, Arent, and Gilligan support a strong inference of scienter.

### 2. The SAC Pleads Control Person Liability Against Carter, Murphy, Reardon, Suwyn, and Seifert.

Count 34 (SAC ¶¶ 1275-1287) alleges securities fraud against Carter, Murphy, Reardon, Suwyn, and Seifert, Appvion's directors after November 26, 2013, based on a control person theory of liability. This claim was included in the larger securities fraud counts before. FAC ¶¶ 725-27, 744-48. The Court dismissed this claim since the primary violation was not pled. Dkt. 186 at pp. 24-25.

In the briefing, Plaintiff did not dispute that Count 33 for securities fraud must be pled with particularity; Plaintiff only noted that Count 34 for control person liability did not have to plead scienter, since it is not an element of control person liability. *See Puskala v. Koss Corp.*, 799 F. Supp. 2d 941, 957 (E.D. Wis. 2011) ("While plaintiff has not pleaded facts giving rise to a strong inference that Koss acted recklessly, this does not affect the § 20(a) claim…."). To the extent the Magistrate is recommending that Count 34 be dismissed for a failure to plead scienter, he is incorrect.

The SAC alleges that Carter, Murphy, Reardon, Suwyn, and Seifert are liable because they were directors who exercised control over the ESOP Committee Defendants. Because the SAC states a claim for securities fraud against Richards, Ferree, Gilligan, and Arent, it also states a claim for control person liability against Carter, Murphy, Reardon, Suwyn, and Seifert.

## II.    <u>CONCLUSION</u>

For the reasons discussed herein, the Court should decline to follow the Magistrate's Report and Recommendation with regard to the D&O Defendants' Motion to Dismiss the SAC. The SAC states claims against the D&O Defendants and should be allowed to move forward.

Respectfully submitted this 2 May 2022.

*/s/ L. Richard Williams*
Frederick Perillo
Sara J. Geenen (Wis. Bar 1052748)
THE PREVIANT LAW FIRM, S.C.
310 West Wisconsin Avenue, Ste. 100 MW
Milwaukee, WI 53203
sjg@previant.com

*Local counsel for Plaintiff*

Leo R. Beus
L. Richard Williams
Abigail Terhune
BEUS GILBERT MCGRODER PLLC
701 North 44th Street
Phoenix, AZ  85008-6504
480-429-3001
Fax:  480-429-3100
docket@beusgilbert.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on 2 May 2022, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System, which constitutes service upon all counsel of record.

*/s/ Chelsea Van Horn*