# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN
# GREEN BAY DIVISION

| | |
|---|---|
| APPVION, INC. RETIREMENT SAVINGS AND EMPLOYEE STOCK OWNERSHIP PLAN, by and through Grant Lyon in his capacity as the ESOP Administrative Committee of Appvion Inc.,<br><br>Plaintiff,<br><br>v.<br><br>ARGENT TRUST COMPANY,<br><br>Defendant. | Case No. 1:18-CV-01861-WCG |

**THE HOULIHAN DEFENDANTS' JOINDER AND OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF FINAL JUDGMENT PURSUANT TO RULE 54(b)**

In its September 6, 2022 Order Adopting the Magistrate Judge's Report and Recommendation (the "Order"), the Court dismissed the vast majority of the claims contained in Plaintiff's Second Amended Complaint. As Plaintiff acknowledges, the Order reduced his lawsuit to a tiny fraction of the case he initially sought to pursue. Rather than litigate those few remaining claims against Argent Trust Co. ("Argent") – or abandon them in favor of a final appeal – Plaintiff seeks to have his cake and eat it too by asking the Court to move forward with the remaining claims against Argent *and also* allow an immediate appeal of the dismissed claims against the Houlihan Defendants[1] and others through certification of a Rule 54(b) judgment. The Houlihan Defendants oppose the Rule 54(b) request and join the arguments presented in the Opposition Brief filed by the Dismissed Directors & Officers ("D&O Opp. Brief"). For the reasons set forth in the D&O

---

[1] Houlihan Lokey Capital, Inc. and Houlihan Lokey Financial Advisors, Inc. are collectively referred to as "the Houlihan Defendants." Unless otherwise noted, capitalized terms have the same meaning as those in the Houlihan Defendants' Memorandum in Support of their Motion to Dismiss the Second Amended Complaint. (ECF, 201.)

Opp. Brief, the Court should deny Plaintiff's request. The Houlihan Defendants write below in further support of their position.

## ARGUMENT

As set forth in greater detail in the D&O Opp. Brief, the Seventh Circuit has set a particularly high standard for Rule 54(b) motions, cautioning that "[c]ourts may not accommodate attorneys just because they want to appeal immediately[.]" *Horn v. Transcon Lines, Inc.*, 898 F.2d 589, 592 (7th Cir. 1990); *see* Fed. R. Civ. P. 54(b) ADVISORY COMMITTEE NOTE (1946) (Rule 54(b) order should be entered only in the "infrequent harsh case"). Indeed, the Seventh Circuit for years has reminded district courts that Rule 54(b) motions should be rarely granted and has even gone so far as to state: "[i]f we had our druthers we would hold that claims were never separate for Rule 54(b) purposes if they arose out of the same factual setting[.]" *Minority Police Officers Ass'n of S. Bend v. City of S. Bend, Ind*, 721 F.2d 197, 200 (7th Cir. 1983); *see also Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980) ("Plainly, sound judicial administration does not require that Rule 54(b) requests be granted routinely").

The Seventh Circuit's comments on Rule 54(b) are consistent with other Circuit Courts that have acknowledged the rarity of granting such a request due to the concern about piecemeal appeals and overstepping appellate jurisdiction. *See, e.g., Gonzalez Figueroa v. J.C. Penney Puerto Rico, Inc.*, 568 F.3d 313, 318 (1st Cir. 2009) ("Rule 54(b) should be employed with great circumspection . . . [and] certification should not be made available simply because a party requests it."); *O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 41 (2d Cir. 2003) (Rule 54(b) power should "be exercised sparingly"); *Braswell Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1335 (4th Cir. 1993) ("Rule 54(b) certification is recognized as the exception rather than the norm.") (internal citations omitted). These Rule 54(b) principles apply equally in the ERISA context. *See,*

*e.g.*, *DeFazio v. Hollister, Inc.*, 2008 WL 109097, at *2 (E.D. Cal. Jan. 8, 2008) (denying Rule 54(b) request where "Plaintiffs have asserted claims against the remaining defendants, similar to those claims which the court has dismissed, arising out of the same facts and based on similar legal theories predicated on ERISA fiduciary duties.").

Thus, in order for the Court to certify a judgment under Rule 54(b), Plaintiff carries the heavy burden of establishing (1) there is a "final judgment" on one or more (but fewer than all) of the claims, and (2) there are "no just reasons to delay." *Curtiss-Wright*, 466 U.S. at 7-8; *FM Prod. Inc. v. Classic Gears & Machining, Inc.*, 2021 WL 824086, at *1 (E.D. Wis. Mar. 4, 2021). The "no just reasons to delay" prong requires that the movant show (a) "judicial administrative interests" favor an immediate appeal, such that the dismissed and non-dismissed claims are so distinct that there is little or no factual or legal overlap that would allow for judicial inefficiency, and (b) that the equities favor an immediate appeal. *Curtis-Wright,* 446 U.S. at 8. Absent such a showing, the Court should not grant such extraordinary relief. *Id.*

In his Motion for Entry of Final Judgment Pursuant to Fed. R. Civ. P. Rule 54(b) (the "Motion"), Plaintiff contends the first element is satisfied by the Court's dismissal of the claims against the Houlihan Defendants *with prejudice*. As to the second element, Plaintiff contends the dismissed claims and non-dismissed claims can be easily segregated and that *both* Plaintiff and Defendants will suffer prejudice if the Rule 54(b) request is denied. Plaintiff is incorrect.[2]

---

[2] As to the first element, Plaintiff and the Houlihan Defendants agree that the claims against the Houlihan Defendants were effectively dismissed *with prejudice* and that this ruling disposes of all claims against the Houlihan Defendants. Plaintiff contends that is sufficient to establish the first element. However, in analyzing the two Rule 54(b) elements, some courts within this Circuit look to the interrelatedness question as part of the first element, some analyze this question as part of the second element, some appear to analyze it under both elements, and some are not clear as to which element(s) this analysis relates. For the reasons set forth in the D&O Opp. Brief and in this brief, there is considerable overlap of the issues, which requires that the Court deny the motion regardless of the element(s) to which this Court determines the interrelatedness issue applies.

## I. THE DISMISSED AND NON-DISMISSED CLAIMS ARE BASED ON INTERRELATED FACTS AND LEGAL THEORIES

First, the claims Plaintiff seeks to immediately appeal "overlap with those remaining in the district court" and thus Rule 54(b) certification is inappropriate. *Lottie v. W. Am. Ins. Co., of Ohio Cas. Grp. of Ins. Companies*, 408 F.3d 935, 938-939 (7th Cir. 2005); *see also Factory Mut. Ins. Co. v. Bobst Grp. USA, Inc.*, 392 F.3d 922, 924 (7th Cir. 2004). Claims must be "legally and factually distinct" to permit Rule 54(b) certification. *Stamatakis Indus., Inc. v. J. Walter Thompson, U.S.A., Inc.*, 944 F.2d 382, 383 (7th Cir. 1991). The Houlihan Defendants incorporate the arguments set forth in the D&O Opp. Brief, where it is established that the dismissed and non-dismissed claims are based on interrelated facts and legal theories and therefore Rule 54(b) certification is inappropriate.

Indeed, in Plaintiff's Second Amended Complaint, he alleges a decades-long fraudulent course of conduct that was perpetuated in connection with the 2001 ESOP Transaction and then hidden from view for approximately two decades before Appvion's bankruptcy. Plaintiff claims that the Houlihan Defendants, Appvion management and the ESOP trustee, State Street Bank and Trust Co. ("State Street"), misled Appvion employees about the benefits of the 2001 ESOP Transaction as well as Houlihan's alleged "independence" at various "road shows" to promote the sale. (*See*, *e.g.*, Second Amended Complaint ("SAC"), ¶¶ 7-13, 129-142.) According to Plaintiff, those misrepresentations—coupled with a misleading 2001 valuation prepared by the ESOP's financial advisor which did not properly account for certain debt and inappropriately applied a control premium—were all orchestrated to convey the misleading impression that the stock price was higher than it should have been and thus the 2001 ESOP Transaction was a better deal for employees then it really was. (*Id.; see also* SAC ¶¶ 145-148.)

According to Plaintiff, the realities of the stock price and the 2001 ESOP Transaction were hidden for years from the employees because of misleading and inaccurate annual company valuations, which were also driven by inaccurate and misleading management projections about Appvion's performance. (*Id.*, ¶¶ 14-23.) With respect to the surviving claims against Argent, the successor trustee to the ESOP, Plaintiff claims that Argent accepted prior management projections at face value, did not question the fact that previous projections had not been met, perpetuated the subtraction of certain debt and application of a control premium (*i.e.*, the alleged errors in connection with the 2001 ESOP Transaction), and agreed to the purchase of additional Appvion stock as the company teetered on bankruptcy, all while knowing the valuations were flawed. (*See generally id.*, ¶¶ 247-263, 602-633, 1121-1131; Report and Recommendation (ECF, 235), pp. 54-55.) Plaintiff alleges that each of the issues stemming back as far as the 2001 ESOP Transaction led to Appvion's 2017 bankruptcy. (*Id.*)

As fanciful as Plaintiff's allegations are against the Houlihan Defendants, Plaintiff cannot now seriously claim that the issues pled involving the Houlihan Defendants or any other dismissed defendant are wholly separate from the issues involving Argent. Factually, the claims against the dismissed defendants share common facts involving the alleged cover-up about the realities of the 2001 ESOP Transaction, the accuracy and propriety of the valuations, the damages incurred, and a panoply of other factual issues. Legally, the claims against the Houlihan Defendants and others are the same types of claims against Argent: they include breaches of fiduciary duty to the ESOP and engaging in prohibited transactions involving the ESOP. Resolving these issues piecemeal would require the Seventh Circuit to revisit overlapping issues and potentially issue inconsistent rulings, which are some of the reasons why the Seventh Circuit has cautioned against granting such motions. Rule 54(b) certification is therefore inappropriate. *See DeFazio*, 2008 WL 109097,

at *2; *Lottie*, 408 F.3d at 940 (significant evidentiary overlap requires denial of Rule 54(b) motion); *Minority Police Officers Ass'n of S. Bend*, 721 F.2d at 200 (same); *see also Lottie*, 408 F.3d at 939 (Rule 54(b) motion should be denied when overlapping legal and factual issues exist even when plaintiff presents different theories of relief and different legal characterizations of the same facts).

## II. THE EQUITIES WEIGH IN FAVOR OF DEFENDANTS

Second, Plaintiff is wrong to suggest that both Plaintiff and Defendants will suffer prejudice without an immediate appeal. The Houlihan Defendants incorporate the arguments set forth in the D&O Opp. Brief about the prejudice the dismissed defendants will suffer if the Court certifies the case for a Rule 54(b) appeal and the lack of prejudice Plaintiff actually demonstrates in his Motion.

For instance, the Houlihan Defendants will be forced to spend considerable time and resources over the next year (and likely more) opposing Plaintiff's appeal in the Seventh Circuit as opposed to an uncertain future appeal—which may or may not involve them—years down the road after the litigation involving Agent has concluded. The Houlihan Defendants and the other dismissed parties will be forced to move forward with that immediate process while facts are being discovered in the case against Argent that may potentially pertain to dismissed claims involving some or all of the dismissed defendants. Moreover, piecemeal appeals will also require the Seventh Circuit to revisit overlapping facts and legal claims. These issues increase the complexity and administrative costs of litigation that has already gone on for years. *See Horn*, 898 F.2d at 592 ("[A] separate judgment under Rule 54(b) multiplies the costs of litigation for opposing parties and for the appellate court, and these interests deserve thoughtful consideration.").

By contrast, Plaintiff claims he will be prejudiced by going through the traditional appellate process. But it is Plaintiff that put himself in this situation by filing three complaints, including the most recent Second Amended Complaint that contains 1,342 paragraphs and has taken years

to work through the court system. Moreover, Plaintiff makes the bald statement that certain ESOP participants may not live long enough to enjoy the benefits of a future, speculative judgment involving the dismissed defendants, but he does nothing in his short Motion to explain why this case would take any longer to resolve than any other cases that follow the usual appellate process. Indeed, the scheduling order in the case against Argent merely contemplates sixteen months of discovery, hardly an unreasonable complex commercial lawsuit timeline. For these reasons, Plaintiff has not met his burden in establishing "unjust harm from the normal delay pending resolution of all claims in the case." *FM Prod. Inc.*, 2021 WL 824086, at *1.

## CONCLUSION

WHEREFORE, for the reasons set forth above and the reasons outlined in the D&O Opp. Brief, the Houlihan Defendants respectfully request that the Motion be denied.

Respectfully submitted,

DATED: October 20, 2022     By: */s/ Theodore M Becker*

TED BECKER
J. CHRISTIAN NEMETH
**MCDERMOTT WILL & EMERY LLP**
444 West Lake Street, Suite 4000
Chicago, IL 60606-0029
(312) 984 3292
*tbecker@mwe.com*
*jcnemeth@mwe.com*

FRANK KOWALKOWSKI
**VON BRIESEN & ROPER, S.C.**
300 North Broadway, Suite 2B
Green Bay, WI 54303
(920) 713-7810
fkowalkowski@vonbriesen.com

*Attorneys for the Houlihan Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2022, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System, which constitutes service upon all counsel of record.

*/s/ Theodore M Becker*