UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

APPVION, INC. RETIREMENT SAVINGS
AND EMPLOYEE STOCK OWNERSHIP
PLAN, by and through Grant Lyon in his
capacity as the ESOP Administrative
Committee of Appvion,

        Plaintiff,

    v.

DOUGLAS P. BUTH, *et al.*,

        Defendants.

Civil Action No. 18-cv-1861

Judge William C. Griesbach

**MEMORANDUM IN SUPPORT OF**
**STATE STREET BANK AND TRUST COMPANY'S**
**RENEWED MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

BACKGROUND ........................................................................................................... 1

I.      The Semi-Annual Stock Valuations and Stock Purchases. ................................ 1

II.     The December 2012 Valuation. ........................................................................ 3

III.    Appvion's Decline. ........................................................................................... 4

IV.     Procedural History. .......................................................................................... 5

V.      The Scope of the Remand. ............................................................................... 7

ARGUMENT ............................................................................................................. 8

I.      The Breach Must Be Both But-For and Proximate Causes of Losses to the Plan. ............ 10

II.     No Loss to the Plan Resulted from State Street's Approval of Stout's Allegedly Inflated December 2012 Valuation. ................................................................. 11

CONCLUSION ........................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan ex rel. Lyon v. Buth*,
   475 F. Supp. 3d 910 (E.D. Wis. 2020) .......................................................................1, 5, 7, 16

*Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan ex rel. Lyon v. Buth*,
   2022 WL 4088166 (E.D. Wis. Mar. 17, 2022) ...............................................................1, 5, 7

*Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan ex rel. Lyon v. Buth*,
   99 F.4th 928 (7th Cir. 2024) ........................................................ 1, 6, 8, 11-12, 14, 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................................8

*Bostock v. Clayton Cnty.*,
   590 U. S. 644 (2020) .........................................................................................................13

*Brandt v. Grounds*,
   687 F.2d 895 (7th Cir. 1982) ......................................................................................10, 14

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
   974 F.2d 270 (2d Cir. 1992) ........................................................................................10, 13

*Dixon v. Burke Cnty.*,
   303 F.3d 1271 (11th Cir. 2002) .......................................................................................11

*Edmonson v. Lincoln Nat. Life Ins. Co.*,
   725 F.3d 406 (3d Cir. 2013) ........................................................................................10, 17

*Exxon Co., U.S.A. v. Sofec, Inc.*,
   517 U.S. 830 (1996) .........................................................................................................11

*Ferrer v. Chevron Corp.*,
   484 F.3d 776 (5th Cir. 2007) ......................................................................................10, 13

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ............................................................................................8

*Hibma v. Odegaard*,
   769 F.2d 1147 (7th Cir. 1985) .........................................................................................11

*Hunter v. Mueske*,
   73 F.4th 561 (7th Cir. 2023) ....................................................................................... 10-11

ii

*Jackson v. Marion Cnty.*,
    66 F.3d 151 (7th Cir. 1995) .............................................................8, 9

*Kovacs v. United States*,
    739 F.3d 1020 (7th Cir. 2014) ...............................................................7

*McCready v. eBay, Inc.*,
    453 F.3d 882 (7th Cir. 2006) ..................................................................8

*Non Typical Inc. v. Transglobal Logistics Grp. Inc.*,
    No. 10-cv-1058, 2011 WL 1792927 (E.D. Wis. May 11, 2011) ............8

*Scottsdale Ins. Co. v. Subscription Plus, Inc.*,
    299 F.3d 618 (7th Cir. 2002) ................................................................11

*Shaw v. Kemper*,
    No. 20-CV-599-JPS, 2021 WL 1208883 (E.D. Wis. Mar. 31, 2021) ......8

*Silverman v. Mut. Benefit Life Ins. Co.*,
    138 F.3d 98 (2d Cir. 1998) ...................................................................10

*Sundstrand Corp. v. Sun Chemical Corp.*
    553 F.2d 1033, 1037-38 (7th Cir. 1977) ..............................................16

*Tamayo v. Blagojevich*,
    526 F.3d 1074 (7th Cir. 2008) .........................................................8, 15

*United States v. Morris*,
    259 F.3d 894 (7th Cir. 2001) ..................................................................7

*Whitlock v. Brueggemann*,
    682 F.3d 567 (7th Cir. 2012) ...................................................11, 15, 17

*Willett v. Blue Cross and Blue Shield of Ala.*,
    953 F.2d 1335 (11th Cir. 1992) ............................................................10

*Wroblewski v. City of Washburn*,
    965 F.2d 452 (7th Cir. 1992) ..................................................................9

**Statutes**

29 U.S.C. § 1109(a) ......................................................................................10

**Other Authorities**

Restatement (Second) of Trusts § 205 cmt.f ...............................................10

iii

Defendant State Street Bank and Trust Company ("State Street") submits this memorandum of law in support of its renewed motion to dismiss the Second Amended Complaint (ECF No. 191, "SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).

This is a sprawling case that has already generated several opinions from this Court and the Seventh Circuit.[1] But the present motion is narrow and addresses a discrete event: the single stock valuation reviewed by State Street in December 2012 that is not barred by ERISA's statute of repose, and the only action that leaves State Street in this case as a defendant. As discussed below, the SAC makes clear that no loss resulted from State Street's actions concerning that single valuation because Plaintiff affirmatively pleads a lack of but-for causation as well as multiple superseding causes. Therefore, State Street must be dismissed from the case.

## BACKGROUND

The SAC generally pleads that Appvion, Inc. (f/k/a Appleton Papers, Inc. and Appleton, Inc., collectively referred to herein as "Appvion"), its former executives and Board members, Plan[2] Committee members, and various service providers sought to trick Appvion employees into moving their 401(k) assets into an ESOP in 2001 and to fraudulently value its assets until Appvion entered bankruptcy in 2017. The allegations relevant to this narrow motion are as follows:

## I.     The Semi-Annual Stock Valuations and Stock Purchases.

State Street was appointed as the Plan's trustee in March 2001 and served in that role through March 2013, when it resigned and was replaced by Reliance Trust Company ("Reliance").

---

[1] *See Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan ex rel. Lyon v. Buth*, 475 F. Supp. 3d 910 (E.D. Wis. 2020) ("*Appvion I*"); *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan ex rel. Lyon v. Buth*, 2022 WL 4088166 (E.D. Wis. Mar. 17, 2022) ("*Appvion II*"); *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan ex rel. Lyon v. Buth*, 99 F.4th 928 (7th Cir. 2024) ("*Appvion III*").

[2] The "Plan" (or "ESOP") refers to the Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan.

1

SAC ¶¶ 56, 89. While serving as trustee, State Street was involved in determining the fair market value of Appvion's stock twice a year. *See* SAC ¶¶ 162-163, 648-652. The Plan's Trust Agreement provided that "all valuations of shares of Company Stock shall originally be made by an 'Independent Appraiser' (as described in Section 401(a)(28)(C) of the Code) retained by the Trustee, and reviewed and finalized by the Trustee in accordance with Section 3(18)(B) of ERISA." SAC ¶ 648; ECF No. 98-1 at 9. State Street first retained the investment-banking firm Willamette Management Associates, Inc. ("Willamette"), then Stout Risius Ross, Inc. ("Stout"), as the Independent Appraiser to conduct those semi-annual valuations. *See* SAC ¶¶ 60, 158-159, 651-652. At the end of June and December each year, Willamette and Stout, respectively, analyzed Appvion's financial information and arrived at a valuation of the company stock. *See* SAC ¶ 652 (listing those valuations). State Street then reviewed those valuations and adopted them. *See id.* In turn, the ESOP Committee members received, reviewed, and approved these semi-annual stock valuations and communicated them to employees participating in the Plan. SAC ¶ 167.

These semi-annual stock valuations were used for the ESOP's purchases of company stock. *See* SAC ¶¶ 150, 292-295. In particular, the ESOP purchased company stock "twice a year, soon after the valuation was completed." SAC ¶ 293; *see* SAC, App'x A (listing these purchases). For these purchases, the Plan document required "using the Company Stock value as of the Valuation Date preceding or following the conversion (whichever is lower).'" SAC ¶¶ 293-94 (quoting Plan § 6.4(a)(1)). As the SAC makes clear, each time the Plan purchased stock from Appvion's parent company, Paperweight Development Corp. ("PDC"), it utilized the lower of the two prior valuations for the Plan. *Compare* SAC ¶ 191 (reporting valuations), *with* SAC, Appx' A (listing purchases). The ESOP was also required to purchase shares from current and former employees as a result of employee terminations, diversifications, hardship withdrawals, and employee loans.

2

SAC ¶ 295; *see* SAC, App'x B (listing these repurchases). When making these purchases, the Plan used the then-pending valuations, not the lower of the prior two valuations. *Compare* SAC ¶ 191 (reporting valuations), *with* SAC App'x B (listing repurchases).

As the ESOP trustee, State Street was required by the Trust Agreement to execute these stock purchases on behalf of the ESOP upon direction by the ESOP Committee, unless State Street "determine[d] that such purchase is prohibited by ERISA." SAC ¶ 170. Those stock purchases were required to "be at a price not in excess of fair market value, as determined by an independent Appraiser. . . ." *Id.* Relevant to the only claims against State Street that are not barred by the statute of repose, the subsequent trustee (Reliance) approved the use of the December 2012 valuation of $17.55 per share for the ESOP's June 2013 stock purchases from PDC and purchases from Appvion employees, instead of the higher June 2013 valuation of $17.85 that Reliance reviewed and approved after State Street resigned. *See* SAC ¶¶ 191, 294-95, 577, 595; *see also* SAC, App'x A-B (listing these purchases). Thereafter, the repurchases of stock from current and former employees in December 2013 were made at the higher $17.85 share price. *See* SAC ¶ 191 & App'x B (listing these repurchases).

## II. <u>The December 2012 Valuation.</u>

In January 2013, Stout issued its valuation as of December 31, 2012, which valued the company's stock at $17.55 per share. SAC ¶¶ 191, 652; *see also* ECF No. 108-3 (December 2012 valuation). In February 2013, State Street reported that valuation to the ESOP Committee, and the ESOP Committee approved Stout's valuation. SAC ¶¶ 554-555. On April 1, 2013, State Street terminated its trusteeship and ended its relationship with the Plan. SAC ¶ 557. The new trustee, Reliance, continued to retain Stout to perform the semi-annual valuations. SAC ¶ 574.

In June 2013, which was the first valuation after State Street ceased serving as Plan trustee, Stout again performed the valuation, and it was subsequently approved by Reliance and the ESOP

3

Committee. That June 2013 valuation *raised* the value of the company's stock from $17.55 per share to $17.85 per share. SAC ¶ 578. Reliance then "approved the use of the 31 December 2012 stock value in connection with purchases of stock in approximately June 2013." SAC ¶ 577 & App'x A-B; *see also* SAC ¶¶ 294-295. Because the June 2013 valuation was higher than the previous valuation in December 2012 that State Street had approved, the ESOP's June 2013 stock purchases from PDC used the lower value of $17.55 instead of the $17.85 higher value that Stout simultaneously provided and Reliance approved. SAC ¶¶ 294, 577; *see also* SAC, App'x A. According to the SAC, the ESOP's June 2013 purchases from current and former employees were also made by Reliance at $17.55 per share, and the subsequent December 2013 purchases from current and former trustees were made at the higher $17.85 per share valuation. SAC, App'x B (listing these purchases).[3]

## III.  **Appvion's Decline.**

Two years after State Street's tenure as trustee had concluded, Appvion suffered significant setbacks. As the SAC puts it, "2015 was a rough year for Appvion." SAC ¶ 274. Its Thermal division performed much more poorly than expected and, crucially, "Appvion sold its most profitable division, the Encapsys division, which materially lowered the overall value of the company." *Id.* According to Plaintiff, the 2015 sale of Encapsys was devastating: "Encapsys was a driving factor in Stout's valuations" because "Encapsys had room for significant growth going forward and was Appvion's most profitable division." SAC ¶¶ 329-330. Thus, "the loss of its most profitable unit impaired Appvion's overall value and its ability to function as a going

---

[3] As alleged in the SAC, State Street did not approve the use of the December 2012 valuation for the ESOP's June 2013 stock purchases or repurchases; its use was approved by Reliance. *Compare* SAC ¶ 577 (alleging Reliance approved the use of the December 2012 valuation for June 2013 purchases), *with* SAC ¶ 671 (alleging "State Street approved the use of the 16 July 2012 valuation to purchase shares from PDC and to repurchase shares from employees in December 2012)."

concern." SAC ¶ 334.  Moreover, Plaintiff alleges that "Appvion incur[red] significant employee-termination costs relating to the Encapsys sale."  SAC ¶ 274.  On top of all that, Appvion's long-time CEO Mark Richards also retired in 2015.  *Id.*

By mid-2017, Appvion's stock price was $6.85, and shortly thereafter Appvion filed for bankruptcy.  SAC ¶¶ 191, 335.

## IV.  Procedural History.

In August 2017, Appvion's Board of Directors appointed Plaintiff as sole member of the ESOP Committee.  *Appvion I*, 475 F. Supp. 3d at 927.  He filed his initial complaint on November 26, 2018, and the First Amended Complaint in January 2019.  *Id.* at 928.  In July 2020, this Court issued a detailed decision dismissing the complaint without prejudice.  *See id.* at 950.  In response, Plaintiff filed the 395-page SAC in September 2020.  ECF No. 191.

The SAC broadly alleges that Willamette's and Stout's stock valuations were systematically inflated and should not have been approved by State Street and the successor trustees, or the ESOP Committee, and therefore "the ESOP repeatedly purchased shares . . . at a price above their fair market value."  SAC ¶ 296; *see also, e.g.*, SAC ¶ 15.  In November 2020, State Street and the other Defendants moved to dismiss the SAC.  *See, e.g.*, ECF No. 196.  In March 2022, after careful review, Magistrate Judge Dries recommended dismissal of all claims against all Defendants (with the exception of certain claims against a later trustee, Argent Trust Company) because the claims were barred by the statute of repose or otherwise failed to satisfy the relevant pleading standards.  *See generally Appvion II*, 2022 WL 4088166.  This Court then adopted the Magistrate Judge's Report and Recommendation.  *See* ECF No. 262.

On appeal, the Seventh Circuit affirmed this Court's holding that Plaintiff's claims under ERISA based on alleged "misconduct before November 26, 2012" are barred by the statute of repose, which includes all of the valuations that State Street approved during its tenure as trustee

except for one issued as of December 2012. *See Appvion III*, 99 F.4th at 942, 949-50. But the Seventh Circuit held, as relevant to State Street, that the SAC adequately pleads two counts under ERISA as to conduct occurring after November 26, 2012.[4] Count 3 alleges breach of fiduciary duty under 29 U.S.C. § 1104(a)(1) based on State Street's approval of Stout's allegedly inflated valuations. *See* SAC ¶¶ 635-669. As the Seventh Circuit explained, Count 3 "is entirely about State Street's approval of . . . Stout's [allegedly] inflated valuations." *Appvion III*, 99 F.4th at 950. Count 28 alleges liability for a co-fiduciary's breach under 29 U.S.C. § 1105. *See* SAC ¶¶ 1160-1167. This claim "alleges that by approving Stout's valuations without sufficient scrutiny, [State Street] allowed the ESOP Committee to accept those valuations and to use them to authorize purchases of Appvion shares by the Plan." *Appvion III*, 99 F.4th at 949.

What remains with respect to State Street, then, are the allegations concerning the four-month period between November 26, 2012 and March 31, 2013, after which State Street ceased being a trustee. SAC ¶ 577. State Street approved only one valuation during this period: Stout's December 2012 valuation of the stock at $17.55 a share. *See* SAC ¶ 652.[5] According to the SAC, that December 2012 valuation was not used or approved for any purchase or repurchase of company stock before State Street resigned as ESOP trustee. Rather, it was subsequently reviewed and approved for the purchase of PDC stock in June 2013 by the ESOP Committee and State Street's successor (Reliance) after Reliance reviewed and adopted Stout's higher June 2013 valuation of $17.85 per share. *Supra* at 3-4; SAC ¶¶ 294-95, 577 & App'x A-B.

---

[4] The SAC also pleads a separate ERISA claim against State Street for "prohibited transactions," *see* SAC ¶¶ 1098-1109 (Count 22), but that claim was dismissed and Plaintiff did not appeal that dismissal. *See Appvion III*, 99 F.4th at 950.

[5] The Seventh Circuit explicitly held that State Street cannot be liable for purchases it made in December 2012 at $16.45 per share because those were based on its approval of Stout's valuations in June and July 2012—which were barred by the six year repose period. *See Appvion III*, 99 F.4th at 950.

6

## V. **The Scope of the Remand.**

On remand from the Seventh Circuit, this Court "may address . . . issues that were timely raised before the district and/or appellate courts but which remain undecided." *United States v. Morris*, 259 F.3d 894, 898 (7th Cir. 2001); *see also Kovacs v. United States*, 739 F.3d 1020, 1024 (7th Cir. 2014). This motion addresses such an issue.

In support of its motion to dismiss the SAC, State Street argued that any claim for breach of fiduciary duty arising from State Street's approval of the December 2012 valuation must fail because "Plaintiff cannot plausibly allege the necessary element of loss causation." ECF No. 196 at 18-19; *see also* ECF No. 97 at 15-16. State Street contended that the allegations of actions by other entities in 2013—who approved a higher valuation than State Street's last valuation of $17.55—demonstrate that State Street's alleged breach in approving the December 2012 valuation could not have resulted in any loss to the Plan. ECF No. 196 at 18-19. Plaintiff's Opposition to State Street's motion to dismiss (ECF No. 210) did not address this argument, as State Street observed in its reply supporting that motion to dismiss. *See* ECF No. 223 at 11-12. The Magistrate Judge also did not need to address this specific issue, finding that the claims against State Street should all be dismissed on other grounds. *See Appvion II*, 2022 WL 4088166.[6] Following the Magistrate Judge's Report and Recommendation, State Street again advanced numerous arguments supporting dismissal, including that the SAC did not "plausibly allege that the single December 2012 valuation at issue caused . . . harm." ECF No. 250 at 13. Like the Magistrate's opinion, the Court did not need to address this issue because it affirmed dismissal of State Street on other grounds. Accordingly, State Street timely raised its argument regarding the lack of loss

---

[6] The Court also did not address this issue in its first opinion and order dismissing Plaintiff's claims against State Street without prejudice because it, too, found all claims could be dismissed on other grounds. *See Appvion I*, 475 F. Supp. 3d at 950.

causation from the December 2012 valuation in the earlier stages of the case.

## ARGUMENT

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," which requires alleging facts that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). However, "if a plaintiff pleads facts which show he has no claim, then he has pled himself out of court." *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006); *see also Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009) ("[I]f the plaintiff voluntarily provides unnecessary facts in her complaint, the defendant may use those facts to demonstrate that [the plaintiff] is not entitled to relief."); *Shaw v. Kemper*, No. 20-CV-599-JPS, 2021 WL 1208883, at *4 (E.D. Wis. Mar. 31, 2021) (collecting cases).

In other words, "a plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits" because, unlike with inconsistent "legal theories," the "pleading rules do not tolerate factual inconsistencies in a complaint." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) (quotation marks and citation omitted); *see also Non Typical Inc. v. Transglobal Logistics Grp. Inc.*, No. 10-cv-1058, 2011 WL 1792927, at *7 (E.D. Wis. May 11, 2011) (Griesbach, J.) (applying rule to allegations found in "incorporated paragraphs"). Thus, the Seventh Circuit has recognized that plaintiffs who file lengthy complaints are "liv[ing] dangerously," because they "risk[] dismissal by filing prolix complaints." *Jackson v. Marion Cnty.*, 66 F.3d 151, 154 (7th Cir. 1995).

That is the case here. *See Appvion III*, 99 F.4th at 940 (noting that the SAC is "prolix"). To state a claim for breach of fiduciary duty under ERISA, a plaintiff must plausibly allege "that the defendants were plan fiduciaries, that they breached a fiduciary duty, and that their breach resulted in harm to the Plan." *Id.* at 942. With respect to State Street, the alleged breach "is

8

entirely about State Street's approval of . . . Stout's [allegedly] inflated valuations." *Id.* at 950. The alleged harm is that the ESOP "overpa[id] for Appvion's stock" when purchases were made using the allegedly inflated valuations. *Id.* at 943. The problem, though, is that the SAC affirmatively pleads that the purchases of company stock using the December 2012 valuation occurred *after* State Street's tenure, and that two independent entities (the ESOP Committee and Reliance) directed and "approved" the use of the December 2012 valuation for those purchases—while also allegedly knowing that the December 2012 valuation was inflated. SAC ¶¶ 167, 294-295, 577, 595-596 & App'x A-B. Moreover, the SAC alleges that in June 2013, Stout prepared and Reliance and the ESOP Committee approved a valuation that was *higher* than the preceding December 2012 valuation approved by State Street—a higher valuation that was actually utilized in December 2013 for purchases from current and former employees. SAC ¶¶ 167, 348, 558, 577 & App'x A-B. And the SAC affirmatively pleads that all of those other entities allegedly knew that the December 2012 and June 2013 valuations were inflated. *See, e.g.,* SAC ¶¶ 560, 595-596.[7]

Accordingly, under ordinary principles of but-for and proximate causation, the SAC itself establishes that any alleged overpayment by the ESOP Committee during the statute of repose period did not result from State Street's approval of the December 2012 valuation. The remaining claims against State Street must therefore be dismissed.

---

[7] State Street asserts that it acted appropriately at all times, and it believes that Plaintiff's allegations against it and all other Defendants (including Reliance and the ESOP Committee) are baseless. State Street recites Plaintiff's allegations against all Defendants not to adopt them as its own, but to show that under Plaintiff's own pleaded facts, State Street should be dismissed. It is black-letter law that Plaintiff is bound by his own allegations. *See Jackson*, 66 F.3d at 153 (explaining that "[a]llegations in a complaint are binding admissions"); *Wroblewski v. City of Washburn*, 965 F.2d 452, 459 (7th Cir. 1992) ("We are not required to ignore facts alleged in the complaint that undermine plaintiff's claim.").

## I.    <u>The Breach Must Be Both But-For and Proximate Causes of Losses to the Plan.</u>

Under ERISA, a fiduciary that breaches its fiduciary duty is liable "to make good to [the] plan any losses to the plan *resulting from* each such breach." 29 U.S.C. § 1109(a) (emphasis added). The phrase "resulting from" language means that "a causal connection is required between the breach of fiduciary duty and the losses incurred by the plan." *Brandt v. Grounds*, 687 F.2d 895, 898 (7th Cir. 1982).

This requirement embraces two well-established types of causation. First, the alleged breach must be the but-for cause of the loss—meaning that if the alleged breach "had not" occurred, no loss would have been suffered either. *See, e.g., Ferrer v. Chevron Corp.*, 484 F.3d 776, 781-82 & n.21 (5th Cir. 2007); *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 279 (2d Cir. 1992) ("the same causal connection [as in fraud actions] is required between a breach of [ERISA] fiduciary duty and the loss alleged," which requires that "plaintiff must be in worse position than if [the breach] had not been committed"); *see also Silverman v. Mut. Benefit Life Ins. Co.*, 138 F.3d 98, 104 (2d Cir. 1998) (same); Restatement (Second) of Trusts § 205 cmt. f (1959) ("If the trustee commits a breach of trust and if a loss is incurred, the trustee may not be chargeable with the amount of the loss if it would have occurred in the absence of a breach of trust.").

Second, "ERISA requires a plaintiff to show that the injury was a proximate cause of the breach of duty." *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 424 (3d Cir. 2013); *see also Willett v. Blue Cross and Blue Shield of Ala.*, 953 F.2d 1335, 1343 (11th Cir. 1992) (same). The Seventh Circuit has noted that "proximate causation 'does not exist when the continuum between Defendant's action and the ultimate harm is occupied by the conduct of deliberative and autonomous decision-makers.'" *Hunter v. Mueske*, 73 F.4th 561, 569 (7th Cir. 2023) (quoting *Dixon v. Burke Cnty.*, 303 F.3d 1271, 1275 (11th Cir. 2002)).

The "superseding cause doctrine" is "one facet of the proximate causation requirement."

10

*Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837 (1996). A "court has the duty to apply" this doctrine as a matter of law when "the facts are undisputed." *Hibma v. Odegaard*, 769 F.2d 1147, 1156 (7th Cir. 1985). Under the doctrine, "[t]he intentional torts or criminal acts of a third person may constitute a superseding cause of harm and may relieve a tort-feasor from liability for the harm caused by the third person's torts or acts." *Id.* at 1155. "A superseding cause is something culpable that intervenes between the defendant's negligence and the plaintiff's injury, some action of a third party that makes the plaintiff's injury an unforeseeable consequence of the defendant's negligence." *Scottsdale Ins. Co. v. Subscription Plus, Inc.*, 299 F.3d 618, 621 (7th Cir. 2002).

By way of illustration, consider police officers who fabricate evidence against a criminal defendant that is then used at trial to convict the defendant. The Seventh Circuit has explained that "[t]he actions of an official who fabricates evidence that later is used to deprive someone of liberty can be both a but-for and proximate cause of the due process violation." *Whitlock v. Brueggemann*, 682 F.3d 567, 583 (7th Cir. 2012). Importantly, however, "[t]he causal link between a police officer's fabrication and the victim's injury may be broken if that police officer tells a prosecuting attorney before trial about the fabrication." *Id.* Thus, "if the prosecutors had known the truth and proceeded anyway" to rely on the fabricated evidence, the prosecutors' action creates a "break in the causal chain" that is "a superseding or supervening cause of the violation." *Id.* at 583-84 (citations omitted).

## II.    No Loss to the Plan Resulted from State Street's Approval of Stout's Allegedly Inflated December 2012 Valuation.

To state a claim for breach of fiduciary duty under ERISA, Plaintiff must plausibly plead that State Street's alleged "breach *resulted* in harm to the Plan." *Appvion III*, 99 F.4th at 942 (emphasis added). The Seventh Circuit held that, here, State Street's alleged breach during the repose period "is entirely about State Street's approval of . . . Stout's [allegedly] inflated

11

valuations"—*i.e.*, the single December 2012 valuation issued by Stout and approved by State Street several months before it resigned. *Id.* at 950. The alleged harm is that the ESOP "overpa[id] for Appvion's stock" when purchases were later approved and made by entities other than State Street using the allegedly inflated valuations. *Id.* at 943. Indeed, both the Seventh Circuit and Plaintiff himself made clear that the ESOP "suffered *no damage* from the inflated . . . price—and therefore had no claim—until [it] . . . purchased shares at that price." *Id.* at 950 (emphasis added); *see* Appellant's Reply to Defendant-Appellee State Street, No. 23-1073, ECF No. 99 at 27 (7th Cir. Nov. 8, 2023) ("The harm occurred (and the breaches of fiduciary duty were therefore complete) when the stock price was used to purchase stock.").

But the SAC says nothing about how State Street's approval of the December 2012 valuation was a "but-for" cause of the allegedly inflated June 2013 purchases. Rather, the SAC alleges that when the December 2012 valuation was used to make stock purchases in June 2013: (1) State Street was no longer trustee; (2) the successor trustee (Reliance) approved the use of the valuation for the ESOP's June 2013 purchases, in part, because the June 2013 valuation that Reliance also approved was *higher* than the December 2012 valuation; (3) the ESOP Committee approved and directed Reliance to make the June 2013 purchases using the December 2012 valuation; and (4) the ESOP's subsequent purchases of PDC stock from current and employees in December 2013 were made at the *higher* June 2013 valuation. Moreover, the SAC affirmatively pleads multiple superseding causes by other independent entities for the June 2013 purchases. Plaintiff has therefore pled himself out of court.

To evaluate but-for causation, the Court must isolate the specific breach and determine whether the Plan would have been "in a worse position than if [the breach] had not been committed." *Diduck*, 974 F.2d at 279; *see Bostock v. Clayton Cnty.*, 590 U. S. 644, 656 (2020)

("[A] but-for test directs us to change one thing at a time and see if the outcome changes."). The alleged breach here is highly specific: "State Street's approval of . . . Stout's inflated valuations." *Appvion III*, 99 F.4th at 950. Notably, the Seventh Circuit held that the alleged breach is *not* "failing to approve an accurate valuation or failing to correct an earlier inaccurate valuation." *Id.* Thus, with respect to approval of the December 2012 valuation, the appropriate inquiry is whether the Plan would have been better off had State Street not approved the December 2012 valuation but everything else stayed exactly the same.

Yet the SAC is completely silent as to what would have occurred but for State Street's approval—which is the critical question when assessing but-for causation. *See Diduck*, 974 F.2d at 279; *Bostock*, 590 U. S. at 656. In particular, nowhere does the SAC allege, nor could it, that the purchase price *would have* been lower in June 2013 had State Street not approved the December 2012 valuation. Because Plaintiff simply fails to plead the critical element of but-for causation, he has "not stated a cause of action." *Ferrer*, 484 F.3d at 781 (dismissing ERISA claim of fiduciary breach arising from alleged misrepresentations when complaint never alleged that the loss "would have" been averted but for those misrepresentations).

Moreover, the allegations in the SAC plead Plaintiff out of court. They uniformly demonstrate that the purchase price in June 2013 would have been the same (or potentially higher) had State Street not approved the valuation in December 2012. Plaintiff alleges that both Reliance and the ESOP Committee approved the use of the December 2012 valuation for the June 2013 purchases. *Supra* at 3-4; SAC ¶¶ 170-171, 294-95, 577 & App'x A-B. And he alleges that the independent appraiser (Stout) used the same methodology that it used for the December 2012 valuation to issue a *higher* valuation in June 2013—which Reliance and the ESOP Committee both reviewed and approved, and subsequently used in December 2013 for repurchasing shares from

13

employees. *See* SAC ¶¶ 191, 577-89, App'x B. In other words, as alleged, State Street exited the scene but no changes were made to the valuation process, and the subsequent valuation was *higher*. It follows from those allegations that even if State Street had not approved the December 2012 valuation at $17.55 per share before it ceased being the trustee, others would have approved Stout's valuation anyway and used the same price in June 2013 to purchase shares. Thus, the "causal connection . . . between [State Street's alleged] breach of fiduciary duty and the losses incurred by the plan" is absent. *Brandt*, 687 F.2d at 898.

Plaintiff has also pleaded himself out of court because the SAC affirmatively alleges multiple superseding cases that break the chain of proximate causation. Specifically, the SAC alleges that Reliance, not State Street, "approved the use of the 31 December 2012 stock value in connection with purchases of stock in approximately June 2013." SAC ¶ 577. Even then, Reliance "was not authorized to buy any [company] stock without the ESOP Committee's prior direction." SAC ¶¶ 170-171. So, entities other than State Street made the stock purchases in June 2013, and, as explicitly alleged, "[t]he ESOP Committee therefore *caused* the ESOP to purchase PDC stock." *See* SAC ¶¶ 1137-1138 (emphasis added); *id.* App'x A-B. And the SAC further alleges that both Reliance and the ESOP Committee members supposedly knew that the price reflected in the December 2012 valuation (and subsequent valuations) was "inflated," yet approved it for the ESOP's June 2013 stock purchases anyway. *See supra* at 3-4, 9.[8]

---

[8] With respect to Plaintiff's securities-law claims, the Seventh Circuit held that the SAC's allegations of scienter are insufficient. *Appvion III*, 99 F.4th at 951-53. However, the Seventh Circuit also made clear that this deficiency was unique to the securities-law claims, which (unlike ERISA claims) "must . . . satisfy a higher likelihood standard." *Id.* at 945. For purposes of Plaintiff's ERISA claims, the Seventh Circuit deemed the SAC's factual allegations of intent adequate. *See id.* at 944. Therefore, State Street "may use those facts to demonstrate that [Plaintiff] is not entitled to relief." *Tamayo*, 526 F.3d at 1086. State Street, however, takes no position whether any of Plaintiff's allegations of malfeasance or intent by Reliance or the ESOP Committee are true or sufficient to support a claim for any relief against either party.

Finally, the SAC alleges that in June 2013, Reliance and the ESOP Committee "fraudulently" approved a valuation that was even *higher* than State Street's final valuation. SAC ¶¶ 558-560. Indeed, that subsequent higher valuation directly *caused* the December 2012 valuation price to be used in the semi-annual stock purchases of June 2013, because the Plan required using the lower valuation for those purchases. *See* SAC ¶¶ 293-95, 577; *supra* at 2-4.

Regardless whether Plaintiff can prove these allegations, these multiple alleged intervening, independent, and supposedly culpable actions of entities other than State Street plead Plaintiff out of court. Under Plaintiff's own allegations, these events are superseding causes that break any chain of causation from State Street's alleged breach in approving the December 2012 valuation to the eventual stock purchases in June 2013. *See Whitlock*, 682 F.3d at 583-84; *supra* at 3-5.[9]

The Seventh Circuit reached a similar conclusion in a different case concerning allegations of fraudulent price inflation. In *Sundstrand Corp. v. Sun Chemical Corp.*, a company entered into an agreement to purchase a large amount of another company's stock in two stages: with an initial down payment of five percent of the purchase price, with the rest to follow a few weeks later. 553 F.2d 1033, 1037-38 (7th Cir. 1977). After the down payment, but before paying the bulk of the purchase price, the buyer learned certain facts suggesting that the value of the company was "grossly inflated" due to fraud. *Id.* at 1040-41. At that point, the buyer no longer wished to

---

[9] Additionally, as Magistrate Dries previously noted (ECF No. 235 at 54-55), to the extent Plaintiff may seek to rely on the subsequent devaluation of PDC shares or Appvion's bankruptcy—which occurred after State Street resigned—to somehow infer that State Street caused harm to the Plan by approving a single purportedly inflated valuation, Plaintiff's SAC pleaded many other superseding and intervening events that allegedly caused those results, and particularly Appvion's sale of "its most profitable division" (Encapsys), which Plaintiff alleges was "a driving factor in Stout's valuations" and caused Appvion to incur "significant employee-termination costs." *E.g.,* SAC ¶¶ 274, 329-330, 334; *supra* at 4-5.

proceed with the stock purchase, but it completed the purchase anyway "because counsel had wrongly advised [the buyer's] officials that it was legally obligated to do so." *Id.* at 1050. The buyer then sued for securities fraud, seeking recovery of the full purchase price. But the Seventh Circuit held that the buyer's recovery was limited to the five percent down payment—the loss of which was directly caused by the fraud—and could not recover the remainder because "[t]he incorrect legal advice," coupled with the fact that the buyer should have known better, "serves as the superseding cause which breaks the damage causation chain running to the defendants." *Id.* at 1051. In other words, defendants' allegedly fraudulent actions did not themselves cause or require the payment of the full purchase price—that payment was the result of the independent decisions of third parties, in particular the attorneys who gave legal advice and the buyers who heeded it.

The same is true here. State Street is not alleged to have made or approved the June 2013 stock purchases for the Plan. Rather, Plaintiff alleges that Reliance "approved the use of" the December 2012 valuation for all purchases in June 2013. SAC ¶ 577 & App'x A-B; *supra* at 3-4, 12-14. Further, as this Court has already determined, "the Trustee Defendants' valuations did not cause or require the ESOP to engage in a transaction." *Appvion I*, 475 F. Supp. 3d at 944. Instead, as Plaintiff alleges and the Trust Agreement reflects, the June 2013 stock purchases were later carried out at the direction of the ESOP Committee. SAC ¶¶ 170-171, 293-295 & App'x A-B.

These allegations break any causal chain of events stemming from State Street's alleged misconduct relating to its approval of the December 2012 valuation. This is particularly so because the SAC affirmatively alleges that both Reliance and the ESOP Committee members purportedly carried out the June 2013 transactions in breach of their ERISA fiduciary duties and with actual

16

knowledge that the December 2012 valuation was inflated.  *See supra* at 3-4, 9, 12-14.[10]  And because the Plan documents required the use of the lower of two prior valuations, the December 2012 valuation would not have even been used to set the price of the semi-annual stock purchase in June 2013 if the subsequent valuation had not been *higher*.  *See supra* at 2-4.  Thus, because the SAC pleads that any breach by State Street in approving that valuation was superseded by the independent and allegedly culpable actions of third parties, the SAC itself refutes proximate causation as to State Street for the December 2012 valuation.  *See also Edmonson*, 725 F.3d at 424 (no proximate cause when "the breach did not *directly* cause the injury for which [the plaintiff] seeks relief" because "[t]he establishment of the account neither guaranteed or commanded that [the fiduciary] take the later act of investing the assets for its own profit" and, had it not invested those assets, the plaintiff "would have suffered no injury" (emphasis added)); *see also Whitlock*, 682 F.3d at 583-84 (causal chain broken where prosecutor knows of evidence wrongly obtained yet proceeded to use it anyway).

The same analysis applies to the other remaining claim against State Street:  co-fiduciary liability for allegedly enabling the ESOP Committee's supposed breach of fiduciary duty.  *See supra* at 10-17.  As the Seventh Circuit has explained, this claim alleges that, "by approving Stout's valuations without sufficient scrutiny, the trustees allowed the ESOP Committee to accept those valuations and to use them to authorize purchases of Appvion shares by the Plan."  *Appvion III*, 99 F.4th at 949.  Because (as relevant to State Street) only the December 2012 valuation is within the statute of repose period, the only possible harm resulting from this alleged breach by the ESOP Committee is using the December 2012 valuation to purchase shares in June 2013.  For the reasons

---

[10] Again, State Street takes no position on the culpability of any co-Defendant, and it expressly denies that it approved any improper valuation.  However, for purposes of this motion under Rule 12(b)(6), it assumes the truth of the pleaded allegations.

explained above, the SAC itself rules out any loss causation by State Street from this valuation. *See supra* at 11-17. The claim of co-fiduciary liability claim against State Street therefore runs into the same loss-causation problem as the fiduciary-breach claim.

Accordingly, the remaining claims against State Street must be dismissed.

## CONCLUSION

This Court should grant State Street's motion to dismiss the remaining claims against State Street with prejudice.

Dated:  June 28, 2024                                   Respectfully submitted,

                                                        /s/ James O. Fleckner

**GOODWIN PROCTER LLP**                                 **T. WICKHAM SCHMIDT, ESQ.**
                                                        **A PROFESSIONAL SERVICE CORP.**

James O. Fleckner                                       T. Wickham Schmidt (WI #1062002)
100 Northern Avenue                                     130 E. Walnut St., Ste. 605
Boston, MA 02210                                        Green Bay, WI 54301
(617) 570-1000                                          (920) 759-8114
(617) 523-1231 (Fax)                                    (920) 759-8105 (Fax)
jfleckner@goodwinlaw.com                                wick@twslawgb.com

Gabrielle L. Gould
The New York Times Building
620 Eight Avenue
New York, NY 10018
(212) 813-8800
(212) 355-3333 (Fax)
ggould@goodwinlaw.com

Matthew L. Riffee
901 New York, Ave., NW
Washington, DC 20001
(202) 346-4000
(202) 346-4444 (Fax)
mriffee@goodwinlaw.com

 Attorneys for State Street Bank and Trust Company

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of June, 2024, the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.

*/s/ James O. Fleckner*