## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
## GREEN BAY DIVISION

| | | |
|---|---|---|
| APPVION, INC. RETIREMENT SAVINGS AND EMPLOYEE STOCK OWNERSHIP PLAN, by and through Grant Lyon in his capacity as the ESOP Administrative Committee of Appvion, Inc., | ) ) ) ) ) | |
| Plaintiff, | ) | Civil Action No.: 18-cv-01861 |
| | ) | |
| v. | ) | Judge William C. Griesbach |
| | ) | |
| MARK RICHARDS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION OF DEFENDANT STATE STREET'S RENEWED MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

I.     RELEVANT FACTUAL ALLEGATIONS ...................................................................... 2

    A.   State Street knowingly approved fraudulently inflated appraisals of Appvion after November 2012. ........................................................................................................ 2

    B.   The Seventh Circuit concluded that the ESOP stated claims against State Street for breach of fiduciary duty and co-fiduciary liability. ................................................. 5

II.    ARGUMENT ............................................................................................................... 7

    A.   State Street's arguments are barred by the mandate rule and law of the case. ............... 7

      1.   The Seventh Circuit found that the SAC states claims against State Street. .............. 7

      2.   State Street did not raise these arguments in its first motion to dismiss. .................... 9

    B.   The ESOP's SAC adequately alleges causation. ......................................................... 10

      1.   The SAC's co-fiduciary liability allegations establish causation ............................ 11

      2.   The SAC alleges that State Street's breach of fiduciary duty proximately caused the ESOP damages ................................................................................................ 12

      3.   There was no intervening or superseding cause. ...................................................... 15

III.   CONCLUSION ........................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                          <u>Page(s)</u>

*Appvion, Inc. Ret. Sav. and Emp. Stock Ownership Plan v. Buth*,
   99 F.4th 928 (7th Cir. 2024) ..................................................................................Passim

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................... 11

*Beul v. ASSE Int'l, Inc.*,
   233 F.3d 441 (7th Cir. 2000) ................................................................................. 16

*Blasius v. Angel Automotive, Inc.*,
   839 F.3d 639 (7th Cir. 2016) ................................................................................. 16

*Bradley v. Vill. of Univ. Park, Illinois*,
   59 F.4th 887 (7th Cir. 2023) ................................................................................ 8, 9

*Carmody v. Board of Trustees*,
   893 F.3d 397 (7th Cir. 2018) ................................................................................... 8

*Daly v. West Monroe Partners, Inc.*,
   2023 WL 2525362 (N.D. Ill. Mar. 15, 2023) ........................................................ 12

*Delgado v. U.S. Dep't of Just.*,
   979 F.3d 550 (7th Cir. 2020) ................................................................................... 8

*Exxon Co., U.S.A. v. Sofec, Inc.*,
   517 U.S. 830 (1996) .......................................................................................... 12, 15

*Gociman v. Univ. of Chicago*,
   41 F.4th 873 (7th Cir. 2022) ................................................................................. 11

*Gracyalny v. Westinghouse Elec. Corp.*,
   723 F.2d 1311 (7th Cir. 1983) ........................................................................... 15, 16

*In re Fair Fin. Co., Bash v. Textron Fin. Corp.*,
   2017 WL 1183907 (No. 5:12-cv-987, Bankr. N.D. Ohio Mar. 29, 2017)............................ 7, 10

*In re State Street Bank and Trust Co. Fixed Income Funds Inv. Litig.*,
   772 F.Supp.2d 519 (S.D.N.Y. 2011) ..................................................................... 15

*J.M. v. City of Milwaukee*,
   249 F.Supp.3d 920 (E.D. Wisc. 2017) .................................................................. 12

*Scottsdale Ins. Co. v. Subscription Plus, Inc.*,
   299 F.3d 618 (7th Cir. 2002) ................................................................................. 15

*Suzik v. Sea-Land Corp.*,
   89 F.3d 345 (7th Cir. 1996) ................................................................................... 16

*U.S. v. Morris*,
   259 F.3d 894 (7th Cir. 2001) ................................................................................... 9


<u>Statutes</u>

29 U.S.C. § 1104 .............................................................................................................. 1

29 U.S.C. § 1105 .............................................................................................................. 1

29 U.S.C. § 1105(a)(2) ............................................................................................. 6, 7, 11


<u>Rules</u>

Fed.R.Civ.P. 12(g) .......................................................................................................... 7

Fed.R.Civ.P. 15(a)(2) .................................................................................................... 12

Rule 12(b)(6) ........................................................................................................... 7, 10

Plaintiff Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan (the "ESOP") submits this memorandum of law in opposition to Defendant State Street Bank and Trust Company's Renewed Motion to Dismiss the Second Amended Complaint (Dkt. 297), filed June 28, 2024. State Street's Motion should be denied.

The Renewed Motion seeks dismissal of the ESOP's two remaining counts against State Street: (a) Count III for breach of fiduciary duty under ERISA § 404 (29 U.S.C. § 1104); and (b) Count XXVIII for co-fiduciary liability under ERISA § 405 (29 U.S.C. § 1105). State Street filed a motion to dismiss these same claims in November 2020, arguing that the ESOP could not establish "the necessary element of loss causation" from the December 2012 appraisal approved by State Street. Dkt. 196 at 19. This Court dismissed those claims on September 6, 2022. *See* Dkt. 262.

On appeal, the Seventh Circuit reversed and remanded, finding that the ESOP plausibly alleged claims against State Street and other defendants for breach of fiduciary duty and co-fiduciary liability "to the extent they seek recovery for conduct taking place after November 26, 2012." *Appvion, Inc. Ret. Sav. and Emp. Stock Ownership Plan v. Buth* ("*Appvion III*"), 99 F.4th 928, 957 (7th Cir. 2024).

State Street is not entitled to another motion to dismiss. The Seventh Circuit has already closely examined the ESOP's fiduciary duty and co-fiduciary liability claims and concluded that they state claims against State Street for actions arising after November 2012. Therefore, State Street is improperly pressing an argument the Seventh Circuit already heard and rejected. Its ruling is law of the case, and consideration of State Street's Renewed Motion would violate the Seventh Circuit's mandate rule. Regardless, on the merits, whether State Street's established breach of its fiduciary duty between November 26, 2012 to March 31, 2013 proximately caused the ESOP

1

damages is a fact-intensive issue that should be submitted to a jury after discovery and the introduction of expert analysis. State Street's Renewed Motion should be denied.

## I.     <u>RELEVANT FACTUAL ALLEGATIONS</u>

### A.     State Street knowingly approved fraudulently inflated appraisals of Appvion after November 2012.

The history of Appvion, Inc. ("Appvion"), its parent Paperweight Development Corp. ("PDC") and the Appvion ESOP is recounted in the Seventh Circuit's April 23, 2024 opinion. *See Appvion III*, 99 F.4th at 937-939. The ESOP was formed in November 2001, and the ESOP purchased shares of PDC stock twice a year until 2017, when Appvion filed for bankruptcy. During this same period, the ESOP redeemed company stock from retiring employees.

After the November 2001 sale of Appvion to its employees was finalized, Appvion formed the Employee Stock Ownership Plan Administrative Committee (the "ESOP Committee") to act as the ESOP's named fiduciary responsible for the ESOP's purchases and redemption of Appvion stock going forward. *See id.*, 99 F.4th at 938. Appvion's board of directors and the ESOP Committee selected a trustee to be responsible for (1) valuing PDC's stock; (2) purchasing shares on behalf of the ESOP; and (3) holding the shares of PDC stock for its beneficial owners, the ESOP's participants and beneficiaries. *See id.* State Street was the ESOP's Trustee from 2001 through March 31, 2013. *See id.*

"To facilitate sales and purchases of Appvion shares by the employees, the trustees [including State Street] recalculated the fair market value of Appvion twice a year," in June and December. *See id.* "The Plan's documents required the trustees to hire an independent appraiser to help with that task," and State Street hired defendants Willamette and later Stout as Appvion's appraiser. *See id.*

The Seventh Circuit summarized the appraisal process:

2

The appraiser calculated the fair market value of Appvion, based in part on projections provided by Appvion's directors and officers and in part on Appvion's assets and liabilities. The appraiser gave that valuation to the trustee, which used it to set the new price of a share of Appvion. The ESOP Committee then reviewed and approved the price set by the trustee, reported it to the Plan participants, and used it to approve purchases and sales of Appvion's shares.

*Id.*, 99 F.4th at 938-39.

The Seventh Circuit found that the ESOP has claims against State Street based on its role as fiduciary to the ESOP on or after November 26, 2012 relating to State Street's participation in the Appvion share valuation process as trustee, the purchase and sale of PDC stock for greater than fair market value and State Street's related breaches of fiduciary duties to the ESOP. *See id.*, 99 F.4th at 957. Between November 26, 2012 and State Street's resignation on April 1, 2013, State Street approved one of Stout's inflated appraisals of PDC shares. In January 2013, Stout issued its valuation as of December 31, 2012, valuing PDC's stock at $17.55 per share as of that date. *See* SAC ¶¶ 191, 652. In February 2013, State Street approved the valuation and reported it to the Committee. *See* SAC ¶¶ 554-555, 652.

Count Three of the Second Amended Complaint includes detailed allegations of State Street's breach of its ERISA fiduciary duty in connection with the December 2012 stock valuation. *See* SAC ¶¶ 647-669. Within the six-year statute of limitations, the SAC alleges that State Street breached its duties of prudence, loyalty, and disclosure by:

- adopting, approving and submitting to the ESOP a share valuation far exceeding the fair market value, in violation of ERISA and the plan documents (SAC ¶¶ 288, 637, 648-649, 652, 660, 663);

- relying on and approving Stout's December 2012 valuation with knowledge that reliance on Stout was not reasonably justified (*id.* ¶¶ 653, 662-666);

3

- failing to scrutinize the financial projections provided by Appvion management, even though Appvion had consistently failed to meet projections (*id.* ¶ 654);

- adopting and approving Stout's valuations without addressing management conflicts of interest in preparing the projections on which the valuations were based (*id.* ¶ 655);

- adopting and approving the December 2012 valuation despite knowing Stout did not subtract the Excluded Debt (*id.* ¶ 656);

- failing to require that the valuation deduct the Excluded Debt despite State Street's involvement in the December 31, 2007 valuation, which reduced Appvion's overall value by the amount of Appvion subsidiary BemroseBooth's unfunded pension liability, and the June 30, 2008 valuations, which valued BemroseBooth at zero in part because of its pension liability (*id.* ¶¶ 656-57);

- allowing Stout to apply a control premium of 10% to the valuation, even though State Street lacked control of PDC and Appvion under the Security Holders Agreement that State Street signed (*id.* ¶ 660);

- failing to require that the valuation be based on accurate financial projections rather than ones State Street knew were inflated (*id.* ¶ 654).

In short, the ESOP alleges that State Street either (1) knew Stout's December 2012 valuation was fraudulently inflated and "looked the other way and accepted valuations they knew to be inflated" (*Appvion III*, 99 F.4th at 946), or (2) breached its fiduciary duty of prudence by failing to "closely scrutinize an expert's advice" when "red flags indicated that the expert's methods might be unsound." *Id.*

4

**B.      The Seventh Circuit concluded that the ESOP stated claims against State Street for breach of fiduciary duty and co-fiduciary liability.**

The Seventh Circuit ruled that the ESOP adequately alleged Count III for breach of fiduciary duty against State Street in connection with the December 2012 stock appraisal:[1]

- "Applying *Twombley*, we find that Lyon adequately pleaded **breach of the duty of loyalty** by State Street ….  Lyon alleged that **State Street** … had an incentive to keep the officers and directors happy in order to retain Appvion's business, and so they **looked the other way and accepted valuations they knew to be inflated**."  *Appvion III*, 99 F.4th at 946 (emphasis added).

- "Even if the fraud aspects of Lyon's claim were implausible, Lyon has stated claims for **breach of the duty of prudence**.  He pleaded that to the extent the … trustees [including State Street] did not intentionally inflate Appvion's price, they were **careless in failing to scrutinize Stout's valuation methods**."  *Id.* (emphasis added).

- "ERISA's duty of prudence requires fiduciaries to investigate the expert's qualifications, provide the expert with complete and accurate information, and make certain that reliance on the expert's advice is reasonably justified under the circumstances….  A prudent fiduciary would more closely scrutinize an expert's advice if red flags indicated that the expert's methods might be unsound."  *Id.*

---

[1] The Seventh Circuit was well aware that the ESOP's claims against State Street were limited to the December 2012 valuation – State Street made that point clear in its appellate brief.  *See* August 4, 2023 Brief of Appellee State Street Bank and Trust Company at 36, attached as Exhibit A.  The Seventh Circuit's opinion specifically discusses the timing of State Street's involvement and timing of the relevant appraisals, including necessary "line-drawing" between the June and December 2012 appraisals.  *See Appvion III*, 99 F.4th at 949-50.

5

- "Lyon makes several allegations that, taken as true, indicate that a prudent fiduciary would have questioned Stout's valuations." *Id.*

- "Taking all of Lyon's allegations together (with emphasis on the control premium), we conclude that the complaint plausibly pleads that the directors, officers, and **trustees breached their duty of prudence by failing to ensure that Stout's methods were sound**." *Id.*, 99 F.4th at 947 (emphasis added).

Likewise, the Seventh Circuit held that the ESOP adequately alleged its Count XXVIII claim for co-fiduciary liability against State Street in connection with the December 2012 appraisal:

- "ERISA creates three avenues for imposing liability on a fiduciary for her co-fiduciary's violation of ERISA. Two of these require that the fiduciary knew of her co-fiduciary's breach, and that the fiduciary either knowingly participated in or concealed that breach, or that the fiduciary failed to make reasonable efforts to remedy the breach." *Id.*, 99 F.4th at 949 (internal citation omitted).

- "In contrast, the third avenue allows for co-fiduciary liability when the fiduciary, by failing to comply with her duties under ERISA, enabled her co-fiduciary's breach. This provision does not require knowledge of the other fiduciary's breach; all it requires is that the fiduciary's breach of duty gave the co-fiduciary the opportunity to breach." *Id.*

- "We need not decide if Lyon's allegations of knowledge are sufficient, however, because the third avenue saves Lyon's claims. Lyon has plausibly alleged liability under 29 U.S.C. § 1105(a)(2).… Lyon alleges that by approving Stout's valuations without sufficient scrutiny, the trustees [including State Street] **allowed the ESOP Committee to accept**

6

those valuations and to use them to authorize purchases of Appvion shares by the Plan." *Id.* (emphasis added).

## II.  ARGUMENT

### A.  State Street's arguments are barred by the mandate rule and law of the case.

State Street's Renewed Motion is improper because State Street is not entitled to another motion to dismiss.  The Seventh Circuit examined the district court's dismissal of the ESOP's claims for breach of fiduciary duty and co-fiduciary liability, found dismissal erroneous and remanded the ESOP's claims against State Street to proceed based on facts arising after November 2012.  State Street's "renewed" arguments are barred by the law of the case and the Seventh Circuit's mandate rule.

#### 1.  The Seventh Circuit found that the SAC states claims against State Street.

There is no right to file successive motions to dismiss.  *See* Fed.R.Civ.P. 12(g) ("a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion").  State Street previously filed a motion to dismiss these same claims in November 2020 for failure to state a claim, arguing that the ESOP "cannot plausibly allege the necessary element of loss causation from this one valuation" – the December 2012 valuation.  Dkt. 196 at 19.  The Seventh Circuit rejected the argument that the ESOP failed to state a claim and concluded that the ESOP plausibly alleged claims for breach of fiduciary duty and co-fiduciary liability, which necessarily included an allegation of loss causation.  *See Appvion III*, 99 F.4th at 946-47; *see In re Fair Fin. Co., Bash v. Textron Fin. Corp.*, 2017 WL 1183907 at *5 (No. 5:12-cv-987, Bankr. N.D. Ohio Mar. 29, 2017) ("the issue necessarily decided by the Sixth Circuit … was whether the district court erred in holding that the trustee failed to state a claim under Rule 12(b)(6) ….  Under the law of the case doctrine, that decision is binding on the district court").

7

"The mandate rule requires a lower court to adhere to the commands of a higher court on remand. The law of the case doctrine is a corollary to the mandate rule and prohibits a lower court from reconsidering on remand an issue **expressly or impliedly decided** by a higher court absent certain circumstances." *Carmody v. Bd. of Tr.*, 893 F.3d 397, 407 (7th Cir. 2018) (emphasis added; citations omitted). The "special circumstances" generally refer to "subsequent factual discoveries or changes in the law." *Id.*, 893 F.3d at 408; *Delgado v. U.S. Dep't of Just.*, 979 F.3d 550, 557 (7th Cir. 2020). State Street identifies no factual discovery or change in the law here that might provide a "compelling reason" to clear the "high bar required to bend the law-of-the-case and mandate rules." *Carmody*, 893 F.3d at 408.

The Seventh Circuit found that the trustees, including State Street, caused the purchase of PDC shares at prices that exceeded fair market value. *See Appvion III*, 99 F.4th at 949 ("Lyon alleges that by approving Stout's valuations without sufficient scrutiny, the trustees [including State Street] allowed the ESOP Committee to accept those valuations and to use them to authorize purchases of Appvion shares by the Plan"). That is an explicit finding of causation.

Even so, the mandate rule also encompasses implicit findings of the appellate court. "The gist of the doctrine is that once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case. So any factors that limit remand are implicitly taken into account when this court remands a case." *Bradley v. Vill. of Univ. Park, Illinois*, 59 F.4th 887, 896 (7th Cir. 2023). Because loss causation is, in State Street's words, a "necessary element" of either of the ESOP's claims against State Street, the Seventh Circuit's remand necessarily included a finding that the ESOP adequately alleged loss causation. That conclusion is law of the case, and State Street's Renewed Motion is barred by the mandate rule.

8

2.    State Street did not raise these arguments in its first motion to dismiss.

State Street argues that its Renewed Motion should be allowed under a narrow exception to the mandate rule covering "issues that were timely raised before the district and/or appellate court but which remain undecided," relying on *U.S. v. Morris*, 259 F.3d 894, 898 (7th Cir. 2001). The *Morris* exception is inapplicable.

Initially, as discussed above, the Seventh Circuit found causation, both expressly and "by necessary implication." *Bradley*, 59 F.4th at 896. The Seventh Circuit upheld the ESOP's claims for breach of fiduciary duty and co-fiduciary liability, necessarily including the elements of loss and causation.

Regardless, contrary to State Street's argument, the specific basis for State Street's Renewed Motion was **not** included in its original Motion to Dismiss. The crux of State Street's argument here is the following:

> What remains with respect to State Street, then, are the allegations concerning the four-month period between November 26, 2012 and March 31, 2013, after which State Street ceased being a trustee. SAC ¶ 577. State Street approved only one valuation during this period: Stout's December 2012 valuation of the stock at $17.55 a share. *See* SAC ¶ 652. According to the SAC, that December 2012 valuation was not used or approved for any purchase or repurchase of company stock before State Street resigned as ESOP trustee.

Renewed Motion at 6.

That point does not appear anywhere in State Street's November 24, 2020 Motion to Dismiss. *See* Dkt. 196 at 18-19. Nor is it included in State Street's appellate brief. *See* Exhibit A, Brief of Appellee State Street Bank and Trust Company at 36-50. In its original motion to dismiss, State Street generally argued that the December 2012 valuation "cannot support a claim against State Street" because the ESOP "could not plausibly show that that particular valuation was improper or caused any loss." Dkt. 196 at 19. But the argument that no purchases were made based on the December 2012 valuation appears nowhere in the original motion or appellate brief.

9

Accordingly, the narrow exception to the mandate rule stated in *Morris* is inapplicable, and the mandate rule bars the Renewed Motion.

Moreover, the fact that the Seventh Circuit did not explicitly discuss every single argument made by State Street in its briefing on a particular issue does not mean that the issue "remains undecided" for purposes of the mandate exception under *Morris*. *See Fair Finance*, 2017 WL 1183907 at * 6 ("Textron reads the issue decided by the Sixth Circuit too narrowly…. [T]he issue decided by the Sixth Circuit … was whether the trustee failed to state a civil conspiracy claim under Rule 12(b)(6), not the specific theory actually adopted by the district court among those asserted by Textron in its first motion to dismiss"). The Seventh Circuit addressed whether the district court erred in dismissing the ESOP's claims against State Street for breach of fiduciary duty and co-fiduciary liability based on activity after November 2012 and determined that dismissal was improper. Specifically, the Seventh Circuit found that the trustees, including State Street, "allowed the ESOP Committee to accept [Stout's inflated] valuations and to use them to authorize purchases of Appvion shares by the Plan" for more than fair market value. 99 F.4th at 949. The Seventh Circuit's conclusions are final under the mandate rule and law of the case, and State Street's redundant motion to dismiss should be rejected.

### B. The ESOP's SAC adequately alleges causation.

As discussed above, the Seventh Circuit has already determined that the ESOP alleges claims for breach of fiduciary duty and co-fiduciary liability against State Street in the SAC – which necessarily includes loss causation. Undeterred, State Street insists that its approval of Stout's inflated December 2012 appraisal could not have caused an injury to the ESOP because no PDC share purchases were made at the December 2012 price.

State Street asks the Court to isolate the December 2012 appraisal from history and examine it in a vacuum to conclude that State Street's actions could not have caused the ESOP to

10

purchase PDC stock for more than fair market value. This improperly narrow causation analysis violates the correct motion to dismiss standard, where all reasonable inferences are drawn in favor of the Plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Gociman v. Univ. of Chicago*, 41 F.4th 873, 881 (7th Cir. 2022). As the Seventh Circuit noted, the ESOP's causation allegations are governed by Rule 8(a)(2)'s "short and plain statement of the claim" plausibility standard. *See Appvion III*, 99 F.4th at 943.

        1.     <u>The SAC's co-fiduciary liability allegations establish causation</u>

Regardless of whether the ESOP states a Section 404(a) claim for breach of fiduciary duty, the Seventh Circuit decided that the ESOP's Section 405 claim for co-fiduciary liability must proceed. Under Section 405, "a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary … if … he has enabled such other fiduciary to commit a breach." 29 U.S.C.A. § 1105(a)(2). The Seventh Circuit specifically concluded that the ESOP's allegations satisfy this third-avenue "enabling" provision of Section 405. *See Appvion III*, 99 F.4th at 949 ("Lyon alleges that by approving Stout's valuations without sufficient scrutiny, the trustees allowed the ESOP Committees to accept those valuations and to **use them to authorize purchases of Appvion shares by the Plan**") (emphasis added).

There can no dispute that by approving Stout's fraudulently inflated appraisals, State Street "enabled" the Director and Officer Defendants to approve or effectuate purchases of Appvion stock at prices that exceeded fair market value. As the Seventh Circuit noted, the fair market value was zero or negative at the relevant time. *See id.*, 99 F.4th at 939; SAC ¶ 288. That is all that is required to establish liability under Section 405. State Street's (1) conduct in valuing PDC stock as of December 2012 and (2) actual purchase of shares enabled the Director and Officer Defendants' own breaches of fiduciary duty.

Issues of damages, causation and superseding or intervening cause are determinations of fact left to the factfinder and are not issues to be determined a motion to dismiss. *See J.M. v. City of Milwaukee*, 249 F.Supp.3d 920, 945 (E.D. Wisc. 2017) ("Causation is generally an issue of fact for the jury to decide"); *Daly v. West Monroe Partners, Inc.*, 2023 WL 2525362, *5 (N.D. Ill. Mar. 15, 2023) ("causation and superseding causes are generally issues of fact not appropriate for resolution on a motion to dismiss") (*quoting Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 840-41 (1996) ("The issues of proximate causation and superseding cause involve application of law to fact, which is left to the factfinder")). The ESOP's § 404(a) claims against State Street are based on its conduct between November 26, 2012 and March 31, 2013, when it resigned. A jury could easily find that State Street's breaches of duty caused the ESOP injury. At a minimum, State Street (improperly) valued PDC's stock, which supported the previous (inflated) values; continued to hold stock that it knew to be at inflated values; failed to remedy its prior purchases of stock; and purchased more stock on behalf of the ESOP based in part on its December 2012 valuation. *See* SAC ¶¶ 191-92, 645-63, 668. Had State Street acted prudently as a fiduciary during this period, a jury could easily find that Stout's fraudulently inflated valuations would have been exposed, the fact that the stock had no value would have been disclosed and no further purchases of Appvion stock would have occurred.[2]

The Plan established a system to protect participants and ensure that the Plan's stock purchases be set "at a price not in excess of fair market value." SAC ¶ 170. The fair market value

---

[2] If the Court concludes that the ESOP's allegations regarding causation are deficient, the ESOP requests leave to amend to cure any deficiencies under Fed.R.Civ.P. 15(a)(2) ("The court should freely give leave when justice so requires").

of Appvion's stock was determined twice a year, in June and December, and every time the FMV was communicated to the Plan participants, it was represented to have been prepared by an independent appraiser and approved by a trustee and the Committee after independent review and confirmation. *See* SAC ¶¶ 154-167, 170-79. As State Street argued in its appellate brief, "if anything the SAC acknowledges an extensive and collaborative process among the independent appraiser, State Street, and the Plan's fiduciary committee, as well as the Appvion board of directors." Ex. A, State Street's Appellate Brief at 40. State Street's role as trustee should not be examined in isolation from systemic controls designed to provide the Plan participants with comfort that the appraisal values were accurate and that the Plan was not paying more than fair market value.

At every semi-annual appraisal, when the ESOP purchased Appvion shares, the ESOP was presented with two share prices based on the current appraisal and the previous appraisal, and purchases were made at the lower of the two. *See* SAC ¶ 191. With respect to the December 2012 share purchase, the ESOP was presented with the June 2012 appraisal price of $16.45 and the December appraisal price of $17.55, both approved by State Street as trustee. *See* SAC ¶ 191; Appendix A to the SAC (Dkt. 191-1 at p. 6 of 7). Even accepting that the December 2012 purchases were based on the June 2012 appraisal price, State Street's adoption of the December 2012 appraisal price provided assurance that the June 2012 price was reasonable, when both appraisals should have reported that the PDC stock had negative value. *See* SAC ¶ 288; *Appvion III*, 99 F.4th at 939. The December 2012 share purchases would not have occurred at any price had State Street not breached its fiduciary duty in approving Stout's December 2012 appraisal and "looking the other way" with respect to Stout's fraudulently inflated appraisals. *Id.*, 99 F.4th at 946.

13

State Street does not discuss what would have happened if it had not approved the December 2012 appraisal value and disclosed a zero value – because it does not fit within State Street's narrow construction narrative. After years of consistent, unchallenged semi-annual appraisals, the December 2012 purchases could not have gone forward if State Street had acted prudently, rejected the December 2012 appraised stock price and disclosed that the stock had zero value.

The SAC includes allegations of what State Street should have done in connection with the appraisals. *See* SAC ¶¶ 654-657, 660. For example, State Street should have implemented processes to investigate prudently and confirm Stout's valuations. *See* SAC ¶¶ 636, 647-650, 654, 660, 663, 667. Paragraph 668 alleges that State Street breached its fiduciary duties by failing "to disclose the valuation deficiencies in violation of its duties of disclosure." Had State Street disclosed the multitude of deficiencies in connection with the December 2012 appraisal, no more stock purchases could have occurred.

State Street argues that the ESOP did not suffer injury because of the December 2012 appraisal because the successor trustee, Reliance, approved an even higher appraisal in June 2013. As the Seventh Circuit recognized, had Stout and State Street acted prudently in connection with their evaluation of the stock's fair market value, "the Plan's equity in Appvion would have been worth much less – as little as $0 for most of the relevant years." 99 F.4th at 939. The SAC specifically alleges that the correct value as of December 2012 was negative, meaning that the only appraisal State Street should have approved and passed on to the ESOP should have been zero. *See* SAC ¶ 288. The necessary and reasonable implication of the SAC, drawing inferences in favor of the ESOP, is that in January 2013, if State Street had done its duty, the ESOP would have been presented with two prices – the June 2012 value of $16.45 and a December 2012 negative value,

along with disclosure of the defects in Stout's current and previous appraisals. As confirmed by the Seventh Circuit, a reasonable jury could find but-for and proximate causation under the circumstances alleged.

### 3. There was no intervening or superseding cause.

State Street argues that Reliance's purchase of PDC stock using State Street's December 2012 value acts as a superseding cause that breaks the chain of causation. Again, this is a fact-intensive issue not appropriate for a motion to dismiss. *See Exxon*, 517 U.S. at 840-41 ("The issues of proximate causation and superseding cause involve application of law to fact, which is left to the factfinder").

None of State Street's superseding cause cases arises in an ERISA context. Because the application of superseding cause is essentially a policy decision that an otherwise culpable defendant should be excused, it is unclear that the defense of superseding cause is even available in ERISA claims. *See Gracyalny v. Westinghouse Elec. Corp.*, 723 F.2d 1311, 1322 (7th Cir. 1983) ("Application of the superseding cause doctrine relieves a tortfeasor from liability for conduct which has been a substantial factor in producing injury"); *In re State Street Bank and Trust Co. Fixed Income Funds Inv. Litig.*, 772 F.Supp.2d 519, 542-43 (S.D.N.Y. 2011) (examining case law and explaining that it was uncertain whether the concept of superseding cause applied to ERISA claims).

Regardless, the doctrine is inapplicable here. "A key inquiry in resolving the question of superseding cause is foreseeability." *Gracyalny*, 723 F.3d at 1323. Superseding causes are by definition unexpected and unforeseen – "some action of a third party that makes the plaintiff's injury an unforeseen consequence of the defendant's negligence." *Scottsdale Ins. Co. v. Subscription Plus, Inc.*, 299 F.3d 618, 621 (7th Cir. 2002); *Exxon*, 517 U.S. at 837 ("superseding cause is … applied where … the injury was actually brought about by a later cause of independent

15

origin that was not foreseeable"). "[A]ntecedent tortfeasors should not be relieved of liability as the result of consequences which they should have anticipated under the circumstances." *Gracyalny*, 723 F.2d at 1323.

The Seventh Circuit provided as an example of superseding cause the following:

> Or if through the carelessness of the driver a truck spilled a toxic substance and a passerby scraped it up and poisoned his mother-in-law with it, the driver would not be liable to the mother-in-law's estate; the son-in-law's criminal act would be deemed a superseding cause.

*Beul v. ASSE Int'l, Inc.*, 233 F.3d 441, 447 (7th Cir. 2000).

Superseding cause simply does not apply. In this case, Stout provided inflated, unreliable appraisals of Appvion stock for over ten years by the time State Street resigned. The Plan documents provided that the ESOP's purchase of stock would be made at the lower of the current or previous appraisal price, so State Street's December 2012 stock value was at least referenced in connection with stock purchases based on the December 2012 and June 2013 valuations. It was entirely foreseeable that the December 2012 stock value would be used to purchase stock even after State Street resigned, and that those inflated appraisals would continue, causing the ESOP to purchase additional PDC shares at inflated prices after State Street's resignation. The losses suffered as a result of the December 2012 and June 2013 were of the same type, and the result of similar wrongdoing, as those suffered as a result of State Street's earlier bad acts as trustee. As with issues of damages and causation, foreseeability is an issue best left to the jury and should not be decided on a motion to dismiss. *See Blasius v. Angel Automotive, Inc.*, 839 F.3d 639, 644-45 (7th Cir. 2016); *Suzik v. Sea-Land Corp.*, 89 F.3d 345, 348 (7th Cir. 1996).

### III.  CONCLUSION

For the foregoing reasons, Plaintiff requests that State Street's Renewed Motion be denied.

16

Respectfully submitted this 2nd day of August 2024

By */s/*  *Abigail M. Terhune*_____
Jill M. Hartley (Wis. Bar 1027926)
**THE PREVIANT LAW FIRM, S.C.**
310 West Wisconsin Avenue, Ste. 100 MW
Milwaukee, WI 53203
sjg@previant.com
*Local counsel for Plaintiff*

L. Richard Williams
Abigail M. Terhune
Dennis K. Blackhurst
**WILLIAMS BLACKHURST TERHUNE PLLC**
701 North 44th Street
Phoenix, AZ 85008-6504
aterhune@wbt.esq
*Attorneys for Plaintiff*

17

## CERTIFICATE OF SERVICE

I hereby certify that on 2 August 2024, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System, which constitutes service upon all counsel of record.

*/s/ C. Van Horn*